07-17-00458CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
3/23/2018 4:00 PM
Vivian Long, Clerk

ACCEPTED

## APPELLATE NO. 07-17-00458-CV

### IN THE COURT OF APPEALS
### FOR THE SEVENTH JUDICIAL DISTRICT
### AMARILLO, TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
3/23/2018 4:00:16 PM
VIVIAN LONG
CLERK

**DALE ROUSH, INDIVIDUALLY AND AS TRUSTEE OF THE DALE ROUSH ASSETS TRUST**

*Appellant,*

**v.**

**METROPOLITAN LIFE INSURANCE COMPANY AND JOEL HART**

*Appellees.*

*Appeal From No. 4727*
*69th District Court, Sherman County, Texas*
*The Honorable Ron Enns*

### BRIEF OF APPELLANT

**Sprouse Shrader Smith PLLC**
**John F. Massouh, Texas State Bar No. 24026866**
**john.massouh@sprouselaw.com**
**P.O. Box 15008**
**Amarillo, Texas 79105**
**Phone: (806) 468-3300**
**Fax: (806) 373-3454**

**ATTORNEY FOR APPELLANT DALE ROUSH, INDIVIDUALLY AND AS TRUSTEE OF THE DALE ROUSH ASSETS TRUST**

**MARCH 23, 2018**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 38.1(a), Appellant, Dale Roush, individually and as trustee of the Dale Roush Assets Trust, certifies that the following is a complete list of the names and addresses of the parties and their counsel:

|  | *Parties* | *Counsel* |
|---|---|---|
| *Appellant* | Dale Roush, individually and as trustee of the Dale Roush Assets Trust | Sprouse Shrader Smith PLLC<br>John F. Massouh<br>P.O. Box 15008<br>Amarillo, TX 79105-5008 |
| *Appellee* | Joel Hart | Lewis Coppedge<br>Lewis Coppedge, P.C.<br>112 SW 8th Ave., Suite 301<br>Amarillo, TX 79101<br><br>and<br><br>Frederic Wolfram<br>Wolfram Law Firm, P.C.<br>600 S. Tyler St., Suite 1406<br>Amarillo, TX 79101 |
| *Appellee* | Metropolitan Life Insurance Company and | Jackson and Walker<br>Scott A. Wheatley<br>777 Main Street, Suite 2100<br>Fort Worth, TX 76102-5366 |

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL ..............................................................i

INDEX OF AUTHORITIES.............................................................................iv

STATEMENT OF THE CASE ..........................................................................1

REQUEST FOR ORAL ARGUMENT ...............................................................2

ISSUES PRESENTED .....................................................................................3

    1. The trial court abused its discretion by denying Plaintiff's Motion to Reinstate this case, as well as abused its discretion by granting Defendants' Motion to Dismiss for Want of Prosecution, because Plaintiff has actively prosecuted the case, including requesting a trial setting for the Court's first available jury trial docket, which was December 5, 2016. .............................3

STATEMENT OF FACTS ................................................................................4

SUMMARY OF THE ARGUMENT ...................................................................6

ARGUMENT ................................................................................................8

    I. Standard of Review ...............................................................................8

    II. The trial court abused its discretion by granting Appellees' Motion to Dismiss for Want of Prosecution because Appellant has actively prosecuted the case, including seeking a December 2016 trial setting; further, the delay in prosecution is mitigated by an explained delay due to Mr. Roush's health. .........8

        A. The trial court abused its discretion by dismissing this case under the two grounds found in Texas Rule of Civil Procedure 165a. ...................................10

        B. The trial court abused its discretion by dismissing this case through its inherent power to dismiss a case when a plaintiff fails to prosecute its case with due diligence.........................................................................................13

PRAYER ................................................................................................................16

CERTIFICATE OF COMPLIANCE .......................................................................18

CERTIFICATE OF SERVICE ................................................................................19

APPENDIX ...........................................................................................................20

# INDEX OF AUTHORITIES

**Cases**                                                                                              **Page**

*City of San Benito v. Rio Grande Valley Gas Co.*,
    109 S.W.3d 750 (Tex. 2003). ......................................................................8

*Downer v. Aquamarine Operators, Inc.*,
    701 S.W.2d 238 (Tex. 1985). .....................................................................8

*Dueitt v. Arrowhead Lakes Prop. Owners, Inc.*,
    180 S.W.3d 733 (Tex. App.—Waco 2005, pet. denied). ..............................8

*Fedco Oil Co. v. Pride Ref. Co.*,
    787 S.W.2d 572 (Tex. App.—Houston [14th Dist.] 1990, no writ)............15

*In re Connor*,
    458 S.W.3d 532 (Tex. 2015). ...................................................................15

*In re Fifty-One Gambling Devices*,
    298 S.W.3d 768 (Tex. App.—Amarillo 2009, pet. denied). .......................10

*In re S.D.W.*,
    811 S.W.2d 739 (Tex. App.—Houston [1st Dist.] 1991, no writ). .............11

*Jones v. Morales*,
    318 S.W.3d 419 (Tex. App.—Amarillo 2010, pet. denied). ....................10,11

*King v. Holland*,
    884 S.W.2d 231 (Tex. App.—Corpus Christi 1994, writ denied).....7,9,13,16

*Lessard v. Velsicol*,
    No. 13-00-00113-CV, 2009 Tex. App. LEXIS 2811, at *1 (Tex. App.—
    Corpus Christi Apr. 23, 2009, pet. denied) (mem. op.)...............................11

*Maida v. Fire Ins. Exchange*,
    990 S.W.2d 836 (Tex. App.—Fort Worth 1999, no pet.). ................7,9,13,16

*Moore v. Armour & Co.*,
    660 S.W.2d 577 (Tex. App.—Amarillo 1983, no writ). ...............................14


*Rorie v. Avenue Shipping Co.*,
    414 S.W.2d 948 (Tex. Civ. App.—San Antonio 1981, writ ref'd n.r.e).......14

*State v. Rotello*,
    671 S.W.2d 507 (Tex. 1984). ...................................................................8

*Villarreal v. San Antonio Truck & Equip.*,
    994 S.W.2d 628 (Tex. 1999). ..............................................................7,9,13

**Statutes**

TEX. R. CIV. P. 165a ...................................................................6,8,9,10
TEX. R. JUD. ADMIN. 1..........................................................................10
TEX. R. JUD. ADMIN. 6.....................................................................7,9,10,11
TEX. GOV'T CODE ANN. § 74.024 (West 2017).......................................10

**Other**

BLACK'S LAW DICTIONARY (10th ed. 2014)............................................11

# STATEMENT OF THE CASE

On June 13, 2016, the Court in this matter dismissed the claims of Plaintiff and Appellant, Dale Roush, individually and as trustee of the Dale Roush Assets Trust ("Roush"), with prejudice, by granting Defendants' Motion to Dismiss for Want of Prosecution. C.R. 56-58. On December 22, 2016, Appellant filed his Notice of Appeal. C.R. 87-88.

## REQUEST FOR ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 39.7, Appellant, Dale Roush, individually and as trustee of the Dale Roush Assets Trust, requests permission to make oral arguments upon submission of this cause to the Court of Appeals. Oral argument would grant the Court of Appeals a better opportunity to understand the complexity of the case and the special circumstances surrounding the case.

## ISSUES PRESENTED

1.      The trial court abused its discretion by granting Defendants' Motion to Dismiss for Want of Prosecution, as well as abused its discretion by denying Plaintiff's Motion to Reinstate this case, because Plaintiff has actively prosecuted the case, including requesting a trial setting for the Court's first available jury trial docket, which was December 5, 2016.

## STATEMENT OF FACTS

This case has a long and winding history that includes the following: multiple lawyers representing the different parties, health issues of the Plaintiff, multiple summary judgment motions, a three year delay in ruling on the summary judgment motions, attempted consolidation with related matters, and the bankruptcy of party Tejas Farms. *See* C.R. 70-86. While this case has undoubtedly been pending for a number of years, the long and sordid history of the case is not the fault of Appellant, but merely a circumstance of such a complex case with special circumstances. A very abbreviated overview of the various pleadings and motions throughout the history of this case is detailed below:

| Date of Filing: | Description of Filing: | Record Citation: |
|---|---|---|
| 07/10/2006 | Plaintiff's Original Petition | C.R. 70 |
| 08/07/2006 | Defendant Hart's Answer and Counterclaim | C.R. 70 |
| 09/06/2006 | Defendant Metropolitan's Answer and Cross-claim | C.R. 70 |
| 11/13/2007 | Motion for Withdrawal and Substitution of Counsel for Defendant | C.R. 71 |
| 02/22/2008 | Notice of Hearing on Motion to Compel | C.R. 71 |
| 03/07/2008 | Plaintiff's Motion to Compel Deposition of Hart and Brief in Support | C.R. 71 |
| 01/15/2009 | Metropolitan's Motion for Summary Judgment and No Evidence Motion for Summary Judgment on Roush's Claim for Conversion of Real Property | C.R. 72 |
| 01/20/2009 | Hart's Motion to Consolidate | C.R. 73 |
| 02/23/2009 | Plaintiff's First Amended Petition | C.R. 73 |
| 02/25/2009 | Metropolitan's Motion to Strike Plaintiff's Amended Petition | C.R. 74 |
| 03/02/2009 | Metropolitan's Brief in Support of Motion for Summary Judgment | C.R. 74-75 |

| 03/11/2009 | Hart's Second Amended Answer | C.R. 77 |
|---|---|---|
| 03/16/2009 | Metropolitans First Amended Answer, Special Exceptions, and Cross-claim | C.R. 77 |
| 03/20/2009 | Plaintiff's Second Amended Petition | C.R. 77 |
| 03/25/2009 | Suggestion of Bankruptcy of Defendant Tejas Farms, Ltd. | C.R. 77 |
| 03/25/2009 | Hart's Motion for Summary Judgment against Metropolitan | C.R. 77 |
| 03/25/2009 | Hart's Motion for Summary Judgment Against Plaintiff | C.R. 77-78 |
| 04/17/2009 | Defendant's Motion for Substitution of Counsel | C.R. 80 |
| 04/17/2009 | Notice of Hearing on Plaintiff's Motion to Compel Deposition of Hart | C.R. 81 |
| 04/17/2009 | Plaintiff's Third Amended Petition | C.R. 82 |
| 04/17/2009 | Plaintiff's Notice of Lis Pendens | C.R. 83 |
| 05/26/2009 | Order Granting Metropolitan's Conditional Motion for Summary Judgment | C.R. 84 |
| 10/14/2009 | Motion to Consolidate by Roush and Hart | C.R. 85 |
| 10/21/2009 | Hart's Motion for Summary Judgment | C.R. 85 |
| 2/16/2012 | Order denying Motion for Summary Judgment | C.R. 86 |
| 10/05/2012 | Defendant's Motion to Withdraw | C.R. 86 |
| 10/10/2012 | Order Granting Motion to Withdraw | C.R. 86 |
| 12/30/2015 | Motion for Substitution of Counsel for Defendants | C.R. 86 |

As clearly demonstrated from the above filings, which only represent a very small portion of the trial court's complete index, this case has been pending with the trial court for the amount of time due to the complexity and ever-changing nature of the case, attorneys, and parties involved in the lawsuit and due to a mitigated and explained delay. After Mr. Roush began representing himself, he suffered injuries from car accidents and a dramatic fall that has not allowed him to

adequately function from day-to-day and hampered his prosecution of the case.

Mr. Roush assumed responsibility for prosecuting this case after he granted his attorneys' withdrawal from the case in 2012. On August 28, 2014, Mr. Roush was involved in a car accident in Taos, New Mexico. C.R. 67. The accident necessitated multiple visits to a chiropractor. C.R. 67. On February 24, 2015, Mr. Roush was involved in a second car accident that exasperated his previous health condition. C.R. 67. Finally, on April 21, 2015, Mr. Roush experienced a dramatic fall in the kitchen of his home. C.R. 67. The fall and resulting injuries required him to stay ten days in the hospital, of which nearly half was in the intensive care unit. C.R. 67. Mr. Roush broke his c4 vertebrae and suffered severe nerve damage. C.R. 67. Mr. Roush also injured his shoulder in the fall. C.R. 67-68. On April 26, 2016, he underwent surgery to correct the injury to his shoulder.

## SUMMARY OF THE ARGUMENT

The Court abused its discretion by granting Defendants' Motion to Dismiss for Want of Prosecution, and this Court should therefore reverse the trial court's judgment and remand this case to the trial court for trial on the merits.

Under Texas Rule of Civil Procedure 165a, there are two grounds for dismissal for want of prosecution. Only one is applicable in this case. The applicable discretionary ground generally applies when a case is "not disposed of within [the] time standards promulgated by the Supreme Court." TEX. R. CIV. P.

165a(2) (referencing the administrative rules promulgated by the Texas Supreme Court). Under this ground, a trial court has the discretion to dismiss for want of prosecution whenever a case is not disposed of in eighteen months. *See* TEX. R. JUD. ADMIN. 6.1(a)(1). However, though this is the general rule, it is not the rule for complex cases: "It is recognized that in especially complex cases or special circumstances it may not be possible to adhere to these standards." *Id*. R. 6.1(e). This case is both complex and involves special circumstances, as clearly identified in the Statement of Facts section of this brief and set forth in the 16 page docket index.  C.R. 70-86. Therefore, the general discretionary rule, requiring a case's disposal within eighteen months, is inapplicable in this matter, and the trial court abused its discretion in dismissing the case pursuant to Rule 165a.

Under the common law, a trial court possesses the inherent power to dismiss a case independently of the rules of civil procedure when a plaintiff fails to prosecute its case with due diligence. *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 631-32 (Tex. 1999). The factors a trial court may consider in dismissing a case under its inherent power include: the length of time the case is on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for delay. *Maida v. Fire Ins. Exchange*, 990 S.W.2d 836, 842 (Tex. App.—Fort Worth 1999, no pet.) (citing *King v. Holland*, 884 S.W.2d 231, 237 (Tex. App.—Corpus Christi 1994, writ denied)). Though this

case has been on file for a number of years, there has been extensive activity in the case, including Appellant requesting a December 5, 2016 jury trial following the undersigned's substitution as counsel for Appellant. C.R. 70-96; APP'X n. 3 ¶ 8. Further, Mr. Roush suffered a number of injuries from two car accidents and a fall that mitigate and explain the delay in prosecution. C.R. 67-69. The trial court abused its discretion in dismissing this case pursuant to its inherent powers.

## ARGUMENT

### I. Standard of Review

Courts of Appeal review dismissals for want of prosecution under an abuse-of-discretion standard. *State v. Rotello*, 671 S.W.2d 507, 509 (Tex. 1984); *Dueitt v. Arrowhead Lakes Prop. Owners, Inc.*, 180 S.W.3d 733, 737 (Tex. App.—Waco 2005, pet. denied). A trial court abuses its discretion when it acts "without reference to any guiding rules or principles, or, stated another way, when the trial court acts in an arbitrary and unreasonable manner. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985)).

### II. The trial court abused its discretion by granting Appellees' Motion to Dismiss for Want of Prosecution because Appellant has actively prosecuted the case, including seeking a December 2016 trial setting; further, the delay in prosecution is mitigated by an explained delay due to Mr. Roush's health.

Under the second discretionary ground of Texas Rule of Civil Procedure 165a, a trial court has the power to dismiss a case that is "not disposed of within

[the] time standards promulgated by the Supreme Court." TEX. R. CIV. P. 165a(2). Though this is the general discretionary rule, "it is recognized that in especially complex cases or special circumstances it may not be possible to adhere to these standards." TEX. R. JUD. ADMIN. 6.1(e). This case is both complex and involves special circumstances; therefore, the trial court should not have dismissed Appellant's claims pursuant to this ground. This Court should reverse the trial court's judgment and remand the case for trial on the merits.

Under the common law, a trial court possesses the inherent power to dismiss a case independently of the rules of civil procedure when a plaintiff fails to prosecute its case with due diligence. *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 631-32 (Tex. 1999). Trial courts may consider a number of factors in determining whether or not to dismiss the case in accordance with its inherent power. *Maida v. Fire Ins. Exchange*, 990 S.W.2d 836, 842 (Tex. App.—Fort Worth—1999, no pet.) (Factors a trial court may consider in dismissing under its inherent power include the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for delay) (citing *King v. Holland*, 884 S.W.2d 231, 237 (Tex. App.—Corpus Christi 1994, writ denied)). When considering these factors in light of the facts of this case, Appellant's case should not have been dismissed through the trial court's inherent power. This constitutes an abuse of discretion.

**A.** **The trial court abused its discretion by dismissing this case under the two grounds found in Texas Rule of Civil Procedure 165a.**

Under Texas Rule of Civil Procedure 165a, there are two grounds for dismissal for want of prosecution. One is when a "party seeking affirmative relief [fails] to appear for any hearing or trial of which the party had notice." TEX. R. CIV. P. 165a(1). This ground is inapplicable to this case. The second discretionary ground generally applies when a case is "not disposed of within [the] time standards promulgated by the Supreme Court." *Id.* R. 165a(2) (referencing the administrative rules promulgated by the Texas Supreme Court). Under this ground, a trial court has the discretion to dismiss for want of prosecution in a case whenever it is not disposed of in eighteen months. *See* TEX. R. JUD. ADMIN. 6.1(a)(1).

According to Rule 1 of the Rules of Judicial Administration, the rules are promulgated pursuant to § 74.024 of the Texas Government Code. TEX. R. JUD. ADMIN. 1. Section 74.024 provides "the supreme court *may* consider the adoption of rules relating to: (1) nonbinding time standards for pleading, discovery, motions, and dispositions; (2) nonbinding dismissal of inactive cases from dockets, if the dismissal is warranted . . . ." TEX. GOV'T CODE ANN. § 74.024(c)(1),(2) (West 2017) (emphasis added). Thus, the application of Rule 6 is discretionary and non-binding. *Jones v. Morales*, 318 S.W.3d 419, 427 (Tex. App.—Amarillo 2010, pet. denied); *see also In re Fifty-One Gambling Devices*, 298 S.W.3d 768, 774 (Tex.

App.—Amarillo 2009, pet. denied); *In re S.D.W.*, 811 S.W.2d 739, 746 (Tex. App.—Houston [1st Dist.] 1991, no writ) (juvenile case). In other words, "Rule 6 does not fix a bright line demarking the outward limit of a trial court's discretion to control its docket." *Jones*, 318 S.W.3d at 427. Dismissal after eighteen months is not warranted in this case, as it is not a bright-line rule. The trial court, based on the complexity of this case, should not have dismissed the case based on its failure to come to a resolution within eighteen months.

Additionally, though an eighteen-month guideline promulgated by the Texas Supreme Court is the general discretionary rule, a closer examination of Rule 6 reveals subsection (e), titled "Complex Cases": "It is recognized that in especially complex cases or special circumstances it may not be possible to adhere to these standards." TEX. R. JUD. ADMIN. 6.1 (e). Therefore, the Supreme Court has carved out an exception to the general timetable that allows more time for complex cases or special circumstances. *See Lessard v. Velsicol*, No. 13-00-00113-CV, 2009 Tex. App. LEXIS 2811, at *13 n. 5 (Tex. App.—Corpus Christi Apr. 23, 2009, pet. denied) (mem. op.). While the statute does not define "complex case," Black's Law Dictionary defines "complex litigation" as: "Litigation involving several parties who are separately represented, and usu. involving multifarious factual and legal issues." *Complex Litigation,* BLACK'S LAW DICTIONARY (10th ed. 2014) 1075.

This case is both complex and involves special circumstances, including but

not limited to: multiple lawyers representing the different parties, health issues of the Plaintiff, multiple summary judgment motions, a three year delay in ruling on the summary judgment motions, attempted consolidation with related matters, and the bankruptcy of party Tejas Farms. *See* C.R. 70-86. This case squarely fits the definition of "complex litigation" as defined by Black's Law Dictionary. In fact, the civil docket sheet, or "index," in this matter is seventeen pages long, and contains over one-hundred and thirty entries. C.R. 70-96. The present case is not a "normal" case, and it is not a case in which Appellant failed to take any sort of action.

Appellant has recently been actively prosecuting this case. On May 16, 2016, the law firm of Sprouse Shrader Smith, PLLC noticed an appearance on behalf of Appellant. C.R. 50-51. Following the undersigned's appearance, Appellant requested the case be set for the Court's first available jury trial docket on December 6, 2016. APP'X n. 3 ¶ 8. Further, Appellant announced ready for trial in its Verified Motion to Reinstate. C.R. 63.

The Court should not have dismissed Appellant's claim pursuant to the 18-month discretionary timetable ground for two reasons: (1) this timetable is nonbinding on the trial court, and the trial court abused its discretion in dismissing the case pursuant to this timetable; and (2) this case is a "complex case" with special circumstances, and the 18-month timetable is therefore inapplicable to this

matter and the trial court therefore abused its discretion in dismissing the case pursuant to this timetable. The trial court clearly abused its discretion in dismissing the case for want of prosecution, and in dismissing the matter while Appellant was clearly prosecuting its claim and stood ready for trial.

**B.    The trial court abused its discretion by dismissing this case through its inherent power to dismiss a case when a plaintiff fails to prosecute its case with due diligence.**

Under the common law, a trial court possesses the inherent power to dismiss a case independently of the rules of procedure when a plaintiff fails to prosecute his case with due diligence. *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 631-32 (Tex. 1999). The factors a trial court may consider in dismissing a case under its inherent power include: the length of time the case is on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for delay. *Maida v. Fire Ins. Exchange*, 990 S.W.2d 836, 842 (Tex. App.—Fort Worth 1999, no pet.) (citing *King v. Holland*, 884 S.W.2d 231, 237 (Tex. App.—Corpus Christi 1994, writ denied)). Though this case has been on file for a number of years, there has been extensive activity in the case, up to the point where Appellant requested a trial setting for December 2016. C.R. 70-86; APP'X n. 3 ¶ 8. Additionally, Appellant has reasonable excuses for its delay in prosecution, namely: he has been involved in two car accidents and a traumatic fall that prevented the further prosecution of this case. C.R. 67-69. This

all occurred while appellant was representing himself *pro se*.

"Where . . . at the time of the dismissal hearing the plaintiff has announced ready for trial and has secured a trial setting or is otherwise making a diligent effort to get the case to trial, the case should not be dismissed for lack of prosecution." *Moore v. Armour & Co.*, 660 S.W.2d 577, 578 (Tex. App.—Amarillo 1983, no writ) (citing *Rorie v. Avenue Shipping Co.*, 414 S.W.2d 948, 954 (Tex. Civ. App.—San Antonio 1981, writ ref'd n.r.e.)). Appellant requested a trial setting of December 5, 2016 prior to the dismissal of this case. APP'X n. 3 ¶ 8. Further, Appellant announced "ready for trial" in its Verified Motion to Reinstate. C.R. 63. In *Moore*, Plaintiff Moore "had announced trial ready, secured a trial setting and . . . stood ready to go to trial when his case was dismissed." 660 S.W.2d at 578. Similarly, Appellant requested a trial setting for December 2016, and Appellant stood ready to stand trial at the time of dismissal. APP'X n. 3 ¶ 8; C.R. 63. Therefore, "a dismissal under these circumstances is an abuse of discretion." *Moore*, 660 S.W.2d at 578.

The Fourteenth Court of Appeals in Houston agreed with the Amarillo Court of Appeals' reasoning in *Moore*:

> In *Moore v. Armour & Co.,* 660 S.W.2d 577 (Tex. App.—Amarillo 1983, no writ), the court held that the trial judge abused his discretion in dismissing a case for want of prosecution where, at the time of the dismissal hearing, the plaintiff had announced ready for trial and had secured a trial setting or was otherwise making a diligent effort to get the case to trial. *Id.* at 578. We agree with this reasoning.

> Accordingly, in the instant case, we find the trial court abused its discretion in dismissing appellants' causes of action for want of prosecution where this record unquestionably shows that appellant Billingsley was making a diligent effort to get the case to trial, and that trial settings had twice been secured for the case.

*Fedco Oil Co. v. Pride Ref. Co.*, 787 S.W.2d 572, 575 (Tex. App.—Houston [14th Dist.] 1990, no writ). The trial court in this case abused its discretion in dismissing Appellant's causes of action for want of prosecution because Appellant was making a diligent effort to get the case to trial and had announced ready for trial and attempted to obtain a trial setting prior to dismissal of the cause. APP'X n. 3 ¶ 8; C.R. 63.

Finally, Appellant has reasonable excuses for its delay in prosecution. *See In re Connor*, 458 S.W.3d 532 (Tex. 2015). On August 28, 2014, Mr. Roush was involved in a car accident in Taos, New Mexico. C.R. 67. The accident necessitated multiple visits to a chiropractor. C.R. 67. On February 24, 2015, Mr. Roush was involved in a second car accident that exasperated his previous health condition. C.R. 67. Finally, on April 21, 2015, Mr. Roush experienced a dramatic fall in the kitchen of his home. C.R. 67. The fall and resulting injuries required him to stay ten days in the hospital, of which nearly half was in the intensive care unit. C.R. 67. Mr. Roush broke his c4 vertebrae and suffered severe nerve damage. C.R. 67. Mr. Roush also injured his shoulder in the fall. C.R. 67-68. On April 26, 2016, he underwent surgery to correct the injury to his shoulder.

Further, prior to Appellees' Motion to Dismiss for Want of Prosecution, Appellant was actively engaged in the furtherance of this lawsuit. First, Appellant requested a trial setting for December 5, 2016. APP'X n. 3 ¶ 8. Second, Appellant was ready for trial prior to the case's dismissal. C.R. 63. By considering these factors, which the trial court should have considered prior to dismissal of the lawsuit, it is clear that the trial court abused its discretion in dismissing Appellant's claims. *Maida*, 990 S.W.2d at 842 (citing *King*, 884 S.W.2d at 237). This Court should therefore reverse the final judgment of the trial court and remand the case for trial on the merits.

## **PRAYER**

WHEREFORE, Appellant prays that this Court conduct oral arguments, and reverse and remand this matter to the trial court as reinstated due to the fact that the trial court abused its discretion in dismissing Appellant's claims for want of prosecution.

Respectfully submitted,

SPROUSE SHRADER SMITH PLLC
John F. Massouh, State Bar No. 24026866
John.massouh@sprouselaw.com
701 S. Taylor, Suite 500
P. O. Box 15008
Amarillo, Texas 79105-5008
Phone: (806) 468-3300; Fax: (806) 373-3454


*/s/ John F. Massouh*
John F. Massouh

**ATTORNEY FOR APPELLANT
PANTEX SALES, INC. D/B/A GRAPHIC
EQUIPMENT AND SUPPLY**

## CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limitation of the Texas Rules of Appellate Procedure 9.4(i)(2)(A). This brief contains 3266 words, excluding the parts of the petition exempted by the Texas Rules of Appellate Procedure.

2. This brief complies with the typeface requirements of Texas Rules of Appellate Procedure 9.4. This petition has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point font Times New Roman.

*/s/ John F. Massouh*
John F. Massouh

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 23, 2018, I electronically transmitted the foregoing document to the Clerk of the Court using the eFileTexas.gov electronic system for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following e-filing registrant:

Scott A. Wheatley
Jackson Walker LLP
777 Main St., Suite 2100
Fort Worth, TX 76102
*Attorneys for Metropolitan Insurance Company*

Lewis Coppedge
Lewis Coppedge, P.C.
112 SW 8th Ave., Suite 301
Amarillo, TX 79101
and
Frederic Wolfram
Wolfram Law Firm, P.C.
600 S. Tyler St., Suite 1406
Amarillo, TX 79101
*Attorneys for Joel Hart*

/s/ John F. Massouh
John F. Massouh

14251.05
1039406_1.docx

## APPENDIX

1. Trial Court's Order Granting Defendants' Motions to Dismiss for Want of Prosecution

2. Plaintiff's Response to Defendants' Motion to Dismiss for Want of Prosecution

3. Docket Index


## CAUSE NO. 4727

| | | |
|---|---|---|
| DALE ROUSH, Individually and as | § | IN THE DISTRICT COURT OF |
| Trustee of the Dale Roush Assets | § | |
| Trust, | § | |
| Plaintiff, | § | |
| v. | § | SHERMAN COUNTY, TEXAS |
| | § | |
| METROPOLITAN LIFE | § | |
| INSURANCE COMPANY, and JOEL | § | |
| HART, | § | |
| Defendants. | § | 69TH JUDICIAL DISTRICT |

### ORDER GRANTING DEFENDANTS'
### MOTIONS TO DISMISS FOR WANT OF PROSECUTION

TO THE HONORABLE COURT:

On this day came to be considered Defendant, Metropolitan Life Insurance Company's

Motion to Dismiss for Want of Prosecution and Defendant, Joel Hart's Motion to Dismiss for

Want of Prosecution.

The Court, having considered the motion, the clerk's record in this matter, any supporting

evidence received and the arguments of counsel, is of the opinion that the Motions to Dismiss for

Want of Prosecution filed by Defendants Metropolitan Life Insurance Company and Joel Hart

should be **GRANTED**. In support of this decision, the Court **FINDS** the following:

1. This lawsuit was filed on July 10, 2006.

2. The Court denied Defendants' motions for summary judgment by Order entered

May 23, 2012. Plaintiff has taken no action to prosecute his case since that date and until he

responded to MetLife's motion to dismiss for want of prosecution. Moreover, this case has been

dormant since the parties completed briefing on the motions for summary judgment in 2009.

3. On May 22, 2012, Plaintiff's counsel, John Huffaker advised that he was no

longer with the firm of Sprouse Shrader Smith, P.C. Sprouse Shrader Smith, P.C. filed a motion

to withdraw on October 3, 2012, and the order granting the same was signed on October 8, 2012.

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS FOR WANT OR PROSECUTION
16416459v.2

FILED
GINA GRAY
COUNTY & DISTRICT CLERK
Filed 06/17/2016 11:23:19 AM
**56**ERMAN COUNTY TEXAS
BY  DEPUTY

PAGE 1

Plaintiff did not seek new counsel until he retained (once again) the firm of Sprouse Shrader and attorney Alex Yarbrough in May 2016.

4.    This case has been pending for almost a decade. Plaintiff has failed to take any action to prosecute this case since the Court entered the Order denying Defendants' motions for summary judgment on May 23, 2012. Plaintiff has failed to obtain a trial date, failed to seek any additional discovery, failed to obtain a scheduling order, failed (until just last month, May 2016) to hire a new attorney, and has not filed any pleadings during that timeframe whatsoever.

5.    Plaintiff's delay in failing to bring this case to trial or final disposition is unreasonable and presumptively and conclusively demonstrates that Plaintiff has abandoned his suit. The explanation and evidence offered by Plaintiff for the delay and lack of diligence is insufficient to rebut this conclusive presumption of abandonment.

6.    In Defendant Joel Hart's Motion to Dismiss, Joel Hart has stipulated and agreed to dismiss his counterclaims against the Plaintiff conditioned on the Court granting the Motions to Dismiss for Want of Prosecution. The Court finds that any and all claims that have been asserted or could have been asserted by **JOEL HART** against **DALE ROUSH**, Individually and as Trustee of the Dale Roush Assets Trust are in all things dismissed for want of prosecution.

**IT IS THEREFORE ORDERED** that, Defendant Metropolitan Life Insurance Company's Motion to Dismiss for Want of Prosecution is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Joel Hart's Motion to Dismiss for Want of Prosecution is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that all claims asserted by **DALE ROUSH**, Individually and as Trustee of the Dale Roush Assets Trust, are hereby and in all things dismissed for want of prosecution.

**IT IS FURTHER ORDERED** that any counterclaims and/or cross-claims filed by any party are hereby dismissed for want of prosecution.

This is a Final Judgment dispositive of all claims, and is final and appealable.

Costs shall be borne by each party incurring the same.

Signed this _13th_ day of June, 2016.

_____
JUDGE PRESIDING

AGREED AS TO FORM:

_____
Scott A. Wheatley
Counsel for Metropolitan Life Insurance Company

_____
Mike Warner
Counsel for Joel Hart

_____
Alex Yarbrough
Counsel for Plaintiff

# -1015744

Filed 5/25/2016 5:00:17 PM
Gina Gray
Combination Clerk
Sherman County, Texas

Kelsie Daves

CAUSE NO. 4727

| | | |
|---|---|---|
| DALE ROUSH, Individually and as Trustee of The Dale Roush Assets Trust, | § § § | 69TH JUDICIAL DISTRICT COURT |
| Plaintiff, | § § | |
| vs. | § § | IN AND FOR |
| METROPOLITAN LIFE INSURANCE COMPANY and JOEL HART, | § § § § | |
| Defendants. | § | SHERMAN COUNTY, TEXAS |

## PLAINTIFF'S RESPONSE
## TO DEFENDANTS' MOTION TO DISMISS FOR WANT OF PROSECUTION

TO THE HONORABLE COURT:

Plaintiff, Dale Roush, individually and as Trustee of the Dale Roush Assets Trust, hereby files his response to Defendants' Motion to Dismiss for Want of Prosecution as follows:

The purpose of the Texas Rules of Civil Procedure is to "obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law" TEX. R. CIV. P. 1. Therefore, a "just resolution of a case" almost always "requires a trial on the merits, rather than a dismissal" *Valence Operating Co. v. Anadarko Petrol. Corp.*, 303 S.W.3d 435, 444 (Tex. App.—Texarkana 2010) (citing *Sw. Airlines Co. v. Jaeger*, 867 S.W.2d 824, 836 (Tex. App.—El Paso 1993);*Olin Corp. v. Coastal Water Auth.*, 849 S.W.2d 852, 858 (Tex. App.—Houston [1st Dist.] 1993)).

### A. INTRODUCTION

A trial court's authority to dismiss a case for want of prosecution arises from two sources, (1) Texas Rule of Civil Procedure 165a and (2) the court's inherent power. *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 630 (Tex. 1999). Defendants move to dismiss the present case because it has not been disposed of within the time standards set by the Texas

Supreme Court. Therefore, the focus of the following discussion will be why special circumstances exist making it unreasonably difficult to adhere to the general time standards. Also, the following will explain why there has been a delay and the reasonable excuses for delay.

According to the Texas Rules of Civil Procedure, "Any case not disposed of within time standards promulgated by the Supreme Court under its Administrative Rules may be placed on a dismissal docket." TEX. R. CIV. P. 165A(2). A quick reading of Rule 6 of the Rules of Judicial Administration shows that civil jury cases, such as the present one, should be brought to trial or final disposition within eighteen months from the appearance date. *See* TEX. R. JUD. ADMIN. 6b(1). A closer examination of Rule 6 reveals subsection e, which is titled Complex Cases: "It is recognized that in especially complex cases or special circumstances it may not be possible to adhere to these standards." *Id.* R. 6e. Therefore, the Supreme Court carved out an exception to the general timetable that allows more time for complex cases or special circumstances. This case is both complex and involves special circumstances.

The Texas Supreme Court acknowledges that the eighteen-month standard may not be suitable for "especially complex cases" or where there are "special circumstances," but the court never defines these terms. Instead, in exercising its discretion, the trial court is entitled to consider the entire history of the case to determine whether a dismissal is merited. *See MacGregor v. Rich*, 941 S.W.2d 74, 75 (Tex. 1997); *State v. Rotello*, 671 S.W.2d 507, 509 (Tex. 1984). Considering the entire history of the present case certainly includes the Pantex Sales, Inc. d/b/a Graphic Equipment and Supply Suit, the multiple substitutions of counsel, and the Tejas Farms bankruptcy.

## B. FACTS

1.     On October 8, 2012, this Court granted John Huffaker's Motion to Withdraw as Counsel. From October 2012 until May 2016, Plaintiff was represented pro se. During this timeframe, Plaintiff, Dale Roush, was involved in multiple car accidents and suffered a dramatic fall that required hospitalization. *See* Exhibit A – Affidavit of Dale Roush, attached hereto and incorporated herein. Specifically, on August 28, 2014, Plaintiff was involved in a car accident in Taos, New Mexico. The accident in New Mexico necessitated many visits to a chiropractor. On February 24, 2015, Plaintiff was involved in another car accident that exasperated his health condition at the time. Finally, on April 21, 2015, Plaintiff suffered a dramatic fall in the kitchen of his home. The fall and resulting injuries required Plaintiff to stay ten (10) days in the hospital, of which nearly half was in the intensive care unit. Plaintiff broke his c4 vertebrae and suffered severe nerve damage. Plaintiff also injured his shoulder in the fall. On April 26, 2016, Plaintiff underwent surgery to correct the injury he sustained to his shoulder pursuant to the fall on or about April 21, 2015.

The history of the present case includes, but is not limited to, all parties substituting counsel multiple times, extensive discovery issues, multiple summary judgments, attempts at consolidating multiple cases with similar parties, and the bankruptcy of Tejas Farms. The present case is not a "normal" case; it is complex and involves special circumstances. An example of the complexity of this case can be seen from Exhibit A attached to the Defendants' Motion to Dismiss. Exhibit A attached to the Defendants' Motion to Dismiss is the Court's order regarding outstanding motions for summary judgment. There were over seven (7) submissions the Court had to consider. Furthermore, the Defendants' included a copy of the Court's docket or "index." The Court's index is at least fourteen (14) pages long, which contains the numerous issues surrounding this lawsuit.

## C. ARGUMENTS AND AUTHORITIES

7.     The court should not dismiss Plaintiff's suit on the docket because there is good cause to maintain it on the docket. TEX. R. CIV. P. 165a(1).

8.     Good cause exists in that Plaintiff suffered from poor health during the time frame Defendants allege constitutes delay, Plaintiff has obtained new counsel, and a trial setting of December 5, 2016 has been requested. Defendants complain in the last paragraph of their Motion to Dismiss that this case should be dismissed because "Plaintiff has not requested a trial setting, let alone obtained new counsel." However, as of the date of this Response, Plaintiff has obtained new counsel and requests this case be set for the Court's first available jury trial docket, which is December 5, 2016.

## D. CONCLUSION & PRAYER

WHEREFORE, Plaintiff asks that the Court deny Defendants' Motion to Dismiss for Want of Prosecution, set this case for trial the week of December 5, 2016, and for such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

SPROUSE SHRADER SMITH PLLC
John Massouh, Texas State Bar No. 24026866
John.massouh@sprouselaw.com
Alex Yarbrough, Texas State Bar No. 24079615
Alex.yarbrough@sprouselaw.com
701 S. Taylor, Suite 500
P. O. Box 15008
Amarillo, Texas 79105-5008
(806) 468-3300; (806) 373-3454 fax


/s/ Alex Yarbrough
Alex Yarbrough
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on **May 25, 2016**, a true and correct copy of the foregoing was served as follows:

**Attorney for Metropolitan Life Insurance Company:**
Scott A. Wheatley            Via E-service
Jay K. Wieser
Jackson Walker, LLP
777 Main Street, Suite 2100
Fort Worth, TX 76102

**Attorney for Joel Hart:**
Lewis Coppedge            Via E-service
Attorney at Law
101 SE 11th Street, Suite 301
Amarillo, TX 79101


/s/ Alex Yarbrough
Alex Yarbrough

14251.05
930689_1

CAUSE NO. 4727

| DALE ROUSH, Individually and as Trustee | § | 69TH JUDICIAL DISTRICT COURT |
| of The Dale Roush Assets Trust, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | IN AND FOR |
| | § | |
| METROPOLITAN LIFE INSURANCE | § | |
| COMPANY and JOEL HART, | § | |
| | § | |
| Defendants. | § | SHERMAN COUNTY, TEXAS |

## AFFIDAVIT OF DALE ROUSH

| STATE OF TEXAS | § |
| | § |
| COUNTY OF ___Potter___ | § |

BEFORE ME, the undersigned notary, on this day personally appeared Dale Roush, a person whose identity is known to me. After I administered an oath to him, upon his oath, he said:

1.    My name is Dale Roush. I am capable of making this Affidavit. I have personal knowledge of the facts stated in this Affidavit, and they are true and correct.

2.    For the last few years, I have been in poor health.

3.    On August 28, 2014, I was involved in a car accident in Taos, New Mexico. The accident in New Mexico necessitated many visits to a chiropractor. On February 24, 2015, I was involved in another car accident that exasperated my health condition at the time. Finally, on April 21, 2015, I suffered a dramatic fall in the kitchen of my home. The fall and resulting injuries required me to stay ten (10) days in the hospital, of which nearly half was in the intensive care unit. I broke my c4 vertebrae and suffered severe nerve damage. I also injured

1

**94**

my shoulder in the fall. On April 26, 2016, I underwent surgery to correct the injury I sustained to my shoulder pursuant to the fall on or about April 21, 2015.

4. The rest of this page is intentionally left blank.

Dale Roush

SWORN TO AND SUBSCRIBED BEFORE ME on this 25th day of ____May____, 2016, by Dale Roush to certify which witness my hand and seal of office.

Notary Public, State of Texas

SHERIDA STONE
NOTARY PUBLIC,
STATE OF TEXAS
NOTARY ID #576859-1
My Commission Expires 04-11-2019

14251.05
930599_1

3

96

DALE ROUSH , DALE ROUSH ASSESTS TRUST    §    IN THE 69TH JUDICIAL
   PLAINTIFF(S)

-vs-                §    DISTRICT COURT OF

METROPOLITAN LIFE INSURANCE, JOEL HART    §    SHERMAN COUNTY,
TEXAS
   DEFENDANT(S)

## INDEX

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS | |
|---|---|---|---|---|---|---|
| 07/10/2006 11:31:30 AM | | | ORIGINAL PETITION | PLAINTIFF | PLAINTIFF'S ORIGINAL PETITION | |
| 07/13/2006 12:00:00 AM | | 07/13/2006 | CITATION NON FAMILY GENERAL BY CERTIFIED MAIL | ISSUED BY CLERK | SERVED ON MET LIFE | |
| 07/13/2006 12:00:00 AM | | 07/13/2006 | CITATION NON FAMILY GENERAL BY CERTIFIED MAIL | ISSUED BY CLERK | SERVED ON METROPOLITAN LIFE INSURANCE COMPANY | |
| 08/07/2006 10:43:30 AM | | | ANSWER AND COUNTER CLAIM | DEFENDANT | DEFENDANT JOEL HART'S ORIGINAL ANSWER, SPECIAL EXCEPTIONS & COUNTERCLAIM | |
| 09/05/2006 03:42:42 PM | | | ANSWER AND COUNTER CLAIM | DEFENDANT | FAXED COPY OF ORIGINAL ANSWER AND CROSS-CLAIM OF METROPOLITAN LIFE INSURANCE COMPANY | |
| 09/06/2006 11:14:20 AM | | | ANSWER AND COUNTER CLAIM | DEFENDANTS | ORIGINAL ANSWER AND CROSS-CLAIM OF METROPOLITAN LIFE INSURANCE COMPANY | |
| 10/17/2006 10:47:47 AM | | | OTHER | PLAINTIFF | CERTIFICATE OF DISCOVERY | |
| 11/28/2006 01:50:00 PM | | | RULE 11 AGREEMENT | DEFENDANT | LETTER FROM DAVID LEBAS TO JOHN HUFFAKER RE:AGREEMENT AS | |

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| | | | | | ATTORNEY OF RECORD AND RULE 11 LETTER EXTENDING METLIFE'S DISCOVERY RESPONSE DEADLINE TO DECEMBER 14, 2006 |
| 12/07/2006 11:04:00 AM | | | AMENDED ANSWER | DEFENDANT | DEFENDANT JOEL HART'S FIRST AMENDED ANSWER, SPECIAL EXCEPTIONS, & COUNTERCLAIM |
| 02/12/2007 11:22:00 AM | | | NOTICE | DEFENDANT | NOTICE OF APPEARANCE OF CO-COUNSEL FOR METROPOLITAN LIFE INSURANCE COMPANY |
| 11/13/2007 08:59:41 AM | | | MOTION TO WITHDRAW | DEFENDANT | MOTION FOR WITHDRAWAL AND SUBSTITUTION OF COUNSEL |
| 01/15/2008 12:56:28 PM | | | OBJECTION | DEFENDANT | DEFENDANTS' OBJECTION TO NOTICE OF ORAL DEPOSITION OF BILLY JOYCE HART |
| 01/16/2008 03:09:47 PM | | | OBJECTION | DEFENDANT | DEFENDANTS' OBJECTION TO NOTICE OF ORAL DEPOSITION OF JOEL HART |
| 01/23/2008 12:00:00 PM | | | ORDER APPOINTING ATTORNEY | DISTRICT JUDGE | ORDER GRANTING MOTION FOR WITHDRAWAL AND SUBSTITUTING COUNSEL |
| 02/22/2008 10:53:31 AM | | | NOTICE OF HEARING | DEFENDANT | NOTICE OF HEARING ON MOTION COMPEL |
| 03/07/2008 09:32:46 AM | | | MOTION TO COMPEL | PLAINTIFF | MOTION TO COMPEL THE DEPOSITION OF BILLY JOYCE HART AND BRIEF IN SUPPORT |
| 03/10/2008 04:06:00 PM | | | RESPONSE | DEFENDANT | DEFENDANTS RESPONSE TO MOTION TO |

71

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| | | | | | COMPEL |
| 03/10/2008 04:05:00 PM | | | RESPONSE | DEFENDANT | DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO DEFENDANT JOEL HART'S MOTION TO CONSOLIDATE OR ABATE |
| 03/11/2008 10:55:00 AM | | | RESPONSE | PLAINTIFF | FAXED COPY - PLAINTIFF DALE ROUSH'S RESPONSE IN OPPOSITION TO DEFENDANT JOEL HART'S MOTION TO CONSOLIDATE OR ABATE |
| 03/12/2008 02:02:34 PM | | | RESPONSE | PLAINTIFF | ORIGINAL - PLAINTIFF DALE ROUSH'S RESPONSE IN OPPOSITION TO DEFENDANT JOEL HART'S MOTION TO CONSOLIDATE OR ABATE |
| 09/18/2008 10:27:00 AM | | | COURT REPORTERS CERTIFICATE | SHORTHAND REPORTER | REPORTER'S CERTIFICATION DEPOSITION OF DALE PHILLIP ROUSH AUGUST 5, 2008 |
| 10/15/2008 09:19:00 AM | | | CORRESPONDENCE | DISTRICT JUDGE | LETTER FROM JUDGE ENNS TO ATTORNEY'S RE: JURY TRIAL CONFIRMATION |
| 01/15/2009 11:48:00 AM | | | MOTION FOR SUMMARY JUDGMENT | DEFENDANT | METROPOLITAN LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND NO EVIDENCE MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF DALE ROUSH'S CLAIM |

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| | | | | | FOR CONVERSION OF PERSONAL PROPERTY |
| 01/15/2009 11:47:00 AM | | | MOTION FOR SUMMARY JUDGMENT | DEFENDANT | METROPOLITAN LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF DALE ROUSH'S CLAIM FOR CONVERSION OF REAL PROPERTY |
| 01/20/2009 10:37:00 AM | | | MOTION TO CONSOLIDATE | DEFENDANT | DEFENDANT JOEL HART'S RENEWED MOTION TO CONSOLIDATE |
| 01/20/2009 10:38:00 AM | | | NOTICE | DEFENDANT | NOTICE OF SUBMISSION FOR METROPOLITAN LIFE INSURANCE COMPANY'S MOTIONS FOR SUMMARY JUDGMENT |
| 02/10/2009 11:23:00 AM | | | NOTICE TO RULE WITHOUT HEARING | DISTRICT JUDGE | NOTICE OF INTENT TO RULE WITHOUT HEARING |
| 02/11/2009 08:50:00 AM | | | MOTION FOR CONTINUANCE | PLAINTIFF | (FAXED COPY) PLAINTIFF'S MOTION TO CONTINUE |
| 02/11/2009 11:02:00 AM | | | MOTION FOR CONTINUANCE | PLAINTIFF | ORIGINAL - PLAINTIFF'S MOTION FOR CONTINUANCE AND PROPOSED ORDER |
| 02/11/2009 11:02:00 AM | | | ORDER SETTING HEARING | DISTRICT JUDGE | ORDER SETTING HEARING DATE |
| 02/23/2009 04:58:00 PM | | | AMENDED PETITION | PLAINTIFF | PLAINTIFF'S FIRST AMENDED PETITION |
| 02/23/2009 05:00:00 PM | | | RESPONSE | PLAINTIFF | RESPONSE OF DALE ROUSH TO "METROPOLITAN LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND |

73

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| | | | | | NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF DALE ROUSH'S CLAIM FOR CONVERSION OF PERSONAL PROPERTY" |
| 02/24/2009 12:04:00 PM | | | RESPONSE | PLAINTIFF | RESPONSE OF DALE ROUSH TO "METROPOLITAN LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF DALE ROUSH'S CLAIM FOR CONVERSION OF REAL PROPERTY" |
| 02/25/2009 08:42:00 AM | | | MOTION TO STRIKE | DEFENDANT | FAXED COPY - DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S MOTION TO STRIKE PLAINTIFF'S AMENDED PETITION |
| 02/26/2009 11:00:00 AM | | | MOTION TO STRIKE | DEFENDANT | ORIGINAL - DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S MOTION TO STRIKE PLAINTIFF'S AMENDED PETITION |
| 02/27/2009 11:00:00 AM | | | RESPONSE | PLAINTIFF | RESPONSE OF DALE ROUSH TO METROPOLITAN LIFE INSURANCE COMPANY'S MOTION TO STRIKE PLEADINGS ALTERNATIVE MOTION FOR LEAVE TO FILE AMENDED PLEADING |
| 03/02/2009 10:14:00 | | | RESPONSE | DEFENDANTS | METROPOLITAN LIFE INSURANCE |

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| AM | | | | | COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON CONVERSION OF PERSONAL PROPERTY CLAIM |
| 03/02/2009 10:15:00 AM | | | MOTION TO STRIKE | DEFENDANT | DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S MOTION TO STRIKE AFFIDAVIT OF DALE ROUSH |
| 03/02/2009 10:15:00 AM | | | ORDER | PLAINTIFF | ORDER GRANTING DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S MOTION TO STRIKE AFFIDAVIT OF DALE ROUSH |
| 03/02/2009 10:15:00 AM | | | MOTION TO STRIKE | DEFENDANT | METROPOLITAN LIFE INSURANCE COMPANY'S MOTION TO STRIKE AND OBJECTIONS TO EVIDENCE OFFERED BY PLAINTIFF IN RESPONSE TO SUMMARY JUDGMENT MOTION ON CONVERSION OF PERSONAL PROPERTY |
| 03/02/2009 12:09:00 PM | | | ORDER FOR CONTINUANCE | DISTRICT JUDGE | |
| 03/06/2009 02:10:00 PM | | 2009-02-19 17:39:00.0 | SUBPOENA | ISSUED BY DEFENDANTS ATTORNEY | SUBPOENA TO BENNY GARCIA |
| 03/06/2009 02:10:00 PM | | 2009-02-23 11:29:00.0 | SUBPOENA | ISSUED BY DEFENDANTS ATTORNEY | SUBPOENA TO BEVERLY MAHAN |
| 03/06/2009 02:03:00 PM | | | NOTICE | DEFENDANT | NOTICE OF SUBMISSION |
| 03/10/2009 08:03:00 AM | | | RESPONSE | PLAINTIFF | RESPONSE OF DALE ROUSH TO METROPOLITAN |

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| | | | | | LIFE INSURANCE COMPANY'S MOTION TO STRIKE AND OBJECTIONS TO EVIDENCE OFFERED BY PLAINTIFF IN RESPONSE TO SUMMARY JUDGMENT MOTION ON CONVERSION OF PERSONAL PROPERTY AND MOTION TO SUPPLEMENT THE SUMMARY JUDGMENT RECORD |
| 03/10/2009 02:01:00 PM | | | DEFENDANTS RESPONSE | DEFENDANT | DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO DEFENDANT JOEL HART'S RENEWED MOTION TO CONSOLIDATE |
| 03/10/2009 02:01:00 PM | | | PLAINTIFFS RESPONSE | PLAINTIFF | RESPONSE OF DALE ROUSH TO "METROPOLITAN LIFE INSURANCE COMPANY'S MOTION TO STRIKE AND OBJECTIONS TO EVIDENCE OFFERED BY PLAINTIFF IN RESPONSE TO SUMMARY JUDGMENT MOTION ON CONVERSION OF REAL PROPERTY AND MOTION TO SUPPLEMENT THE SUMMARY JUDGMENT RECORD |
| 03/10/2009 02:02:00 PM | | | PLAINTIFFS RESPONSE | PLAINTIFF | PLAINTIFF'S RESPONSE TO "DEFENDANT METROPOLITAN |

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| | | | | | LIFE INSURANCE COMPANY'S MOTION TO STRIKE AFFIDAVIT OF DALE ROUSH" |
| 03/11/2009 10:32:00 AM | | | AMENDED ANSWER | DEFENDANT | DEFENDANT JOEL HART'S SECOND AMENDED ANSWER, SPECIAL EXCEPTIONS, & COUNTERCLAIM |
| 03/16/2009 10:03:00 AM | | | AMENDED ANSWER | DEFENDANT | DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S FIRST AMENDED ANSWER, SPECIAL EXCEPTIONS, AND CROSS-CLAIM |
| 03/20/2009 01:04:00 PM | | | COURT REPORTERS CERTIFICATE | COURT REPORTER | REPORTER'S CERTIFICATE ORAL DEPOSITION OF BEVERLY MAHAN |
| 03/20/2009 01:09:00 PM | | | AMENDED PETITION | PLAINTIFF | PLAINTIFF'S SECOND AMENDED PETITION |
| 03/25/2009 11:08:17 AM | | | ORIGINAL ANSWER | DEFENDANT | DEFENDANT JOEL HART'S ORIGINAL ANSWER TO CROSS-CLAIM OF METROPOLITAN LIFE INSURANCE COMPANY |
| 03/25/2009 11:09:00 AM | | | AMENDED ANSWER | DEFENDANT | DEFENDANT JOEL HART'S THIRD AMENDED ANSWER, SPECIAL EXCEPTIONS, & COUNTERCLAIM |
| 03/25/2009 11:09:53 AM | | | SUGGESTION OF BANKRUPTCY | | DEFENDANT TEJAS FARMS, LTD |
| 03/25/2009 11:05:01 AM | | | MOTION FOR SUMMARY JUDGMENT | DEFENDANT | DEFENDANT JOEL HART'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY |
| 03/25/2009 11:04:00 | | | MOTION FOR SUMMARY | DEFENDANT | DEFENDANT JOEL HART'S MOTIONS |

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| AM | | | JUDGMENT | | FOR SUMMARY JUDGMENT AGAINST PLAINTIFF DALE ROUSH |
| 03/26/2009 11:33:00 AM | | | MOTION FOR SUMMARY JUDGMENT | DEFENDANT | METROPOLITAN LIFE INSURANCE COMPANY'S AMENDED CONDITIONAL MOTION FOR SUMMARY JUDGEMNT ON PLAINTIFF'S CLAIMS OF WRONGFUL FORECLOSURE AND MONEY HAD AND RECEIVED AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT |
| 03/30/2009 09:15:00 AM | | | NOTICE | DISSTRICT JUDGE | NOTICE OF INTENT TO RULE WITHOUT HEARING |
| 03/30/2009 10:48:00 AM | | | NOTICE | DEFENDANT | NOTICE OF SUBMISSION |
| 04/03/2009 12:07:57 PM | | | COURT REPORTERS CERTIFICATE | ANGIE WEAVER | REPORTER'S CERTIFICATION ORAL DEPOSITION OF BENNIE GARCIA |
| 04/08/2009 11:39:13 AM | | | AMENDED ANSWER | DEFENDANT | DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S SECOND AMENDED ANSWER, SPECIAL EXCEPTIONS, AND CROSS-CLAIM |
| 04/13/2009 03:08:38 PM | | | RESPONSE | PLAINTIFF | RESPONSE OF DALE ROUSH TO DEFENDANT JOEL HART'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF DALE ROUSH |
| 04/13/2009 03:00:18 PM | | | RESPONSE | PLAINTIFF | RESPONSE OF DALE ROUSH TO "METROPOLITAN |

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| | | | | | LIFE INSURANCE COMPANY'S AMENDED CONDITIONAL MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF WRONGFUL FORECLOSURE AND MONEY HAD AND RECEIVED AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT" (A/K/A "METLIFE'S SECOND CONDITIONAL GLOBAL MSJ") |
| 04/14/2009 01:24:00 PM | | | ORDER SETTING HEARING | DISTRICT JUDGE | ORDER SETTING HEARING DATE |
| 04/15/2009 02:25:02 PM | | | RESPONSE | DEFENDANT | DEFENDANT JOEL HART'S REPLY TO RESPONSE OF DALE ROUSH TO JOEL HART'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF DALE ROUSH |
| 04/17/2009 01:12:32 PM | | | ORIGINAL PETITION | ATTORNEY FOR PLAINTIFF | PLAINTIFF'S ORIGINAL PETITION |
| 04/17/2009 01:18:24 PM | | | NOTICE | ATTORNEY FOR PLAINTIFF | NOTICE OF LIS PENDENS |
| 04/17/2009 01:23:52 PM | | | CITATION BY CERTIFIED MAIL | ISSUED BY CLERK | |
| 04/17/2009 01:25:01 PM | | 07/10/2006 | CITATION NONFAMILY | ISSUED BY CLERK | CITATION BY MAILING |
| 04/17/2009 01:29:51 PM | | 07/10/2006 | CITATION NONFAMILY | ISSUED BY CLERK | CITATION BY MAILING WITH RECEIPTS |
| 04/17/2009 01:34:57 PM | | | DEFENDANTS RESPONSE | ATTORNEY FOR DEFENDANT | DEFENDANT ORGINAL ANSWER, SPECIAL |

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| | | | | | EXCEPTION, AND COUNTERCLAIM |
| 04/17/2009 01:41:25 PM | | | ORIGINAL ANSWER | DEFENDANT | ORGINAL ANSWER AND CROSS-CLAIM OF METROPOLITAN LIFE INSURANCE COMPANY |
| 04/17/2009 01:50:12 PM | | | ORIGINAL ANSWER | DEFENDANT | ORGINAL ANSWER CONTINUED WITH LETTERS AND COPIES OF RECEIPT |
| 04/17/2009 02:04:09 PM | | | ORIGINAL ANSWER | DEFENDANT | ORGINAL ANSWER CONTINUED WITH LETTER, CERTIFIED MAIL, RETURN RECEIPT |
| 04/17/2009 02:08:09 PM | | | ORIGINAL ANSWER | DEFENDANT | ORIGINAL ANSWER AND CROSS-CLAIM OF METROPOLITAN LIFE INSURANCE COMPANY |
| 04/17/2009 02:13:41 PM | | | OTHER | PLAINTIFF | PLAINTIFF'S CERTIFICATE OF DISCOVERY |
| 04/17/2009 02:18:46 PM | | | OTHER | OTHER | LETTER |
| 04/17/2009 02:21:06 PM | | | OTHER | OTHER | LETTER |
| 04/17/2009 02:24:42 PM | | | AMENDED ANSWER | DEFENDANT | DEFENDANT FIRST AMENDED ANSER, SPECIAL EXCEPTIONS, & COUNTER CLAIM |
| 04/17/2009 02:40:49 PM | | | NOTICE | PLAINTIFF | NOTICE OF APPEARANCE OF CO-COUNSEL FOR METROPOLITAN LIFE INSURANCE COMPANY |
| 04/17/2009 02:43:51 PM | | | OTHER | ATTORNEY FOR DEFENDANT | LETTER FOR MOTION FOR WITHDRAWAL AND ORDER GRANTING MOTION FOR WITHDRAWAL |
| 04/17/2009 02:48:03 PM | | | MOTION FOR SUBSTITUTION OF COUNSEL | ATTORNEY FOR DEFENDANT | MOTION FOR WITHDRAWAL AND SUBSTITUTION OF COUNSEL |

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| 04/17/2009 03:03:52 PM | | | CORRESPONDENCE | DEFENDANT | LETTER ACCOMPANYING DEFENDANTS' OBJECTION TO NOTICE OF ORAL DEPOSITION OF BILLYE JOYCE HART |
| 04/17/2009 03:10:37 PM | | | OBJECTION | ATTORNEY FOR DEFENDANT | DEFENDANTS' OBJECTION TO NOTICE OF ORAL DEPOSITION OF BILLYE JOYCE HART |
| 04/17/2009 03:13:44 PM | | | CORRESPONDENCE | ATTORNEY FOR DEFENDANT | LETTER ACCOMPANYING DEFENDANTS' OBJECTION TO MOTICE OF ORAL DEPOSITION OF JOEL HART |
| 04/17/2009 03:16:57 PM | | | OBJECTION | ATTORNEY FOR DEFENDANT | DEFENDANT'S OBJECTION TO NOTICE OF ORAL DEPOSITION OF JOEL HART |
| 04/17/2009 03:25:35 PM | | | NOTICE | ATTORNEY FOR DEFENDANT | NOTICE OF INTENT TO TAKE ORAL DEPOSITION OF JOEL HART |
| 04/17/2009 03:33:56 PM | | | ORDER | DISTRICT JUDGE | ORDER GRANTING MOTION FOR WITHDRAWAL AND SUBSTITUTING COUNSEL |
| 04/17/2009 03:36:41 PM | | | CORRESPONDENCE | ATTORNEY FOR PLAINTIFF | LETTER ACCOMPANYING PLAINTIFFS' NOTICE OF HEARING ON MOTION TO COMPEL |
| 04/17/2009 03:39:04 PM | | | NOTICE | ISSUED BY CLERK | NOTICE OF HEARING ON MOTION TO COMPEL |
| 04/17/2009 03:41:34 PM | | | PLAINTIFFS RESPONSE | ATTORNEY FOR PLAINTIFF | PLAINTIFF DALE ROUSH'S RESPONSE IN OPPOSITION TO DEFENDANT JOEL HART'S MOTION TO CONSOLIDATE OR |

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| | | | | | ABATE |
| 04/17/2009 03:44:15 PM | | | CORRESPONDENCE | ATTORNEY FOR PLAINTIFF | LETTER ACCOMPANYING PLAINTIFF'S MOTION TO COMPEL THE DEPOSITION OF BILLY JOYCE HART AND BRIEF IN SUPPORT |
| 04/17/2009 03:47:08 PM | | | MOTION TO COMPEL | ATTORNEY FOR PLAINTIFF | MOTION TO COMPEL THE DEPOSITION OF BILLY JOYCE HART AND BRIEF IN SUPPORT |
| 04/17/2009 03:50:56 PM | | | CORRESPONDENCE | ATTORNEY FOR DEFENDANT | LETTER ACCOMPANYING DEFENDANTS' RESPONSE TO MOTION TO COMPEL |
| 04/17/2009 03:53:55 PM | | | RESPONSE | ATTORNEY FOR DEFENDANT | DEFENDANT'S RESPONSE TO MOTION TO COMPEL |
| 04/17/2009 04:24:12 PM | | | CORRESPONDENCE | ATTORNEY FOR DEFENDANT | LETTER ACCOMPANYING DEFENDANT MET LIFE INS CO RESPONSE IN OPPOSITION TO DEFENDANT JOEL HART'S MOTION TO CONSOLIDATE OR ABATE |
| 04/17/2009 04:27:19 PM | | | RESPONSE | DEFENDANT | DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO DEFENDANT JOEL HART'S MOTION TO CONSOLIDATE OR ABATE AND ACCOMPANYING |
| 04/17/2009 04:33:57 PM | | | AMENDED PETITION | ATTORNEY FOR PLAINTIFF | PLAINTIFF'S THIRD AMENDED PETITION EXHIBIT A |

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| 04/17/2009 04:37:56 PM | | | ORIGINAL PETITION | ATTORNEY FOR PLAINTIFF | EXHIBIT B, PLAINTIFF'S ORIGINAL PETITION |
| 04/17/2009 04:45:44 PM | | | NOTICE | ATTORNEY FOR PLAINTIFF | EXHIBIT A, NOTICE OF LIS PENDENS |
| 04/17/2009 04:52:18 PM | | | OTHER | ATTORNEY FOR DEFENDANT | DEED OF TRUST DEFENDANT'S EXHIBIT |
| 04/17/2009 04:54:53 PM | | | OTHER | OTHER | EXHIBIT A |
| 04/20/2009 04:54:47 PM | | | AMENDED JUDGMENT | DEFENDANT | METROPOLITAN LIFE INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF ITS AMENDED CONDITIONAL MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'SCLAIMS OF WRONGFUL FORECLOSURE AND MONEY HAD RECEIVED AND NO-EVIDENCE MOTION FOR SUMMARY MONEY HAD AND RECEIVED AND NO-EVIDENCE MOTION FOR SUMMARY |
| 04/20/2009 04:54:47 PM | | | MOTION TO STRIKE | DEFENDANT | MET LIFE INSURANCE COMPANY'S MOTION TO STRIKE AND OBJECTIONS TO EVIDENCE OFFERED BY PLAINTIFF IN RESPONSE TO AMENDED CONDITIONAL MOTION |
| 04/20/2009 04:54:47 PM | | | RESPONSE | DEFENDANT | METROPOLITAN LIFE INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF ITS AMENDED CONDITIONAL |

83

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| | | | | | MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF WRONGFUL FORECLOSURE AND MONEY HAD AND RECEIVED AND NO EVIDENCE MOTION FOR SUMMARY JUDGEMENT |
| 04/21/2009 09:41:24 AM | | | OTHER | PLAINTIFF | SUR-REPLY OF DALE ROUSH TO DEFENDANT JOEL HART'S REPLY TO RESPONSE OF DALE ROUGH TO JOEL HART'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF DALE ROUSH |
| 04/27/2009 05:25:55 PM | | | CORRESPONDENCE | COUNCEL | LETTER FROM JEREMY BROWN TO CLERK RE:GOING ON VACATION |
| 05/01/2009 01:35:27 PM | | | RESPONSE | DEFENDANT | DEFENDANT JOEL HART'S RESPONSE TO SUR-REPLY OF DALE ROUSH |
| 05/19/2009 03:26:11 PM | | | COURT REPORTERS CERTIFICATE | MELIA MELTON | ORAL DEPOSITION OF BEVERLY MAHAN |
| 05/19/2009 03:26:11 PM | | | COURT REPORTERS CERTIFICATE | ANGIE WEAVER | ORAL DEPOSITION OF BENNIE GARCIA |
| 05/26/2009 10:49:52 AM | | | ORDER | | ORDER GRANTING METROPOLITAN LIFE INSURANCE COMPANY'S AMENDED CONDITIONAL MOTION FOR SUMMARY JUDGMENT |
| 05/26/2009 10:54:53 AM | | | ORDER | | ORDER ON METROPOLITAN LIFE INSURANCE |

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| | | | | | COMPANY'S MOTION TO STRIKE AND OBJECTIONS TO EVIDENCE OFFERED BY PLAINTIFF IN RESPONSE TO AMENDED CONDTIONAL MOTION FOR SUMMARY JUDGMENT |
| 10/14/2009 11:56:17 AM | | | MOTION TO CONSOLIDATE | PLAINTIFF | PLAINTIFF DALE ROUSH'S JOINDER TO DEFENDANT JOEL HART'S RENEWED MOTION TO CONSOLIDATE |
| 10/21/2009 01:19:36 PM | | | CORRESPONDENCE | DEFENDANT | FAXED COPY |
| 10/28/2009 01:31:44 PM | | | CORRESPONDENCE | DEFENDANT | LETTER FROM JUDGE ENNS TO ALL ATTORNEYS OF RECORD |
| 11/12/2009 04:50:44 PM | | | NOTICE | DISTRICT JUDGE | NOTICE OF INTENT TO RULE WITHOUT HEARING |
| 12/09/2009 04:06:07 PM | | | RESPONSE | DEFENDANT | METROPOLITAN LIFE INSURANCE COMPANY'S RESPONSE TO DEFENDANT JOEL HART'S MOTION FOR SUMMARY JUDGEMENT. |
| 12/09/2009 08:00:00 AM | | | CORRESPONDENCE | SCOTT A WHEATLEY | LETTER FROM SCOTT A WHEATLEY TO ALL COUNSEL OF RECORD AND JUDGE ENNS |
| 12/28/2009 01:34:08 PM | | | OBJECTION | PLAINTIFF | OBJECTION TO CONSIDERATION OF DOCUMENT ENTITLED "WRITTEN ARGUMENT FOR MET LIFE'S MOTION FOR SUMMARY JUDGMENT" |

| DATE FILED | DATE ISSUED | DATE SERVED | DOCUMENT TYPE | FILED BY | COMMENTS |
|---|---|---|---|---|---|
| 01/11/2010 11:26:30 AM | | | ORDER | DISTRICT JUDGE | ORDER STRIKING"WRITTEN ARGUMENT FOR MET LIF'S MOTION FOR SUMMARY JUDGMENT" |
| 04/12/2010 01:57:23 PM | | | CORRESPONDENCE | ATTORNEY | JACKSON WALKER L.L.P |
| 03/07/2011 11:04:00 AM | | | CORRESPONDENCE | ATTORNEYS | FROM JACKSON WALKER L.L.P TO THE COURT |
| 06/29/2011 11:21:04 AM | | | COURT REPORTERS CERTIFICATE | OTHER | BENJAMIN VITO NUNES GUIAMARAES |
| 07/14/2011 04:56:46 AM | | | DEPOSITION | OTHER | BENJAMIN VITO NUNES GUIMARAES |
| 02/16/2012 11:14:48 AM | | | OTHER | DISTRICT JUDGE | SUMMARY JUDGEMENT DENIED |
| 06/07/2012 08:44:11 AM | | | ORDER | DISTRICT JUDGE | |
| 06/21/2012 04:33:38 PM | | | ORDER | DISTRICT JUDGE | |
| 06/21/2012 04:47:00 PM | | | CORRESPONDENCE | ATTORNEY FOR PLAINTIFF | LETTER SENT TO PRESIDING JUDGE ENNS FROM JOHN HUFFAKER |
| 10/05/2012 08:28:30 AM | | | MOTION TO WITHDRAW | ATTORNEY FOR DEFENDANT | |
| 10/10/2012 03:09:46 PM | | | MOTION TO WITHDRAW | DISTRICT JUDGE | ORDER GRANTING MOTION TO WITHDRAW |
| 12/30/2015 12:15:03 PM | | | MOTION OTHER | ATTORNEY FOR DEFENDANT | MOTION FOR SUBSTITUTION AND CHANGE OF ADDRESS OF COUNSEL |
| 12/30/2015 12:51:02 PM | | | ORDER | DISTRICT JUDGE | ORDER GRANTING MOTION FOR SUBSTITUTION OF COUNSEL |

⚠️ Caution
As of: March 23, 2018 4:58 PM Z

# *City of San Benito v. Rio Grande Valley Gas Co.*

Supreme Court of Texas

January 8, 2003, Argued ; June 26, 2003, Delivered

NO. 02-0038

**Reporter**
109 S.W.3d 750 *; 2003 Tex. LEXIS 91 **; 46 Tex. Sup. J. 861

CITY OF SAN BENITO, ET AL., PETITIONERS v. RIO GRANDE VALLEY GAS COMPANY, AND SOUTHERN UNION COMPANY D/B/A SOUTHERN UNION GAS COMPANY, RESPONDENTS

**Prior History: [**1]** ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS.

*City of San Benito v. Rio Grande Valley Gas Co. (In re City of San Benito), 63 S.W.3d 19, 2001 Tex. App. LEXIS 6120 (Tex. App. Corpus Christi, 2001)*

**Disposition:** Reversed and rendered in part; affirmed in part.

## Core Terms

cities, settlement, class member, requests, trial court, unnamed, opt-out, court of appeals, opt out, gas company, class action, parties, mandamus relief, open meeting, intervene, notice, purposes, mandamus, opted, class settlement, municipalities, government body, final judgment, franchise fee, contracts, objected, nonsuit

## Case Summary

### Procedural Posture
Petitioner cities sought review of the decision of the Court of Appeals for the Thirteenth District of Texas, which denied them appellate relief from a judgment approving a class settlement between the class of cities and respondent gas companies on the ground that the cities failed to intervene in the trial court.

### Overview
A class action was brought on behalf of the seven cities to recover franchise fees from the gas companies. Six of the cities filed a motion objecting to the proposed class settlement and requesting reconsideration of their requests to opt out of the class. The court of appeals denied relief from the approval of the settlement. The cities petitioned for review. The court held that the trial court abused its discretion in refusing the six cities' opt-out requests, which their attorney had implied authority to make without formal action in an open meeting. The court held that the six cities were not were not required to intervene in order to appeal their objections to the settlement. Because the six cities filed requests to opt out and objections to settlement, those unnamed class members' complaints were preserved for review by the court of appeals and they were parties for purposes of appeal. The court held that the cities did not waive their complaints by failing to request an extraordinary writ. The court did not consider the complaints of a seventh city, which did not request to opt out or object to the settlement, because they were not properly before the court of appeals.

### Outcome
The court reversed the court of appeals' judgment as to the six cities that successfully opted out of the class and rendered judgment that they were not members of the class action. The court affirmed the judgment as to the city who did not successfully opt out of the class or object to the settlement with the gas companies.

## LexisNexis® Headnotes

Civil Procedure > ... > Class Actions > Class Members > Absent Members

Governments > Legislation > Statute of Limitations > General Overview

Civil Procedure > ... > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview

Nicole Mitchell

Civil Procedure > Parties > Capacity of Parties > General Overview

Civil Procedure > Parties > Intervention > General Overview

Civil Procedure > Special Proceedings > Class Actions > General Overview

Civil Procedure > ... > Class Actions > Class Members > General Overview

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > General Overview

### *HN1*[⬇] Class Members, Absent Members

Texas follows the Supreme Court decision that unnamed class members are not required to intervene in order to appeal a trial court's judgment approving a class settlement. An unnamed class member's failure to intervene does not implicate standing. Rather, the real issue is whether or not the class member is a "party" for purposes of appeal. The right to appeal is not restricted to a case's named parties. The label "party" does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context. Thus, the procedural rules governing class actions sometimes require unnamed parties to be treated as parties or nonparties in order to ease the administration of class litigation. Unnamed class members are treated as parties for statute of limitations purposes but as nonparties for diversity purposes. However, the most important consideration is that the unnamed class members will be bound by the class settlement. It is this feature of class action litigation that requires that class members be allowed to appeal the approval of a settlement when they have objected at the fairness hearing. To hold otherwise would deprive nonnamed class members of the power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court.

Civil Procedure > Parties > Capacity of Parties > General Overview

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > General Overview

### *HN2*[⬇] Parties, Capacity of Parties

Under Texas jurisprudence, an appeal can generally only be brought by a named party to the suit. However, the doctrine of virtual representation is an exception to the general rule. Appellant is a deemed a party under virtual representation when (1) it is bound by the judgment; (2) its privity of estate, title, or interest appears from the record; and (3) there is an identity of interest between the appellant and a party to the judgment. Unnamed class members are deemed to be parties under this doctrine. The Texas virtual representation doctrine is, thus, quite similar to the United States Supreme Court's. The most important consideration is whether the appellant is bound by the judgment. When a non-party is allowed to challenge a judgment, the decision to allow him the right to appeal is grounded on the fact that, because of the doctrine of representation, he is bound by the judgment.

Civil Procedure > Remedies > Writs > General Overview

Criminal Law & Procedure > Criminal Offenses > Weapons Offenses > General Overview

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > General Overview

### *HN3*[⬇] Remedies, Writs

The Supreme Court of Texas sees no reason why an unnamed class member should be allowed to seek a restricted appeal but not prosecute an ordinary appeal. Writ of error affords a review of the same scope as an appeal. The supreme court disapproves of the holding to the contrary in San Juan 1990-*A, L.P. v. Meridian Oil Inc., 951 S.W.2d 159, 163 (Tex. App.-Houston 14th Dist. 1997)*.

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

Energy & Utilities Law > Administrative Proceedings > General Overview

### *HN4*[⬇] Reviewability of Lower Court Decisions, Preservation for Review

To preserve a complaint for appellate review, a party

must complain in the trial court. *Tex. R. App. P. 33.1(a)(1)(A)*.

Filing a request for an extraordinary writ is not a prerequisite to an appeal.

Civil Procedure > ... > Class Actions > Class Members > Absent Members

Civil Procedure > Special Proceedings > Class Actions > General Overview

Civil Procedure > ... > Class Actions > Class Members > General Overview

Civil Procedure > Special Proceedings > Class Actions > Notice of Class Action

Civil Procedure > ... > Notice of Class Action > Content of Notice > Opt Out Provisions

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

**HN5[🔻] Class Members, Absent Members**

A class member who wishes to opt out should not be forced to take the inconsistent action of becoming a formal member of the class in order to preserve a right to appellate review. Requiring a timely request to opt out is sufficient notice to the trial court to preserve a complaint for appellate review. Unnamed class members whose requests to opt out of a class action are denied should also be considered parties on appeal.

Civil Procedure > Special Proceedings > Class Actions > General Overview

Civil Procedure > Appeals > Appellate Jurisdiction > Interlocutory Orders

**HN6[🔻] Special Proceedings, Class Actions**

There is no interlocutory appeal from an order denying a party the right to opt out of a class. *Tex. Civ. Prac. & Rem. Code Ann. § 51.014*.

Civil Procedure > Remedies > Writs > General Overview

**HN7[🔻] Remedies, Writs**

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

**HN8[🔻] Standards of Review, Abuse of Discretion**

The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles or, stated another way, whether its decision was arbitrary or unreasonable.

Administrative Law > Governmental Information > Public Information > Sunshine Legislation

Governments > Local Governments > Duties & Powers

Administrative Law > Governmental Information > Public Information > General Overview

**HN9[🔻] Public Information, Sunshine Legislation**

The Open Meetings Act requires that every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter. *Tex. Gov't Code Ann. § 551.002*. It defines "meeting" as a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action. *Tex. Gov't Code Ann. § 551.001(4)(A)*. Cities can express and bind themselves only by way of a duly assembled meeting. A city's governing body may not delegate the right to make decisions affecting the transaction of city business. However, cities may delegate to others the right to perform acts and duties necessary to the transaction of the city's business, but can do so only by resolution or ordinance, by a majority vote.

Civil Procedure > ... > Pretrial Judgments > Nonsuits > General Overview

Business & Corporate Law > Agency Relationships > Authority to Act > General Overview

Civil Procedure > Special Proceedings > Class Actions > General Overview

Civil Procedure > ... > Notice of Class Action > Content of Notice > Opt Out Provisions

Civil Procedure > Special Proceedings > Class Actions > Voluntary Dismissals

Civil Procedure > Dismissal > Voluntary Dismissals > General Overview

*HN10*[⬇] **Pretrial Judgments, Nonsuits**

Texas courts hold that an attorney has implied authority to nonsuit a client's claim when the nonsuit does not affect a substantial right or bar the bringing of another suit based on the same cause of action. Just as a nonsuit terminates litigation between the plaintiff and the nonsuited defendant, opting out of a class action has the effect of terminating the particular litigation as to that class plaintiff. Opting out does not, of itself, cause a loss of any substantial rights, as the party can bring its own suit on the same cause of action.

**Judges:** CHIEF JUSTICE PHILLIPS delivered the opinion of the Court. JUSTICE ENOCH did not participate.

**Opinion by:** Thomas R. Phillips

# Opinion

 **[*752]** This class action was brought on behalf of an alleged class of eighty south Texas cities for recovery of franchise fees allegedly owed to them. A number of Texas cities, including the petitioners herein, tried to opt out of the class. Some were successful, but the trial court denied the requests of the seven cities petitioning here and signed a final judgment approving settlement. We must decide whether an unnamed class member must intervene in the trial court in order to appeal its overruled objections to a class settlement and whether a city must hold an open meeting to authorize its attorney to opt out of a class action. The court of appeals denied appellate relief because the cities failed to intervene in the trial court and also denied mandamus relief because the trial court did not abuse its discretion in refusing the cities' requests to opt **[**2]** out. *63 S.W.3d 19.* We

conclude that an unnamed class member is not required to intervene in order to appeal its objections to a class settlement or its opt-out requests. Thus, the cities are parties for purposes of this appeal. We further conclude that the cities could authorize their attorneys to opt out of the litigation without formal action in an open meeting. Accordingly, we reverse the court of appeals' judgment and render judgment that six cities successfully opted out of the class and one did not. Because these issues are dispositive, we do not reach the remaining issue of whether the settlement was fair.

I

The cities of Mercedes and Weslaco are the named class representatives in a class **[*753]** action for franchise fees against Rio Grande Valley Gas Company and its successor in interest, Southern Union Gas Company (hereinafter collectively referred to as "the gas companies"). The trial court defined the class as follows:

All Texas municipal corporations, municipalities, cities, towns, or villages (hereinafter referred to as "municipalities"), excluding the cities of Edinburg and McAllen, that have, or have had, existing or expired municipal franchise fee ordinances **[**3]** or agreements with Rio Grande Valley Gas Company or Southern Union Gas Company (hereinafter referred to collectively as the "LDC") and where the municipalities were entitled to a franchise fee or payment based on a percentage of the LDC's gross income derived from natural gas sales, and where there has not been the execution of any effective releases of the entire claims alleged in this litigation.

The trial court authorized class notices to the 80 cities that fell within this definition on June 24, 1996, providing an opt-out deadline of August 1, 1996, barely five weeks later.

Before receiving notice, the cities of San Benito, Palmview, Alton, La Villa, Port Isabel, and Edcouch (hereinafter "the six cities") each contracted with Texas Municipal Technical Consultants, Inc. ("TMTCI") to determine if franchise fees were owed by the gas companies. Under these contracts, TMTCI had authority to "audit[] and make[] a determination that uncollected compensation is due and owing to cities" and to "employ legal counsel of its choice . . . to represent cities in enforcing any claim through necessary litigation." TMTCI hired Ramon Garcia of Edinburg to represent each of the cities. **[**4]** After the cities received the class notice, Garcia filed opt-out notices on their behalf before the August opt-out deadline.

Nicole Mitchell

After the August deadline, the cities of San Benito, Alton, Palmview, and La Villa ratified attorney Garcia's actions in open meetings. The cities of Edcouch and Port Isabel never ratified the opt-out requests in an open meeting. After a hearing some months later, the trial court ruled that none of the petitioner cities had properly opted out.

On December 14, 2000, class counsel sent notice of a proposed class settlement, providing that the class members could file written objections to the settlement by January 31, 2001. The six cities filed a joint motion objecting to the settlement and a joint motion to reconsider their opt-out requests. The trial court held a settlement fairness hearing after which it approved the class settlement and rendered final judgment.

Class counsel filed a motion to withdraw as counsel for the city of Pharr, stating at the hearing on the opt-out requests that Pharr had hired Ramon Garcia to represent its interests. However, nothing in the record reflects that Pharr filed an opt-out notice at any time or raised any objection **[**5]** to the settlement.

All seven cities appealed to the court of appeals and sought mandamus relief from both the court of appeals and this Court. [1] **[*754]** We dismissed the petition for writ of mandamus. The court of appeals considered both the appeal and mandamus in a consolidated opinion.

The court of appeals dismissed the appeal for want of jurisdiction, *63 S.W.3d at 24-25,* **[**6]** and also denied mandamus relief. *Id. at 30-31.* It held that the trial court did not abuse its discretion in refusing the opt-out requests, because the requests of the six cities had not previously been authorized in an open meeting, the subsequent ratifications were ineffective, and the city of Pharr had made no attempt to opt out. *Id.*

II

We must first decide if the court of appeals had jurisdiction to hear this appeal. The court below held that because the cities failed to intervene formally in the trial court, they lacked standing to appeal the trial court's judgment. *63 S.W.3d at 24-25.* Thus, it dismissed the case for lack of subject matter jurisdiction. *Id.* After the court of appeals' decision was issued, the United States Supreme Court held in *Devlin v. Scardelletti, 536 U.S. 1, 153 L. Ed. 2d 27, 122 S. Ct. 2005 (2002),* that **HN1**[↑] unnamed class members are not required to intervene in order to appeal a trial court's judgment approving a class settlement. We follow the Supreme Court's decision in *Devlin.*

In *Devlin,* an unnamed class member objected to the class settlement at the fairness hearing, but did not successfully **[**7]** intervene in the proceedings. *Id. at 8-9.* The Supreme Court held that an unnamed class member's failure to intervene does not implicate standing. *Id. at 6.* Rather, it concluded that the real issue is whether or not the class member is a "party" for purposes of appeal. *Id. at 7.*

The Supreme Court observed that the right to appeal is not restricted to a case's named parties. *Id. at 12* (citing *Blossom v. Milwaukee & Chicago R.R., 68 U.S. 655, 17 L. Ed. 673 (1864); Hinckley v. Gilman, Clinton, & Springfield R.R., 94 U.S. 467, 24 L. Ed. 166 (1877); United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76, 101 L. Ed. 2d 69, 108 S. Ct. 2268 (1988)).* The "label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Id. at 10.* Thus, the procedural rules governing class actions sometimes require unnamed parties to be treated as parties or nonparties in order to ease the administration of class litigation. The Court listed as an example **[**8]** the treatment of unnamed class members as parties for statute of limitations purposes but as nonparties for diversity purposes. *Id.* However, the most important consideration was that the unnamed class members would be bound by the class settlement. *Id.* Thus, noted the Court:

it is this feature of class action litigation that requires that class members be allowed to appeal the approval of a settlement when they have objected at the fairness hearing. To hold otherwise would deprive nonnamed class members of the power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court.

*Id.* The unnamed class member in *Devlin* was a "party"

---

[1] Additionally, the cities of Alamo, LaJoya, Primera, Santa Rosa, San Juan, Penitas, and Elsa joined the petitions for writ of mandamus and the appeal to the court of appeals. The city of Elsa did not join the petition for review to this Court. Rio Grande moved to dismiss the petitions of Alamo, LaJoya, Primera, and Santa Rosa because they accepted the benefits of the trial court's judgment, of Donna and San Juan because the court of appeals' judgment gives these cities the relief they requested, and of Penitas because it is not a member of the class. The cities did not oppose this motion; therefore, we granted Rio Grande's motion to dismiss these petitions.

for purposes of the appeal.

**HN2**[↑] Under Texas jurisprudence, an appeal can generally only be brought by a named party to the suit. *Motor Vehicle Bd. of the Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n, 1 S.W.3d 108, 110, 42 Tex. Sup. Ct. J. 1128 (Tex. 1999)*. However, the doctrine of **[\*755]** virtual representation is an exception to the general rule. *Id.* (citing *Gunn v. Cavanaugh, 391 S.W.2d 723, 725, 8 Tex. Sup. Ct. J. 442 (Tex. 1965))*. An appellant is a deemed party under **[\*\*9]** virtual representation when: "(1) it is bound by the judgment; (2) its privity of estate, title, or interest appears from the record; and (3) there is an identity of interest between the appellant and a party to the judgment." *Id.* We have deemed unnamed class members to be parties under this doctrine. *See Robertson v. Blackwell Zinc Co., 390 S.W.2d 472, 472, 8 Tex. Sup. Ct. J. 385 (Tex. 1965)*. [2] Our virtual representation doctrine is thus quite similar to the United States Supreme Court's rule in *Devlin*. We agree with the Court's analysis that the most important consideration is whether the appellant is bound by the judgment. *See Grohn v. Marquardt, 487 S.W.2d 214, 217 (Tex. Civ. App.-San Antonio 1972, writ ref'd n.r.e.)* ("When a non-party is allowed to challenge a judgment, the decision to allow him the right to appeal is grounded on the fact that, because of the doctrine of representation, he is bound by the judgment."). Because the unnamed class members here would be bound to the judgment approving the settlement, they should be considered "parties" for purposes of appeal.

 **[\*\*10]** The gas companies attempt to distinguish *Devlin* on the basis that the cities here were certified as a class prior to settlement, whereas *Devlin* involved a settlement class. *See Northrup v. Southwestern Bell Tel. Co., 72 S.W.3d 1, 10 (Tex. App.-Corpus Christi 2001, pet. denied)* (stating that "imposition of the intervention requirement is appropriate in non-settlement class actions"). Because unnamed class members do not have the opportunity to challenge the

certification of the class prior to final judgment approving a settlement, the gas companies agree that intervention should not be required for a settlement class. However, in a non-settlement class, unnamed parties have an opportunity to intervene, they point out. Why should unnamed class members be allowed to wait until the eve of settlement before voicing objections?

We do not find this distinction dispositive. It is not "laying behind the log" to wait to object until the fairness hearing. The very purpose of settlement notice to class members is to allow each of them to determine whether to object at the fairness hearing. *See Gen. Motors Corp. v. Bloyed, 916 S.W.2d 949, 958, 39 Tex. Sup. Ct. J. 258 (Tex. 1995).* **[\*\*11]** Requiring intervention prior to the settlement fairness hearing creates more work for all involved with no corresponding benefit. *See Devlin, 536 U.S. at 14* ("As such determinations still would most likely lead to an appeal, such a requirement would only add an additional layer of complexity before the appeal of the settlement approval may finally be heard."). As one commentator has observed, intervention produces more work for the district court (a formal motion in addition to the settlement hearing), no savings of time for the appellate court (in both cases it has conducted an appeal), and results in no review of the much more basic issue (the fairness and reasonableness of the settlement) by either court." **[\*756]** Timothy A. Duffy, Comment, *The Appealability of Class Action Settlements by Unnamed Parties*, *60 U. Chi. L. Rev. 933, 954 (1993)*.

The gas companies further argue that class actions will become unmanageable and unproductive if each member can individually appeal a judgment without first intervening in the action. We are not persuaded. **HN4**[↑] To preserve a complaint for appellate review, a party must complain in the trial court. *See TEX. R. APP.* **[\*\*12]** *P. 33.1(a)(1)(A)*. This requirement will significantly reduce the number of appeals by unnamed class members. *Devlin, 536 U.S. at 19*. "As the longstanding practice of allowing nonnamed class members to object at the fairness hearing demonstrates, the burden of considering the claims of this subset of class members is not onerous." *Id.* Thus, class actions will not become unmanageable if unnamed class members are allowed to appeal without prior intervention.

Finally, **HN5**[↑] a class member who wishes to opt out should not be forced to take the inconsistent action of becoming a formal member of the class in order to preserve a right to appellate review. Requiring a timely

---

[2] Although *Robertson* was a writ of error proceeding, now called a restricted appeal under *Texas Rule of Appellate Procedure 30*, **HN3**[↑] we see no reason why an unnamed class member should be allowed to seek a restricted appeal but not prosecute an ordinary appeal. *Gunn v. Cavanaugh, 391 S.W.2d 723, 724, 8 Tex. Sup. Ct. J. 442 (Tex. 1965)* ("Writ of error affords a review of the same scope as an appeal."). We therefore disapprove of the holding to the contrary in *San Juan 1990-A, L.P. v. Meridian Oil Inc., 951 S.W.2d 159, 163 (Tex. App.-Houston [14th Dist.] 1997, pet. denied)*.

request to opt out is sufficient notice to the trial court to preserve a complaint for appellate review. Unnamed class members whose requests to opt out of a class action are denied should also be considered parties on appeal.

Because the six cities filed requests to opt out and objected to the settlement, their complaints were preserved for review by the court of appeals, and these unnamed class members are parties for purposes of appeal. However, the city of Pharr did not request to opt out of the class **[\*\*13]** or object to the settlement. Therefore, its complaints were not properly before the court of appeals, and this Court will not consider them. *TEX. R. APP. P. 33.1(a)(1)(A)*.

III

The gas companies next argue that the six cities waived their complaints regarding the denial of the opt-out requests because they failed to seek appellate or mandamus review until after final judgment. The trial court heard the opt-out requests in November 1999, and the requests were denied on February 1, 2000. A year later, the cities filed objections to the proposed class settlement and renewed their requests to opt out. When the requests were again denied and final judgment was rendered, the cities sought appellate and mandamus relief in the court of appeals and mandamus relief from this Court. However, after the court of appeals denied mandamus relief, the cities failed to inform this Court of the court of appeals' ruling. When the cities did not actively pursue their mandamus relief in this Court, we dismissed their petition. *In re City of San Benito, 45 Tex. Sup. J. 305, 309 (Jan. 12, 2002)*. The gas companies argue that by waiting a year to seek appellate review and by failing to **[\*\*14]** reurge their petition for mandamus relief in this Court, the cities waived their right to complain of the trial court's order denying the opt-out requests.

We disagree. *HN6*[⬆] There is no interlocutory appeal from an order denying a party the right to opt out of a class. *See TEX. CIV. PRAC. & REM. CODE § 51.014*. It is true that the cities could have attempted to seek mandamus relief in this Court after the court of appeals denied mandamus relief, but *HN7*[⬆] filing a request for an extraordinary writ is not a prerequisite to an appeal. *Pope v. Stephenson, 787 S.W.2d 953, 954, 33 Tex. Sup. Ct. J. 436 (Tex. 1990)*. The cities did not waive their complaints regarding the opt-out requests.

IV

**[\*757]** Although the court of appeals dismissed the appeal for want of jurisdiction and considered the validity of the opt-out requests in connection with the petition for writ of mandamus below, we will consider the latter issue here as part of this appeal rather than remand to the court of appeals for it to reiterate its holding. *See TEX. R. APP. P. 53.4*; *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio, 53 S.W.3d 310, 321 (Tex. 2001)*. The court **[\*\*15]** of appeals in the mandamus proceeding below determined that the trial court did not abuse its discretion in denying the opt-out requests. The standard of review on appeal should also be whether the trial court abused its discretion. *See In re PaineWebber Ltd. P'ships Litig., 147 F.3d 132, 135 (2d Cir. 1998)*. *HN8*[⬆] The test for abuse of discretion is "whether the court acted without reference to any guiding rules and principles" or, stated another way, whether its decision was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242, 29 Tex. Sup. Ct. J. 88 (Tex. 1985)*.

The gas companies claim the 1996 opt-out requests by the six cities were ineffective because the cities did not take formal action at an open meeting to authorize their attorney to file the opt-out requests. The cities respond that their attorney was authorized to file the opt-out requests as part of his representation pursuant to the TMTCI contract.

*HN9*[⬆] The *Open Meetings Act* requires that "every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter." *TEX. GOV'T CODE § 551.002*. It defines "meeting" **[\*\*16]** as "a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action." *Id. § 551.001(4)(A)*. Cities can express and bind themselves only by way of a duly assembled meeting. *Cent. Power & Light Co. v. City of San Juan, 962 S.W.2d 602, 612 (Tex. App.-Corpus Christi 1998, pet. dism'd w.o.j.)*. "A city's governing body may not delegate the right to make decisions affecting the transaction of city business." *Id. at 613*. However, cities may "delegate to others the right to perform acts and duties necessary to the transaction of the city's business, but can do so only by resolution or ordinance, by a majority vote." *Id.*

In their respective contracts, the six cities delegated to TMTCI the right to investigate and pursue claims they

Nicole Mitchell

might have against the gas companies, including the right to hire counsel for those purposes. Pursuant to the contract, TMTCI hired Ramon Garcia. Each contract contained nearly identical [**17] clauses stating:

After auditing and making a determination that uncollected compensation is due and owing to city, TMTCI will negotiate with franchisees so as to recover uncollected compensation, if any, and if necessary, employ legal counsel to recover such compensation.

. . .

If, after good faith attempts to negotiate with a franchisee, TMTCI is not able to resolve an uncollected compensation dispute with such franchisee or to obtain access to the books and records of franchisee as outlined . . . above, or otherwise deems it necessary in order to fulfill its obligations under this Agreement, TMTCI, after having consulted with city, shall have the power and right to employ legal counsel of its choice.

 [*758] Although the record does not contain the minutes of the open meetings at which these contracts were approved, neither the validity of these contracts nor Ramon Garcia's status as the cities' attorney has been challenged. Class counsel stated at oral argument that a motion to show authority was filed in the trial court, but nothing in the record indicates that such a motion was filed or that the trial court made any ruling thereon. Thus, we must assume that Ramon Garcia is the [**18] cities' attorney. *Victory v. State, 138 Tex. 285, 158 S.W.2d 760, 766 (Tex. 1942)* (holding challenge to attorney's authority under precursor to *Texas Rule of Civil Procedure 12* may not be raised for the first time on appeal); *Taylor v. Tex. Dep't of Pub. Welfare, 549 S.W.2d 422, 425 (Tex. Civ. App.-Fort Worth 1977, writ ref'd n.r.e.)* (holding same under *rule 12*). The only question before the court is whether Ramon Garcia had implied authority pursuant to the contract with TMTCI to opt the cities out of the litigation.

A similar question is whether an attorney has authority to nonsuit a client's claim without prior consent. **HN10**[↑] Texas courts have held that an attorney has implied authority to nonsuit a client's claim when the nonsuit does not affect a substantial right or bar the bringing of another suit based on the same cause of action. *See Fed. Underwriters Exch. v. Read, 142 S.W.2d 440, 443 (Tex. Civ. App.-Beaumont 1940)*, *rev'd on other grounds*, *138 Tex. 271, 158 S.W.2d 767 (Tex. 1942)*; *Dyer v. Johnson, 19 S.W.2d 421, 425 (Tex. Civ. App.-Fort Worth 1929, writ dism'd w.o.j.)*; *see also* C.R.

McCorkle, [**19] Annotation, *Authority of Attorney to Dismiss or Otherwise Terminate Action, 56 A.L.R.2d 1290*. Just as a nonsuit terminates litigation between the plaintiff and the nonsuited defendant, opting out of a class action has the effect of terminating the particular litigation as to that class plaintiff. Opting out does not, of itself, cause a loss of any substantial rights, as the party can bring its own suit on the same cause of action. Pursuant to his contractual employment to pursue unpaid franchise fees through litigation, Garcia had authority to opt the cities out of the class action. The cities were not required to hold an open meeting to specifically authorize the opt-out requests. Because the decision to opt out was within their attorney's authority, the trial court abused its discretion in refusing the cities' opt-out requests.

V

The cities claim that the settlement the trial court approved is unfair because the gas companies are allowed to recover any funds paid to the cities and class counsel by increasing the gas costs to their customers, the cities' residents. Although the cities make an interesting argument, we do not reach the issue because we hold six [**20] of the petitioner cities are not bound by the settlement and the seventh failed to object to the settlement in the trial court. *TEX. R. APP. P. 33.1(a)(1)(A)*.

VI

Because the cities of San Benito, Palmview, Alton, La Villa, Port Isabel, and Edcouch properly opted out of the class, we reverse the judgment of the court of appeals and render judgment that they are not members of the class action. However, we affirm the judgment as to the city of Pharr because there is no evidence in the record that Pharr filed a notice to opt out or that it objected to the settlement in the trial court.

Thomas R. Phillips

Chief Justice

---

**End of Document**

# *Downer v. Aquamarine Operators, Inc.*

Supreme Court of Texas

December 4, 1985, Decided

No. C-4141

## Reporter

701 S.W.2d 238 *; 1985 Tex. LEXIS 1089 **; 29 Tex. Sup. J. 88

IDA E. DOWNER, Petitioner, v. AQUAMARINE OPERATORS, INC., Respondent

**Subsequent History: [**1]** Rehearing Denied January 15, 1986.

**Prior History:** Appeal from Harris County, Fourteenth District.

## Core Terms

trial court, sanctions, depositions, court of appeals, discovery, sanctions hearing, default judgment, crew, notice, vessel, abuse of discretion, interlocutory, damages, pleaded, struck

## Case Summary

### Procedural Posture

Defendant employer appealed a judgment from the 151st District Court of Harris County (Texas), which granted a motion by plaintiff, a deceased employee's widow, for discovery sanctions, struck defendant's answer, and entered an interlocutory default judgment against defendant. The court of appeals reversed the trial court judgment, holding that it was erroneous and an abuse of discretion.

### Overview

Plaintiff, a deceased employee's widow, sued defendant employer after employee was drowned while working upon a vessel owned and operated by defendant. After members of the crew had failed to appear on three separate deposition dates, plaintiff filed a motion for sanctions. Defendant responded that work was scarce and, when work was available, it was necessary to send the vessel and crew to sea rather than produce them for depositions. Defendant failed to appear at the sanctions hearing because its attorney was repairing his home from hurricane damage and preparing for a federal court hearing. The trial court granted plaintiff's motion for sanctions, struck defendant's answer, and entered a default judgment as to liability. The court of appeals reversed the trial court's judgment as an error of law and an abuse of discretion. The court reversed the court of appeals and affirmed the judgment of the trial court, holding that the trial court had plenary jurisdiction to consider facts from all of the pleadings that were before it when considering whether to impose sanctions and that the appeals court erroneously ruled that the trial court abused its discretion by imposing sanctions.

### Outcome

The court reversed the appellate court's ruling that the trial court erred in striking defendant employer's answer to complaint by plaintiff, a deceased employee's widow, after defendant failed to produce deposition witnesses or to appear at the hearing for sanctions because the trial court had authority to consider all facts contained in the pleadings and did not abuse its discretion.

## LexisNexis® Headnotes

Civil Procedure > Discovery & Disclosure > Discovery > Misconduct During Discovery

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

### *HN1*[⬇] Discovery, Misconduct During Discovery

Prior to an amendment effective August 1, 1984, *Tex. R. Civ. P. 215a(c)* stated that if a party or an officer or managing agent of a party, except for good cause shown, fails to appear before the officer who is to take his oral deposition, the court in which the action is pending on motion and notice may strike out all or any

part of the pleading of that party or dismiss the action or proceeding or any part thereof.

Civil Procedure > Appeals > Standards of Review > De Novo Review

Governments > Courts > Authority to Adjudicate

Civil Procedure > Judgments > Relief From Judgments > General Overview

Civil Procedure > Judgments > Relief From Judgments > Motions for New Trials

*HN2*[⬇] **Standards of Review, De Novo Review**

A trial court's plenary jurisdiction gives it not only the authority but the responsibility to review any pre-trial order upon proper motion. In doing so, it is presumed that the court is familiar with the entire record of the case up to and including the motion to be considered.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

*HN3*[⬇] **Standards of Review, Abuse of Discretion**

The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. Another way of stating the test is whether the act was arbitrary or unreasonable. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred.

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Contributory Negligence

Torts > ... > Contributory Negligence > Procedural Matters > General Overview

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > General Overview

Civil Procedure > Judgments > Pretrial Judgments > General Overview

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Torts > ... > Defenses > Comparative Fault > General Overview

Torts > ... > Defenses > Contributory Negligence > General Overview

*HN4*[⬇] **Affirmative Defenses, Contributory Negligence**

Contributory negligence is an affirmative defense which must be pleaded.

**Judges:** James P. Wallace, Justice.

**Opinion by:** WALLACE

# Opinion

**[*239]** This is an appeal from a judgment for damages in a suit brought under the Jones Act and under admiralty law. The trial dealt only with damages because the trial court struck the defendant's answer as a discovery abuse sanction and signed an interlocutory default judgment as to liability. The court of appeals reversed the trial court judgment, holding that the action of **[*240]** that court was an error of law and an abuse of discretion. *689 S.W.2d 472*. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

The issues before us are whether *TEX. R. CIV. P. 215a(c)*, as it existed prior to the amendment effective August 1, 1984, authorized the trial court to strike defendant's answer, and, if so, whether the exercise of that authority constituted an abuse of discretion.

Edward P. Downer was a seaman aboard the vessel Four Point IV. He drowned while attempting to free a line that had fouled the vessel's propeller. Ida E. Downer, his widow, brought this action against Aquamarine **[**2]** Operators, Inc., the owner and operator of the vessel. The case was filed in the 151st District Court of Harris County. Both Downer and Aquamarine are residents of Harris County, Texas.

Downer filed Notice of Intent to Take the Depositions of

All Members of The Crew on June 1. The notice identified each crew member, including the captain, Chester P. Dalfrey, by name only. Downer also requested depositions of the immediate supervisor of Chester Dalfrey and the custodian of Edward Downer's personnel file. On June 1, Aquamarine notified Downer that the crew was at sea and would not appear. Aquamarine at that time agreed to produce the requested persons on June 22. On June 21, Aquamarine again notified Downer that the crew was at sea and would not appear. It agreed to produce them on July 5.

Downer filed written Notice of Intent to Take Depositions of the same individuals for July 5. On that date, the requested deponents did not appear, whereupon Downer filed a Motion for Sanctions. A hearing on the Motion for Sanctions was set for August 22. Aquamarine made no appearance at the hearing; the trial court granted the Motion for Sanctions and signed an Order Striking Aquamarine's Answer.

 [**3] Downer filed a Motion for Interlocutory Default Judgment to which Aquamarine responded. The response contained Aquamarine's reasons for not producing the requested individuals for depositions and its failure to appear at the sanctions hearing.

The reason offered for the first two occasions was that work for the FOUR POINT IV was scarce and, when work was available, it was necessary to send the vessel and crew to sea rather than produce them for depositions. On the third occasion, the vessel was in port at New Iberia, Louisiana, but Coast Guard regulations required a skeleton crew to be kept aboard at all times. Aquamarine's attorney stated that he notified Downer's attorney on July 1 of the necessity to take the depositions in New Iberia. Downer's attorney stated that he first learned that the individuals would not appear as noticed when Aquamarine's attorney called him an hour after the depositions were scheduled to commence. Both agreed that Aquamarine requested that the depositions be taken in New Iberia on July 6. However, Downer's attorney stated that he could not do so because he was preferentially set for trial in Houston starting at 9:00 a.m. on July 6.

The reason given [**4] by Aquamarine for not appearing at the sanctions hearing was that Hurricane Alicia had struck La Porte, the residence of Mr. Ayres, Aquamarine's lead counsel, four days previously. Mr. Ayres was involved in cleaning up after the hurricane and mitigating the damages to his home. Also, he had a hearing set in federal court in Beaumont on the following day and was directing all of his available attention to that matter.

To his Motion to Reconsider the Sanctions, Mr. Ayres attached an affidavit from his secretary, which stated that she had called the clerk of the court on July 7, and had advised her that Mr. Ayres had to make a docket call in Angleton on August 22. She understood the clerk to say that the sanctions hearing would be reset for September 6. In response to this motion, Downer's attorney advised the court by letter of his version of the circumstances leading up to the non-appearance on July 5, and the time when he was first advised [*241] that the named individuals would not appear. Attached to this letter to the court was a copy of a letter dated July 28, written by Mr. Bales, an associate of Mr. Ayres, which confirmed that the sanctions hearing was set for August 22.

 [**5] With the above information before it, the trial court overruled Aquamarine's Motion to Reconsider the Sanctions and to reinstate its answer. The court signed an order granting an interlocutory default judgment as to liability. Aquamarine filed a Motion to Set Aside the Default Judgment. The motion contained practically the same information as the Motion to Reconsider Sanctions set out above. The trial court considered this motion and overruled it. On April 16, 1984, the case was preferentially set for trial for June 4, and the trial court refused to consider Aquamarine's Second Motion to Set Aside the Interlocutory Default Judgment and Reinstate Defendant's Pleadings.

A jury trial was had in a different court, the 334th District, on the issue of damages. At the trial, Chester Dalfrey testified that he was captain of the FOUR POINT IV and as such he was in complete charge of the vessel with authority over all of its operations. Mr. Clark Ivans testified that he was president of Aquamarine at all times pertinent to this case, and that as such, he was the immediate supervisor of Chester Dalfrey.

We now address the issue of whether the trial court had authority under *Rule 215a(c)* to [**6] strike Aquamarine's answer. *HN1*[⬆] That rule stated in pertinent part:

> If a party or an officer or managing agent of a party, except for good cause shown, fails to appear before the officer who is to take his oral deposition . . . the court in which the action is pending on motion and notice may strike out all or any part of the pleading of that party or dismiss the action or proceeding or

any part thereof . . . .

As noted above, Ivans testified that as president of Aquamarine he was in complete charge of all operations of the company. Thus he was a party as contemplated by *Rule 215a(c)*.

The next question is whether the trial court, in refusing to grant a new trial and reinstate Aquamarine's answer, could consider the evidence introduced subsequent to the original sanctions hearing. Aquamarine contends that the trial court, in imposing sanctions, could consider only the evidence before it at the time of the sanctions hearing, and not any evidence subsequently produced. **HN2**[↑] A trial court's plenary jurisdiction gives it not only the authority but the responsibility to review any pre-trial order upon proper motion. In doing so, it is presumed that the court is familiar with the **[**7]** entire record of the case up to and including the motion to be considered. The plenary jurisdiction of the trial court in this case continued through the final judgment and overruling of Aquamarine's motion for new trial. When considering the motion for new trial, the court had before it the reasons advanced by Aquamarine for not appearing for depositions or the sanctions hearing; Downer's response to Aquamarine's motions; and the evidence produced at the trial on damages. Thus, the court of appeals erred in holding that the trial court did not have authority under *Rule 215a(c)* to strike Aquamarine's answer.

We now turn to the court of appeals holding that the trial court abused its discretion in striking Aquamarine's answer. The court of appeals concluded its review of the abuse of discretion issue by stating: "The facts of the case simply do not, in our opinion, show this to be an appropriate case to impose the ultimate sanctions of striking the pleadings and entering default judgment." We interpret that statement to mean that the court of appeals disagreed with the decision of the two trial judges who reviewed the matter.

**HN3**[↑] The test for abuse of discretion is not whether, in the **[**8]** opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and **[*242]** principles. *Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126* (Tex. Comm. App. -- 1939, opinion adopted). Another way of stating the test is whether the act was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Co., 665 S.W.2d 439, 443 (Tex. 1982)*; *Landry v. Travelers Insurance Co., 458 S.W.2d 649, 651 (Tex. 1970)*. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Southwestern Bell Telephone Co. v. Johnson, 389 S.W.2d 645, 648 (Tex. 1965)*; *Jones v. Strayhorn, 159 Tex. 421, 321 S.W.2d 290, 295 (Tex. 1959)*.

To determine the trial judge's guiding rules and principles in imposing sanctions for discovery abuse, we must look to the Texas Rules of Civil Procedure as promulgated and amended by this court as well as the decisions of appellate courts of this State and of the **[**9]** United States. The Texas Rules of Civil Procedure pertaining to discovery and sanctions for noncompliance have been amended several times, culminating in *Rule 215a* as it existed at the time of this case, and now embodied in Rule 215. The use of sanctions by trial courts to prevent discovery abuse has developed steadily over the past several years. These changes reflect the continuing pattern both to broaden the discovery process and to encourage sanctions for failure to comply.

The United States Supreme Court in *National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976)* approved the use of sanctions not only to assure compliance with the discovery process but also to deter those who might be tempted to abuse discovery in the absence of a deterrent.

This court and various courts of appeals have also followed this progression. *See, e.g., Dyson v. Olin Corp., 692 S.W.2d 456 (Tex. 1985)* (Kilgarlin, J., concurring) (unnamed witness not permitted to testify); *Jarrett v. Warhola, 695 S.W.2d 8* (Tex. App. -- Houston [14th Dist.] 1985, writ ref'd) (plaintiff's cause of action dismissed); *City of Houston v. Arney, 680 **[**10]** S.W.2d 867* (Tex. App. -- Houston [1st Dist.] 1984, no writ) (defendant's answer struck for failure to answer interrogatories); *Southern Pacific Transportation v. Evans, 590 S.W.2d 515* (Tex. Civ. App. -- Houston [1st Dist.] 1979, writ ref'd n.r.e.) (defendant's answer struck and interlocutory default judgment rendered as to liability), *cert. denied*, 449 U.S. 994, 66 L. Ed. 2d 291, 101 S. Ct. 531 (1980).

In various speeches and law review articles, different members of this court have encouraged trial judges to use sanctions to the degree necessary to assure compliance with discovery procedures and deter abuse

of the process. Barrow and Henderson, *1984 Amendments to the Texas Rules of Civil Procedure Affecting Discovery*, 15 ST. MARY'S L. J. 713 (1984) (presented to the Texas College of the Judiciary Nov. 29, 1984); Kilgarlin and Jackson, *Sanctions for Discovery Abuse Under New Rule 215*, 15 ST. MARY'S L. J. 767 (1984); Pope and McConnico, *Practicing Law With the 1981 Texas Rules*, 32 BAYLOR L. REV. 457 (1981); Spears, *The Rules of Civil Procedure: 1981 Changes In Pretrial Discovery*, 12 ST. MARY'S L. J. 633 (1981).

The trial court in this case was free **[\*\*11]** to examine the factors before it to determine whether to levy sanctions. Among these were the following: (1) whether voluntarily sending the crew to sea rather than producing them for depositions as agreed on two occasions was in conscious disregard of this court's rules; (2) whether the contradictory statements of both attorneys indicated that Aquamarine's attorney did in fact wait until one hour past the scheduled time for depositions on July 5, to advise Downer's attorney that he would have to fly to New Iberia and take depositions on the following day; (3) whether Aquamarine's attorney consciously disregarded the sanctions hearing in preference to his personal needs and the federal court case set the following day; (4) whether the information contained in the secretary's affidavit as to the date of the sanctions hearing conflicted with the letter from an attorney **[\*243]** in that law firm confirming that the hearing was set on August 22; and (5) the unexplained failure of Aquamarine to produce for depositions on any of the occasions in question Clark Ivans, the immediate supervisor of Chester Dalfrey and the president of Aquamarine.

The record contains no indication that the **[\*\*12]** trial court was capricious, arbitrary, or unreasonable. Thus, the court of appeals erred in holding that the trial court abused its discretion.

In determining whether to reverse and render this cause or to remand it to the court of appeals, we must look to the four points of error raised by Aquamarine before the court of appeals but not addressed by that court. If those points raise questions of law, as opposed to questions of fact, they can be addressed by this court.

The first point was that Downer's First Amended Original Petition was insufficient to support the judgment. The contention is that the facts supporting the cause of action were not pleaded. *TEX. R. CIV. P. 47* requires that a petition contain a short statement of the cause of action sufficient to give fair notice of the claim involved. Our rules do not require pleadings to contain evidence or factual detail. That point is overruled.

The second point was that the trial court improperly refused to strike a juror for cause. After the court had ruled on challenges for cause, there were 26 names left on the jury list. Each party was given six jury strikes, so, after making those strikes, 14 names remained on the list. **[\*\*13]** The challenged juror was Number 14 and was thus a spare. There was no harm in refusing to dismiss him for cause.

The third point was that the trial court improperly refused to admit evidence of Downer's contributory negligence. *HN4*[↑] Contributory negligence is an affirmative defense which must be pleaded. Aquamarine's answer had been struck and default judgment rendered as to liability. Thus, defendant had no pleading to support contributory negligence, so the court did not err in refusing to admit the requested evidence.

Aquamarine's remaining point before the court of appeals was that the trial court erred in awarding prejudgment interest in a Jones Act case tried to a jury. This point was not presented to the trial court and was thus waived.

Aquamarine's points of error presented to the court of appeals but not considered by that court concerned questions of law over which we have jurisdiction. There is no merit to these points so it is not necessary for this cause to be remanded to the court of appeals.

The judgment of the court of appeals is reversed and the judgment of the trial court is **[\*\*14]** affirmed.

---

**End of Document**

# *Dueitt v. Arrowhead Lakes Prop. Owners, Inc.*

Court of Appeals of Texas, Tenth District, Waco

October 26, 2005, Opinion Delivered ; October 26, 2005, Opinion Filed

No. 10-04-00274-CV

**Reporter**

180 S.W.3d 733 *; 2005 Tex. App. LEXIS 8830 **

JERRY O. AND ROSE DUEITT, Appellants v. ARROWHEAD LAKES PROPERTY OWNERS, INC., ET AL. Appellees

**Subsequent History:** Petition for review denied by *Dueitt v. Arrowhead Lakes Prop. Owners, 2006 Tex. LEXIS 141 (Tex., Mar. 3, 2006)*

**Prior History: [**1]** From the 284th District Court Montgomery County, Texas. Trial Court No. 90-12-04407 CV.

**Disposition:** Affirmed.

## Core Terms

trial court, want of prosecution, motion to reinstate, notice, motion to dismiss, pet, fail to hold, due diligence, due process, phase, inherent authority, prosecuting, abused, issues, adequate notice, thirteen year, harmless, inform, trial setting, intentions, requires

## Case Summary

**Procedural Posture**
Appellant lot owners challenged a decision of the 284th District Court, Montgomery County (Texas), which dismissed for want of prosecution their case against appellees, a property owners' association and current and former directors, which sought declaratory relief and damages for fraud, slander of title, deceptive trade practices, and violations of fair debt collection practices acts.

**Overview**

The owners' property was subject to deed restrictions that levied a fee for maintenance purposes. After a dispute arose concerning the amount of the levy, they filed this action. The trial court dismissed the action for want of prosecution and the court affirmed on appeal. The owners presented their arguments to the trial court, and the owners were given adequate notice and participated in the hearing, and thus received due process. The trial court did not err in finding that the owners did not prosecute their case with due diligence. Although certain appellees died during the proceedings, and the owners did as the law required after the death of each one, no other affirmative action was taken on the case. In 13 years, the owners never requested a trial setting. The trial court erred in failing to hold a hearing under *Tex. R. Civ. P. 165a(3)* on their motion to reinstate, but the error was harmless under *Tex. R. App. P. 44.1(a)* because (1) the case was on file for over 13 years, (2) the owners never requested a trial setting, (3) the owners offered no evidence, and (4) they were not prevented from presenting their case on appeal.

**Outcome**
The court affirmed.

## LexisNexis® Headnotes

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN1*[⬇] **Involuntary Dismissals, Failure to Prosecute**

A trial court's power to dismiss a suit for want of prosecution originates from two sources: (1) *Tex. R. Civ. P. 165a* and *(2)* the trial court's inherent authority. *Tex. R. Civ. P. 165a*. A trial court may dismiss a suit under *Rule 165a* when (1) a party fails to appear for a trial or hearing or (2) when a suit is not disposed of within the time standards given by the Texas Supreme Court. *Tex. R. Civ. P. 165a(1)*, *(2)*. Independent of the rules of civil procedure, a trial court may also dismiss a suit under

the inherent authority given to it by common law.

Civil Procedure > Dismissal > Involuntary Dismissals > Appellate Review

*HN2*[⬇] **Involuntary Dismissals, Appellate Review**

When a party does not request findings of fact or conclusions of law, and the trial court does not specify the standard of dismissal used, the appellate court must affirm on the basis of any legal theory supported by the record.

Civil Procedure > Dismissal > Involuntary Dismissals > Appellate Review

*HN3*[⬇] **Involuntary Dismissals, Appellate Review**

The appellate court reviews a dismissal for want of prosecution under an abuse of discretion standard. A trial court abuses its discretion when it acts without reference to any guiding rules or principles, or, stated another way, when the trial court acts in an arbitrary and unreasonable manner.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN4*[⬇] **Involuntary Dismissals, Failure to Prosecute**

A party must be provided with notice and an opportunity to be heard before a trial court may dismiss a case for want of prosecution under either *Tex. R. Civ. P. 165a* or its inherent power.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN5*[⬇] **Involuntary Dismissals, Failure to Prosecute**

See *Tex. R. Civ. P. 165a(1)*.

Civil Procedure > Dismissal > Involuntary Dismissals

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN6*[⬇] **Dismissal, Involuntary Dismissals**

The requirements of notice and a hearing are necessary to ensure the dismissed claimant has received due process. The failure to provide adequate notice of the trial court's intent to dismiss for want of prosecution requires reversal. However, participation in a hearing on a motion to reinstate cures any due process concerns for the failure to provide notice of intent to dismiss.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN7*[⬇] **Involuntary Dismissals, Failure to Prosecute**

Dismissal for want of prosecution may be obtained by motion of the trial court or on motion of any party to the suit. The *Tex. R. Civ. P. 165a* reinstatement procedure applies to all dismissals for want of prosecution, regardless of whether they are initiated by the court or motion of a party.

Civil Procedure > Dismissal > Involuntary Dismissals

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN8*[⬇] **Dismissal, Involuntary Dismissals**

All that due process requires is that a party be given notice of the time and substance of the hearing, and an opportunity to present arguments at the hearing. A dismissal notice containing no reference to *Tex. R. Civ. P. 165a* or the court's inherent authority is sufficient to put a party on notice that the court could dismiss under *Rule 165a(1)*, *(2)* or its inherent authority.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN9*[⬇] **Involuntary Dismissals, Failure to Prosecute**

In determining under its inherent authority whether a party has demonstrated a lack of diligence in prosecuting a claim, a trial court may consider the entire history of the case; including the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for delay. No single factor is dispositive, and a belated trial setting or stated readiness to proceed to trial does not conclusively establish diligence.

Civil Procedure > Dismissal > Involuntary Dismissals > Appellate Review

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

**HN10**[ ] **Involuntary Dismissals, Appellate Review**

The appellate court may consider the entire history of the case, including the length of time the case has been on file, for purposes of dismissal for want of prosecution.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

**HN11**[ ] **Involuntary Dismissals, Failure to Prosecute**

When an unreasonable delay in the prosecution of a case occurs, it is presumed that the case has been abandoned. If that delay is not sufficiently explained, the presumption of abandonment is conclusive and the case will be dismissed.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Civil Procedure > Dismissal > Involuntary Dismissals > Hearings on Dismissal

**HN12**[ ] **Involuntary Dismissals, Failure to Prosecute**

The same reinstatement procedures and timetable are applicable to all dismissals for want of prosecution including cases which are dismissed pursuant to the court's inherent power, whether or not a motion to dismiss has been filed. *Tex. R. Civ. P. 165a(4)*. *Rule*

*165a(3)* provides that a judge shall set a hearing on a motion to reinstate as soon as practicable and notify all parties or their attorneys of record of the date, time, and place of the hearing. The rule is mandatory, and the trial court has no discretion about whether to set a hearing on the motion. It is not within the discretion of the trial court to fail to hold an oral hearing on the motion to reinstate. It is not within the discretion of the trial court to fail to hold an oral hearing on a timely-filed, properly verified motion to reinstate. Whether or not the movant requests a hearing on a motion to reinstate is irrelevant; a hearing is required unless waived.

Civil Procedure > ... > Standards of Review > Harmless & Invited Errors > Harmless Error Rule

**HN13**[ ] **Harmless & Invited Errors, Harmless Error Rule**

Appellate courts should not reverse a trial court's judgment in violation of *Tex. R. Civ. P. 279* any more than appellate courts should reverse a trial court's judgment for error that was harmless. *Rule 279* applies just as *Tex. R. App. P. 44.1* applies. The trial court's error requires reversal if it probably caused the rendition of an improper judgment or probably prevented a party from properly presenting their case to the court of appeals. *Tex. R. App. P. 44.1(a)*.

Civil Procedure > Dismissal > Involuntary Dismissals

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

**HN14**[ ] **Dismissal, Involuntary Dismissals**

The motion to reinstate is the fail-safe to prevent cases that fall into any of the three categories from being improperly dismissed. The motion to reinstate ensures that the dismissed party has received due process, because participation in the reinstatement hearing cures any due process concerns. If participation in a motion to reinstate cures any due process error in the original hearing on the motion to dismiss, the court does not see why the reverse should not also be true.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

*HN15*[↓] **Involuntary Dismissals, Failure to Prosecute**

If a trial court's involuntary dismissal order mistakenly adjudicates the case on the merits by dismissing the suit with prejudice or by stating that the plaintiff "take nothing," the error must be challenged in a timely filed motion to reinstate or motion for new trial. If not, the error is waived. The error in dismissing a case with prejudice cannot be raised for the first time on appeal and must be presented to the trial court. Error in improper dismissal for want of prosecution is subject to waiver if the trial court is not given an opportunity to correct it or if the question is not properly raised on appeal.

**Counsel:** For APPELLANT/RELATOR: Don Stocking, STOCKING & ASSOCIATES, Conroe, TX.

For APPELLEE/RESPONDENT: Larry L. Foerster, DARDEN, FOWLER & CREIGHTON, Conroe, TX.; Carrie E. Campbell, MOUNGER & CAMPBELL, Wimberly, TX.; Bryan P. Fowler, THE FOWLER LAW FIRM, Conroe, TX.

**Judges:** Before Chief Justice Gray, Justice Vance, and Justice Reyna.

**Opinion by:** FELIPE REYNA

# Opinion

 **[\*736]** Jerry O. Dueitt and Rose Dueitt appeal from the trial court's dismissal of their case for want of prosecution. Because we find that the trial court did not abuse its discretion in dismissing the Dueitts' cause, and because we find that any error in failing to hold a hearing on the Dueitts' motion to reinstate was harmless, we affirm.

**Factual and Procedural Background**

The Dueitts own two lots in the Arrowhead Lakes division of Montgomery County. The property was subject to deed restrictions that levied a fee for maintenance purposes. After a dispute arose about the amount of the maintenance levy, Arrowhead Lakes Property Owners, Inc. filed a lien affidavit against the Dueitts' property. Because their title was encumbered, the Dueitts could not sell their property. In 1990, the Dueitts filed suit against Arrowhead and some of its then current and former directors (Appellees [1] ) seeking declaratory relief and damages for slander of title, common law fraud, deceptive trade practices, and violations **[\*\*2]** of the state and federal fair debt collection practices act.

After pending for over thirteen years on the trial court's docket, Appellees filed a motion for dismissal of the case for want of prosecution. On May 27, 2004, the trial court held a hearing on the Appellees' motion and subsequently dismissed the case without prejudice. The Dueitts filed a motion to reinstate and requested a hearing on the motion. The trial court denied the motion without a hearing.

On appeal, the Dueitts argue in seven issues that the trial court erred because it (1-2) failed to give notice of its intention to dismiss their case for **[\*\*3]** want of prosecution; (3-4) did not inform the Dueitts of the authority under which the trial court intended to dismiss; (5) abused its discretion by dismissing their cause for lack of due diligence in prosecuting their case; (6) abused its discretion by taxing all costs against the Dueitts; and (7) abused its discretion by failing to hold a hearing on the Dueitts' motion to reinstate.

**Analysis**

*The Dueitts Received Adequate Notice*

The Dueitts argue in issues one through four that they had no adequate notice of **[\*737]** the trial court's intention to dismiss their case for want of prosecution.

*HN1*[↑] A trial court's power to dismiss a suit for want of prosecution originates from two sources: (1) *Texas Rule of Civil Procedure 165a* and *(2)* the trial court's inherent

[1] Appellees include Arrowhead Lakes Property Owners, Inc., Harry E. Curry, Cheryl Snoe, Christen K. Arnold as Executrix of the Estate of Carolyn Williams, Rose Coker, Shirley Ann Spain Gaylord as Heir of Alta Partin, Marshall Harold Beleau as Executrix of the Estate of Harold Beleau, Virgil Gorden, Roy Rutherford, Olaf Lovett, and Jeannine Fastow as Executrix of the Estate of Theodore Edward Spornhauer.

Nicole Mitchell

authority. *TEX. R. CIV. P. 165a*; *Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630, 42 Tex. Sup. Ct. J. 662 (Tex. 1999)*; *Steward v. Colonial Cas. Ins. Co., 143 S.W.3d 161, 163-64 (Tex. App.--Waco 2004, no pet.)*; *Binner v. Limestone County, 129 S.W.3d 710, 712 (Tex. App.--Waco 2004, pet. denied)*. A trial court may dismiss a suit under *Rule [**4] 165a* when (1) a party fails to appear for a trial or hearing or (2) when a suit is not disposed of within the time standards given by the Supreme Court. *TEX. R. CIV. P. 165a(1), (2)*; *Steward, 143 S.W.3d at 163-64*. Independent of the rules of civil procedure, a trial court may also dismiss a suit under the inherent authority given to it by common law. *Villarreal, 994 S.W.2d at 630*; *Steward, 143 S.W.3d at 163-64*. **HN2**[↑] The Dueitts did not request findings of fact or conclusions of law, and the trial court did not specify the standard of dismissal used. Therefore, we must affirm on the basis of any legal theory supported by the record. *Vickery v. Comm'n for Lawyer Discipline, 5 S.W.3d 241, 252 (Tex. App.--Houston [14th Dist.] 1999, pet. denied)* (citing *Worford v. Stamper, 801 S.W.2d 108, 109, 34 Tex. Sup. Ct. J. 96 (Tex. 1990))*.

**HN3**[↑] We review a dismissal for want of prosecution under an abuse-of-discretion standard. *State v. Rotello, 671 S.W.2d 507, 509, 27 Tex. Sup. Ct. J. 407 (Tex. 1984)*; *In re Marriage of Seals, 83 S.W.3d 870, 873 (Tex. App.--Texarkana 2002, no pet.)*. A trial court abuses its discretion **[**5]** when it acts "without reference to any guiding rules or principles," or, stated another way, when the trial court acts in an arbitrary and unreasonable manner. *City of San Benito v. Rio Grande Valley Gas Co., 109 S.W.3d 750, 757, 46 Tex. Sup. Ct. J. 861 (Tex. 2003)* (quoting *Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242, 29 Tex. Sup. Ct. J. 88 (Tex. 1985))*.

**HN4**[↑] A party must be provided with notice and an opportunity to be heard before a trial court may dismiss a case for want of prosecution under either *Rule 165a* or its inherent power. *See TEX. R. CIV. P. 165a(1)* **HN5**[↑] ] ( "Notice of the court's intention to dismiss and the date and place of the dismissal hearing shall be sent by the clerk to each attorney of record, and to each party not represented by an attorney."); *Villarreal, 994 S.W.2d at 630*; *Smith v. McKee, 145 S.W.3d 299, 302 (Tex. App.--Fort Worth 2004, no pet.)*. **HN6**[↑] The requirements of notice and a hearing are necessary to ensure the dismissed claimant has received due process. *Smith, 145 S.W.3d at 302*; *Tex. Sting Ltd. v. R.B. Foods, Inc., 82 S.W.3d 644, 648 (Tex. App.--San Antonio 2002, pet. denied)*; **[**6]** *Franklin v. Sherman Indep. Sch. Dist., 53 S.W.3d 398, 401 (Tex. App.--Dallas 2001, pet. denied)*.

The failure to provide adequate notice of the trial court's intent to dismiss for want of prosecution requires reversal. *Villarreal, 994 S.W.2d at 630-31*; *Smith, 145 S.W.3d at 302*. However, participation in a hearing on a motion to reinstate cures any due process concerns for the failure to provide notice of intent to dismiss. *Manning v. North, 82 S.W.3d 706, 715 (Tex. App.--Amarillo 2002, no pet.)*; *Tex. Sting, Ltd, 82 S.W.3d at 648-49*.

The Dueitts argue that they received no adequate notice of the trial court's intent to dismiss their case because the notice was promulgated by Appellees and not the trial court itself. They argue that Appellees' motion to dismiss was only sufficient to inform the Dueitts of the Appellees intentions, and gave no indication of the trial court's intentions. They argue that Appellees cannot give notice of the trial **[*738]** court's intentions, but that the trial court must give notice of its own intentions.

However, **HN7**[↑] ] dismissal for want of prosecution may be obtained by motion of the **[**7]** trial court or on motion of any party to the suit. *Sierra Club v. Tex. Comm'n. on Envtl. Quality, No. 03-04-00108-CV, 2005 Tex. App. LEXIS 454, *5 (Tex. App.--Austin, Jan. 21, 2005)* (not designated for publication) ("Contrary to appellants' arguments, the *rule 165a* reinstatement procedure applies to all dismissals for want of prosecution, regardless of whether they are initiated by the court or motion of a party."); *Polk v. Southwest Crossing Homeowners Ass'n, 165 S.W.3d 89, 92-93 (Tex. App.--Houston [14th Dist.] 2005, pet. filed)* (trial court granted Appellees' motion to dismiss for want of prosecution); *Harvey v. Wetzel, No. 03-03-00608-CV, 2004 Tex. App. LEXIS 6818, *12 (Tex. App.--Austin, July 29, 2004, no pet.)* (not designated for publication) (affirming the trial court's granting of Appellee's motion to dismiss for want of prosecution); *Wright v. Tex. Dep't of Crim. Justice-Institutional Div., 137 S.W.3d 693, 694 (Tex. App.--Houston [1st Dist.] 2004, no pet. h.)* (Appellee filed a motion to dismiss for want of prosecution); *Manning, 82 S.W.3d at 712* (Appellee filed a motion to dismiss for **[**8]** want of prosecution).

The Dueitts also argue that Appellees' motion and the trial court's notice were inadequate because it did not inform them of the trial court's intention to dismiss or of the authority under which the case might be dismissed.

Appellees filed their motion to dismiss on April 14, 2004. The Dueitts filed a response to Appellees' motion on April 21. The trial court's notice of a hearing was filed on May 14. The notice informed the Dueitts that a hearing would be held on Appellees' motion to dismiss and gave

the time and place for the hearing. The Dueitts argue that the trial court's reference to Appellees' motion in its notice was not sufficient to inform them of the trial court's intent to dismiss the Dueitts because Appellees' motion requests that Appellees, not the Dueitts, be dismissed with prejudice. In the introductory statement of Appellees' motion, it states that Appellees "move[] this Court for an order dismissing [Appellees] with prejudice." However in body of the motion, Appellees argue that the Dueitts' case should be dismissed because the Dueitts failed to prosecute their case with due diligence and reminds the trial court that the action has been **[\*\*9]** pending on the docket for over thirteen years with no affirmative action on the case since February 2001. Appellees also state in the motion that this time period is outside the time standards promulgated by the Texas Supreme Court and asks the trial court to "order the dismissal of Plaintiffs' action with prejudice." Further, in their response to Appellees' motion, filed before the trial court's notice was sent, the Dueitts argue that their cause should not be dismissed under the trial court's inherent power because they have not been delinquent in prosecuting their case.

*HN8*[⬆] All that due process requires is that a party be given notice of the time and substance of the hearing, and an opportunity to present arguments at the hearing. *Smith, 145 S.W.3d at 302*; *Tex. Sting, 82 S.W.3d at 648*. The notice referencing Appellees' motion to dismiss was sufficient to inform the Dueitts of the time and the substance of the hearing, namely that the hearing would concern the potential dismissal of their cause for want of prosecution. The hearing was held, and the Dueitts presented their arguments to the trial court which the court ultimately **[\*739]** rejected. As for the absence **[\*\*10]** of reference in the motion to the authority the trial court would use to dismiss the cause, we have held that "a dismissal notice containing no reference to *Rule 165a* or the court's inherent authority [is] sufficient to put the appellant on notice that the court could dismiss under *Rule 165a(1)*, *Rule 165a(2)*, or its inherent authority." *Steward, 143 S.W.3d at 164* (citing *Binner, 129 S.W.3d at 712*). The Dueitts were given adequate notice that their cause could be dismissed by the trial court for want of prosecution and participated in the hearing, thus receiving due process. Accordingly, we overrule the Dueitts' issues one through four.

*No Abuse of Discretion in Dismissing the Dueitts' Case*

The Dueitts argue in their fifth issue that the trial court abused its discretion in determining that they did not prosecute their case with due diligence.

*HN9*[⬆] In determining under its inherent authority whether a party has demonstrated a lack of diligence in prosecuting a claim, a trial court may consider the entire history of the case; including the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, **[\*\*11]** and the existence of reasonable excuses for delay. *Scoville v. Shaffer, 9 S.W.3d 201, 204 (Tex. App.--San Antonio 1999, no pet.)*; *King v. Holland, 884 S.W.2d 231, 237 (Tex. App.--Corpus Christi 1994, writ denied)*. No single factor is dispositive, and a belated trial setting or stated readiness to proceed to trial does not conclusively establish diligence. *Ozuna v. Southwest Bio-Clinical Laboratories, 766 S.W.2d 900, 902 (Tex. App.--San Antonio 1989, writ denied)*.

The Dueitts argue that we should perceive this case as composed of two phases. The first phase begins at the filing of the suit in 1990 and ends at the denial of the Dueitts' partial summary judgment in 1998. The Dueitts argue that in this phase it is clear that the trial court did not believe that they failed to use due diligence, or it would have taken action to dismiss the case in 1998. Therefore, the Dueitts argue that Appellees are wrong to include this eight-year span to support its argument that the Dueitts have not exercised due diligence for thirteen years. In the second phase, the Dueitts argue that a delay in setting a trial date was unavoidable due to the sequential **[\*\*12]** deaths of four of the Appellees, and that the Dueitts exercised due diligence in this phase by serving the representatives of the deceased Appellees' estates.

Indeed the Dueitts are correct that in this second phase the record reflects activity from the Dueitts regarding the deaths of the four Appellees and the filing of scire faciases. The Dueitts cite *Brown v. Prairie View A&M Univ.* in support of their argument that they exercised reasonable diligence in the second phase by serving the respective representatives of the estates. *630 S.W.2d 405, 412-13 (Tex. App.--Houston [14th Dist.] 1982, writ ref'd n.r.e.)*. In *Brown*, the Fourteenth Court of Appeals reversed the trial court's dismissal for want of prosecution for a twenty-eight month delay in making the representative of the deceased a party because the record showed due diligence. *Id.* However in *Brown*, the case was set for trial when the death occurred, and during the twenty-eight month delay the court noted that the plaintiff had not let the case lie dormant, but had filed two amended petitions and had responded to a motion for summary judgment. *Id.*

Nicole Mitchell

In this case, the first Appellee died in 1999 **[\*\*13]** and the representative of his estate filed an answer in that same year. No activity occurred until the next Appellee **[\*740]** died in 2002. While the Dueitts did as the law required after the death of each Appellee, no other affirmative action was taken on the case. At the hearing on Appellees' motion, counsel for the Dueitts admitted that in thirteen years he had never requested a trial setting. While the Dueitts argue that their cause should be considered as two separate phases, *HN10*[⬆] we may consider the entire history of the case, including the length of time the case has been on file. *Scoville, 9 S.W.3d at 204*. Therefore, we find that the trial court did not abuse its discretion in dismissing the Dueitts' case under its inherent authority for want of prosecution when the case was on file for over thirteen years with no request for a trial setting. *Harvey, 2004 Tex. App. LEXIS 6818 at \*12* (record supported dismissal for lack of prosecution, under court's inherent authority, based on plaintiff's failure to set trial date over nine-month period without a reasonable excuse, coupled with the forty-two-month time that the case was on file); *Manning, 82 S.W.3d at 713-14* **[\*\*14]** (eight and one-half years "is sufficient to establish a rebuttable presumption that appellants have not prosecuted the suit with due diligence"); *3V, Inc. v. JTS Enterprises, Inc., 40 S.W.3d 533, 541 (Tex. App.--Houston [14th Dist.] 2000, no pet.)* *HN11*[⬆] ("When an unreasonable delay in the prosecution of a case occurs, it is presumed that the case has been abandoned. If that delay is not sufficiently explained, the presumption of abandonment is conclusive and the case will be dismissed."). We overrule the Dueitts' fifth issue.

*Failure to Hold a Hearing on the Motion to Reinstate was Harmless*

The Dueitts argue in their seventh issue that the trial court erred in failing to hold a hearing on their motion to reinstate.

*HN12*[⬆] "The same reinstatement procedures and timetable are applicable to all dismissals for want of prosecution including cases which are dismissed pursuant to the court's inherent power, whether or not a motion to dismiss has been filed." *Smith, 145 S.W.3d at 305-06* (citing *TEX. R. CIV. P. 165a(4)*); *Sierra Club, 2005 Tex. App. LEXIS 454, \*5*. *Rule 165a(3)* provides that a judge "shall set a hearing" **[\*\*15]** on a motion to reinstate as soon as practicable and notify all parties or their attorneys of record of the date, time, and place of the hearing. *TEX. R. CIV. P. 165a(3)*. The rule is mandatory, and the trial court has no discretion about whether to set a hearing on the motion. *Thordson v. City of Houston, 815 S.W.2d 550, 550, 34 Tex. Sup. Ct. J. 830 (Tex. 1991)* ("It [is] not within the discretion of the trial court to fail to hold an oral hearing on the motion to reinstate."); *Smith, 145 S.W.3d at 305-06* ("It is not within the discretion of the trial court to fail to hold an oral hearing on a timely-filed, properly verified motion to reinstate.") *Matheson v. Am. Carbonics, 867 S.W.2d 146, 147-48 (Tex. App.--Texarkana 1993, no writ)* ("Whether or not the movant requests a hearing on a motion to reinstate is irrelevant; a hearing is required unless waived."). Therefore, the trial court abused its discretion in failing to hold a hearing on the Dueitts' motion to reinstate.

We now turn to whether the trial court's failure to hold a hearing is harmless. *TEX. R. APP. P. 44.1*; *see In re J.F.C., 96 S.W.3d 256, 274, 46 Tex. Sup. Ct. J. 328 (Tex. 2002)* **[\*\*16]** *HN13*[⬆] ("Appellate courts should not reverse a trial court's judgment in violation of *Rule 279* any more than appellate courts should reverse a trial court's judgment for error that was harmless. *Rule 279* applies just as *Texas Rule of Appellate Procedure 44.1* applies."); *In re J. B., 93 S.W.3d 609, 615 (Tex. App.--Waco 2002, pet. denied)* (conducting a harm analysis for violation of *Rule 245*); *4M Linen & Uniform Supply Co., Inc. v.* **[\*741]** *W. P. Ballard & Co., Inc., 793 S.W.2d 320, 324 (Tex. App.--Houston [1st Dist.] 1990, writ denied)* (conducting a harm analysis for violation of *Rule 52*). The trial court's error requires reversal if it probably caused the rendition of an improper judgment or probably prevented the Dueitts from properly presenting their case to the court of appeals. *TEX. R. APP. P. 44.1(a)*; *In re J. B., 93 S.W.3d at 615*.

*HN14*[⬆] "The motion to reinstate is the failsafe to prevent cases that fall into any of the three categories from being improperly dismissed." *Binner, 129 S.W.3d at 713*. The motion to reinstate ensures that the dismissed party has received due process, because **[\*\*17]** participation in the reinstatement hearing cures any due process concerns. *Steward, 143 S.W.3d at 165*; *Binner, 129 S.W.3d at 713*; *Manning, 82 S.W.3d at 715*; *Tex. Sting, 82 S.W.3d at 649-50*. Yet, we have already determined that the Dueitts received due process. The Dueitts received adequate notice and substance of the hearing on the motion to dismiss, and had the opportunity to respond at the hearing, which is all that due process requires. *Smith, 145 S.W.3d at 302*; *Tex. Sting, 82 S.W.3d at 648*. Therefore, all due process concerns were eliminated before the Dueitts filed their motion to reinstate. If participation in a motion to

reinstate cures any due process error in the original hearing on the motion to dismiss, we do not see why the reverse should not also be true. *See Manning, 82 S.W.3d at 715*; *Tex. Sting, 82 S.W.3d at 648-49*. If due process was achieved in the original hearing on the motion to dismiss, then the failure to hold a hearing on the motion to reinstate was harmless.

Furthermore, the Dueitts did not promulgate any new arguments or advocate **[**18]** the discovery of new evidence supporting their claims in their motion to reinstate. The Dueitts argued the same issues in their motion to reinstate that they argued in the hearing on the motion to dismiss. In the hearing on the motion to dismiss, the Dueitts argued that (1) Appellees' motion to dismiss was inadequate to inform them of the trial court's intentions; (2) that Appellees did not have standing to move the court to dismiss the Dueitts for want of prosecution; (3) that they received no notice that the trial court intended to dismiss their case for want of prosecution; and (4) that they exercised due diligence in prosecuting their case because of the numerous filings of scire faciases. These same issues were present in the Dueitts' motion to reinstate. No new arguments were before the trial court. The failure to hold a hearing did not cause a rendition of an improper judgment because the case was on file for over thirteen years, there was an admission from the Dueitts' counsel that he had never requested a trial setting, and the Dueitts offered no new evidence, only their claim that they exercised due diligence by filing a scire facias after each Appellee's death. Nor could **[**19]** the failure to hold a hearing prevent the Dueitts from presenting their case on appeal because the Dueitts argue these same issues on appeal. Therefore, we find that the failure to hold a hearing on the Dueitts' motion to reinstate was harmless. *TEX. R. APP. P. 44.1(a)*; *In re J. B., 93 S.W.3d at 615*. We overrule the Dueitts' seventh issue.

*Any Error in Taxing Costs Against the Dueitts was not Properly Preserved*

The Dueitts argue in their sixth issue that the trial court abused its discretion by taxing all costs against them because this created an adjudication of the merits, which is an action not allowed in a dismissal for want of prosecution. It is true that a dismissal for want of prosecution cannot be a decision on the merits of the case. *Bird v. Kornman, 152 S.W.3d 154, 161 **[*742]** (Tex. App.--Dallas 2004, pet. denied)*.

However, the Dueitts failed to argue this issue in their

motion to reinstate. *HN15*[⬆] If a trial court's involuntary dismissal order mistakenly adjudicates the case on the merits by dismissing the suit with prejudice or by stating that the plaintiff "take nothing," the error must be challenged in a timely filed **[**20]** motion to reinstate or motion for new trial. If not, the error is waived. *Id.* (citing *El Paso Pipe & Supply Co. v. Mt. States Leasing, Inc., 617 S.W.2d 189, 190, 24 Tex. Sup. Ct. J. 466 (Tex. 1981))* ("However, the error in dismissing a case with prejudice cannot be raised for the first time on appeal and must be presented to the trial court."); *Labrie v. Kenney, 95 S.W.3d 722, 728-29 (Tex. App.--Amarillo 2003, no pet.)* (stating error in improper dismissal for want of prosecution is "subject to waiver if the trial court is not given an opportunity to correct it or if the question is not properly raised on appeal"); *Andrews v. ABJ Adjusters, Inc., 800 S.W.2d 567, 568 (Tex. App.--Houston [14th Dist.] 1990, writ denied)* (noting argument that dismissal for want of prosecution "with prejudice" was improper but argument could be waived on appeal). Therefore, because we find that this issue was not properly preserved for appeal, we overrule the Dueitts' sixth issue. *See TEX. R. APP. P. 33.1*.

## Conclusion

Having overruled all of the Dueitts' issues, we affirm the trial court's order.

FELIPE REYNA

**[**21]** Justice

---

**End of Document**

# [*Fedco Oil Co. v. Pride Refining Co.*](#)

Court of Appeals of Texas, Fourteenth District, Houston

March 29, 1990

No. B14-89-00470-CV

### Reporter

787 S.W.2d 572 *; 1990 Tex. App. LEXIS 696 **

FEDCO OIL COMPANY and DON R. BILLINGSLEY, Appellants, v. PRIDE REFINING COMPANY, INC., CEFOR HOLDINGS CORP., DAVID JONES and JIMMY R. MOORIS, Appellees

**Prior History: [**1]** On Appeal from the 165th District Court, Harris County, Texas, Trial Court Cause No. 80-29437, Kenneth D. Harrison, Judge.

## Core Terms

trial court, want of prosecution, plea in abatement, cause of action, Oil, trial judge, abatement, appellees, damages

## Case Summary

### Procedural Posture

Appellant oil company sought review from the 165th District Court, Harris County (Texas), which dismissed its causes of action against appellee refining company for want of prosecution. Appellant asserted that the dismissal order was based on its failure to comply with a previous order abating the lawsuit, rather than on want of prosecution.

### Overview

Appellant oil company was involved in a complex and lengthy litigation against appellee refining company arising out of the breach of contract in the sale and purchase of crude oil. The trial court dismissed appellant's causes of action against appellee for want of prosecution. Appellant sought review and asserted the dismissal order was based on failure to comply with a previous order abating the lawsuit rather than on want of prosecution. On appeal, the court found there was almost constant activity until the day the trial judge dismissed the case for want of prosecution. The court determined that the trial court abused its discretion in dismissing appellant's causes of action for want of

prosecution as the record unquestionably showed that appellant was making a diligent effort to get the case to trial, and that trial had actually been set for the case. Therefore, the court reversed the judgment and remanded the case to the trial court.

### Outcome

The court reversed the judgment which dismissed appellant oil company's case against appellee refining company and remanded the case because the trial court abused its discretion in dismissing appellant's causes of action for want of prosecution. This was because there was almost constant activity until the day the trial judge dismissed the case and the record showed that appellant was making a diligent effort to get the case to trial.

## LexisNexis® Headnotes

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

Civil Procedure > Dismissal > Involuntary Dismissals > Motions

*HN1*[⬇] **Involuntary Dismissals, Failure to Prosecute**

In passing upon a motion to dismiss for want of prosecution, the trial court is entitled to consider the entire history of the case.

**Counsel:** Marc D. Murr of Houston, Texas, for appellants.

Randall L. Brim, Robert H. Singleton, Jr., Eugene B. Wilshire, Jr., Beverly Arleen Sandifer of Houston, Texas, for appellees.

**Judges:** Justices Sam Robertson, Draughn and Jackson B. Smith, Jr., retired Justice.

**Opinion by:** ROBERTSON

# Opinion

 [*573] This appeal is from an order dismissing appellants' causes of action "for want of prosecution." Appellants assert the dismissal order, in reality, is based on their failure to comply with a previous order abating the lawsuit as to Fedco Oil Company rather than on want of prosecution. Counsel for all parties to the lawsuit, at oral submission, simplified the question for our consideration by agreeing that the sole issue is whether the trial court abused its discretion in dismissing the causes of action for want of prosecution. Finding error in the trial court's action, we reverse the judgment and remand the cause to the trial court.

While the issue has been simplified by the agreement of counsel, it is nevertheless necessary to recite some of the trial [**2] court history of this case, spanning in excess of 750 pages, as reflected by the district clerk's transcript. Recitation of the case history is necessary to a review of the trial court's decision because *HN1*[⬆] in passing upon a motion to dismiss for want of prosecution, the trial court is entitled to consider the entire history of the case. *Moore v. Armour & Co., 660 S.W.2d 577, 578* (Tex. App.--Amarillo 1983, no writ).

Fedco Oil Company filed its original petition against Pride Refining Company, Inc., a foreign corporation, in June, 1980. The basis for the suit was breach of contract in the sale and purchase of crude oil. Following discovery, the trial court, in November and December, 1982, denied both parties' motions for summary judgment.

This case first appeared on the trial court's dismissal docket in March, 1985, at which time the then presiding trial judge, who was suffering from a terminal illness, granted appellant's motion to retain. We note that appellants state in their brief, and appellees do not deny, that this illness of the trial judge explained "in part, the long delay apparent between the filing and attempted trial of this lawsuit." The case again appeared on the [**3] dismissal docket in March, 1986, and the new trial judge, who replaced the previous trial judge, again granted appellant's motion to retain. Appellant then filed a motion for preferential setting certifying the case was ready for trial, to which appellee filed a motion in opposition.

On December 15, 1986, appellee Pride Refining Co. filed a plea in abatement alleging Fedco's charter to do business in the State of Texas had been forfeited for failure to pay franchise taxes. On the same day, appellants filed their third amended petition adding Billingsley as a plaintiff and alleging damages to Fedco's reputation and business in addition to damages for breach of contract.

On December 30, 1986, the trial court granted appellants' motion for preferential setting, ordering that the case "be set preferentially for trial at the first available trial date." While the transcript does not reveal when the case was actually set, the parties agreed during oral submission that the case was first set on the docket for trial on February 2, 1987.

On January 2, 1987, CEFOR Holdings Corp. (CEFOR), as successor to Pride Refining Company (Pride), filed a motion to [*574] stay proceedings because [**4] it had forfeited its corporate charter by failing to pay franchise taxes, and because its assets had become the assets of its stockholder, Seatrain Lines, Inc., which was in bankruptcy. Ten days later, CEFOR filed a plea in abatement alleging: (1) that the name of Pride Refining, Inc. had been changed to CEFOR Holdings Corp.; (2) that although Pride was originally served as a Delaware corporation, it was later changed to a Texas corporation and, therefor, had not been properly served in the case; and (3) that Fedco and Billingsley lacked standing to bring the cause of action because of the forfeiture of Fedco's charter. Also on January 2, 1987, Pride filed a counterclaim against Fedco and Billingsley which was later stayed because Billingsley filed for bankruptcy.

Following Fedco's response to the plea in abatement, the trial court, on February 2, 1987, signed an order abating all "claims, demands and causes of action asserted by FEDCO Oil Company . . . until such time as FEDCO Oil Company . . . comply (sic) with the taxation provisions of the State of Texas." The trial judge specifically interlined and deleted all provisions of the order which would have prohibited Billingsley from [**5] pursuing the causes of action.

On May 12, 1988, Fedco and Billingsley filed their fourth amended petition naming David Jones and Jimmy R. Morris, officers of Pride, as additional defendants.

Nicole Mitchell

Appellants alleged these parties were liable for damages because they had purchased Pride's primary asset with notice of the pending lawsuit, thereby defrauding appellants. In addition to all other damages, exemplary damages were sought.

On July 5, 1988, appellants filed a demand for jury trial and on August 18, 1988, the trial court set the case for trial "for the two week docket period commencing Monday, September 19, 1988." The written notice of the trial setting further provided: "If this case is not reached during this docket setting, it will be reset by the court for approximately 90 days."

On July 15, 1988, appellees Morris and Jones filed a plea in abatement alleging that both Fedco and Billingsley lacked standing to bring the action. The trial court, on December 5, 1988, ordered "that the Plea in Abatement filed by defendants Jimmy R. Morris and David Jones be and the same is hereby GRANTED."

On December 9, 1988, appellants filed a request for entry of final judgment which recited:

 [**6]  Plaintiffs Fedco Oil Company and Don Billingsley request that this Court enter a Final Judgment merging this Court's previous orders granting Defendants' Pleas in Abatement, pursuant to *TEX. R. CIV. P. 301*. Plaintiffs, by this Request, do not agree with and expressly oppose the Court's dispositions of Defendants' Pleas in Abatement and Motion for Protection. However, in order to pursue an appeal of this case and at the Court's suggestion, Plaintiffs for that limited purpose have filed this procedural Request.

A suggested form of Order is attached for the Court's convenience.

The judge did not sign the suggested order. Twelve days later, appellees, Pride and CEFOR, filed their "Motion to Dismiss for Want of Prosecution," reciting that their plea in abatement had been previously granted, that Fedco had made no attempt to reinstate its charter, and that "this case is over eight years old and should be dismissed for want of prosecution." Appellants filed a response to the motion to dismiss. On January 23, 1989, however, the trial judge signed an order dismissing for want of prosecution all causes of action asserted by Fedco Oil Company and Don Billingsley against Pride Refining, [**7] Inc., David Jones, Jimmy R. Morris, and CEFOR Holdings Corp. and ordering that "all costs of court incurred herein shall be borne by Plaintiffs." The extensive pleadings referred to above are illustrative of only some of the activity in this case.

The record before this court shows, without contradiction, that from the time the former judge of the 165th District Court was replaced, and the current judge signed the April, 1986, order granting the motion to retain, there was almost constant activity [*575] until the day the trial judge dismissed the case for want of prosecution. Following the second order to retain, plaintiff immediately moved for a preferential trial setting which was opposed by the defendants. The case was nonetheless prefrentially set first on the trial docket for February 2, 1987, but was removed because of pleadings filed by defendants. The case was again set for trial for the two week period beginning September 19, 1988.

In *Moore v. Armour & Co., 660 S.W.2d 577* (Tex. App.--Amarillo 1983, no writ), the court held that the trial judge abused his discretion in dismissing a case for want of prosecution where, at the time of the dismissal hearing, the plaintiff [**8] had announced ready for trial and had secured a trial setting or was otherwise making a diligent effort to get the case to trial. *Id. at 578*. We agree with this reasoning. *See also Rorie v. Avenue Shipping Co., 414 S.W.2d 948, 954* (Tex. Civ. App.--Houston [1st Dist.] 1967, *writ ref'd n.r.e); William T. Jarvis Co. v. Wes-Tex Grain Co., 548 S.W.2d 775, 778* (Tex. Civ. App.--Waco 1977, writ ref'd n.r.e). Accordingly, in the instant case, we find the trial court abused its discretion in dismissing appellants' causes of action for want of prosecution where this record unquestionably shows that appellant Billingsley was making a diligent effort to get the case to trial, and that trial settings had twice been secured for the case.

Appellees argue that Billingsley's continual inclusion of Fedco Oil Company as a named plaintiff in all the instruments filed with the court (after the plea in abatement as to Fedco had been sustained) was sufficient justification for the trial court to order dismissal for want of prosecution. We are not impressed with this argument. The effect of the non-jurisdictional abatement of the cause of action as to Fedco was only to suspend further action [**9] until the cause for abatement had been corrected. *Continental Contractors, Inc. v. Thorup, 578 S.W.2d 864, 866* (Tex. Civ. App.--Houston [1st Dist.] 1979, no writ). Further, the trial court specifically refused to abate Billingsley's cause of action against Pride and CEFOR. We therefore hold that the trial court erred in granting appellees' motion to dismiss the cause for want of prosecution. Because of this holding, we need not discuss appellants' contentions concerning

denial of constitutional rights and violation of the United States Bankruptcy Code.

We reverse the judgment below, and remand the cause to the trial court.

Panel consists of Justices Sam Robertson, Draughn and Jackson B. Smith, Jr, retired Justice, (sitting by designation).

---

**End of Document**

⬥ Positive
As of: March 23, 2018 5:02 PM Z

# *In re Conner*

Supreme Court of Texas

March 20, 2015, Opinion Delivered

NO. 14-0177

## Reporter

458 S.W.3d 532 *; 2015 Tex. LEXIS 272 **; 58 Tex. Sup. J. 579

IN RE MICHAEL ALLYN CONNER AND IESI SOLID WASTE SERVICES, RELATORS

**Prior History:** *In re Conner, 2014 Tex. App. LEXIS 659 (Tex. App. Dallas, Jan. 22, 2014)*

## Core Terms

trial court, want of prosecution, mandamus

## Case Summary

### Overview

HOLDINGS: [1]-Court abused its discretion in denying the motion to dismiss because the suit well exceeded the time frame under *Tex. R. Jud. Admin. 6.1(b)(1)* and the plaintiffs' failure to provide good cause for their nearly decade-long delay mandated dismissal under *Tex. R. Civ. P. 165a(2)*; a trial court abuses its discretion by refusing to grant a motion to dismiss for want of prosecution in the face of unmitigated and unexplained delay.

### Outcome
Writ conditionally granted.

## LexisNexis® Headnotes

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

**HN1[⬇]** **Involuntary Dismissals, Failure to Prosecute**

A plaintiff has a duty to prosecute a suit to a conclusion with reasonable diligence, failing which a trial court may dismiss for want of prosecution under *Tex. R. Civ. P. 165a(1)*, *(2)*.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Governments > Courts > General Overview

Evidence > Inferences & Presumptions > Presumptions > Creation

**HN2[⬇]** **Involuntary Dismissals, Failure to Prosecute**

Trial courts are generally granted considerable discretion when it comes to managing their dockets. Such discretion, however, is not absolute. A delay of an unreasonable duration, if not sufficiently explained, will raise a conclusive presumption of abandonment of a plaintiff's suit. This presumption justifies a dismissal of the suit under either a court's inherent authority or *Tex. R. Civ. P. 165a(1)*, *(2)*.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

**HN3[⬇]** **Involuntary Dismissals, Failure to Prosecute**

Under *Tex. R. Civ. P. 165a*, there are two grounds for dismissal for want of prosecution. One is when a party seeking affirmative relief fails to appear for any hearing or trial of which the party has notice. *Tex. R. Civ. P 165a(1)*. In such cases, a court shall dismiss unless there is good cause for a case to be maintained on a docket. Another is when the case is not disposed of within the time standards promulgated by the Texas Supreme Court. *Tex. R. Civ. P. 165a(2)*. And while *Rule*

*165a(2)* does not refer to *Rule 165a(1)*'s procedural requirements, including notice and a hearing, neither does it suggest a basis for deviating from those procedures.

Civil Procedure > Trials > Jury Trials > Jury Demands

Family Law > General Overview

Governments > Courts > General Overview

*HN4*[⤓]  **Jury Trials, Jury Demands**

The Texas Rules of Judicial Administration require district and statutory county courts to ensure, so far as reasonably possible, that civil cases in which a jury is demanded, other than those arising under the Family Code, are brought to trial or final disposition within eighteen months of an appearance date. *Tex. R. Jud. Admin. 6.1(b)(1)*.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Civil Procedure > Appeals > Standards of Review > Reversible Errors

Civil Procedure > ... > Writs > Common Law Writs > Mandamus

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > General Overview

*HN5*[⤓]  **Standards of Review, Abuse of Discretion**

A clear failure by a trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. Mandamus will issue to correct such an abuse of discretion when there is no adequate remedy by appeal. The trial court's erroneous refusal to dismiss a case for want of prosecution under *Tex. R. Civ. P. 165a(1)*, *(2)* cannot effectively be challenged on appeal. A defendant should not be required to incur the delay and expense of appeal to complain of delay in the trial court. To deny relief by mandamus permits the very delay dismissal is

intended to prevent. Possibilities for error multiply rapidly as time elapses between an original fact and its judicial determination.

**Counsel:** For Crystal G. Peel, Donald L. Peel, Real Parties in Interest: J. S. Freels Jr, J. S. Freels, Jr., P.C., Sherman, TX.

For Michael Allyn Conner, IESI Solid Waste Services, Relators: Bryan Kyle Briscoe, The Peavler Group, P.C., Dallas, TX; Daron L. Janis, Kirsten M. Castaneda, Locke Lord LLP, Dallas, TX; Donna C. Peavler, The Peavler Group, P.C., Dallas, TX; Mike A. Hatchell, Locke Lord LLP, Austin, TX.

# Opinion

 **[*534]   [**1]** ON PETITION FOR WRIT OF MANDAMUS

**PER CURIAM**

*HN1*[⬆]  A plaintiff has a duty to "prosecut[e] the suit to a conclusion with reasonable diligence," failing which a trial court may dismiss for want of prosecution. *Callahan v. Staples, 139 Tex. 8, 161 S.W.2d 489, 491 (Tex. 1942)*. The issue here is whether a trial court abuses its discretion by refusing to grant a motion to dismiss for want of prosecution in the face of unmitigated and unexplained delay. We hold that it does.

In December 2002, Donald and Crystal Peel were traveling in their van along a highway when they were struck by a truck driven by Michael Conner and owned by his employer, IESI Solid Waste Services. One day short of two years later, the Peels sued Conner and IESI (collectively "Conner") for damages. Conner timely answered and requested discovery, but the Peels did not respond. In June 2007, two months before a trial setting, Conner moved for summary judgment. The Peels responded. The trial setting was cancelled, and the motion was never heard.

By September 2011, the Peels had taken no other action to advance the case, and Connor moved to dismiss for want of prosecution. The Peels responded that the delay was due to their counsel's health issues, including a stroke requiring hospitalization and, later, bypass **[**2]** surgery. The Peels did not indicate when counsel's health issues had occurred. The trial court refused to dismiss the case.

In October 2013, when the Peels had still done nothing

to pursue their claims, Conner again moved to dismiss for want of prosecution. At the hearing on the motion, the Peels offered no other excuse for their delay than they had before. Conner cited court records showing that the Peels' counsel had appeared in many different matters in the prior two years. The trial court again refused to dismiss, directed the Peels to respond to Connor's discovery requests served more than eight years earlier, and set the case for trial.

Conner petitioned the court of appeals for mandamus directing the trial court to dismiss the case. The court of appeals denied relief, and Connor then petitioned this Court.

*HN2*[↑] Trial courts are generally granted considerable discretion when it comes to managing their dockets. Such discretion, however, is not absolute. It has long been the case that "a delay of an unreasonable duration . . . , if not sufficiently explained, will raise a conclusive presumption of abandonment of the plaintiff's suit." *Callahan, 161 S.W.2d at 491*. This presumption justifies the dismissal of a suit **[\*\*3]** under either a court's inherent authority or *Rule 165a* of the Texas Rules of Civil Procedure. *Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex. 1999)* (recognizing both common law source of power and rule based source of power); *see, e.g., Veterans' Land Bd. v. Williams, 543 S.W.2d 89, 90 (Tex. 1976)* (finding seven-and-one-half year delay as failing to satisfy the demands of reasonable diligence); *Denton Cnty. v. Brammer, 361 S.W.2d 198, 201 (Tex. 1962)* (same for five-year delay); *Bevil v. Johnson, 157 Tex. 621, [\*535] 307 S.W.2d 85, 88 (Tex. 1957)* (same for eight-year delay).

*HN3*[↑] Under *Rule 165a*, there are two grounds for dismissal for want of prosecution. One is when a "party seeking affirmative relief [fails] to appear for any hearing or trial of which the party had notice." *Tex. R. Civ. P 165a(1)*. In such cases, "[a] court shall dismiss . . . unless there is good cause for the case to be maintained on the docket." *Id*. The other is when a case is "not disposed of within [the] time standards promulgated by the Supreme Court." *Tex. R. Civ. P. 165a(2)*. And while *Rule 165a(2)* does not refer to *Rule 165a(1)*'s procedural requirements, including notice and a hearing, neither does it suggest a basis for deviating from those procedures.

The Peels' failure to provide good cause for their nearly decade-long delay mandates dismissal under *Rule 165a(2)*. *HN4*[↑] Our Rules of Judicial Administration require district and statutory county courts to ensure, "so far as reasonably possible," that civil cases in which **[\*\*4]** a jury has been demanded, other than those arising under the Family Code, are brought to trial or final disposition within eighteen months of the appearance date. *Tex. R. Jud. Admin. 6.1(b)(1)*. The Peels' suit well exceeded this time frame. Absent any reasonable explanation for the delay, the trial court clearly abused its discretion by disregarding the conclusive presumption of abandonment. *See Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992)* (*HN5*[↑]) "[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ."); *see also Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241—42 (Tex. 1985)*.

Mandamus will issue to correct such an abuse of discretion when there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 136 (Tex. 2004)*. A trial court's erroneous refusal to dismiss a case for want of prosecution cannot effectively be challenged on appeal. A defendant should not be required to incur the delay and expense of appeal to complain of delay in the trial court. To deny relief by mandamus permits the very delay dismissal is intended to prevent. In addition, the danger that a trial will be hampered by stale evidence and lost or clouded memories is particularly distinct after the delay in this case. *See So. Pac. Transp. Co. v. Stoot, 530 S.W.2d 930, 931 (Tex. 1975)* ("[P]ossibilities for error multiply rapidly as **[\*\*5]** time elapses between the original fact and its judicial determination.").

Accordingly, we conditionally grant the petition for writ of mandamus, and without hearing oral argument, direct the trial court to vacate its order denying Conner's motion to dismiss filed October 24, 2013, and to dismiss this suit for want of prosecution. *Tex. R. App. P. 52.8(c)*. We are confident the trial court will promptly comply, and our writ will issue only if it does not.

Opinion Delivered: March 20, 2015

---

**End of Document**

# *In re Fifty-One Gambling Devices*

Court of Appeals of Texas, Seventh District, Amarillo

September 28, 2009, Decided

NO. 07-08-0068-CV

## Reporter

298 S.W.3d 768 *; 2009 Tex. App. LEXIS 7535 **

IN THE MATTER OF FIFTY-ONE GAMBLING DEVICES, TWENTY SIX THOUSAND EIGHT HUNDRED EIGHTY DOLLARS IN UNITED STATES CURRENCY

**Subsequent History:** Rehearing overruled by *51 Gambling Devices v. State, 2009 Tex. App. LEXIS 8642 (Tex. App. Amarillo, Nov. 6, 2009)*

Petition for review denied by *In re Fifty-One Gambling Devices, 2010 Tex. LEXIS 29 (Tex., Jan. 8, 2010)*

Petition for review denied by *In re Fifty-One Gambling Devices & Twenty Six Thousand Eight Hundred Eighty Dollars in United States Currency, 2010 Tex. LEXIS 267 (Tex., Mar. 19, 2010)*

Motion for rehearing on petition for review denied by *In re Fifty-One Gambling Devices & Twenty Six Thousand Eight Hundred Eighty Dollars in United States Currency, 2010 Tex. LEXIS 456 (Tex., June 18, 2010)*

**Prior History:** [**1] FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY; NO. 56,014-B; HONORABLE JOHN B. BOARD, JUDGE.

## Core Terms

recusal motion, recusal, trial court, notice, show cause hearing, supplemental, motion to recuse, attorney's fees, machine, costs, proceeds, gambling device, forfeiture, cases, overrule, bias, tertiary, motions, argues, issues, seized, gambling, abused, forfeiture proceeding, want of prosecution, tickets, cross-appeal, deposition, asserts, gaming

## Case Summary

### Procedural Posture

Appellant, an owner of a gaming establishment, sought review of orders and a judgment from the 181st District Court of Randall County (Texas), which, after denying his motion to recuse the trial judge, forfeited gambling devices, paraphernalia, and proceeds seized from the owner's establishment. The State cross-appealed an order denying its request for attorney fees and costs.

### Overview

By the time of the show cause hearing, the owner had filed four motions to recuse the judge. The court held that *Tex. R. Civ. P. 18a(d)* did not prohibit the judge from conducting the show cause hearing because the owner had filed a tertiary recusal motion, within the meaning of *Tex. Civ. Prac. & Rem. Code Ann. § 30.016(a)*, *(b)* (2008), regardless of whether some of his motions might have been defective. Because the time limit in *Tex. R. Jud. Admin. 6(a)(2)* was discretionary, as indicated in *Tex. Gov't Code Ann. § 74.024(c)(1)*, the owner was not entitled to a dismissal for want of prosecution. Bias or appearance of partiality were not shown under *Tex. R. Civ. P. 18b(2)(a)*, *(b)* by the judge's omission of the word "alleged" from the *Tex. Code Crim. Proc. Ann. art. 18.18(b)* show cause notice or by a brief conversation in which the judge told the State's attorney what form to use. The devices did not merely award additional play under *Tex. Penal Code Ann. § 47.01(4)(B)* (2003) because a winner received cash, even if the cash was used to play other machines. An award of attorney fees and costs to the State under *Tex. Civ. Prac. & Rem. Code Ann. § 30.016(c)* (2008) was mandatory.

### Outcome

The court affirmed the judgment of the trial court, affirmed the orders denying recusal, and reversed the order that had denied the State's request for attorney fees and costs.

## LexisNexis® Headnotes

Civil Procedure > ... > Inability to Proceed > Disqualification & Recusal > General Overview

*HN1*[⬇] **Inability to Proceed, Disqualification & Recusal**

See *Tex. R. Civ. P. 18a(d)*.

Civil Procedure > ... > Inability to Proceed > Disqualification & Recusal > General Overview

*HN2*[⬇] **Inability to Proceed, Disqualification & Recusal**

See *Tex. Civ. Prac. & Rem. Code Ann. § 30.016(a)*, *(b)* (2008).

Civil Procedure > Pleading & Practice > Motion Practice > General Overview

*HN3*[⬇] **Pleading & Practice, Motion Practice**

It is the substance of a motion that determines its nature, not merely its title.

Governments > Legislation > Interpretation

*HN4*[⬇] **Legislation, Interpretation**

A court construes a statute, first, by looking to the plain and common meaning of the statute's words.

Civil Procedure > ... > Inability to Proceed > Disqualification & Recusal > General Overview

*HN5*[⬇] **Inability to Proceed, Disqualification & Recusal**

A decision not to conduct an oral hearing of a facially defective recusal motion is within the sound discretion of a judge.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN6*[⬇] **Involuntary Dismissals, Failure to Prosecute**

A trial court is empowered to dismiss a case for want of prosecution under *Tex. R. Civ. P. 165a* or through its inherent power to control its docket.

Civil Procedure > Dismissal > Involuntary Dismissals > Appellate Review

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN7*[⬇] **Involuntary Dismissals, Appellate Review**

An appellate court reviews a trial court's denial of a motion to dismiss for want of prosecution under an abuse of discretion standard.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

*HN8*[⬇] **Standards of Review, Abuse of Discretion**

A trial court abuses its discretion when it acts without reference to any guiding rules and principles.

Civil Procedure > Trials > Bench Trials

*HN9*[⬇] **Trials, Bench Trials**

According to the Texas Rules of Judicial Administration, in non-jury cases district court judges should, so far as reasonably possible, ensure that all non-family law civil cases are brought to trial or final disposition within 12 months from appearance date. *Tex. R. Jud. Admin. 6(b)(2)*.

Civil Procedure > Trials > Bench Trials

Governments > Courts > Rule Application & Interpretation

*HN10*[⬇] **Trials, Bench Trials**

According to *Tex. R. Jud. Admin. 1*, the Texas Rules of Judicial Administration are promulgated pursuant to *Tex. Gov't Code Ann. § 74.024*. *Section 74.024(c)(1)* provides that the Texas Supreme Court may consider the adoption of rules relating to nonbinding time standards for pleading, discovery, motions, and dispositions. Thus, the application of *Tex. R. Jud. Admin. 6* is discretionary and non-binding. Moreover, circumstances may preclude adherence to the standards under especially complex cases or those presenting special circumstances. *Rule 6(e)*.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > ... > Inability to Proceed > Disqualification & Recusal > General Overview

*HN11*[⬇] **Standards of Review, Abuse of Discretion**

An order denying a recusal motion is reviewed on appeal from the final judgment, applying the abuse of discretion standard. *Tex. R. Civ. P. 18a(f)*.

Civil Procedure > ... > Disqualification & Recusal > Grounds for Disqualification & Recusal > Appearance of Partiality

Civil Procedure > ... > Disqualification & Recusal > Grounds for Disqualification & Recusal > Personal Bias

*HN12*[⬇] **Grounds for Disqualification & Recusal, Appearance of Partiality**

See *Tex. R. Civ. P. 18b(2)(a)*, *(b)*.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > ... > Disqualification & Recusal > Grounds for Disqualification & Recusal > Appearance of Partiality

*HN13*[⬇] **Standards of Review, Abuse of Discretion**

An appellate court applies a reasonable person standard to determine whether denial of a recusal motion was an abuse of discretion. The inquiry, therefore, is whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial. Because this test requires courts to evaluate a motion to recuse from a disinterested observer's point of view, it seems best suited to achieve the primary purpose of *Tex. R. Civ. P. 18b(2)(a)*: avoiding the appearance of judicial bias.

Civil Procedure > Remedies > Forfeitures > Forfeiture Hearings

Civil Procedure > Remedies > Forfeitures > Probable Cause Requirements

*HN14*[⬇] **Forfeitures, Forfeiture Hearings**

A forfeiture proceeding begins with the State seeking a search warrant supported by an affidavit averring sufficient facts to satisfy the issuing magistrate that probable cause does in fact exist for its issuance. *Tex. Code Crim. Proc. Ann. art. 18.01(b)* (Supp. 2008). If the search warrant issues, it is executed by the State which conducts a search and seizure of the designated property. *Tex. Code Crim. Proc. Ann. arts. 18.06* (2005), 18.09 (Supp. 2008). If no prosecution or conviction follows the seizure, the magistrate must notify the person in possession of the property or proceeds made the subject of the search warrant to show cause why the property should not be destroyed and the proceeds forfeited. *Tex. Code Crim. Proc. Ann. art. 18.18(b)*. The show cause hearing is an adversary proceeding. In a civil forfeiture proceeding, the State satisfies its initial burden by establishing probable cause for seizing the subject property or proceeds. At the show cause hearing, therefore, the burden is on any person interested in the seized property or proceeds to prove by a preponderance of the evidence why the property is not subject to destruction or forfeiture.

Governments > Legislation > Interpretation

*HN15*[⬇] **Legislation, Interpretation**

It is the legislative branch, not the judicial, that evaluates the wisdom of legislation. Arguments that a statute is unwise or unfair must be addressed to the legislature, in the absence of a constitutional claim. Where a rule is given by an act of the legislature, courts are not at liberty to disregard it, or to attempt to avoid its effects, when applied to a state of facts contemplated by it.

Criminal Law & Procedure > ... > Miscellaneous Offenses > Gambling > General Overview

**HN16**[⬇] **Miscellaneous Offenses, Gambling**

See *Tex. Penal Code Ann. § 47.01(4)* (2003).

Criminal Law & Procedure > ... > Miscellaneous Offenses > Gambling > General Overview

**HN17**[⬇] **Miscellaneous Offenses, Gambling**

A practice of exchanging tickets for cash removes machines from the *Tex. Penal Code Ann. § 47.01(4)(B)* (2003) exclusion. While additional play in itself is not proscribed, when that additional play is accomplished by providing cash to play other machines, the statutory exclusion is not satisfied. The exclusion requires that the machine at issue reward the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items. Under the statute, once cash is awarded, it does not matter whether the player deposits the cash directly into the machine or whether an attendant performs this task. Cash to be used for play on another machine is not a noncash merchandise prize, toy, or novelty. If tickets are exchanged for cash, regardless of whether that cash is used to play another machine, the exclusion does not apply.

Governments > Courts > Judicial Precedent

**HN18**[⬇] **Courts, Judicial Precedent**

The holdings of the Texas Supreme Court are binding on an appellate court.

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

Civil Procedure > ... > Inability to Proceed > Disqualification & Recusal > General Overview

**HN19**[⬇] **Remedies, Costs & Attorney Fees**

See *Tex. Civ. Prac. & Rem. Code Ann. § 30.016(c)* (2008).

Governments > Legislation > Interpretation

**HN20**[⬇] **Legislation, Interpretation**

The term "shall" as used by statute is generally recognized as mandatory, creating a duty or obligation.

**Counsel:** Richard C. Naylor, Attorney at Law, Amarillo, TX.

Richard R. Gore, Assistant Criminal District Attorney, Canyon, TX.

**Judges:** PANEL B. Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**Opinion by:** James T. Campbell

# Opinion

 **[\*770]** This appeal arises from a forfeiture proceeding under *article 18.18 of the Code of Criminal Procedure*. [1] Through ten issues, appellant Mike Lewis [2] challenges the trial court's judgment forfeiting gambling devices, gambling proceeds and other items, and the denial of his motion to recuse the trial court judge. By cross-appeal, the State challenges denial of its request for attorney's fees and costs by the administrative judge in the recusal proceeding. We affirm the judgment of forfeiture and the denial of Lewis's recusal motion, and render an order awarding the State attorney's fees and costs.

---

[1] *Tex. Code Crim. Proc. Ann. art. 18.18* (Vernon Supp. 2008). All references to *article 18.18* in this opinion are to that article of the Code of Criminal Procedure.

[2] A suggestion of Mike Lewis's death was filed by his appellate counsel on September 24, 2009. The appeal proceeds according to the provisions of *Rule of Appellate Procedure 7.1(a)(1)*.

Background

During January 2004, as part of an undercover investigation, an officer with **[\*\*2]** the Amarillo Police Department twice entered an Amarillo gaming establishment owned by Lewis and known as "Mike's Amusements." While at the establishment, the officer played electronic games for cash.

Based on the officer's affidavit, a search warrant was issued commanding search and seizure of gambling devices, gambling paraphernalia, and proceeds derived from any gambling device at Lewis's establishment. Officers executed the warrant seizing gaming machines, cash, and other items subject to the warrant. The State sought forfeiture of the items seized. In May 2005, the Honorable John Board, judge of the 181st Judicial District Court, issued a notice to Lewis to appear and show cause on May 24 why the items seized should not be forfeited.

Lewis filed a general denial and a motion to recuse Judge Board. Judge Board declined recusal without order and forwarded the motion to the Honorable Kelly Moore, presiding judge of the administrative judicial district. Judge Moore denied the motion, and other recusal motions followed.

On November 1, 2007, Judge Board conducted a show cause hearing and at its conclusion ordered forfeiture of the seized devices and proceeds. Lewis filed two post-trial **[\*\*3]** recusal motions and on the second, the State sought an award of attorney's fees and costs according to *Civil Practice and Remedies Code section 30.016(c)*. [3] Judge Moore denied the recusal motion as well as the State's request for attorney's fees and costs. Lewis appeals the judgment of forfeiture and denial of recusal. By cross-appeal, the State appeals denial of its request for attorney's fees and costs.

Discussion

Lewis presents seven issues and three supplemental issues which we take up sequentially before discussing the State's issue on cross-appeal.

Issue One - Tertiary Recusal Motion

By his first issue, Lewis argues the trial court lacked authority to conduct the show cause hearing of November 1, 2007, because a recusal motion was pending.

The motion to recuse Judge Board to which we have referred was served on **[\*771]** May 13, 2005 (May 13 motion). [4] Lewis argued that in the trial court's *art. 18.18(b)* notice, the terms "gambling devices" and "gambling proceeds" were not qualified by the adjective "alleged." According to Lewis, this omission signaled Judge Board had "already reached a determination regarding the merits of the matters **[\*\*4]** in dispute." Judge Board did not recuse himself and forwarded the motion to Judge Moore. In an order signed May 18, Judge Moore denied the May 13 motion without a hearing because it was not verified as required by *Rule of Civil Procedure 18a(a)*. *Tex. R. Civ. P. 18a(a)*. The order was delivered to Judge Board, counsel for Lewis, and counsel for the State by facsimile on May 18.

On May 18, Lewis served a second motion to recuse (May 18 motion) that contained a jurat. The jurat, however, bore no notarial signature or seal.

On May 19, Lewis served his "Supplemental and Amended Motion to Recuse, Brief and Motion for Leave to Supplement and Amend" (May 19 motion). The May 19 motion repeated Lewis's argument for recusal under *Rule 18a* based on the claimed bias of the trial court. But it also added a denial of due process claim.

On May 20, 2005, Judge Moore conducted a telephonic hearing of Lewis's recusal motions. Exchanges on the hearing record between Judge Moore and counsel for Lewis indicate the subject of the hearing.

When Judge Moore called the motion for hearing counsel for **[\*\*5]** Lewis identified himself and announced, "I'm Mr. Lewis' attorney of record, and I'm here ready to go forward on a motion to recuse that I filed for Mr. Lewis and an amended motion."

> [Judge Moore addressing counsel for Lewis]: And I have read your original motion, your second motion that you filed that was actually verified, and your supplemental and amended motion to recuse brief and motion for leave to supplement and amend, and so I have read those in detail.
> \*\*\*
> [Counsel for Lewis]: I do want to establish that the supplemental and amended motion to recuse brief and request for leave to amend is before the Court;

---

[3] *Tex. Civ. Prac. & Rem. Code Ann. § 30.016(c)* (Vernon 2008).

[4] We identify Lewis's recusal motions by date of service to avoid confusion as two motions bear a May 20 file mark.

is that correct?

[The court]: That's what I called for hearing, yes, sir. ***

[Counsel for Lewis]: [T]hen [the May 19 motion] has a request for leave to amend within seven days of trial, meaning this trial date, of course. ***

[Judge Moore]: I've already told you, I don't consider a motion to recuse an adversary proceeding. You filed your motions within the time allowed by law, and I'm here to hear the merits of your motions.

Counsel for Lewis was sworn as a witness and addressed the theory of bias advanced by Lewis's motions for recusal.

On inquiry by Judge Moore, counsel for the **[\*\*6]** State explained he prepared the *art. 18.18(b)* notice in question at the request of Judge Board. Counsel for the State followed a form Judge Board used in an earlier case.

At the conclusion of the hearing, Judge Moore announced, "I'm going to deny the motion to recuse." This oral rendition was memorialized in a written order signed **[\*772]** May 20, stating, "Lewis' Motion to Recuse Judge is denied."

On May 20, following the telephonic hearing, Lewis served his "Second Supplemental and Amended Motion to Recuse or Alternatively, Motion for Re-consideration" (May 20 motion). By this motion, Lewis reurged the prior ground of judicial bias and added a claim of improper *ex parte* communication between Judge Board and the State's attorney. The claim was founded on the statement of the State's attorney at the hearing of May 20 that he prepared the *art. 18.18(b)* notice at Judge Board's request using a template that tracked a notice prepared by Judge Board in a prior case.

Because Judge Moore had not ruled on the May 20 motion by May 24, the scheduled date of the show cause hearing, Judge Board continued the hearing.

The kernel of Lewis's argument under this issue is the trial court lacked authority to conduct **[\*\*7]** the show cause hearing of November 1, 2007, because of the prohibition of *Rule of Civil Procedure 18a*. [5] To avoid the

---

[5] In pertinent part, *Rule 18a(d)* provides:

**HN1**[⬆] If the judge declines to recuse himself, he shall

application of *Civil Practice and Remedies Code section 30.016*, Lewis argues further that no "tertiary recusal motion," as defined by that section, was on file at the time of the hearing. We disagree.

In pertinent part, *section 30.016* provides:

**HN2**[⬆] In this section, "tertiary recusal motion" means a third or subsequent motion for recusal or disqualification filed against a district court or statutory county court judge by the same party in a case.

A judge who declines recusal after a tertiary recusal motion is filed shall comply with applicable rules of **[\*\*8]** procedure for recusal and disqualification except that the judge shall continue to:

    (1) preside over the case;
    (2) sign orders in the case; and
    (3) move the case to final disposition as though a tertiary recusal motion had not been filed.

*Tex. Civ. Prac. & Rem. Code Ann. § 30.016(a)(b)* (Vernon 2008).

By the time of the November 1, 2007 hearing, Lewis had filed four motions to recuse Judge Board, those of May 13, May 18, May 19 and May 20, 2005. Lewis argues the May 18 motion was superseded by the May 19 motion, which in turn was superseded by the May 20 motion, because he entitled the latter two "supplemental and amended" motions. We cannot agree Lewis's use of the terms "supplemental" and "amended" in the title of his May 19 and May 20 motions alters their effect for purposes of the count under *section 30.016(a)*. Notably, through these pleadings Lewis expanded his original recusal claim. The May 19 motion relied on *Rules of Civil Procedure 18a* and *18b* but added a constitutional claim of denial of due process. The May 20 motion, filed after the May 20 hearing, added a claim of improper ex parte communication between the trial court and counsel for the State. **HN3**[⬆] It is the substance of a motion **[\*\*9]** that determines its nature, not merely its

---

forward to the presiding judge of the administrative judicial district, in either original form or certified copy, an order of referral, the motion, and all opposing and concurring statements. Except for good cause stated in the order in which further action is taken, the judge shall make no further orders and shall take no further action in the case after filing of the motion and prior to a hearing on the motion.

*Tex. R. Civ. P. 18a(d)*.

title. *See State Bar v. Heard, 603 S.W.2d 829, 833 (Tex. 1980)*; *BCY Water Supply Corp. v. Residential Invs., Inc., 170 S.W.3d 596, 604 (Tex.App.-- [\*773] Tyler 2005, pet. denied)*. We find Lewis had filed a tertiary recusal motion, and Judge Board was empowered by *section 30.016(b)* to preside over the November 1, 2007 show cause hearing. We overrule Lewis's first issue.

Related to his first issue, Lewis raises three supplemental issues.

Without supporting authority, Lewis argues in his first supplemental issue that because the May 13 and May 18 motions did not meet the requirements of *Rule 18a(a)* [6] they must be omitted from the *section 30.016(a)* calculation. A plain reading of the statute does not support such a gloss. *See Fitzgerald v. Advanced Spine Sys., Inc., 996 S.W.2d 864, 865 (Tex. 1999)* ("it is cardinal law in Texas that *HN4*[⬆] a court construes a statute, first, by looking to the plain and common meaning of the statute's words"). Moreover, to sustain Lewis's argument would create uncertainty in the application of *section 30.016*, favor defective motions, and generally run counter to sound principles of motion practice. We overrule Lewis's first supplemental [**10] issue. Lewis's third supplemental issue is premised on similar contentions, and we overrule it as well.

In his second supplemental issue, Lewis argues that if the May 13 motion is properly included in the count of *section 30.016(a)*, then Judge Moore abused his discretion by overruling the motion without a hearing. Case law holds otherwise. *See, e.g., In re Lincoln, 114 S.W.3d 724, 726 (Tex.App.--Austin 2003, orig. proceeding)* (no abuse of discretion shown when administrative judge summarily denied unsworn recusal motion). We find *HN5*[⬆] the decision not to conduct an oral hearing of a facially defective motion was within the sound discretion of Judge Moore. Lewis's second supplemental issue is overruled.

---

[6] A motion for recusal or disqualification of a judge:

> shall be verified and must state with particularity the grounds why the judge before whom the case is pending should not sit. The motion shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence provided that facts may be stated upon information and belief if the grounds of such belief are specifically stated.

*Tex. R. Civ. P. 18a(a)* (in pertinent part).

Issue Two - Want of Prosecution

In his second [**11] issue, Lewis argues the trial court abused its discretion by denying his motion to dismiss the case for want of prosecution. *HN6*[⬆] A trial court is empowered to dismiss a case for want of prosecution under *Rule of Civil Procedure 165a* or through its inherent power to control its docket. *Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex. 1999)*. *HN7*[⬆] An appellate court reviews a trial court's denial of a motion to dismiss for want of prosecution under an abuse of discretion standard. *Christian v. Christian, 985 S.W.2d 513, 514 (Tex.App.--San Antonio 1998, no pet.)*. *HN8*[⬆] A trial court abuses its discretion when it acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)*.

The record shows that on May 16, 2005, Lewis filed a motion for continuance asserting in part the need for unspecified pre-trial discovery to prepare for the show cause hearing, then scheduled for May 24. On May 16 Lewis also filed a motion to abate, asserting his case presented legally and factually similar issues to a case then on appeal before this court. Lewis requested abatement pending a decision to "avoid unnecessary time and expense [**12] of both the resources of the Court and of interested parties." The record contains no order disposing of Lewis's abatement motion. Meanwhile, the parties engaged [*774] in the flurry of activity connected with Lewis's recusal motions that we have described. On May 23, Lewis served a supplemental motion for continuance through which he requested continuance of the show cause hearing "to a date that allows pretrial matters and preparation to be completed." Then at the May 24 hearing, Lewis argued that Judge Board could not proceed with the show cause hearing because of the pending May 20 recusal motion. The extent of discovery the parties undertook cannot be discerned from the record although attached to an August 2005 motion for protective order filed by the State is a copy of a deposition notice from Lewis noticing the deposition of the State's attorney. The State sought protection alleging, *inter alia*, the deposition would require disclosure of core work product. The record contains no order on the motion nor does it indicate the deposition occurred. In a letter to the trial court dated November 16, 2006, the State requested a setting of the show cause hearing. It argued the May 20 motion [**13] remained pending, and Judge Board was empowered to proceed under *section 30.016*. The record contains no indication either party requested a ruling by Judge Moore after Lewis filed the May 20

recusal motion. In a letter to counsel dated August 21, 2007, Judge Board set the show cause hearing for November 1, 2007. On October 31, 2007, Lewis filed a motion to dismiss the case. It was denied the following day before the show cause hearing began. In denying the motion, the court found on the record the primary cause of delay was Lewis's requests for continuance and recusal.

Lewis correctly observes that *HN9*[⬆] according to the Texas Rules of Judicial Administration, in non-jury cases district court judges "should, so far as reasonably possible, ensure that all" non-family law civil "cases are brought to trial or final disposition, . . . . [w]ithin 12 months from appearance date." *Tex. R. Jud. Admin. 6(b)(2)*, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. F--Appendix (Vernon Supp. 2008). *HN10*[⬆] According to *Rule 1 of the rules of judicial administration*, the rules are promulgated pursuant to *section 74.024 of the Government Code*. *Id.* at *Rule 1*. *Section 74.024* provides "the supreme court may consider **[**14]** the adoption of rules relating to: (1) nonbinding time standards for pleading, discovery, motions, and dispositions." *Tex. Gov't Code Ann. § 74.024(c)(1)* (Vernon Supp. 2008). Thus, the application of *Rule 6* is discretionary and non-binding. *See In re S.D.W., 811 S.W.2d 739, 746 (Tex.App.--Houston [1st Dist.] 1991, no writ)* (juvenile case). Moreover, circumstances may preclude adherence to the standards under especially complex cases or those presenting special circumstances. *Tex. R. Jud. Admin. 6(e)*, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. F--Appendix (Vernon Supp. 2008). On the record before us, we cannot say the trial court abused its discretion in denying Lewis's motion to dismiss for want of prosecution. We overrule Lewis's second issue.

Issues Three and Five - Failure to Recuse

By his third issue, Lewis asserts Judge Moore abused his discretion by failing to recuse Judge Board. Lewis presents his recusal argument through four sub-issues: in the *art. 18.18(b)* notice Judge Board evidenced bias by using the terms "gambling proceeds" without the adjective "alleged;" Judge Board and the prosecutor discussed the case and the State prepared the *art. 18.18(b)* notice for Judge **[**15]** Board; *art.18.18* cast Judge Board as magistrate and prosecutor, and because the case was not timely prosecuted by Judge Board as prosecutor, Judge Board as magistrate **[*775]** should not have adjudicated Lewis's motion to dismiss for want of prosecution; and the State engaged in forum shopping because all Randall County 8-liner

forfeiture cases since 2001 were filed in Judge Board's court and the State prevailed in each instance. Lewis's grounds for recusal are founded in claims of partiality and bias.

*HN11*[⬆] An order denying a recusal motion is reviewed on appeal from the final judgment, applying the abuse of discretion standard. *Tex. R. Civ. P. 18a(f)*. *HN12*[⬆] "A judge shall recuse himself in any proceeding in which: (a) his impartiality might reasonably be questioned; (b) he has a personal bias or prejudice concerning the subject matter or a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Tex. R. Civ. P. 18b(2)(a)*,*(b)*. *HN13*[⬆] We apply a reasonable person standard to determine whether denial of a recusal motion was an abuse of discretion. *Woodruff v. Wright, 51 S.W.3d 727, 736 (Tex.App.--Texarkana 2001, pet. denied)*. The inquiry, therefore, is whether a reasonable member of **[**16]** the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial. *Rogers v. Bradley, 909 S.W.2d 872, 881 (Tex. 1995)* (Enoch, J., concurring). "[B]ecause this test requires courts to evaluate a motion to recuse from a disinterested observer's point of view, it seems best suited to achieve the primary purpose of *Rule 18b(2)(a)*: avoiding the appearance of judicial bias." *Id. at 882*.

*Prejudgment of the Case*

Lewis is correct that the language of the *article 18.18(b)* show cause notice signed by Judge Board and addressed to Lewis in places refers to "gambling proceeds," "gambling devices," and gambling paraphernalia" without the modifying term "alleged." For instance, the notice recites in part, "[a] detailed description of the property seized and total amount of the gambling proceeds is as follows . . . ." Lewis argues this phraseology without the qualifying adjective "alleged" indicates prejudgment by Judge Board.

*HN14*[⬆] A forfeiture proceeding begins with the State seeking a search warrant supported by an affidavit averring "sufficient facts . . . to satisfy the issuing magistrate that probable cause **[**17]** does in fact exist for its issuance." *Tex. Code Crim. Proc. Ann. art. 18.01(b)* (Vernon Supp. 2008); *Hardy v. State, 102 S.W.3d 123, 127 (Tex. 2003)*. If the search warrant issues, it is executed by the State which conducts a search and seizure of the designated property. *Tex. Code Crim. Proc. Ann. arts. 18.06* (Vernon 2005) &

*18.09* (Vernon Supp. 2008). If no prosecution or conviction follows the seizure, the magistrate must notify the person in possession of the property or proceeds made the subject of the search warrant to show cause why the property should not be destroyed and the proceeds forfeited. *Art. 18.18(b)*. The show cause hearing is an adversary proceeding. *Hardy, 102 S.W.3d at 127, 129*. In a civil forfeiture proceeding, the State satisfies its initial burden by establishing probable cause for seizing the subject property or proceeds. *Id. at 129*. At the show cause hearing, therefore, the burden is on any person interested in the seized property or proceeds to prove by a preponderance of the evidence why the property is not subject to destruction or forfeiture. *Id. at 127, 129*.

Assuming, *arguendo*, the correctness of Lewis's premise that the language of the notice could properly **[\*\*18]** be said to evidence Judge Board's judicial attitude, the difficulty with Lewis's argument based on the language of the notice here is that the language is not consistent. The notice **[\*776]** elsewhere contains the modifier "alleged" when referring to the seized property. The notice includes, in bold font, the language of *art.18.18(e)* ("[a]ny person interested in the alleged gambling device or equipment . . . gambling proceeds . . .". Reading the notice as a whole, we do not agree it establishes an abuse of discretion.

### Improper Ex Parte Communication

Lewis next contends the State's attorney conferred *ex parte* with Judge Board about the forfeiture proceeding and the contents of the *art. 18.18(b)* notice, and such contact presents the appearance of Judge Board's partiality in favor of the State. The only evidence of contact between Judge Board and the State's attorney was that developed at the May 20, 2005, telephonic recusal hearing before Judge Moore. During the proceeding, the State's attorney notified Judge Moore that he prepared the *art. 18.18(b)* notice for Judge Board. Later in the hearing Judge Moore asked the State's attorney, "Where did you get the forms to prepare the documents?" The **[\*\*19]** State's attorney replied:

> I got the form from Judge Board. We had a case about a year ago where this issue came up, and he drafted the notice that time. In this particular case, he instructed me to go ahead and do it since we had a template. I made one modification to that. I put in the word show cause, and I changed up the inventory of the items listed; otherwise, it was what

he had used before.

All that can be said from this scant evidence is Judge Board instructed the State's attorney to prepare the *art.18.18(b)* notice using a form Judge Board previously prepared. The record permits only speculation regarding what, if anything, else was said. We are unable to say the evidence of *ex parte* contact leads to the conclusion Judge Moore abused his discretion.

### The Role of the Trial Court in an *Article 18.18* Forfeiture Proceeding

Lewis next argues *art.18.18(b)* assigns the magistrate, Judge Board, responsibility for prosecution of the case. Because he carries that responsibility, Lewis contends, allowing Judge Board to rule on Lewis's motion to dismiss for want of prosecution "creates a clear appearance of possible bias or lack of impartiality." Lewis's premise that Judge Board, as the magistrate, **[\*\*20]** is placed in the position of prosecuting the forfeiture is supported only by Lewis's interpretation of *article 18.18*, and he cites no authority agreeing with his interpretation. His argument ignores the fact, apparent from the record, that the Randall County Criminal District Attorney's office represented the interests of the State in the forfeiture proceeding in the trial court. We fail to see how a trial judge exhibits bias or partiality simply by performing his statutory responsibilities in a forfeiture proceeding.

In a broader sense, Lewis's argument is an attack on *article 18.18(b)*. He does not contend the article is unconstitutional or its strictures were not properly followed by the trial court. Rather it is the effect of the statute he condemns. But, as courts often have recognized, *HN15*[⬆] it is the legislative branch, not the judicial, that evaluates the wisdom of legislation. *See, e.g., In re Jorden, 249 S.W.3d 416, 424 (Tex. 2008)* (arguments that statute is unwise or unfair must be addressed to legislature, in absence of constitutional claim); *Ullmann v. Jasper, 70 Tex. 446, 452-53, 7 S.W. 763, 765 (1888)* ("where a rule is given by act of the Legislature, courts are not at liberty **[\*\*21]** to disregard it, or to attempt to avoid its effects, when applied to a state of facts contemplated by it").

### **[\*777]** Forum Shopping

Lewis's last contention in support of his third issue asserts Judge Moore should have recused Judge Board

because all 8-liner forfeiture cases in Randall County from "at least 2001" were filed in Judge Board's court and in each case the State obtained the relief requested. This, Lewis asserts, violates a local rule requiring random assignment of cases by the district clerk and amounts to forum shopping by law enforcement personnel.

According to a stipulation of the parties, since "2001 or 2002" all forfeiture cases in Randall County handled by the assistant district attorney representing the State in the case at hand were filed in Judge Board's court. And, according to the stipulation, in each of these cases reaching judgment, the State prevailed. The record does not show the number of cases involved or in what court other prosecutors filed cases. The local rule of case assignment directs the district clerk to randomly assign civil cases among the district courts of Randall County. It does not address the issuance of search warrants on proper application by law enforcement. **[\*\*22]** *See art. 18.18(b)* (magistrate to whom return of warrant was made shall issue show cause); *Hardy, 102 S.W.3d at 127* (forfeiture proceeding under chapter 18 of Code of Criminal Procedure begins when affidavit is presented to magistrate).

On this record, we cannot say Judge Moore abused his discretion by not recusing Judge Board on the grounds raised by Lewis in his sub-issues. We overrule Lewis's third issue.

In his fifth issue, Lewis presents further argument regarding the State's forum shopping and the resulting appearance of bias on the part of Judge Board. Our disposition of his third issue disposes of the fifth issue as well.

Issue Four - Stay of Judgment

In his fourth issue, Lewis complains of what he characterizes as Judge Moore's "refusal to even take up and allow a record to be made" regarding a pleading Lewis filed on November 21, 2007, entitled "Application to Protect Jurisdiction." In this pleading, filed in the trial court but addressed to Judge Moore, Lewis sought an order staying Judge Board's "entry of any judgment" following the November 1 show cause hearing until Judge Moore ruled on Lewis's May 20 recusal motion. We overrule the issue for several reasons but here note **[\*\*23]** simply that its overruling is required by our conclusion Judge Board was authorized by *Civil Practice & Remedies Code section 30.016* to preside over the show cause hearing.

Issue Six - Gambling Devices

In his sixth issue, Lewis argues the trial court misapplied the exception to the term "gambling device" [7] provided by *Penal Code section 47.01(4)(B)*. *See Tex. Penal Code Ann. § 47.01(4)(B)* (Vernon 2003). [8] We interpret Lewis's complaint is **[\*778]** the trial court erred by denying his motion for directed verdict on the ground that the 51 seized machines fall within the *section 47.01(4)(B)* exception.

According to the evidence at the show cause hearing, an undercover officer playing Lewis's gaming machines received $ 5 tickets from a machine. An employee of Lewis converted the tickets to cash and deposited the cash into another machine for additional play. Lewis contends the only difference in this practice and that of machines in an arcade for children that reward high scores with additional play is the former keep track of a right to additional play by a paper ticket while the latter employ paperless electronic score keeping. This distinction, complains Lewis, is "hyper technical."

Whether the **[\*\*25]** practice of awarding tickets by a gaming machine that are then converted to cash for

---

[7] *Article 18.18* incorporates the *Penal Code section 47.01(4)* definition of gambling device. *Tex. Code Crim. Proc. Ann. art. 18.18(g)(2)* (Vernon Supp. 2008). As defined by *Penal Code section 47.01(4)* **HN16**[⬆] a gambling device:

> means any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance.

*Tex. Penal Code Ann. § 47.01(4)* (Vernon **[\*\*24]** 2003).

[8] The exception provided by Paragraph B reads:

> A "gambling device" is not an:

> electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $ 5, whichever is less.

*Tex. Penal Code Ann. § 47.01(4)(B)* (Vernon 2003).

additional play comes within the *section 47.01(4)(B)* exception in a civil forfeiture proceeding was before the Texas Supreme Court in *Hardy. 102 S.W.3d 123*. According to the facts of *Hardy*, tickets awarded by a gaming machine could be exchanged through a game room attendant for cash to play another machine. *Id. at 132*. In deciding the applicability of the *section 47.01(4)(B)* exclusion, the Court held:

> *HN17*[⬆] This practice of exchanging tickets for cash . . . removes the machines from the *section 47.01(4)(B)* exclusion. While additional play in itself is not proscribed, when that additional play is accomplished by providing cash to play other machines, the statutory exclusion is not satisfied. The exclusion requires that the machine at issue reward the player "*exclusively* with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items." *Tex. Penal Code § 47.01(4)(B)* (emphasis added). Under the statute, once cash is awarded, it does not matter whether the player deposited the cash directly into the machine or whether an attendant performed this task. Cash to be used **[\*\*26]** for play on another machine is not a noncash merchandise prize, toy, or novelty. If tickets are exchanged for cash, regardless of whether that cash is used to play another machine, the exclusion does not apply.

*Id*. We find *Hardy* controls disposition of Lewis's legal argument in this issue. While Lewis contends *Hardy* is overly technical, *HN18*[⬆] the holdings of the Texas Supreme Court nonetheless are binding on this court. *See In re K.M.S., 91 S.W.3d 331, 331 (Tex. 2002)* (pointing out courts of appeals are not free to disregard opinions of Texas Supreme Court). The trial court did not err in denying Lewis's motion for directed verdict. We overrule Lewis's sixth issue.

Issue Seven - Authority of Attorney for State

In his seventh issue Lewis contends the criminal district attorney for Randall County was without authority to prosecute the case because *art. 18.18(b)* places all prosecutorial responsibility on the magistrate. Lewis presented the contention in the trial court by means of motion pursuant to *Rule of Civil Procedure 12*, which authorizes a party by sworn motion filed in the trial court to challenge **[\*779]** the authority of an attorney to prosecute or defend an action. *Tex. R. Civ. P. 12*; *see Angelina County v. McFarland, 374 S.W.2d 417, 422 (Tex. 1964)* **[\*\*27]** (describing operation of rule).

Although the record shows Lewis filed his *Rule 12* motion, it does not show the trial court ruled on the motion. Moreover, the motion would appear to have been untimely, since it was filed almost three months after trial. No error with respect to the motion is preserved for our review. *Tex. R. App. P. 33.1(a)(2)*. We overrule Lewis's seventh issue.

The State's Cross-Appeal

The State filed a notice of appeal and asserts by cross-appeal that Judge Moore abused his discretion by denying its request for attorney's fees and costs at the February 1, 2008, hearing of Lewis's "Fourth Supplemental and Amended Motion to Recuse." For its requested award of attorney's fees and costs, the State relies on *Civil Practice and Remedies Code section 30.016(c)* which provides:

> *HN19*[⬆] A judge hearing a tertiary recusal motion against another judge who denies the motion shall award reasonable and necessary attorney's fees and costs to the party opposing the motion. The party making the motion and the attorney for the party are jointly and severally liable for the award of fees and costs. The fees and costs must be paid before the 31st day after the date the order denying the tertiary **[\*\*28]** recusal motion is rendered, unless the order is properly superseded.

*Tex. Civ. Prac. & Rem. Code Ann. § 30.016(c)* (Vernon 2008).

At the February 1 hearing, Judge Moore denied Lewis's recusal motion. The State presented evidence of attorney's fees and costs expended and the court expressly found $ 675 was a reasonable attorney's fee and $ 1.23 a reasonable cost for responding to the motion. Lewis presented no controverting evidence. The court, however, denied the State's request for attorney's fees and costs.

The record reveals Lewis's "Fourth Supplemental and Amended Motion to Recuse" was the sixth recusal motion he filed against Judge Board. The February 1 hearing was of a tertiary recusal motion. *Tex. Civ. Prac. & Rem. Code Ann. § 30.016(a)* (Vernon 2008). *HN20*[⬆] ] The term "shall" as used by statute is generally recognized as "mandatory, creating a duty or obligation." *See Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001)* (*citing Tex. Gov't Code Ann. § 311.016(2)*). Because Judge Moore denied the requested recusal of the trial court judge an award of

reasonable and necessary attorneys fees was mandatory. The refusal to grant the requested attorney's fees and costs was an abuse of discretion. **[**29]** *See, e.g.,* *In re Am. Homestar of Lancaster, Inc., 50 S.W.3d 480, 483 (Tex. 2001)* (trial court has no discretion in applying law to facts and failure to correctly apply law is abuse of discretion). We sustain the State's single issue on cross-appeal.

Conclusion

Judge Moore's order denying attorney's fees and costs is reversed and in accordance with statute we order that the State recover from Lewis and his attorney, jointly and severally, the sums of $ 676.23 for attorney's fees and $ 1.23 for costs. The sums awarded shall be paid before the 31st day after the day of this opinion unless properly superseded. *See* *Tex. Civ. Prac. & Rem. Code Ann. § 30.016(c)* (Vernon 2008).

Otherwise, having overruled each of Lewis's issues we affirm the judgment of the trial court and affirm the orders of **[*780]** Judge Moore denying recusal of Judge Board.

James T. Campbell

Justice

---

**End of Document**

# In re S.D.W.

Court of Appeals of Texas, First District, Houston

June 20, 1991, Delivered ; June 20, 1991, Filed

No. 01-89-00238-CR

## Reporter

811 S.W.2d 739 *; 1991 Tex. App. LEXIS 1568 **

IN THE MATTER OF S.D.W., a Juvenile

**Prior History: [**1]** On Appeal from the County Court at Law No. 1; Brazos County, Texas; Trial Court Cause No. 141-J-88CC; Claude D. Davis, Judge.

**Disposition:** Judgment reversed and remanded in part, affirmed in part.

## Core Terms

grand jury, trial court, murder, amended petition, juvenile, warnings, original petition, summons, detention, determinate sentencing, accomplice, kicked, waived, commission of the offense, sentence, certification, provides, oral statement, jumped, lesser included offense, written statement, bodily injury, family code, aggravated robbery, causing death, no evidence, magistrate's, complains, knowingly, commits

## Case Summary

### Procedural Posture

Appellant juvenile contested the determination from the County Court at Law, Brazos County, Texas, that he engaged in delinquent conduct by committing murder and aggravated robbery, and the sentence of nine years' confinement under *Tex. Fam. Code Ann. § 54.04(d)(3)* (Supp. 1991) for murder, and an indeterminate period for robbery, under *Tex. Fam. Code Ann. § 54.04(d)(2)* (Supp. 1991). Appellant contended the determinate sentence was erroneous.

### Overview

On appeal, the court reversed appellant juvenile's nine year sentence for murder because the record did not contain anything indicating that prosecution of appellant was affirmatively approved by a grand jury, as required by *Tex. Fam. Code Ann. § 53.045* (Supp. 1991). Yet it affirmed the indeterminate sentence for aggravated robbery, and remanded the murder allegation for imposition of an indeterminate sentence. The court held that the amended petitions should have been presented to the grand jury, and that a prosecutor's oral representations of approval by a grand jury was not a certification. Without certification, the trial court was without jurisdiction to impose a determinate sentence. Thus, the court reformed the judgment, and remanded. Because appellant and his mother were properly served with the original petition, the trial court had acquired jurisdiction over him. Thus, the state's failure to serve appellant with the second amended petition did not deprive the trial court of jurisdiction. Appellant had not preserved any other alleged errors for review. Thus, the trial court did not err in failing to include jury instructions. The remainder of the judgment was affirmed.

### Outcome

The court held that it had jurisdiction over appellant juvenile, and affirmed the determinations as to murder and aggravated robbery. The court affirmed the indeterminate murder sentence, but reversed and remanded for reformation as to the determinate sentence for the robbery, holding that there was no showing that the grand jury had pre-approved the imposition of a determinate sentence, which was statutorily required.

## LexisNexis® Headnotes

Criminal Law & Procedure > ... > Grand Juries > Procedures > General Overview

Criminal Law & Procedure > Juvenile Offenders > Juvenile Proceedings > General

Overview

*HN1*[⬇]  **Grand Juries, Procedures**

*Tex. Fam. Code Ann. § 53.045(a)* (Supp. 1991) provides that if the child is accused of one of six penal offenses, one of which is murder, the prosecuting attorney may refer the petition to the grand jury. A determinate sentence cannot be imposed if the petition is not approved by a grand jury under *Tex. Fam. Code Ann. § 54.04(d)(2)* (Supp. 1991). If the grand jury approves a petition, the fact of approval shall be certified to the juvenile court, and the certification shall be entered in the record of the case under *Tex. Fam. Code Ann. § 53.045(d)* (Supp. 1991).

> Criminal Law & Procedure > Juvenile Offenders > Juvenile Proceedings > General Overview

> Criminal Law & Procedure > ... > Grand Juries > Procedures > General Overview

*HN2*[⬇]  **Juvenile Offenders, Juvenile Proceedings**

Before a determinate sentence may be imposed, a grand jury must approve the petition made the basis of the judgment.

> Civil Procedure > ... > Service of Process > Service of Summons > Issuance of Summons

> Criminal Law & Procedure > Juvenile Offenders > Juvenile Proceedings > General Overview

> Family Law > Child Custody > General Overview

> Civil Procedure > ... > Service of Process > Service of Summons > General Overview

*HN3*[⬇]  **Service of Summons, Issuance of Summons**

*Tex. Fam. Code Ann. § 53.06(a)* (1986) provides that the juvenile court shall direct issuance of a summons to the child named in the petition, the child's parent, guardian, or custodian, the child's guardian ad litem, and any other person who appears to the court to be a proper or necessary party to the proceeding. A copy of the petition must accompany the summons under *Tex. Fam. Code Ann. § 53.06(b)* (1986).

> Criminal Law & Procedure > Juvenile Offenders > Juvenile Proceedings > General Overview

*HN4*[⬇]  **Juvenile Offenders, Juvenile Proceedings**

See *Tex. Fam. Code Ann. § 53.07(a)* (1986).

> Criminal Law & Procedure > Juvenile Offenders > Juvenile Proceedings > General Overview

*HN5*[⬇]  **Juvenile Offenders, Juvenile Proceedings**

See Tex. Gov't Code Ann. Title 2, subtitle F, App., *rule 6(d)* (1988 & Supp. 1991).

> Governments > Courts > Rule Application & Interpretation

*HN6*[⬇]  **Courts, Rule Application & Interpretation**

See *Tex. Gov't Code Ann. § 74.024(c)(1)* (1988).

> Criminal Law & Procedure > Juvenile Offenders > Juvenile Proceedings > Statements of Juvenile

> Criminal Law & Procedure > Juvenile Offenders > Juvenile Proceedings > General Overview

*HN7*[⬇]  **Juvenile Proceedings, Statements of Juvenile**

*Tex. Fam. Code Ann. § 51.09* provides that a child who gives an out of court statement must do so knowingly, intelligently, and voluntarily. The statement must be signed in the presence of a magistrate, with no law enforcement officer or prosecuting attorney present. The magistrate must certify he has examined the child outside the presence of any law enforcement officer and has determined the child understands the nature and content of his statement. *Tex. Fam. Code Ann. §*

*[51.09(b)(1)(F)](#)* (1986).

Criminal Law & Procedure > ... > Accusatory Instruments > Indictments > General Overview

*[HN8](#)*[⬇]  **Accusatory Instruments, Indictments**

An indictment need not plead evidence relied on by the state.

Civil Procedure > Judgments > Relief From Judgments > Motions for New Trials

Criminal Law & Procedure > ... > Reviewability > Preservation for Review > General Overview

Civil Procedure > Judgments > Relief From Judgments > General Overview

Criminal Law & Procedure > Postconviction Proceedings > Motions for New Trial

*[HN9](#)*[⬇]  **Relief From Judgments, Motions for New Trials**

In order to preserve a factual insufficiency point of error, a motion for a new trial complaining of the insufficiency must be filed.

Criminal Law & Procedure > Trials > Verdicts > General Overview

Evidence > Burdens of Proof > Proof Beyond Reasonable Doubt

Criminal Law & Procedure > Juvenile Offenders > Juvenile Proceedings > General Overview

Criminal Law & Procedure > Trials > Burdens of Proof > General Overview

Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution

Criminal Law & Procedure > Appeals > Standards of Review

Evidence > Weight & Sufficiency

*[HN10](#)*[⬇]  **Trials, Verdicts**

In reviewing the sufficiency of the evidence to support a guilty verdict, the evidence is viewed in the light most favorable to the verdict. The critical inquiry is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In a juvenile case, the question is whether the evidence considered as a whole shows that the state sustained its burden of proof beyond a reasonable doubt.

Criminal Law & Procedure > Juvenile Offenders > Juvenile Proceedings > General Overview

Criminal Law & Procedure > Trials > Witnesses > Presentation

*[HN11](#)*[⬇]  **Juvenile Offenders, Juvenile Proceedings**

See *[Tex. Fam. Code Ann. § 54.03(e)](#)* (1986).

Criminal Law & Procedure > ... > Jury Instructions > Particular Instructions > Lesser Included Offenses

*[HN12](#)*[⬇]  **Particular Instructions, Lesser Included Offenses**

An offense is a lesser included office if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or it consists of an attempt to commit the offense charged or an otherwise included offense under *[Tex. Code Crim. Proc. Ann. art. 37.09](#)* (1981).

Criminal Law & Procedure > ... > Jury Instructions > Particular Instructions > Lesser Included Offenses

*HN13*[⬇]  **Particular Instructions, Lesser Included Offenses**

In determining whether a charge on a lesser included offense is required, a two step analysis is required. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, there must also be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser included offense. If the evidence raises the issue of a lesser included offense, it must be included in the charge.

> Criminal Law &
> Procedure > ... > Robbery > Unarmed
> Robbery > Elements

> Criminal Law & Procedure > ... > Crimes Against
> Persons > Robbery > General Overview

*HN14*[⬇]  **Unarmed Robbery, Elements**

A person commits the offense of robbery if, while in the course of committing theft, and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury, or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death under *Tex. Penal Code Ann. § 29.02(a)* (1974). If in the course of committing a robbery, a person also causes serious bodily injury to another, he has committed aggravated robbery as per *Tex. Penal Code Ann. § 29.03(a)(1)* (Supp. 1991).

> Criminal Law & Procedure > ... > Homicide,
> Manslaughter & Murder > Murder > General
> Overview

*HN15*[⬇]  **Homicide, Manslaughter & Murder, Murder**

See *Tex. Penal Code Ann. § 19.02(a)* (1989).

> Criminal Law & Procedure > ... > Homicide,
> Manslaughter & Murder > Voluntary
> Manslaughter > Elements

> Criminal Law & Procedure > ... > Homicide,
> Manslaughter & Murder > Murder > General
> Overview

> Criminal Law & Procedure > ... > Homicide,
> Manslaughter & Murder > Voluntary
> Manslaughter > General Overview

*HN16*[⬇]  **Voluntary Manslaughter, Elements**

A person commits the offense of voluntary manslaughter if he causes the death of another under circumstances that would constitute murder under *Tex. Penal Code Ann. § 19.02*, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause under *Tex. Penal Code Ann. § 19.04(a)* (1989). Sudden passions means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed, such passion arising at the time of the offense and not solely the result of former provocation under *Tex. Penal Code Ann. § 19.02(b)* (1989).

> Criminal Law & Procedure > ... > Homicide,
> Manslaughter & Murder > Involuntary
> Manslaughter > Elements

> Criminal Law & Procedure > ... > Homicide,
> Manslaughter & Murder > Involuntary
> Manslaughter > General Overview

> Criminal Law & Procedure > ... > Homicide,
> Manslaughter & Murder > Murder > General
> Overview

> Criminal Law & Procedure > ... > Acts & Mental
> States > Mens Rea > Negligence

*HN17*[⬇]  **Involuntary Manslaughter, Elements**

A person commits criminally negligent homicide if he causes the death of an individual by criminal negligence under *Tex. Penal Code Ann. § 19.07(a)* (1989). A person acts with criminal negligence or is criminally negligent when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care an ordinary person would exercise under all the same circumstances as viewed from the actor's standpoint under *Tex. Penal Code Ann. § 6.03(d)* (1974). The essence of criminal negligence is the failure of the actor to perceive the risk created by his conduct. Criminally negligent homicide is a lesser included offense of murder.

Criminal Law & Procedure > ... > Assault & Battery > Simple Offenses > Elements

Criminal Law & Procedure > ... > Crimes Against Persons > Assault & Battery > General Overview

## HN18[⬇]  Simple Offenses, Elements

Assault occurs when someone intentionally, knowingly, or recklessly causes bodily injury to another, threatens another with imminent bodily injury, or intentionally or knowingly causes physical contact with another when the actor knows or should reasonably believe the other will regard the contact as offensive or provocative under *Tex. Penal Code Ann. § 22.01* (1989). Assault is a lesser included offense of aggravated robbery.

Criminal Law & Procedure > ... > Homicide, Manslaughter & Murder > Involuntary Manslaughter > Elements

Criminal Law & Procedure > ... > Homicide, Manslaughter & Murder > Involuntary Manslaughter > General Overview

## HN19[⬇]  Involuntary Manslaughter, Elements

Involuntary manslaughter occurs when a person recklessly causes the death of another under *Tex. Penal Code Ann. § 19.05(a)(1)* (1989). A person acts recklessly when he or she is aware of, but consciously disregards, a substantial and unjustifiable risk the circumstances exist or the result will occur.

**Counsel:** Attorneys for Appellant: William W. Vance, Bryan, Texas.

Attorneys for Appellee: Bill R. Turner, District Attorney, William O. Juvrud, Assistant District Attorney, Bryan, Texas.

**Judges:** Davie L. Wilson, Justice. Justices Cohen and Price also sitting.

**Opinion by:** WILSON

## Opinion

**[\*741]** *OPINION*

This is an appeal from a final judgment of the County Court at Law No. 1 of Brazos **[\*742]** County, Texas, sitting as a juvenile court, based on a jury finding that appellant, S.D.W., engaged in delinquent conduct by committing the offenses of murder and aggravated robbery. The jury assessed a determinative sentence of nine years confinement on the murder charge. [1] **[\*\*2]** *TEX. FAM. CODE ANN. § 54.04(d)(3)* (Vernon Supp. 1991). For the robbery, [2] the judge sentenced appellant to an indeterminate period, not to exceed the time when appellant attains the age of 21. *TEX. FAM. CODE ANN. § 54.04(d)(2)* (Vernon Supp. 1991). We affirm in part, and reverse and remand in part.

On October 1, 1988, Michael Granados Ramirez was found by some passersby lying in a Bryan street. He was badly beaten about the face and head. The police and an ambulance were summoned, but Ramirez, a recently "green-carded" Mexican national, refused medical attention, and generally refused to cooperate in the immediate investigation of the crime. He told one of the passersby, Betty Perez, that he had been attacked by five black males, one of whom was on a bicycle. After Ramirez declined to be taken to a hospital, Ms. Perez took him home, where he was found dead the next day of a subdural brain hemorrhage.

In summary, we reverse the nine year determinative sentence because of the State's failure to comply with *TEX. FAM. CODE ANN. § 53.045(d)* (Vernon Supp. 1991), in that, the record does not contain any writing, whether titled "certificate of approval" or otherwise, indicating the State's prosecution of appellant under the second amended petition, or any petition, was affirmatively approved by a grand jury. We affirm imposition of the indeterminate **[\*\*3]** sentence for the delinquent conduct finding based on the aggravated robbery allegation, and remand the delinquent conduct finding on the murder allegation for imposition of an indeterminate sentence.

In the first and second points of error, appellant asserts the determinate sentencing provisions of the family code are unconstitutional. Our resolution of the fifth point of error renders these points of error moot. They are accordingly not discussed, *but see generally In the*

[1] *TEX. PENAL CODE ANN. § 19.02* (Vernon 1989).

[2] *TEX. PENAL CODE ANN. § 29.03* (Vernon Supp. 1991).

Matter of R.L.H., 771 S.W.2d 697, 699-700 (Tex. App.--Austin 1989, no writ), and *In the* Matter of S.C., 790 S.W.2d 766, 769 (Tex. App.--Austin 1990, writ denied).

Appellant's third and fourth points of error state that the trial court's judgment and the commitment order are void because there is a fatal variance between the judgment and commitment order, and the relief sought in the second amended petition. We generally understand appellant to be complaining about the lack of specificity as to dispositional alternatives in the State's pleading.

Because we reverse the determinative sentence on other grounds, it is unnecessary to discuss whether the State's pleading gives appellant notice, consistent with **[**4]** due process, of the State's intention to impose a determinate sentence of up to 30 years. [3] *See generally* R.L.H., 771 S.W.2d at 701-02.

At a detention hearing before the trial judge with all parties present conducted January 3, 1989, the prosecutor indicated a petition for felony murder would be filed by that Thursday. **[**5]** The State's original petition, which alleged murder, reflects a time-date stamp of January 5, 1989, indicating a filing on that date with the Brazos County Clerk's office. This date is confirmed by subsequent conversations on the **[*743]** record between the lawyers and the judge and is not in dispute.

A detention hearing was held on January 13, 1989, in which activity by the grand jury was discussed on the record between the attorneys.

MR. JUVRUD (for the State): The petition was presented to the Grand Jury of Brazos County, Texas, on the 12th of this month, yesterday. And the Grand Jury did approve and certify that petition to the district court for this case to proceed with determinate sentencing under 53.045 under the Family Code.

---

[3] Justice Cohen notes that this point of error highlights an anomaly in a due process context between the adult and juvenile criminal systems. Normally, the juvenile system demands the strictest adherence to due process safeguards. But here, the law seems to allow the chance of a 30 year sentence to be pled by the State in what only could be described as vague terms. The adult system only permits punishment enhancement after specific pleadings and factual findings. *See generally* Ex parte Patterson, 740 S.W.2d 766, 777 (Tex. Crim. App. 1987) (trial court committed egregious error in submitting the special issue of use or exhibition of deadly weapon in the absence of a pleading by the State).

THE COURT: Are you aware of that?

MR. VANCE (for the appellant): Yes, sir, I am.

. . . .

THE COURT: Okay. Just before I get to that though, I want to be sure that he and the Mother are aware of what the Grand Jury did.

MR. VANCE: I talked to both of them, Judge.

THE COURT: Then they are aware of it. And we always admonish him and the Mother carefully, that you don't have to talk to anybody about this case. And you **[**6]** want to be sure that you check with your attorney if you have any question. Do you understand that?

APPELLANT: (Indicating) (Affirmative).

MRS. HOSKINS (Appellant's mother): Yes, sir.

THE COURT: Both of them, Momma and the child?

APPELLANT: Yes, Sir.

In that same hearing, the State moved to waive count III of the petition, described by the prosecutor as "alleging a capital murder charge."

A pretrial hearing was held on January 26, 1989, in which the following statement was made by the prosecutor in the context of replying to a motion to bar prosecution:

MR. JUVRUD: The original detention was --occurred --based on violation of a lawful order of the court on a prior adjudication of this child, which was 157-J-88CC, as well as the new pending charges. The case was taken to the Grand Jury on the 12th of January, 1989. The first Grand Jury which was available to hear the Petition in which they certified and approved the Petition for our (sic) in determinate sentencing. . . .

Then on February 3, 1989, which in one place was labeled a detention hearing and another, a final pretrial, the following exchange occurred:

MR. VANCE: The other thing, is that I have **[**7]** received in the mail a second amended petition filed on January 31, 1989. Basically, it's similar to the original petition in this case. But the State at one point in time after January 5th, but before January 31, of 1989, had waived paragraph II [of the murder charge]. And now that particular paragraph is again included in the petition. And we would object to the inclusion of

Nicole Mitchell

paragraph II in the second amended petition. . . . And I have found no evidence in the file that that particular petition has been presented to the Grand Jury for its consideration.

MR. JUVRUD: The Grand Jury was presented with the entire petition to begin with. And they gave their approval of the entire petition. After the Grand Jury approved it, the State waived the bottom count on the belief that --.

THE COURT: Are you talking about the robbery?

MR. JUVRUD: No, Your Honor, paragraph II. It was the mistaken belief that that paragraph represented a capital murder charge. After further research, it was discovered that it did not represent a capital murder charge, merely a felony murder charge, which was applicable in this case. It readmitted its petition to reinclude that paragraph, as it does **[**8]** believe that it is one of the grounds that it can proceed on. And it was originally approved by the Grand Jury and then waived afterwards.

THE COURT: Okay. Anything else?

MR. VANCE: No, your honor. Our basic concern is, yes, it was in the original petition of January 5th. It was subsequently waived. And now it is being **[*744]** reintroduced through the second amended petition. That second amended petition has not been presented to the Grand Jury for its consideration . . . I better object.

. . . .

MR. JUVRUD: We waived the last part and then we came back in and decided it was appropriate to the case, and we reentered it on our petition. But it was originally submitted to the Grand Jury.

THE COURT: All right. Then I deny the motion.

In his fifth point of error, appellant complains the judgment and commitment order are void because the State did not present the second amended petition to the grand jury. The State argues it was not required to do so, as the original petition had been approved, and the two petitions were identical.

*HN1*[⬆] *Section 53.045 of the family code* provides that if the child is accused of one of six penal offenses, one of which is murder, **[**9]** the prosecuting attorney may refer the petition to the grand jury. *TEX. FAM. CODE ANN. § 53.045(a)* (Vernon Supp. 1991). A determinate sentence cannot be imposed if the petition is not

approved by a grand jury. *TEX. FAM. CODE ANN. § 54.04(d)(2)* (Vernon Supp. 1991). If the grand jury approves a petition, "the fact of approval shall be certified to the juvenile court, and the certification shall be entered in the record of the case." *TEX. FAM. CODE ANN. § 53.045(d)* (Vernon Supp. 1991).

Appellant specifically objected to the second amended petition because it had not been presented to the grand jury. Appellant's contention is that, as the State waived one of the murder allegations contained in the original petition, when the State reasserted the murder allegation in the amended petition, it was required to again bring the petition before the grand jury.

The State replies that each of the two murder charges in the second amended petition was specifically and separately charged. Because the jury returned a guilty verdict on the first of the two murder charges, the one that had never been dropped and had been approved (as reported by the prosecutor) by the grand jury, error, if any, **[**10]** in the State's failure to present the second amended petition to the grand jury was harmless. We disagree.

The requirements of *section 53.045(a)* and *(d)* and *section 54.04(2)* and *(3)* are clear -- *HN2*[⬆] before a determinate sentence may be imposed, a grand jury must approve *the petition made the basis of the judgment.* We conclude the amended petition, which included an allegation that previously had been waived, should have been presented to the grand jury. Our holding is supported by the fact that, not only was the amended petition not presented to the grand jury for approval, but also, the record is devoid of any written indication the original petition was ever presented to the grand jury. Although the prosecutor made numerous affirmations throughout these proceedings that the original petition had been approved by the grand jury, the certification required by *section 53.045(d)* is not contained in the transcript, either as a separate document or as an attachment to the original petition. Nor is there any type of notation on the docket sheet to indicate the grand jury approved the petition.

We find that a prosecutor's oral representations of approval by a grand jury, even coupled with **[**11]** the assent of a defendant's counsel, is not a "certification" within the meaning of the statute. Without certification of grand jury approval, and the entry of such certification into the record of the case, the trial court was without jurisdiction to impose a determinate sentence. *TEX. FAM. CODE ANN. § 54.04(3)* (Vernon Supp. 1991).

We note one other factor that we believe does not overcome the State's failure to enter into the record a certificate of approval reflecting the grand jury's actions. The judgment contains a non-specific "form" finding by the trial judge of the grand jury's approval of the petition. However, neither litigant here has discussed the impact of the judge's finding within the context of this case.

 [*745] The recent Tyler Court of Appeals case, *In the Matter of S.B.C., 805 S.W. 2d 1, 7* (Tex. App.--Tyler 1991, no writ), discusses the "certificate of approval" in the context of a challenge to the certification process. A "certificate of approval" is also referred to in the case of *In the Matter of J.T.H., 779 S.W. 2d 954, 957* (Tex. App.--Austin 1989). Both cases consider the certificate as a written instrument filed within the record of the case. **[**12]** We agree with the construction of the statute by the Tyler and Austin courts of appeal concerning the "certificate of approval" as constituting a written instrument.

Because the record does not contain a written "certification of approval" from the grand jury approving the State's second amended petition, appellant's fifth point of error is sustained. The judgment is reformed to delete the imposition of a determinate sentence of nine years, and the case is remanded to the trial court for imposition of an indeterminate sentence based upon the finding of delinquent conduct based on the murder allegation.

In his sixth point of error, appellant complains the judgment and the commitment order are void because the State did not properly serve him or his mother with the second amended petition made the basis of his prosecution. The appellant states this failure of service deprived the trial court of jurisdiction to enter a final disposition. Appellant admits he was served with the original petition and summons.

**HN3**[↑] The Texas Family Code provides that the juvenile court shall direct issuance of a summons to (1) the child named in the petition, (2) the child's parent, guardian, or custodian, **[**13]** (3) the child's guardian ad litem, and (4) any other person who appears to the court to be a proper or necessary party to the proceeding. *TEX. FAM. CODE ANN. § 53.06(a)* (Vernon 1986). A copy of the petition must accompany the summons. *TEX. FAM. CODE ANN. § 53.06(b)*. The code also provides that **HN4**[↑] "if a person to be served with a summons is in this state and can be found, the summons shall be served upon him personally at least two days before the day of the

adjudication hearing." *TEX. FAM. CODE ANN. § 53.07(a)* (Vernon 1986).

The two cases relied upon by appellant are distinguishable because they involve the State's failure to serve the juvenile defendant with the original petition and summons, not with any amended petitions. In *In the Matter of W.L.C., 562 S.W.2d 454, 455 (Tex. 1978)*, the juvenile was not served with the original petition to transfer him to district court. The probation officer testified he did not have personal knowledge of whether the juvenile had been served. The trial court then ordered W.L.C. served in open court. The only documentary evidence contained in the record concerning service, was an instrument titled "Precept to Serve" executed by the clerk, **[**14]** which directed the sheriff to serve W.L.C. with a copy of the original petition. The return of service form on the reverse side of the precept was blank. The supreme court reversed the order of transfer, holding that a juvenile must be served with summons and that, absent an affirmative showing of service of summons in the record, the juvenile court was without jurisdiction. *Id. at 455*.

In the second case, *In the Matter of D.W.M., 562 S.W.2d 851 (Tex. 1978)*, the State requested the juvenile court to waive its jurisdiction and transfer the juvenile, who was accused of murder, to the district court. The record did not show the juvenile was served with a summons to the transfer hearing. The court of appeals affirmed the transfer because the juvenile waived service of summons by voluntarily appearing and failing to object to the lack of summons. The supreme court reversed, holding that a juvenile must be served with summons, the service must affirmatively appear in the record, and the juvenile cannot waive service. *Id. at 853*. [4]

 **[**15]** **[*746]** We believe the case of *McBride v. State, 655 S.W.2d 280* (Tex. App.--Houston [14th Dist.] 1983, no writ), is directly on point. In that case, a second

---

[4] We note the reasoning of the Texas Supreme Court in this case is equally applicable to resolving appellant's fifth point of error. Just as the service of summons was the foundation for the trial court's acquisition of jurisdiction in *In the matter of WLC*, likewise is the action of the grand jury in approving an original petition necessary before a trial court can impose a determinate sentence. An affirmative showing in the record of service was required by the supreme court in *WLC*; no less is required when, as here, there is no affirmative showing in the record the grand jury approved the petition upon which appellant faced the possibility of incarceration for 30 years.

Nicole Mitchell

amended petition was served upon McBride and his mother; however, the citation accompanying the petition was defective. Rejecting McBride's argument the State's failure to serve him with a correct citation in the amended petition divested the trial court of jurisdiction, the Fourteenth Court of Appeals held, "when jurisdiction attached [by virtue of a properly served citation in the original petition], the court did not lose jurisdiction because the State may have failed to follow the statutory guidelines in serving appellant with an *amended petition.*" *Id. at 283*. (Emphasis in the original.)

We agree with this reasoning and apply it here. Because appellant and his mother were properly served with the original petition, the trial court acquired jurisdiction over him at that time. The State's failure to serve appellant with the second amended petition did not deprive the trial court of jurisdiction. *Id.*; *see also In the Matter of R.M., 648 S.W.2d 406, 407* (Tex. App.-- San Antonio 1983, no writ). **[\*\*16]** Point of error number six is overruled.

In his seventh point of error, appellant complains the trial court erred in overruling his "motion to bar prosecution." Appellant asserts the court violated *rule 6 of the judicial administration* rules by not conducting an adjudication hearing within 10 days after appellant was admitted to a detention facility. This point of error is without merit.

*HN5*[⬆] *Rule 6* provides that,

district and statutory county court judges . . . should, so far as reasonably possible, ensure that all cases are brought to trial or final disposition in conformity with the following time standards:

*Juvenile Cases* . . . (a) Concerning a juvenile in a detention facility: not later than 10 days following admission to such a facility, *except for good cause shown of record.*

TEX. GOV'T CODE ANN., Title 2, subtitle F, App., *rule 6(d)* (Vernon 1988 & Supp. 1991). *Rule 1 of the judicial administration* rules provides the rules are promulgated pursuant to *section 74.024 of the Texas Government Code*. *Section 74.024* provides that: *HN6*[⬆] "the supreme court may consider the adoption of rules relating to: (1) *nonbinding* time standards for pleading, discovery, motions, **[\*\*17]** and dispositions." *TEX. GOV'T CODE ANN. § 74.024(c)(1)* (Vernon 1988)(emphasis added).

*Rule 6* is a discretionary, nonbinding rule, and we will

not disturb a judgment for a court's failure to comply with such a rule. In this instance, however, we are of the opinion the trial court did comply with *rule 6*. *Rule 6(d)(4)* provides that "nothing herein shall prevent a judge from recessing a juvenile hearing at any stage of the proceeding . . . when in the opinion of the judge presiding in the case the best interests of the child and of society shall be served." Between the time appellant was initially detained and the date of trial, at least six detention hearings were held. *See TEX. FAM. CODE ANN. § 54.01(h)* (Vernon 1986). The detention orders filed as a result of these hearings state appellant continued to be detained because of one or more of the following: (1) suitable supervision, care, or protection for him was not provided by his parent, guardian, custodian, or other person; (2) he was accused of committing a felony offense and may be dangerous to himself or others if released; or (3) he was previously found to be a delinquent child or was previously convicted of a penal offense **[\*\*18]** punishable by a term in jail or prison and is likely to commit an offense if released. These detention orders clearly reflect the opinion of the juvenile judge that the best interests of appellant and society would be served by further detention.

The seventh point of error is overruled.

**[\*747]** The eighth point of error is that the trial court improperly consolidated a determinate sentencing offense with a nondeterminate sentencing offense. Because our disposition of the fifth point of error reverses the determinate sentence imposed and compels the trial court to enter a nondeterminate sentence, appellant's eighth point of error is also moot.

In his ninth point of error, appellant complains that, because he gave an oral statement before he was warned by the magistrate, a written statement he gave while in detention on October 7, 1988, was improperly admitted into evidence. Appellant asserts his oral statement provided the foundation for the written statement. This contention is not supported by the record.

*HN7*[⬆] *Section 51.09 of the Texas Family Code* provides that a child who gives an out-of-court statement must do so knowingly, intelligently, and voluntarily. The statement must **[\*\*19]** be signed in the presence of a magistrate, with no law enforcement officer or prosecuting attorney present. The magistrate must certify he has examined the child outside the presence of any law enforcement officer and has

determined the child understands the nature and content of his statement. *TEX. FAM. CODE ANN. § 51.09(b)(1)(F)* (Vernon 1986).

Oscar Chavarria is a criminal investigator with the Bryan Police Department. As part of his investigation of Michael Ramirez's murder, on October 7, 1988, he took a statement from appellant. Chavarria admitted he spoke to appellant for about five minutes before Judge Hensarling was called to administer the magistrate's warnings, but he stated the conversation was for the limited purpose of finding out if appellant would speak to him, and briefly, what had happened. He stated he did not write anything down during this five minute period. Chavarria denied that most of appellant's oral statements, made before he was warned by the magistrate, were contained in the written statement.

Judge Carolyn Hensarling testified she was called down to the detention center to administer a magistrate's warning to a juvenile. She said the warning is contained [**20] on a standardized form and encompasses two pages. The third page is where the officer takes the statement. After the statement is taken, she reads it back to the child to make sure it is true and correct. She then certifies on the warning whether she feels the child voluntarily executed the statement.

In this case, Judge Hensarling identified petitioner's exhibit 2 as the warning documents she administered to appellant on October 7, 1988. She said she felt appellant gave the statement voluntarily, knew what he was doing, and no force or pressure was used in obtaining appellant's signature. Page three was blank when she initially gave appellant his warnings.

Appellant testified he spoke to Chavarria about 10 or 15 minutes before seeing Judge Hensarling. Chavarria asked appellant whether he knew anything about a murder, was he around the area when it occurred, and did Leroy Lewis (a codefendant) have some money the week of the murder. Additionally, appellant stated the written statement he signed was made up by Chavarria *before* he spoke to Judge Hensarling, and he only saw Judge Hensarling once. Appellant denies he received any warnings from Judge Hensarling, and states that, had [**21] he received any warnings, he would not have made a statement at all.

Appellant relies on the case of *B.A.G. v. State, 715 S.W.2d 790* (Tex. App.--Dallas 1986), to support his proposition that, because Chavarria orally took evidence from him before he was warned by the magistrate, his written statement was inadmissible. In *B.A.G.*, a juvenile

was arrested in connection with a murder investigation. The arresting officer gave B.A.G. *Miranda* warnings, but did not inform her she could be tried as an adult. The officer questioned B.A.G. for about 85 minutes. After she made incriminating oral statements, the officer brought her before a magistrate, who advised her of her rights. She then gave a written statement substantially the same as her oral statement. B.A.G. signed her written statement in front of a second magistrate. Neither magistrate was informed of B.A.G.'s incriminating oral [*748] statements. The Dallas Court of Appeals reversed B.A.G.'s conviction holding the written statement was inadmissible because it was based on oral statements given before B.A.G. had been warned.

We do not find this authority persuasive for several reasons. First, the Court of Criminal [**22] Appeals reversed the Dallas Court on this point. *See Griffin v. State, 765 S.W.2d 422, 427 (Tex. Crim. App. 1989)*. Second, the Dallas Court of Appeals based its decision on the fact that neither magistrate knew B.A.G. had previously given an incriminating oral statement, and thus, neither magistrate informed B.A.G. her oral statement could not be used against her. Appellant here has not made such an allegation. Finally, we do not believe appellant's initial statements to Chavarria, standing alone, were incriminating; they were no more than responses to generalized investigatory questions. By appellant's own admission, the only things Chavarria asked him were whether he knew about a murder, was he in the vicinity, and did he know whether Leroy Lewis had any money the week Ramirez was killed. Appellant did not implicate himself in any fashion by these statements.

The ninth point of error is overruled.

In his tenth point of error, appellant asserts a second statement he made while in detention on October 11, 1988, also was admitted improperly. His complaint is the magistrate's warning was not administered by the magistrate, but by the magistrate's secretary.

Chavarria testified [**23] he again spoke with appellant on October 11 for about five minutes before calling the magistrate. Chavarria said he told appellant he had received additional information that appellant knew more about what had happened than appellant had let on in the first conversation. After he spoke to appellant, Chavarria called Judge Dewey to admonish appellant. Judge Dewey was accompanied by his secretary, Marilyn Myrick.

Myrick testified that, although the judge was present, it was she, not Judge Dewey, who actually read the magistrate's warnings to appellant. This was because Judge Dewey has very poor eyesight, and has trouble reading. Only she, the judge, and appellant were in the room. After appellant's statement was typed, Myrick read the statement to appellant; she did not give him the opportunity to read it himself. Upon further questioning, Myrick stated Judge Dewey asked appellant whether he understood what was just read to him and whether he needed to make any changes, omissions, or additions. Appellant indicated he understood what was read and he did not need to make any changes. Judge Dewey then signed the magistrate's certification.

Appellant testified he knew what he was doing **[\*\*24]** when he gave the October 11 statement; he understood he had the right to remain silent, and he voluntarily gave up that right; he said he understood everything when Myrick read his statement back to him.

We find nothing in the family code requiring the magistrate to be the person to physically administer warnings to a defendant. We find it sufficient Judge Dewey was present in room when the warnings were read to appellant by his secretary. Judge Dewey specifically asked appellant whether he understood his statement, and he personally signed the magistrate's certification.

The tenth point of error is overruled.

In the eleventh point of error, appellant asserts the trial court improperly charged the jury under the law of parties. This theory was not stated in either the original or the amended petition, and, relying *TEX. R. CIV. P. 301*, appellant contends the charge allowed the jury to find him guilty on a theory not contained in the pleadings. Appellant properly preserved this point of error by objecting to the charge.

We overrule this point of error. *HN8*[↑] An indictment need not plead evidence relied on by the State, i.e. that the defendant is a party. *Swope v. State, 805 S.W.2d* **[\*\*25]** *442* (Tex. Crim. App. Feb. 3, 1991) slip op. at 3, 5. Moreover, appellant was not harmed by **[\*749]** inclusion of a party instruction. The jury did not have to rely on the acts of others to find appellant guilty. In appellant's second out-of-court statement, he admitted he was present during the commission of the offenses, he took Ramirez's wallet and kept the 4500 pesos he found in it, and he accepted a split of the American money taken from Ramirez. This admission, in conjunction with the testimony of C.R., N.D., and

Kenneth Lewis, stating appellant was the person who jumped on Ramirez's head at least once and maybe even twice, was enough for the jury to find appellant himself committed aggravated robbery and murder.

The eleventh point of error is overruled.

In the twelfth point of error, appellant asserts there was no evidence to sustain the jury findings. Appellant readily admits in his brief that if we find his two out-of-court statements admissible, then the no evidence issue would not be applicable. As we have found the statements admissible, we must necessarily find there was some evidence to support the jury's finding of guilt.

The twelfth point of error is overruled.

**[\*\*26]** A lack of sufficient evidence is appellant's thirteenth point of error. This case is governed by the rules of civil procedure. *TEX. FAM. CODE ANN. § 51.17* (Vernon Supp. 1991). The rules provide that, *HN9*[↑] in order to preserve a factual insufficiency point of error, a motion for a new trial complaining of the insufficiency must be filed. No motion for new trial was filed in this case. Appellant has not preserved this point of error for review. However, in the interest of justice we will consider appellant's point of error. [5]

**[\*\*27]** *HN10*[↑]

In reviewing the sufficiency of the evidence to support a guilty verdict, the evidence is viewed in the light most favorable to the verdict. *Flournoy v. State, 668 S.W.2d 380, 383 (Tex. Crim. App. 1984)*; *Barron v. State, 773 S.W.2d 44, 46* (Tex. App.-- Houston [1st Dist.] 1989, pet. ref'd). The critical inquiry is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)*; *Rogers v. State, 795 S.W.2d 300,*

---

[5] *See generally* *Obeidat v. State, 787 S.W.2d 627, 628 (Tex. Crim. App. 1990)* (even though defendant waived error by putting on a defense, court reviewed the point as one challenging the sufficiency of the evidence); *Miguez v. State, 715 S.W.2d 795,*, 799 (Tex. App.--Houston [14th Dist.] 1986, pet. ref'd) (court considered Miguez's point of error even though he did not correctly raise his complaint); *de Alberquerque v. State, 712 S.W.2d 809, 812* (Tex. App.-- Houston [1st Dist.] 1986, no pet.) (court considered whether there was sufficiency evidence the State had proved every element of the offense, where appellant's point of error complained of the trial court's failure to quash the indictment).

*303* (Tex. App.--Houston [1st Dist.] 1990, pet. filed). In a juvenile case, the question is whether the evidence considered as a whole shows that the State sustained its burden of proof beyond a reasonable doubt. *In the Matter of H.R.A., 790 S.W.2d 102, 103* (Tex. App.--Beaumont 1990, no writ).

The following testimony was adduced at trial. Oscar Chavarria, Carolyn Hensarling, and Marilyn Myrick testified as set out above. Several other witnesses testified as to Ramirez's physical condition and mental state as he lay by the side of the road. None of the **[**28]** witnesses were able to relay any information to the police about Ramirez's assailants, except they were black males.

Dr. J. C. Lee, a pathologist, is the director of laboratories at St. Joseph Hospital in Bryan. He performed the autopsy on Ramirez and testified Ramirez died as a result of a subdural brain hemorrhage.

Three accomplices also testified against appellant. C.R., age 16, also has been charged with aggravated robbery and murder. C.R. said he saw Leroy Lewis kick Ramirez. He could not tell whether Lewis kicked Ramirez in the back or the head. While he never saw appellant kick Ramirez, C.R. testified he later asked appellant if he had kicked Ramirez. Appellant laughed and nodded his head affirmatively.

 **[*750]** N.D., age 13, also testified it was Leroy Lewis who initially kicked Ramirez in the back. He said appellant jumped on Ramirez's head, but did not kick him in the head. N.D. denied he ever kicked Ramirez himself.

The final accomplice to testify was Kenneth Lewis, age 19. Lewis testified it was his brother, Leroy, who kicked Ramirez in the back, knocking him down. He further stated he saw appellant jump on Ramirez's head twice, and N.D. kick Ramirez in the upper **[**29]** chest and face.

Other than appellant's October 11, 1988 statement, the testimony of these three accomplice witnesses is the only evidence that connects appellant to the offenses. The family code provides that

*HN11*[↑] an adjudication of delinquent conduct or conduct indicating a need for supervision cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the child with the alleged delinquent conduct or conduct indicating a need for supervision; and the corroboration is not sufficient if it merely shows the commission of the alleged conduct.

*TEX. FAM. CODE ANN. § 54.03(e)* (Vernon 1986).

To determine whether the testimony of C.R., N.D., and Kenneth Lewis was sufficiently corroborated, we are required to eliminate from consideration the evidence of the accomplice witnesses, and then examine the testimony of the remaining witnesses to see if there is evidence of an incriminating character tending to connect appellant with the commission of the offense. *In the Matter of J.R.R., 689 S.W.2d 516, 519* (Tex. App.--Dallas), *aff'd, 696 S.W.2d 382 (Tex. 1985)*.

The three accomplices were the only witnesses who in any way connected **[**30]** appellant to the crime. Appellant's first out-of-court statement, taken October 7, does not provide sufficient corroboration of the accomplice's testimony. In this first statement, appellant states he met Leroy Lewis at a park; Lewis "hangs out" with C.R.; the next Monday, after appellant heard "that the Mexican was beaten up and that he died," he saw Leroy Lewis with his brother, Kenneth, at about 6:00 p.m.; both Leroy and Kenneth had $ 10.00; he didn't know how they got the money.

In the second statement, however, appellant does implicate himself in the commission of the offense. He stated:

There was six of us, [C.R.], Leroy Lewis, Kenneth Lewis, [N.D.], and me. We were walking down the street, on highway 25th and we saw a Mexican walking down 25th street. Leroy Lewis wanted to take his money. Leroy Lewis said "Lets [sic] get him." I said that I wanted to go home. [C.R.] wanted to go with me. About four minutes later, we saw four guys running towards the Harlem Club. Before they ran to the Club, Leroy kicked the Mexican in the back. Leroy jumped up and kicked him in the back. The Mexican fell and looked up. The Mexican fell on his face. [N.D.] ran and hit him in **[**31]** the head. He hit the Mexican in the head with his foot, one time. Leroy started swinging his boots everywhere. [C.R.] took off running. We saw them run towards the Harlem.

We ran towards the Harlem. We got half of the money. I got $ 10, [C.R.] got $ 10, [N.D.] got $ 10, Leroy got $ 20, Kenneth Lewis got $ 10. We did not know that Leroy had an extra ten. We split up the money. [C.R.], [N.D.], and I went home. I don't know where Leroy and Kenneth

Lewis went. They dropped the wallet and I picked it up. It had $ 4500 in Mexican dollars, and I kept it. I put the money under a speaker in my house and about five minutes later, it was not there. Kenneth Lewis told us to grab the wallet. Leroy took the wallet out of the Mexican's pants. Leroy took the boots off the Mexican and threw them away. [L.W.] was at my grandmother's house at this time. Kenneth Lewis was on the bike.

We find this statement of appellant is enough evidence of an incriminating character connecting appellant with the commission of the offense to corroborate the accomplices' testimony. We may thus consider **[*751]** the accomplices' testimony in determining the sufficiency of the evidence.

Appellant's **[**32]** statement, combined with the testimony of the three accomplices provided the jury with ample evidence from which it could render a guilty verdict.

The thirteenth point of error is overruled.

In the fourteenth point of error, appellant claims the trial court erred in not allowing the jury to set a term of years for probation. The family code provides the court or the jury may place the child on probation on such reasonable and lawful terms as the court may determine, for a period not to exceed one year. *TEX. FAM. CODE ANN. § 54.04(d)(1)* (Vernon Supp. 1991). Question No. 2 of the jury charge on disposition asked the jurors if appellant should be placed on probation, to which they replied, "No." The question specifically tracked the language of *section 54.04(d)(1)*. The trial court was without the authority to instruct the jury any other way. Accordingly, we cannot say the trial court erred in not allowing the jury to set a term of years for probation.

The fourteenth point of error is overruled.

In his last point of error, appellant complains the trial court erred in denying his request to submit the lesser included offenses of voluntary manslaughter, criminal negligent homicide, **[**33]** simple assault, and involuntary manslaughter.

*HN12*[⬆] An offense is a lesser included office if 1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; 2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; 3) it differs from the offense

charged only in the respect that a less culpable mental state suffices to establish its commission; or 4) it consists of an attempt to commit the offense charged or an otherwise included offense. *TEX. CODE CRIM. P. ANN. art. 37.09* (Vernon 1981).

*HN13*[⬆] In determining whether a charge on a lesser included offense is required, a two-step analysis is required. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, there must also be some evidence in the record that if the defendant is guilty, he is guilty ONLY of the lesser included offense. *Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981)*(op. on reh'g). If the evidence raises the issue of a lesser included offense, it must be **[**34]** included in the charge. *Sanchez v. State, 745 S.W.2d 353, 357 (Tex. Crim. App. 1988)*.

The State's petition alleged appellant committed the offenses of aggravated robbery and murder. *HN14*[⬆] A person commits the offense of robbery if, while in the course of committing theft, and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury, or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *TEX. PENAL CODE ANN. § 29.02(a)* (Vernon 1974). If in the course of committing a robbery, a person also causes serious bodily injury to another, he has committed aggravated robbery. *TEX. PENAL CODE ANN. § 29.03(a)(1)* (Vernon Supp. 1991).

*HN15*[⬆] A person commits the offense of murder if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the **[**35]** commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

*TEX. PENAL CODE ANN. § 19.02(a)* (Vernon 1989). In light of the elements set out for these offenses, we will now analyze each of **[*752]** the instructions appellant claims should have been given.

Nicole Mitchell

A. *Voluntary Manslaughter*. *HN16*[↑] A person commits the offense if he causes the death of another under circumstances that would constitute murder under *section 19.02 of the Texas Penal Code*, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause. *TEX. PENAL CODE ANN. § 19.04(a)* (Vernon 1989). "Sudden passions" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed, such passion arising at the time of the offense and not solely the result of former provocation. *TEX. PENAL CODE ANN. § 19.02(b)* (Vernon 1989).

The evidence in this case did not raise the issue of sudden passion. The record reflects Ramirez was merely walking down the street after exiting from a bar, when he was "jumped" by appellant and his friends. **[**36]** There was no evidence Ramirez provoked appellant in any way. The evidence does not raise the issue of sudden passion; therefore, the trial court did not err in failing to include an instruction on voluntary manslaughter.

B. *Criminally Negligent Homicide*. *HN17*[↑] A person commits this offense if he causes the death of an individual by criminal negligence. *TEX. PENAL CODE ANN. § 19.07(a)* (Vernon 1989). A person acts with criminal negligence or is criminally negligent when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care an ordinary person would exercise under all the same circumstances as viewed from the actor's standpoint. *TEX. PENAL CODE ANN. § 6.03(d)* (Vernon 1974). The essence of criminal negligence is the failure of the actor to perceive the risk created by his conduct. *Mendieta v. State, 706 S.W.2d 651, 652 (Tex. Crim. App. 1985)*. Criminally negligent homicide is a lesser included offense of murder. *Thomas v. State, 699 S.W.2d 845, 847 (Tex. Crim. App. 1985)*.

Before a **[**37]** charge on this particular crime is required, the appellate record must contain evidence showing the accused was *unaware* of the risk his conduct was creating. *Mendieta, 706 S.W.2d at 653*; *Saunders v. State, 780 S.W.2d 471, 475* (Tex. App.--Corpus Christi 1989, pet. granted). The pathologist at St. Joseph Hospital testified Ramirez died from a subdural hemorrhage in the brain. C.R. testified appellant admitted to him he had kicked Ramirez. N.D. stated he saw appellant jump on Ramirez's head.

Kenneth Lewis also stated he saw appellant jump on Ramirez's head. We find no evidence appellant was unaware of the risk he created by his conduct. Further, there is no evidence indicating that, if appellant was guilty of causing Ramirez's death, he was guilty only of criminally negligent homicide. *See Royster, 622 S.W.2d at 446*; *Saunders, 780 S.W.2d at 475*. Thus, the trial court did not err in refusing to instruct the jury on this lesser included offense.

C. *Simple Assault*. *HN18*[↑] Assault occurs when someone intentionally, knowingly, or recklessly causes bodily injury to another, threatens another with imminent bodily injury, or intentionally or knowingly causes physical **[**38]** contact with another when the actor knows or should reasonably believe the other will regard the contact as offensive or provocative. *TEX. PENAL CODE ANN. § 22.01* (Vernon 1989). Assault is a lesser included offense of aggravated robbery. *Ex parte Drewery, 710 S.W.2d 148, 152* (Tex. App.--Houston [1st Dist.] 1986, pet. ref'd).

In appellant's second statement to Chavarria, he stated he took Ramirez's wallet and he kept the money he found in it. The accomplices' testimony showed appellant participated in the beating that enabled him to receive $ 10. That beating resulted in Ramirez's death. There is no evidence in this record that, if appellant was guilty of injuring Ramirez, he was guilty of inflicting only bodily injury and not serious bodily injury. The trial court did not err in refusing this instruction.

D. *Involuntary Manslaughter*. *HN19*[↑] Involuntary manslaughter occurs when a person **[*753]** recklessly causes the death of another. *Lugo v. State, 667 S.W.2d 144, 147 (Tex. Crim. App. 1984)*; *TEX. PENAL CODE ANN. § 19.05(a)(1)* (Vernon 1989). A person acts recklessly when he or she is aware of, but consciously disregards, a substantial and unjustifiable risk the circumstances **[**39]** exist or the result will occur. *Lugo, 667 S.W.2d at 147*. If there was not enough evidence to raise an issue of reasonable doubt whether appellant was acting other than intentionally or knowingly, then the trial court properly excluded this instruction. *Zepeda v. State, 797 S.W.2d 258, 264* (Tex. App.--Corpus Christi 1990, pet. ref'd).

Two accomplices testified appellant jumped on Ramirez's head after Leroy Lewis delivered the initial blow. In appellant's second statement to Chavarria, he does not state he was kept at the scene against his will or he was made to jump on Ramirez. In the statement, appellant admits to taking Ramirez's wallet and keeping

the money he found. The State showed appellant intentionally engaged in a beating that resulted in Ramirez's death. Since the evidence did not show appellant's conduct was merely reckless, the trial court did not err in failing to submit an instruction on involuntary manslaughter.

Appellant's fifteenth point of error is overruled.

The judgment of the trial court is reformed to delete the nine year determinate sentence, and the cause is remanded to that court for imposition of an indeterminate sentence. As reformed, the judgment **[\*\*40]** of the trial court is affirmed.

Judgment reversed and remanded in part, affirmed in part.

---

**End of Document**

# *Jones v. Morales*

Court of Appeals of Texas, Seventh District, Amarillo

May 21, 2010, Decided

NO. 07-08-00367-CV

**Reporter**
318 S.W.3d 419 *; 2010 Tex. App. LEXIS 3880 **

JON JONES, APPELLANT v. AMADO Z. MORALES, APPELLEE

**Subsequent History:** Rehearing overruled by *Jones v. Morales, 2010 Tex. App. LEXIS 6224 (Tex. App. Amarillo, Aug. 2, 2010)*

Petition for review denied by *Jones v. Morales, 2010 Tex. LEXIS 947 (Tex., Dec. 3, 2010)*

**Prior History:** [**1] FROM THE 110TH DISTRICT COURT OF FLOYD COUNTY; NO. 9894; HONORABLE H. BRYAN POFF, JR., JUDGE.

## Core Terms

ballot, voter, trial court, envelope, voting, election, carrier, signature, uncounted, contest, mail, want of prosecution, motion to dismiss, abused, requires, mail-in, argues, ambiguous, witnessed, presumed, marking, winner, cases, cast, rejected ballots, transported, assisting, parties

## Case Summary

### Procedural Posture

Appellant contestee challenged the judgment of the 110th District Court of Floyd County, Texas, finding appellee contestant the winner of the November 2006 general election for Floyd County Commissioner Precinct Four.

### Overview

The outcome of the commissioner's race between the parties was close. The initial canvas showed the contestee the winner by three votes. The contestant requested a recount which tallied the contestee the winner by four votes, and the contestant filed the underlying election contest. The contestant argued that the county's early voting ballot board wrongly rejected

5-7 mail-in ballots. Judgment was for the contestant, as the trial court concluded the votes of the uncounted voters should have been included in the total and the omission materially affected the outcome of the election. The contestant was adjudged winner of the election by one vote. The appellate court ruled that the trial court did not abuse its discretion in adjudging the contestant the winner. Implicit in the judgment of the trial court was the determination that each of the uncounted voters properly signed the application for ballot by mail and carrier envelope. The trial court heard testimony that, if believed, permitted it to form a firm belief or conviction that its finding was true.

### Outcome
The judgment was affirmed.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Appellate Jurisdiction > General Overview

***HN1***[⬇] **Appeals, Appellate Jurisdiction**

The appellate court is required to consider its jurisdiction sua sponte if necessary.

Governments > Courts > Rule Application & Interpretation

***HN2***[⬇] **Courts, Rule Application & Interpretation**

The same rules of interpretation apply in construing the meaning of court orders as in ascertaining the meaning of other written instruments. A court may consider on its own motion whether a document is ambiguous. Whether

a document is ambiguous is a question of law. A document is not ambiguous if as worded it can be given a definite or certain legal meaning. But a document is ambiguous if its meaning is reasonably susceptible to two or more reasonable interpretations.

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

*HN3*[⬇] **Appellate Jurisdiction, Final Judgment Rule**

When an order is not produced following a conventional trial on the merits, the appellate court does not presume its finality. Rather, following summary disposition when finality is not clear the appellate court looks to the order and the record to determine finality.

Evidence > Burdens of Proof > Clear & Convincing Proof

Governments > Local Governments > Elections

Governments > State & Territorial Governments > Elections

*HN4*[⬇] **Burdens of Proof, Clear & Convincing Proof**

To overturn an election, the contestant has the burden of proving by clear and convincing evidence that voting irregularities materially affected the election results. To prove that the outcome is materially affected, the contestant must show that illegal votes are counted or an election official prevented eligible voters from voting, failed to count legal votes, or engaged in other fraud, illegal conduct, or mistake.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Governments > State & Territorial Governments > Elections

Governments > Local Governments > Elections

*HN5*[⬇] **Standards of Review, Abuse of Discretion**

The standard of review in an appeal from a judgment in an election contest is a determination whether the trial court abused its discretion. A trial court abuses its discretion when it acts without reference to any guiding rules and principles.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

*HN6*[⬇] **Standards of Review, Abuse of Discretion**

The sufficiency of evidence supporting a trial court's finding of fact may be a relevant factor in determining whether the court abused its discretion. In a non-jury case, when the appellate record includes both findings of fact and conclusions of law and a reporter's record, the appellate court reviews the sufficiency of the evidence under the same standards applied in cases tried by jury. In reviewing the legal sufficiency of the evidence under a clear and convincing standard, the appellate court looks at all the evidence, in the light most favorable to the judgment, to determine if the trier of fact could reasonably have formed a firm belief or conviction that its finding is true. The appellate court presumes that the trier of fact resolved disputed facts in favor of its findings if a reasonable trier of fact could do so. The appellate court disregards any contrary evidence if a reasonable trier of fact could do so, but the appellate court does not disregard undisputed facts.

Governments > Local Governments > Elections

Governments > State & Territorial Governments > Elections

*HN7*[⬇] **Local Governments, Elections**

Voting early by mail requires a voter to apply in writing for a ballot and then mail the completed ballot to the election clerk in an official carrier envelope bearing the signature of the voter. *Tex. Elec. Code Ann. § 86.005(c)* (2010). The ballot board may accept a ballot voted early by mail only if neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness. *Tex. Elec. Code Ann. § 87.041(b)(2)* (2010). The law thus requires those who vote early by mail to sign both the application and the carrier envelope.

Governments > Local Governments > Elections

Governments > State & Territorial Governments > Elections

*HN8*[⬇] **Local Governments, Elections**

When a contestant challenges a ballot board's rejection of a ballot, the ballot board is presumed to have acted properly and it is the contestant's burden to show by clear and convincing evidence the board erred. Discharging this burden requires the contestant to show the challenged voter is legally qualified to vote, and the ballot is properly cast. But if a ballot is rejected for a reason unrelated to the voter's qualification, it is unnecessary for the contestant to prove the qualification of the challenged voter.

Governments > Local Governments > Elections

Governments > State & Territorial Governments > Elections

*HN9*[⬇] **Local Governments, Elections**

A qualified voter is a voter who: (1) is age 18 years or older; (2) is a United States citizen; (3) has not been finally adjudged by a court exercising probate jurisdiction totally mentally incapacitated or partially mentally incapacitated without the right to vote; (4) has not been finally convicted of a felony, or if so has satisfied enumerated requirements; (5) is a resident of this state; and (6) is a registered voter. *Tex. Elec. Code Ann. § 11.002* (2010).

Governments > Local Governments > Elections

Governments > State & Territorial Governments > Elections

*HN10*[⬇] **Local Governments, Elections**

The ballot board acts on the basis of the signatures before it. The Texas Election Code does not require the board to make inquiry of voters whose signatures do not match. But in an election contest based on ballots the ballot board rejected on the ground of signature deficiency, the district court may receive oral testimony

from the voter or other witnesses regarding the similarity of the signatures and may compare the signatures. The court may rely on its own comparison without the aid of expert testimony.

Civil Procedure > Trials > Jury Trials > Province of Court & Jury

*HN11*[⬇] **Jury Trials, Province of Court & Jury**

The trier of fact is the exclusive judge of the credibility of the witnesses, and the weight to be given their testimony. It observes and is free to take into account the candor and demeanor of the witnesses. It also is free to make its own evaluation of the evidence in light of the testimony.

Civil Procedure > Trials > Jury Trials > Province of Court & Jury

*HN12*[⬇] **Jury Trials, Province of Court & Jury**

The law does not allow the appellate court to disturb the fact finder's credibility determinations.

Governments > State & Territorial Governments > Elections

Governments > Local Governments > Elections

*HN13*[⬇] **State & Territorial Governments, Elections**

A voter who is unable to write or see due to a physical disability or who is unable to read the language of the ballot is eligible for assistance marking the ballot. *Tex. Elec. Code Ann. §§ 64.031*, *86.010(a)* (2010). A voter may be assisted in marking the ballot by a person of the voter's selection other than the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. *Tex. Elec. Code Ann. § 64.032(c)* (2010). A person voting by mail may receive no greater assistance than a person voting at a polling place. *Tex. Elec. Code Ann. § 86.010(b)* (2010). For purposes of *Tex. Elec. Code Ann. § 86.010*, assisting a voter with a mail-in ballot, in the presence of the ballot or carrier envelope, includes reading the ballot to the voter, directing the voter to read the ballot, marking the ballot, or directing the voter to mark the ballot. *Tex. Elec. Code Ann. § 64.0321* (2010). A person

assisting the voter to prepare a ballot must provide his name, address and signature on the carrier envelope. *Tex. Elec. Code Ann. § 86.013(c)* (2010). The assistant must also sign the oath prescribed in *Tex. Elec. Code Ann. § 64.034* included on the carrier envelope. *Tex. Elec. Code Ann. §§ 86.010(c)*, *86.013(f)* (2010).

Governments > Local Governments > Elections

Governments > State & Territorial Governments > Elections

**HN14[↓]** **Local Governments, Elections**

In the Texas Election Code there is no Texas Legislative determination that a failure of a voter's assistant to complete the required information on the carrier envelope requires rejection of the voter's ballot. Statute expressly provides that the ballot of a voter who is assisted in violation of *Tex. Elec. Code Ann. § 86.010(a)* or *(b)* may not be counted, but the Legislature has not disqualified the ballot of a person whose assistant fails to sign the oath, or provide his name and address, on the carrier envelope. *Tex. Elec. Code Ann. § 86.010(d)* (2010).

Governments > Legislation > Interpretation

**HN15[↓]** **Legislation, Interpretation**

Long-settled rules of statutory construction restrain a court from reading words into the language chosen by the legislature: every word of a statute must be presumed to have been used for a purpose. Likewise, a court believes every word excluded from a statute must also be presumed to have been excluded for a purpose. This rule complements another general statutory construction principle that courts should not insert words in a statute except to give effect to clear legislative intent. Additional language is read into a statute only when it is necessary to give effect to the clear legislative intent.

Governments > State & Territorial Governments > Elections

Governments > Local Governments > Elections

**HN16[↓]** **State & Territorial Governments, Elections**

The Texas Legislature has prescribed the class of individuals a voter may not select to assist the voter in marking the ballot, and the excluded individuals does not include a candidate. *Tex. Elec. Code Ann. § 64.032(c)* provides that on a voter's request, a voter may be assisted by any person selected by voter other than the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. *Tex. Elec. Code Ann. § 86.010(a)* limits a person who may assist a voter in casting a ballot by mail to those provided by *Tex. Elec. Code Ann. § 64.032(c)*.

Governments > State & Territorial Governments > Elections

Governments > Local Governments > Elections

**HN17[↓]** **State & Territorial Governments, Elections**

A voter voting by mail must place the marked ballot in the official ballot envelope, seal the ballot envelope, place the ballot envelope in the official carrier envelope, seal the carrier envelope, and sign the certificate on the carrier envelope. *Tex. Elec. Code Ann. § 86.005(c)* (2010). A person other than the voter who deposits the carrier envelope in the mail or with a common or contract carrier must provide the person's signature, printed name, and residence address on the reverse side of the envelope. *Tex. Elec. Code Ann. § 86.0051* (2010). The carrier envelope may be transported and delivered to the early voting clerk only by mail or common or contract carrier. *Tex. Elec. Code Ann. § 86.006(a)* (2010). A ballot returned in violation of *Tex. Elec. Code Ann. § 86.006* may not be counted. *Tex. Elec. Code Ann. § 86.006(h)* (2010).

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

**HN18[↓]** **Involuntary Dismissals, Failure to Prosecute**

A trial court is empowered to dismiss a case for want of prosecution either under *Tex. R. Civ. P. 165a* or its inherent power to control its docket.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

HN19[↓] **Standards of Review, Abuse of Discretion**

The appellate court reviews a trial court's ruling on a motion to dismiss for want of prosecution by the abuse of discretion standard.

Civil Procedure > Trials > Bench Trials

HN20[↓] **Trials, Bench Trials**

In non-jury cases, district court judges should, so far as reasonably possible, ensure that all non-family law civil cases are brought to trial or final disposition within 12 months from appearance date. *Tex. R. Jud. Admin. 6(b)(2)*. According to *Tex. R. Jud. Admin. 1*, the Rules are promulgated pursuant to *Tex. Gov't Code Ann. § 74.024*. *Tex. R. Jud. Admin. 1*. *Tex. Gov't Code Ann. § 74.024* provides the supreme court may consider the adoption of rules relating to: (1) nonbinding time standards for pleading, discovery, motions, and dispositions; (2) nonbinding dismissal of inactive cases from dockets, if the dismissal is warranted. *Tex. Gov't Code Ann. § 74.024(c)(1),(2)* (Supp. 2009). Thus, the application of *Tex. R. Jud. Admin. 6* is discretionary and non-binding. Moreover, circumstances may preclude adherence to the standards under especially complex cases or those presenting special circumstances. *Tex. R. Jud. Admin. 6(e)*. Thus, *Tex. R. Jud. Admin. 6* does not fix a bright line demarking the outward limit of a trial court's discretion to control its docket.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

HN21[↓] **Standards of Review, Abuse of Discretion**

A trial court abuses its discretion when it acts without reference to any guiding rules or principles, not when it exercises that discretion in a manner different than a reviewing appellate court might.

**Counsel:** Gary M. Bellair, CRAIG, TERRILL, HALE & GRANTHAM, L.L.P., Lubbock, TX.

Paul E. Mansur, Attorney at Law, Denver City, TX.

**Judges:** PANEL B. Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**Opinion by:** James T. Campbell

# Opinion

 **[*421]** In this appeal of an election contest, appellant and contestee below Jon Jones asks us to reverse the trial court's judgment finding appellee and contestant below Amado Morales the winner of the November 2006 general election for Floyd County commissioner precinct four, and render judgment declaring Jones the winner. Finding the trial court did not abuse its discretion in adjudging Morales the winner, we will affirm its judgment.

Background

The outcome of the commissioner's race between Jones and Morales was close. The initial canvas showed Jones the winner by three votes. Morales requested a recount which tallied Jones the winner by four votes. Morales then filed the underlying election contest in December 2006. According to Morales's petition, the county's early voting ballot board [1] wrongly rejected "5-7 mail-in ballots." The issues for Morales at trial devolved to whether the ballot board incorrectly rejected the mail-in ballots of voters Maldonado, De Los Santos, Castillo, Olivo, and Vargas [2] and whether two voters **[**2]** were wrongly denied precinct four ballots. Each of the uncounted voters voted for Morales. Trial began in June 2008 but was recessed until September because Vargas was hospitalized. Judgment was for Morales as the court concluded the votes of the uncounted voters should have been included in the total and this omission materially affected the outcome of the election. Thus Morales was adjudged winner of the election by one vote. This appeal followed.

Issue

Jones **[*422]** argues the trial court abused its discretion by rendering judgment for Morales. Through

---

[1] The Election Code requires creation of an early voting ballot board and empowers it to screen early voting ballots. *See Tex. Elec. Code Ann. §§ 87.001-.005* & *87.041* (Vernon 2010). We will cite the current version of the Election Code unless otherwise indicated.

[2] In its findings of fact and conclusions of law, the trial court collectively identified Maldonado, De Los Santos, Castillo, Olivo, and Vargas as "the uncounted voters." We also refer to them collectively in that manner.

multiple sub-issues he contends the uncounted voters did not properly execute documents required for voting by mail, Maldonado received improper assistance voting by **[\*\*3]** mail, the ballot of De Los Santos was improperly transported to the early voting clerk, and his motion to dismiss for want of prosecution was improperly denied. By cross-issue, Morales argues the trial court abused its discretion by failing to find two voters were improperly denied precinct four ballots.

Analysis

Appellate Jurisdiction

In the trial court, Jones filed a motion to dismiss the case for want of prosecution. The clerk's record contains an "Order Granting Motion to Dismiss" signed December 20, 2007, a judgment signed September 19, 2008, and Jones's notice of appeal filed on September 19. If the case was dismissed for want of prosecution on December 20, we lack appellate jurisdiction. *See* *Tex. R. App. P. 26.1* & *26.3*. Therefore, on our own motion, we first consider our jurisdiction of this appeal. *See* *Buffalo Royalty Corp. v. Enron Corp., 906 S.W.2d 275, 277 (Tex.App.--Amarillo 1995, no writ)* (*HN1*[⬆]] appellate court required to consider its jurisdiction *sua sponte* if necessary).

In the course of discovery, Morales filed a motion to compel the county clerk to produce the ballots rejected by the ballot board. Jones responded with a motion to dismiss the case for want of prosecution. On **[\*\*4]** December 20, 2007, the trial court heard the motion. The court was presented an order containing language granting the motion and ordering that Morales take nothing. By pen and ink, the trial court struck out the word "granted" and wrote "denied" immediately above. But the court left undisturbed the sentence ordering that Morales take nothing, and signed the order. Thus the order purports to deny the motion to dismiss but concludes with language ordering the relief requested. Given this conflict in the order's language, we must determine whether the order is ambiguous and if so the intention of the trial court.

*HN2*[⬆]] "The same rules of interpretation apply in construing the meaning of court orders as in ascertaining the meaning of other written instruments." *Lal v. Harris Methodist Fort Worth, 230 S.W.3d 468, 474 (Tex.App.--Fort Worth 2007, no pet.)*. A court may consider on its own motion whether a document is ambiguous. *In re Golden Peanut Co., LLC, 269 S.W.3d 302, 313-14 (Tex.App.--Eastland 2008, orig. proceeding)*. Whether a document is ambiguous is a question of law. *Tuthill v. Southwestern Public Service Co., 614 S.W.2d 205, 211 (Tex.Civ.App.--Amarillo 1981, writ ref'd n.r.e.)*. A document **[\*\*5]** is not ambiguous if as worded it can be given a definite or certain legal meaning. *Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998)*. But a document is ambiguous if its meaning is reasonably susceptible to two or more reasonable interpretations. *Id.*

We find the December 20 order ambiguous. On one hand, it denies the underlying motion to dismiss for want of prosecution. But on the other, it contains language finally disposing of the case.

Further, *HN3*[⬆]] because the order was not produced following a conventional trial on the merits, we do not presume its finality. *Lehmann v. Har-Con Corp., 39 S.W.3d 191, 199 (Tex. 2001)*. Rather, following summary disposition when finality is not clear we look to the order and the record to determine finality. *Id. at 195*. And from the record our inquiry is satisfied. At the hearing on the motion to dismiss, after the parties' presentations and in open court, the trial judge orally rendered an order denying Jones's motion to dismiss. It then took up the motion to compel, which was granted by an order signed some twenty days later. On April 25, the court set the case for trial and trial began on June 24. The case proceeded to final judgment **[\*\*6]** without recorded comment by **[\*423]** the court or the parties regarding the effect of the December 20 order. The only reasonable interpretation of the December 20 order is denial of Jones's motion to dismiss. The notice of appeal Jones filed following final judgment was timely. We have jurisdiction of the appeal.

Whether Voting Irregularities Materially Affected the Election Results.

*HN4*[⬆]] "To overturn an election, the contestant has the burden of proving by clear and convincing evidence that voting irregularities materially affected the election results." *Tiller v. Martinez, 974 S.W.2d 769, 772 (Tex.App.--San Antonio 1998, pet. dism'd w.o.j.)* (citing *Alvarez v. Espinoza, 844 S.W.2d 238, 242 (Tex.App.--San Antonio 1992, writ dism'd w.o.j.)*, and *Guerra v. Garza, 865 S.W.2d 573, 576 (Tex.App.--Corpus Christi 1993, writ dism'd w.o.j.))*. "To prove that the outcome was materially affected, the contestant must show that illegal votes were counted or an election official prevented eligible voters from voting, failed to count legal votes, or engaged in other fraud, illegal conduct, or mistake." *Tiller, 974 S.W.2d at 772* (citing *Tex. Elec. Code Ann. § 221.003* (Vernon 1986) and *Alvarez, 844*

*S.W.2d at 242*).

**HN5**[⬆] "The **[\*\*7]** standard of review in an appeal from a judgment in an election contest is a determination whether the trial court abused its discretion." *Tiller, 974 S.W.2d at 772*. A trial court abuses its discretion when it acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)*.

**HN6**[⬆] The sufficiency of evidence supporting a trial court's finding of fact may be a relevant factor in determining whether the court abused its discretion. *In re C.J.H., 79 S.W.3d 698, 702 (Tex.App.--Fort Worth 2002, no pet.)* (citing *Beaumont Bank v. Buller, 806 S.W.2d 223, 226 (Tex. 1991))*. In a non-jury case, when the appellate record includes both findings of fact and conclusions of law and a reporter's record, we review the sufficiency of the evidence under the same standards applied in cases tried by jury. *Slusher v. Streater, 896 S.W.2d 239, 241 (Tex.App.--Houston [1st Dist.] 1995, no writ)*. In reviewing the legal sufficiency of the evidence under a clear and convincing standard, we look at all the evidence, in the light most favorable to the judgment, to determine if the trier of fact could reasonably have formed a firm belief or conviction **[\*\*8]** that its finding was true. *In re J.F.C., 96 S.W.3d 256, 265-66 (Tex. 2002)*. We presume that the trier of fact resolved disputed facts in favor of its findings if a reasonable trier of fact could do so. *Id*. We disregard any contrary evidence if a reasonable trier of fact could do so, but we do not disregard undisputed facts. *In re J.L., 163 S.W.3d 79, 85 (Tex. 2005)*.

*Irregularity of Signatures*

**HN7**[⬆] Voting early by mail requires a voter to apply in writing for a ballot and then mail the completed ballot to the election clerk in an official carrier envelope bearing the signature of the voter. *Alvarez, 844 S.W.2d at 244*; *Tex. Elec. Code Ann. § 86.005(c)* (Vernon 2010). The ballot board may accept a ballot voted early by mail "only if: . . . neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness; . . . ." *Tex. Elec. Code Ann. § 87.041(b)(2)* (Vernon 2010). The law thus requires those who vote early by mail to sign both the application and the carrier envelope. *Alvarez, 844 S.W.2d at 245*.

**HN8**[⬆] When a contestant challenges a ballot board's

rejection of a **[\*\*9]** ballot, the ballot board is presumed to have acted **[\*424]** properly and it is the contestant's burden to show by clear and convincing evidence the board erred. *Alvarez, 844 S.W.2d at 244-45*; *see Tiller, 974 S.W.2d at 773-74* (when contestant contends election judge rejected votes that should have been accepted, rule has long presumed that each rejected ballot was cast by an illegal voter). Discharging this burden requires the contestant to show the challenged voter was legally qualified to vote, and the ballot was properly cast. [3] *Tiller, 974 S.W.2d at 774*; *Alvarez, 844 S.W.2d at 244*. But if a ballot was rejected for a reason unrelated to the voter's qualification, it is unnecessary for the contestant to prove the qualification of the challenged voter. [4] *Tiller, 974 S.W.2d at 774*; *Alvarez, 844 S.W.2d at 244*.

**HN10**[⬆] The ballot board acts on the basis of the signatures before it. *Alvarez, 844 S.W.2d at 245*. The Election Code does not require the board to make inquiry of voters whose signatures do not match. *Id*. But in an election contest based on ballots the ballot board rejected on the ground of signature deficiency, the district court may receive oral testimony from the voter or other witnesses regarding the similarity of the signatures and may compare the signatures. *Tiller, 974 S.W.2d at 777*; *Alvarez, 844 S.W.2d at 245*. The court may rely on its own comparison without the aid of expert testimony. **[\*\*11]** *Tiller, 974 S.W.2d at 777*; *Alvarez, 844 S.W.2d at 245*.

Here, each of the uncounted voters testified. Each averred they signed the application and carrier envelope, or in the case of Maldonado, marked the

_____

[3] **HN9**[⬆] A "qualified voter" is a voter who: (1) is age 18 years or older; (2) is a United States citizen; (3) has not been finally adjudged by a court exercising probate jurisdiction totally mentally incapacitated or partially mentally incapacitated without the right to vote; (4) has not been finally convicted of a felony, or if so has satisfied enumerated requirements; (5) is a resident of this **[\*\*10]** state; and (6) is a registered voter. *Tex. Elec. Code Ann. § 11.002* (Vernon 2010).

[4] On appeal, Jones argues Morales failed to proffer clear and convincing proof that the uncounted voters were legally qualified to vote. However, there is no record indication that this issue was raised and joined for trial. The record does not indicate the ballot board rejected any uncounted voter for lack of qualification. The trial court and parties tried the case with the burden of proof allocated to Morales to establish that each of the uncounted voters signed their mail-in ballot application and ballot carrier envelope.

required signatory lines with a witnessed "X." As the trial court candidly told counsel at closing argument, the question of signature legitimacy presented a classic fact issue between the uncounted voters' testimony and Jones's expert who found a signature discrepancy in the case of each uncounted voter. The trial court resolved the issue in favor of Morales. In so doing, *HN11*[⬆] it was the exclusive judge of the credibility of the witnesses, and the weight to be given their testimony. *City of Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005)*. It observed and was free to take into account the candor and demeanor of the witnesses. It also was free to make its own evaluation of the signatures on the voters' applications and ballot envelopes in light of the testimony. *Tiller, 974 S.W.2d at 777*; *Alvarez, 844 S.W.2d at 245* During its oral rendition of judgment, the trial court noted that "due to their infirmities," he doubted most of the uncounted voters "would sign their signature[s] the same **[**12]** twice." Implicit in the judgment of the trial court is the determination that each of the uncounted voters properly signed the application for ballot by mail and carrier envelope. The court heard testimony that, if believed, permitted it to form a firm belief or conviction that its finding **[*425]** was true. *HN12*[⬆] The law does not allow us to disturb the trial court's credibility determinations. *City of Keller, 168 S.W.3d at 819*. We conclude the trial court did not abuse its discretion in sustaining Morales's contest as to the votes of the uncounted voters.

*Improper Voter Assistance*

We turn now to Jones's affirmative claim that illegal ballots were cast for Morales and these ballots should be excluded from the final count. Jones argues that Maldonado received illegal assistance from Morales.

*HN13*[⬆] A voter who is unable to write or see due to a physical disability or who is unable to read the language of the ballot is eligible for assistance marking the ballot. *Tex. Elec. Code Ann. §§ 64.031*, *86.010(a)* (Vernon 2010). A voter may be assisted in marking the ballot by a person of the voter's selection other than the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to **[**13]** which the voter belongs. *Tex. Elec. Code Ann. § 64.032(c)* (Vernon 2010). A person voting by mail may receive no greater assistance than a person voting at a polling place. *Tex. Elec. Code Ann. § 86.010(b)* (Vernon 2010). For purposes of *§ 86.010*, assisting a voter with a mail-in ballot, in the presence of the ballot or carrier envelope, includes reading the ballot to the voter, directing the

voter to read the ballot, marking the ballot, or directing the voter to mark the ballot. [5] *Tex. Elec. Code Ann. § 64.0321* (Vernon 2010). A person assisting the voter to prepare a ballot must provide his name, address and signature on the carrier envelope. *Tex. Elec. Code Ann. § 86.013(c)* (Vernon 2010). The assistant must also sign the oath prescribed in *§ 64.034* included on the carrier envelope. *Tex. Elec. Code Ann. §§ 86.010(c)*, *86.013(f)* (Vernon 2010).

In its findings of fact, the trial court found each uncounted voter "was either of advanced age or exhibited an obvious impediment or infirmity." Each testified briefly. Maldonado, age eighty-eight, testified through an interpreter. Maldonado testified she signed the application for ballot by mail and the ballot with an "X." Her son witnessed her sign the application and her daughter witnessed her sign the ballot. On cross-examination, Maldonado was uncertain whether Morales or one of Maldonado's daughters helped her complete the application. When asked what role Morales played in assisting her to vote she responded, "Well, he-the role is that he came to my house, and my daughters were there and they helped me, but he also helped me." Neither party questioned Maldonado further and Morales did not testify. Thus it is impossible to ascertain what assistance Morales provided Maldonado. Maldonado's carrier envelope does not identify Morales as her assistant.

Jones points out that in *Tiller* the court found the trial court abused its discretion by validating the ballot of assisted voter Trevino whose carrier envelope **[**15]** certificate was not properly executed. *974 S.W.2d at 775*. According to *Tiller*, "If the person assisting the voter fails to sign the carrier envelope certificate, the ballot shall not be counted. *See Tex. Elec. Code Ann. §§ 86.005*, *86.010(b)*, *86.012*, *86.013(c)* (Vernon Supp. 1998)." *Tiller, 974 S.W.2d at* **[*426]** *775*. After review of the cited sections of the Election Code, including the 2003 amendments to those sections, we find ourselves in disagreement on this point with our sister court. Neither in the cited sections

---

[5] Maldonado's carrier envelope contains the following printed oath for a person assisting the voter:

I swear (or affirm) that I will not suggest by word, sign, or gesture how the voter shall vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidate (sic) and, if listed, their **[**14]** political parties; and I will prepare the voter's ballot as the voter directs.

Nicole Mitchell

nor elsewhere in *HN14*[⬆] the Election Code can we see a legislative determination that a failure of a voter's assistant to complete the required information on the carrier envelope requires rejection of the voter's ballot. As noted, statute expressly provides that the ballot of a voter who is assisted in violation of *subsections (a)* or *(b) of § 86.010* may not be counted, but the legislature has not disqualified the ballot of a person whose assistant fails to sign the oath, or provide his name and address, on the carrier envelope. *Tex. Elec. Code Ann. § 86.010(d)* (Vernon 2010).

*HN15*[⬆] Long-settled rules of statutory construction restrain us from reading words into the language chosen by the legislature:

> [E]very **[\*\*16]** word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose. This rule complements another general statutory construction principle that courts should not insert words in a statute except to give effect to clear legislative intent.

*In re Bell, 91 S.W.3d 784, 790 (Tex. 2002)* (citations omitted). *See Cameron v. Terrell & Garrett., 618 S.W.2d 535, 540 (Tex. 1981)* (additional language is read into a statute "only when it is necessary to give effect to the clear legislative intent"). The legislature expressly has provided that some actions require a voter's ballot to be excluded, and we decline to add to the legislature's expressed list.

That it was Morales, a candidate, who provided some assistance to Maldonado does not require a different conclusion. *HN16*[⬆] The legislature has prescribed the class of individuals a voter may not select to assist the voter in marking the ballot, and the excluded individuals does not include a candidate. *See § 64.032(c)* (providing on voter's request, voter may be assisted by any person selected by voter other than the voter's employer, an **[\*\*17]** agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs); *§ 86.010(a)* (limiting persons who may assist voter casting ballot by mail to those provided by *§ 64.032(c)*).

Our review of the Election Code requires the conclusion Morales's failure to provide the required information and sign on the carrier envelope does not alone exclude Maldonado's ballot from the count of votes cast. Maldonado was entitled to no greater assistance than had she voted at the polling place. *Tex. Elec. Code Ann. § 86.010(b)* (Vernon 2010). The trial court did not abuse its discretion by not rejecting Maldonado's ballot for assertedly improper assistance.

*Improper Transport of Ballot*

Jones next argues the mail-in ballot of uncounted voter De Los Santos was improperly transported to the early voting clerk. Thus, he continues, the trial court abused its discretion in validating the ballot.

On direct examination of De Los Santos, age sixty-seven, the following exchange occurred:

Q. Did you [cast your vote] by mail-in ballot, sir?

A. I don't remember. I think I got it in the mail, and then I sign it and someone pick it up, I think. I think that's the way it happened.

*HN17*[⬆] A voter voting **[\*\*18]** by mail must place the marked ballot in the official ballot envelope, seal the ballot envelope, place the ballot envelope in the official carrier envelope, seal the carrier envelope, and sign the **[\*427]** certificate on the carrier envelope. *Tex. Elec. Code Ann. § 86.005(c)* (Vernon 2010). A person other than the voter who deposits the carrier envelope in the mail or with a common or contract carrier must provide the person's signature, printed name, and residence address on the reverse side of the envelope. *Tex. Elec. Code Ann. § 86.0051* (Vernon 2010). The carrier envelope may be transported and delivered to the early voting clerk only by mail or common or contract carrier. *Tex. Elec. Code Ann. § 86.006(a)* (Vernon 2010). A ballot returned in violation of *§ 86.006* may not be counted. *See Tex. Elec. Code Ann. § 86.006(h)* (Vernon 2010).

County Clerk Marilyn Holcomb testified she was overseer of the 2006 general election. Addressing the procedure applied to mail-in ballots, Holcomb testified that the ballots rejected by the ballot board were each returned by mail. On this record, we see no abuse of discretion in the trial court's refusal to reject the ballot of De Los Santos for its asserted improper **[\*\*19]** transport.

*Motion to Dismiss for Want of Prosecution*

Jones next argues the trial court abused its discretion by denying his motion to dismiss the case for want of prosecution.

*HN18*[⬆] A trial court is empowered to dismiss a case for want of prosecution either under *Texas Rule of Civil Procedure 165a* or its inherent power to control its docket. *Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex. 1999)*. *HN19*[⬆] We review a trial court's ruling on a motion to dismiss for want of prosecution by the abuse of discretion standard. *MacGregor v. Rich, 941 S.W.2d 74, 75 (Tex. 1997)*.

Citing *Rule 6 of the Texas Rules of Judicial Administration*, Jones argues public policy favors prompt disposition of civil non-jury cases. *HN20*[⬆] In non-jury cases, district court judges "should, so far as reasonably possible, ensure that all" non-family law civil "cases are brought to trial or final disposition . . . [w]ithin 12 months from appearance date." *Tex. R. Jud. Admin. 6(b)(2)*, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F-Appendix (Vernon Supp. 2009). According to *Rule 1 of the rules of judicial administration*, the rules are promulgated pursuant to *§ 74.024 of the Government Code*. *Id.* at *Rule 1*. *Section 74.024* **[**20]** provides "the supreme court may consider the adoption of rules relating to: (1) nonbinding time standards for pleading, discovery, motions, and dispositions; (2) nonbinding dismissal of inactive cases from dockets, if the dismissal is warranted; . . . ." *Tex. Gov't Code Ann. § 74.024(c)(1)*,*(2)* (Vernon Supp 2009). Thus, the application of *Rule 6* is discretionary and non-binding. *See In re S.D.W., 811 S.W.2d 739, 746 (Tex.App.-- Houston [1st Dist.] 1991, no writ)* (juvenile case). Moreover, circumstances may preclude adherence to the standards under especially complex cases or those presenting special circumstances. *Tex. R. Jud. Admin. 6(e)*, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. F-Appendix (Vernon Supp. 2009). Thus, *Rule 6* does not fix a bright line demarking the outward limit of a trial court's discretion to control its docket.

In the trial court, Morales argued delay sprang in part from assignment of the case to an appointed judge. But we find no record support for the claim. Rather, the record shows limited pretrial activity. Jones served requests for disclosure with his original answer on December 14, 2006. Morales deposed Holcomb in February 2007 but she refused to produce **[**21]** rejected ballots without an order of the court. In June, Holcomb, her counsel, and counsel for the parties reviewed documents in Holcomb's possession. She again refused to produce the rejected ballots. **[*428]** On December 11, Morales filed a motion to compel production of the rejected ballots. Jones responded and moved for dismissal for want of prosecution under the court's inherent authority. By written response, Morales argued he did not receive advance notice of the trial court's intention to dismiss for want of prosecution and because the contest was not of a primary election or a general or special election requiring a runoff, the Election Code did not require an accelerated schedule. *See Tex. Elec. Code Ann. § 232.012* (Vernon 2010). At the hearing, the trial court expressed its cognizance of Jones's contention and indicated the case probably should have been brought to trial more quickly. But it resolved the issue in favor of allowing the case to proceed. Jones reurged his motion on the first day of trial and it was again denied.

*HN21*[⬆] A trial court abuses its discretion when it acts without reference to any guiding rules or principles, not when it exercises that discretion in a manner different **[**22]** than a reviewing appellate court might. *Urbanczyk v. Urbanczyk, 278 S.W.3d 829, 836 (Tex.App.--Amarillo 2009, no pet.)* (citing *Downer, 701 S.W.2d at 241-42*). Under the standard by which we must review the trial court's decision, we cannot say it abused its discretion by denying Jones's motion to dismiss for want of prosecution.

Conclusion

Finding the trial court did not abuse its discretion in sustaining Morales's contest and denying Jones's motion to dismiss, we affirm the judgment of the trial court. Because of our disposition, it is unnecessary to consider Morales's cross-issue that two voters were improperly denied precinct four ballots. *See Tex. R. App. P. 47.1*.

James T. Campbell

Justice

---

**End of Document**

◆ Positive

As of: March 23, 2018 5:04 PM Z

# *King v. Holland*

Court of Appeals of Texas, Thirteenth District, Corpus Christi

October 6, 1994, Delivered ; October 6, 1994, Filed

NUMBER 13-93-309-CV

**Reporter**
884 S.W.2d 231 *; 1994 Tex. App. LEXIS 2426 **

DELCER KING AND WIFE, RENDA KING, Appellants, v. DAVID C. HOLLAND AND DAVID C. HOLLAND & COMPANY, P.C., D/B/A HOLLAND & STEPHENSON, Appellees.

**Subsequent History: [**1]** Rehearing Overruled October 6, 1994.

**Prior History:** On appeal from the 329th District Court of Wharton County, Texas.

**Disposition:** We affirm the dismissal of the fraud claim. We reverse the summary judgment rendered against all of the Kings' other claims. We remand those causes of action for new trial.

# Core Terms

summary judgment, want of prosecution, summary judgment motion, reinstate, severance, exhibits, abatement, documents, security interest, court granted, deposition, discovery, non-fraud, missing, causes, legal malpractice, lienholder, reconsider, escrow, stock

# Case Summary

### Procedural Posture
Appellant clients sought review of a judgment from the 329th District Court of Wharton County, Texas, which granted defendant attorney's motion for summary judgment based on the statute of limitations on most of appellants' claims. Appellants' remaining claims were dismissed for want of prosecution.

### Overview
Partial summary judgment was granted to appellee attorney in an action for legal malpractice that was brought by appellant clients and appellants' remaining claim for fraud was dismissed for want of prosecution. The court reversed the summary judgment because

genuine issues of fact persisted as to when appellants knew or should have known about the defects in appellee's performance. Whether appellants were reasonable in attempting to negotiate with the buyer to gain performance instead of investigating and discovering appellee's alleged malfeasance was a disputed, material issue. The court affirmed the dismissal of the fraud claim and the denial of reinstatement. The court found no abuse of discretion in the dismissal of the case for want of prosecution because the case languished for many years while appellants consistently neglected it.

### Outcome
The court affirmed the dismissal of appellant clients' fraud claim against appellee attorney for want of prosecution because the case languished for many years while appellants consistently neglected it. The court reversed the summary judgment rendered against all of appellants' other claims because genuine issues of fact persisted and remanded those causes of action for a new trial.

# LexisNexis® Headnotes

Civil Procedure > ... > Summary Judgment > Motions for Summary Judgment > General Overview

Civil Procedure > Judgments > Summary Judgment > General Overview

Civil Procedure > Appeals > Summary Judgment Review > General Overview

Civil Procedure > ... > Summary Judgment > Burdens of Proof > General Overview

Civil Procedure > Judgments > Summary Judgment > Partial Summary Judgment

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > General Overview

Civil Procedure > Appeals > Standards of Review

*HN1*[⬇] **Summary Judgment, Motions for Summary Judgment**

When reviewing the grant of a motion for summary judgment, an appellate court must determine whether the summary judgment proof establishes as a matter of law the absence of a genuine issue of a material fact as to one or more of the essential elements of a cause of action. On disputed fact issues, the appellate court takes all evidence favoring the nonmovant as true; the appellate court indulges every reasonable inference and resolve all doubts in favor of the nonmovant.

Antitrust & Trade Law > ... > Trade Practices & Unfair Competition > State Regulation > Scope

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > General Overview

Governments > Legislation > Statute of Limitations > Time Limitations

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > General Overview

Torts > Malpractice & Professional Liability > Attorneys

*HN2*[⬇] **Trade Practices & Unfair Competition, State Regulation**

The limitations periods of the Texas Deceptive Trade Practices-Consumer Protection Act begin running when the injury occurs or when the injured parties discover or, in exercising due diligence, should discover facts establishing the elements of the cause of action. *Tex. Bus. & Com. Code Ann. § 17.565* (1986). The court may decide as a matter of law that the injured party failed to exercise reasonable diligence if the defendant provides uncontroverted evidence of such failure.

Civil Procedure > ... > Summary Judgment > Burdens of Proof > General Overview

Criminal Law & Procedure > Trials > Burdens of Proof > Defense

Governments > Legislation > Statute of Limitations > Pleadings & Proof

Governments > Legislation > Statute of Limitations > General Overview

*HN3*[⬇] **Summary Judgment, Burdens of Proof**

To prevail on summary judgment motion based on an affirmative defense like statute of limitations, the defendant must conclusively establish every factual element of that defense.

Civil Procedure > Dismissal > Involuntary Dismissals > Appellate Review

Criminal Law & Procedure > ... > Standards of Review > Abuse of Discretion > General Overview

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

*HN4*[⬇] **Involuntary Dismissals, Appellate Review**

An appellate court reviews a trial court's decision to dismiss a case for want of prosecution for a clear abuse of discretion.

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

*HN5*[⬇] **Dismissal, Involuntary Dismissals**

The trial court has the inherent power to dismiss cases not prosecuted with due diligence. This inherent power is in addition to the power to dismiss found in the rules of procedure.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

Civil Procedure > Dismissal > Involuntary Dismissals > Hearings on Dismissal

*HN6*[⬇️] **Involuntary Dismissals, Failure to Prosecute**

The rules require a court to reinstate a case dismissed for want of prosecution upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained. *Tex. R. Civ. P. 165a(3)*.

**Counsel:** For Appellants: Anthony F. Constant, Attorney at Law, Corpus Christi, TX. David A. Smith, Hartman, Lapham & Smith, Attorneys at Law, Victoria, TX.

For Appellees: David W. Corban, Fulbright & Jaworski, Attorneys at Law, Houston, TX. W. Wendell Hall, Renee A. Forinash, Fulbright & Jaworski, Attorneys at Law, San Antonio, TX.

**Judges:** Before Justices Kennedy, G. Hinojosa & Yanez

**Opinion by:** NOAH KENNEDY

# Opinion

 **[*233] OPINION**

Opinion by Justice Kennedy

We withdraw our opinion of August 18, 1994 and enter this opinion in its place. Delcer and Renda King sued David C. Holland and David C. Holland & Company, P.C., d/b/a Holland & Stephenson for legal malpractice. The court granted Holland's motion for summary judgment based on statute of limitations against most of the Kings' claims detailed below. The court then dismissed the case for want of prosecution. We affirm in part and reverse **[**2]** and remand in part.

The Kings wanted to sell their farm to Wilhelm Degen, but minimize the tax consequences to themselves. The Kings wholly owned El Campo Well Services, Inc. which, in turn, owned the farm, El Campo Equipment Company, Inc., and cash. The Kings hired Holland to construct the transaction to divest ECWS of the equipment company and the cash, then convey the land through a stock transfer to Degen. Holland complied, and the sale closed on April 15, 1981.

The Kings claim they demanded and Holland agreed to provide four things: a secured interest in the property, a provision to prohibit the buyer from encumbering the real estate, a provision that the buyer timely pay existing notes and taxes and furnish the Kings with notice of the payments, and a secured interest in the stock. Before the closing, the Kings examined the documents that were to provide these guarantees. Included among these documents was the security escrow agreement (SEA). The Kings complain that, despite Holland's assurances, the agreements failed to provide these protections; two exhibits (A and B) to the SEA were missing, apparently contributing to the failure. The Kings also complained of Holland's failure **[**3]** to file a deed of trust to give notice of the Kings' security interest in the land.

The transaction did not go as the Kings planned. Degen was thirty to forty-five days late with his first payment to the Kings, due on April 15, 1982. He was also late with payments to one of the original lienholders as well as to taxing authorities. In 1984, they renegotiated with Degen and got a new promissory note. That year, they attempted to use the SEA to foreclose against Degen and discovered the nonexistence of their security interest and the existence of liens established by others after the transaction that were superior to their own nonexistent one. The Kings contend that Holland's malfeasance thereby damaged them.

They filed suit on April 15, 1985. The case was on the court's docket for eight years. During that period, the court sanctioned the Kings for discovery abuse and other dilatory tactics. The Kings' counsel sought to withdraw because they refused in 1986 and 1987 to meet with him. The court placed the case on its dismissal docket for want of prosecution in 1987, 1989, 1990, 1991, and 1992. The case was dismissed for want of prosecution in early 1992, but was reinstated.

On September **[**4]** 17, 1992, the court granted Holland's motion for summary judgment against the Kings' claims for legal malpractice, negligence, breach

of warranty, breach of fiduciary duty and violations of the Texas Deceptive Trade Practices-Consumer Protection Act. The court announced that the fraud claim would survive and be severed from the others. The severance was never reduced to a written order, however, and was not effective. The court signed an order memorializing the summary judgment the next day.

 **[*234]**  The parties apparently never received notice of this order. The Kings moved the court to reconsider the summary judgment to allow them to refile their response, this time with proper service to the opposing party, so that the response could be considered on appeal. The Kings also noted that reconsideration would allow Holland to correct defects in the proof attached to his motion for summary judgment. Soon after, Holland filed an amended motion for summary judgment to correct those defects.

In January 1993, the court again placed this case on the dismissal docket. At the hearing on the motion to dismiss, the court granted the motion to reconsider the summary judgment, granted leave **[**5]** to file the amended motion for summary judgment, and granted that amended motion. The court then stated that the case was dismissed for want of prosecution. In April 1993, the court held a hearing on the motion to reinstate the case, and denied the motion.

Before reaching the merits of the point of error attacking the summary judgment, we distinguish a similar case in which we declined to address the merits of such points. *See Aguilar v. Maverick Eng'g Co., 752 S.W.2d 727* (Tex. App.--Corpus Christi 1988, no writ). In *Aguilar,* we held that we could not reach such points when the court had dismissed the entire cause for want of prosecution. *Id. at 727-728*. There, the plaintiff appealed the trial court's grant of summary judgment against his claims. *Id. at 727*. We dismissed his appeal for want of jurisdiction because a defendant's counterclaim remained pending, rendering the summary judgment interlocutory. *Id. at 728*. On remand, the trial court dismissed the entire cause for want of prosecution. *Id.* On appeal, the plaintiff attacked only the summary judgment. We wrote:

> We are aware that appellant was not in a position to prosecute his case since an **[**6]** interlocutory summary judgment had been granted against him. However, *absent a point of error complaining of the order of dismissal, or argument concerning the dismissal order,* error, if any, in the interlocutory

summary judgment would not be reversible.

*Id.* (emphasis added). We overruled the points of error because we could not reach them. By contrast, the trial court in the final judgment here memorialized the granting of the amended motion for summary judgment, then proceeded to dismiss the case. Unlike Aguilar, the Kings raise points of error against both the dismissal and the summary judgment. These facts critically distinguish the case from *Aguilar* and free us from its holding.

We must also address Holland's claims that the wording of the final judgment reveals that the court granted summary judgment against and, alternatively, dismissed for want of prosecution the non-fraud claims. In its final judgment, the court first granted the motion for partial summary judgment and specified the causes of action extinguished thereby. In the next paragraph, the court wrote that "this case is dismissed for want of prosecution;" to so order, the court excised the phrase **[**7]** "all remaining claims of the Plaintiff" and inserted "this case."

We disagree that this substitution establishes dismissal as an alternate basis for the extinction of the non-fraud causes eliminated by the summary judgment. The sequence of the order shows that the court granted the summary judgment before dismissing the case. The causes eliminated by the summary judgment were not longer part of the case dismissed.

If the court adopted Holland's interpretation and intended also to dismiss the non-fraud claims for want of prosecution, the court erred. We reverse dismissals for want of prosecution for clear abuse of discretion. *State v. Rotello, 671 S.W.2d 507, 508-09 (Tex. 1984)*. The Kings raise this issue under point of error three, by which the Kings challenge the dismissal, and point of error four, by which the Kings challenge the failure to reinstate the dismissed claims. After the original summary judgment, the non-fraud claims were alive only to the extent that the motion to reconsider and the amended motion for summary judgment resuscitated them. The Kings need not have appealed those causes during the pendency of their **[*235]** motion to reconsider, especially because **[**8]** they sought reconsideration to improve the record on appeal; any failure to obtain a severance from the still viable claims would not have altered this aspect of the case. The Kings did not fail to prosecute these claims following the original grant of the motion for summary judgment. If the court included the non-fraud claims in its dismissal, such

inclusion was therefore an abuse of discretion. To the extent that the court dismissed the non-fraud claims after granting summary judgment against them, we sustain point of error three. As there was no failure to prosecute, any failure to reinstate was error; we therefore sustain point four.

By their first point of error, the Kings challenge the court's grant of Holland's motion for partial summary judgment. *HN1*[⬆] When reviewing the grant of a motion for summary judgment, we must determine whether the summary judgment proof establishes as a matter of law the absence of a genuine issue of a material fact as to one or more of the essential elements of a cause of action. *Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970)*. On disputed fact issues, we take all evidence favoring the nonmovant as true; we indulge every reasonable **[**9]** inference and resolve all doubts in favor of the nonmovant. *Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985)*.

The court granted Holland's motion in which he urged that a two-year statute of limitations barred the Kings' claims of legal malpractice and DTPA violations. *See* *TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a)* (Vernon 1986) (held applicable to legal malpractice in *Willis v. Maverick, 760 S.W.2d 642, 644 (Tex. 1988)*; *TEX. BUS. & COM. CODE ANN. § 17.565* (Vernon 1986) (DTPA). *HN2*[⬆] The limitations periods begin running when the injury occurs or when the injured parties discover or, in exercising due diligence, should discover facts establishing the elements of the cause of action. *Medical Protective Co. v. Groce, Locke & Hebdon, 814 S.W.2d 124, 127* (Tex. App.--Corpus Christi 1991, writ denied) (legal malpractice); *TEX. BUS. & COM. CODE ANN. § 17.565* (Vernon 1986) (DTPA). The court may decide as a matter of law that the injured party failed to exercise reasonable diligence if the defendant provides uncontroverted evidence of such failure. *Wakefield v. Bevly, 704 S.W.2d 339, 346* (Tex. App.--Corpus Christi 1985, no writ).

*HN3*[⬆] To prevail on **[**10]** summary judgment motion based on an affirmative defense like statute of limitations, the defendant must conclusively establish every factual element of that defense. *Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex. 1972)*. Because the court did not specify on which basis it granted the motion, we must affirm if any defensive theory survives the motion. *Rogers v. Ricane Enterprises, Inc., 772 S.W.2d 76, 79 (Tex. 1989)*.

Holland does not argue for a specific date of discovery. Instead, he contends that the Kings knew or should have known of his alleged malfeasance by April 14, 1983, two years before the suit was filed. He contends that several events should have triggered the Kings' investigation and discovery of the alleged malfeasance:

1. Their distrust of Holland that had developed by the time of the signing, their suspicion that he was not fulfilling his duties to them, and their decision to stop payment on their check to him;

2. his violation of a duty regarding the release of stock under the agreement.

3. the absence of Exhibits A and B to the Security Escrow Agreement upon the signing of the agreement;

4. Degen's lateness of thirty to forty-five days **[**11]** in making his first payment on the note;

5. Degen's default on his payment to an original lienholder, Degen's failure to notify them of payment of the obligation, and the original lienholder's notice to the Kings that it would foreclose; and

6. Degen's failure to notify the Kings in 1982 and 1983 that he had paid property taxes, lienholders, lease payments, or taxes on the lease, and their knowledge of the tax defaults.

Holland contends that the Kings did nothing to investigate their rights, which investigation would have led to their discovery of the **[*236]** absence of the protections they alleged he purported to provide.

Holland's evidence is controverted and fails to prove his thesis as required. Holland provides excerpts from depositions. The Kings provide Mr. King's affidavit. [1]

---

[1] Holland challenges the affidavit, noting that Mr. King fails to unqualifiedly and positively represent the facts as disclosed in his affidavit to be true and within his knowledge as required. *See* *Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984)*. Instead, the affidavit is only stated to be "on his oath" and sworn before a notary public. The fact that the affidavit is taken "on his oath" makes the statements therein assignable as perjury, which is the goal. *See id.* His statements of what he knew and when he knew it are inherently within his knowledge. The affidavit is therefore not fatally defective. *See* *General Prod. Co. v. Black Coral Inv., 715 S.W.2d 121, 122-23* (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.).

Holland also attacks many parts of the affidavit as self-serving and conclusory. He challenges the assertions of when the Kings first discovered that Holland had harmed them. We need not consider this line of attack because the statements

Nicole Mitchell

Though Mr. King stated in his deposition that the Kings distrusted Holland on the day of the signing, he went on to say that they had dinner, cooled off, and decided to trust in Holland's assurances and sign the documents. Mr. King said he stopped payment on the check to ensure that Holland would release an escrow account as promised; Holland was upset by this action, but released **[\*\*12]** the account in return for the Kings' certified check. These incidents do not prove as a matter of law that the Kings should have investigated facts which would have led to their discovery of the missing exhibits and the nonexistence of the security interest.

**[\*\*13]** Neither does Holland's early release of stock substantiate the summary judgment. Holland released stock related to the sale from a holding company in 1982 three to four months earlier than Mr. King thought he should. Holland did not personally notify the Kings of this release. Mr. King said in his deposition that he thought this move was discourteous and violated the agreement. The Kings did not sue on this issue; Mr. King said in his affidavit that they did not sue because they were not harmed by the early release. Regardless, this incident does not establish that the Kings knew or should have known of Holland's failure to include documents establishing a security interest in the real estate.

The Kings admit that they knew of Degen's defaults on payments to them, on taxes, and on payments to the original lienholder, but this knowledge does not prove that, as a matter of law, they should have discovered the deficiencies in the documents. The defaults do not by themselves show that the Kings lacked a security interest. Mr. King stated in his affidavit that Degen eventually made his 1982 and 1983 payments. Mr. King averred that he talked with Degen or his office throughout 1982, 1983, **[\*\*14]** and 1984, keeping abreast of why Degen was not making the required payments. Mr. King stated that Degen assured him that he would make the payments. Mr. King stated that they were trying to work with Degen to help him carry out the agreement until early 1984, when they decided they must foreclose on the land. Only then did they learn of the deficiencies in Holland's performance, Mr. King said.

The centerpiece of Holland's evidence, properly viewed, fails to establish that the Kings knew that the

we cite in the text are statements of fact as to when the Kings discovered the missing aspects of the agreement rather than their discovery of "harm."

agreements failed to provide the protections they requested or that the exhibits which might provide the protections were missing. The exchange quoted by Holland was as follows:

> Q. Today you have indicated that Exhibits A and B were left off of the security escrow agreement that was prepared that night. And I gather there was no Exhibit A and B to the security escrow agreement when you signed it that evening, was there sir?
> A. As far as I know there wasn't.

This excerpt does not show that Mr. King knew upon signing the documents that the exhibits were missing, nor does it show when he learned or should have learned that fact. The evidence showed that the Kings were confronted **[\*\*15]** with more than fifty documents on the day of the signing. The Kings testified **[\*237]** at deposition that they went through the documents with Holland and, because of their lack of expertise, relied on his assurances that everything was in order, including the security interest that the missing exhibits would have supplied. In his affidavit, Mr. King asserted that he did not know that exhibits A and B were not attached, nor that the security interest they were to guarantee was absent, until 1984. The quoted exchange shows only that, at the time of the deposition, Mr. King did not believe that the exhibits had been attached.

Genuine issues of fact persist as to when the Kings knew or should have known about the defects in Holland's performance. Whether the Kings were reasonable in attempting to negotiate with the buyer to gain performance instead of investigating and discovering Holland's alleged malfeasance is a disputed, material issue. We sustain point of error one.

By points of error two and three, the Kings attack the court's dismissal of the case for want of prosecution. *HN4*[↑] We review the court's decision for a clear abuse of discretion. *Rotello, 671 S.W.2d at 508-09*. *HN5*[↑] The **[\*\*16]** trial court has the inherent power to dismiss cases not prosecuted with due diligence. *Id.* This inherent power is in addition to the power to dismiss found in the rules of procedure. *See TEX. R. CIV. P. 165a(4)*; *City of Houston v. Thomas, 838 S.W.2d 296, 297* (Tex. App.--Houston [1st Dist.] 1992, no writ); *see also Torres v. Rios, 869 S.W.2d 555, 556-57* (Tex. App.--Corpus Christi 1993, no writ). This case must have been dismissed under the court's inherent power because it does not fit the profile of either subdivision of the procedural rules. We must, therefore, consider the length of time the case was on file, the extent of activity in the case, whether a trial setting was

requested, and the existence of reasonable excuses for the delay. *Rotello, 671 S.W.2d at 509*.

The case's eight-year tenure on the docket and the Kings' previous dilatoriness set out above and apparent from the record support heightened scrutiny of the Kings' actions after the reinstatement. The record reflects more activity than Holland asserts occurred. Contrary to Holland's assertion here and in the trial court that the Kings took only one deposition 1992, the record indicates that the **[\*\*17]** Kings participated in at least four depositions during May and June 1992. A mediation attempt in August failed. Holland concedes that the Kings nonsuited some defendants during the summer. All activity appears to have screeched to a halt following the motion to reconsider the September 17, 1992 grant of the motion for partial summary judgment.

The court's notes from that unrecorded hearing show that its grant of the partial motion left the fraud action alive. The notes show that the court granted a severance of the causes covered by the summary judgment. The notes also mention a pretrial scheduling order. The notes are silent as to any abatement of the fraud action.

The Kings' attorney said in his bill of exceptions that he recalled that the court accepted his argument that an abatement of the fraud action would be more efficient. He said he requested an abatement so that, in the event the summary judgment was reversed, those actions could be tried at one proceeding with the fraud claims. He also refers for support to the following passage from the Defendants' Opposition to Plaintiffs' Motion to Retain Case on Docket, "Plaintiffs' counsel asked the Court to refrain from entering **[\*\*18]** any docket control orders or trial settings until plaintiffs could lodge their interlocutory appeal. The Court merely acceded to plaintiffs' request."

Holland's attorney filed an affidavit along with his objections to the bill. In it, he recalled the severance of the claims, but remembers requesting an exchange of draft orders between himself and the Kings' attorney. Holland's attorney sent a proposed order granting the summary judgment and requested a draft of the severance order. He said he never received the draft. He also avers that the Kings did not request, nor did the court order, an abatement of the fraud claim. He contends that the court agreed to postpone the entry of the scheduling order because the Kings agreed to a speedy appeal of the summary judgment.

The court entered no order regarding severance or abatement. Five months later, the **[\*238]** court dismissed the case for want of jurisdiction.

We find no abuse of discretion in the dismissal. The case languished for many years while the Kings consistently neglected it. They had not requested a trial under Wharton County local rules. Though their prosecution had seemed jump-started after the reinstatement of the case, **[\*\*19]** it again ground to a halt. The Kings may have understood the court to have severed and abated the fraud action, but they took no steps to formalize those orders or to see that they were in the court's file; Holland provides some proof that the abatement never existed. While in other cases such confusion might be excused, we cannot say that the court abused its discretion in declining to excuse it in a case with a history of such neglect. We overrule points two and three as they relate to the claims not eliminated by the summary judgment.

Similarly, we affirm the court's decision not to reinstate the case. By point four, the Kings contend that the nonreinstatement was error. The procedural rule standard applies even to cases that courts dismiss under their inherent powers. *See TEX. R. CIV. P. 165a(4)*. **HN6**[⬆] The rules require a court to reinstate a case dismissed for want of prosecution

> upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained.

*TEX. R. CIV. P. 165a(3)*. As we stated above, the Kings' **[\*\*20]** long neglect of this case justifies the court's dismissal for their failure either to formalize the severance and abatement or to see that such orders were in the court's file. Even accepting the Kings' characterization of the September hearing as accurate, we cannot say that the court abused its discretion in implicitly finding that their inactivity in this case following that hearing rose to the level of conscious indifference given the history of neglect and recent dismissal and reinstatement. We overrule point four.

We affirm the dismissal of the fraud claim. We reverse the summary judgment rendered against all of the Kings' other claims. We remand those causes of action for new trial.

Noah Kennedy

Justice

Opinion delivered and filed this the 6th day of October,

1994.

---

**End of Document**

# *Lessard v. Velsicol*

Court of Appeals of Texas, Thirteenth District, Corpus Christi - Edinburg

April 23, 2009, Memorandum Opinion Delivered; April 23, 2009, Memorandum Opinion Filed

NUMBER 13-00-00113-CV

**Reporter**

2009 Tex. App. LEXIS 2811 *; 2009 WL 1089362

MICHAEL JOSEPH LESSARD, DOROTHY ELAINE LESSARD, MONICA JEAN LESSARD, AND JEANNIE MARIE LESSARD, Appellants, v. VELSICOL CHEMICAL CORPORATION, Appellee.

**Subsequent History:** Rehearing denied by *Lessard v. Velsicol Chem. Corp., 2009 Tex. App. LEXIS 6042 (Tex. App. Corpus Christi, June 11, 2009)*

Petition for review denied by *Lessard v. Velsicol Chem. Corp., 2009 Tex. LEXIS 669 (Tex., Sept. 11, 2009)*

**Prior History: [*1]** On appeal from the 343rd District Court of Live Oak County, Texas.

*Lessard v. Savage Pest Control, 2000 Tex. App. LEXIS 3819 (Tex. App. Corpus Christi, June 8, 2000)*

## Core Terms

trial court, notice, want of prosecution, parties, visiting judge, reinstatement, pet, motion to reinstate, motion to dismiss, prosecuting, abused, law firm, inherent power, diligence, lawsuit, requirements, proceedings, discovery, mediation, cases, opportunity to be heard, due process, no writ, appointment

## Case Summary

### Procedural Posture

Appellant homeowners challenged a judgment of the 343rd District Court of Live Oak County, Texas, granting a motion to dismiss their negligence action for want of prosecution under *Tex. R. Civ. P. 165a* in favor of appellee chemical corporation.

### Overview

The homeowners sued the chemical corporation in 1990, alleging that it was responsible for the chemical contamination of their home. In 1999, the trial court dismissed the action for want of prosecution. On appeal, the court held that the trial court did not abuse its discretion in dismissing the action because the homeowners were provided adequate notice of the trial court's intent to dismiss for want of prosecution, as the chemical company's joint motion to dismiss put the homeowners on notice that their claims could be dismissed for want of prosecution by the trial court, and by conducting a hearing on the motion, the trial court afforded the homeowners' an opportunity to be heard. The record did not show that the homeowners were diligent in prosecuting their claims because nearly nine years elapsed between the date the case was first filed and the day the trial court dismissed it, the parties neither resolved their claims nor agreed on a visiting judge to hear the case as ordered by the trial court in 1993, and the homeowners' counsel's employment status did not justify the delay. The trial court did not err by denying the homeowners' motion for reinstatement of the action.

### Outcome

The judgment was affirmed.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN1*[⬇] **Standards of Review, Abuse of Discretion**

An appellate court reviews a trial court's dismissal of a suit for want of prosecution under an abuse of discretion

standard. The trial court abuses its discretion when it acts without reference to any guiding rules or principles or if the action is arbitrary or unreasonable.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN2*[↓] **Involuntary Dismissals, Failure to Prosecute**

A trial court may dismiss a case for want of prosecution: (1) when a party fails to appear at a hearing or trial; (2) when the case has not been disposed of within the Supreme Court's time standards; or (3) under the trial court's inherent power to dismiss, when the case has not been prosecuted with due diligence. *Tex. R. Civ. P. 165a*. The trial court's authority to dismiss is derived both from *Rule 165a* and from its inherent power to manage its own docket.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN3*[↓] **Involuntary Dismissals, Failure to Prosecute**

When an unreasonable delay in the prosecution of a case occurs, it is presumed that the case has been abandoned. If that delay is not sufficiently explained, the presumption of abandonment is conclusive and the case will be dismissed. A trial court, in exercising its inherent authority, may consider periods of activity, intervals of inactivity, reasons for lack of attention, and the passage of time to determine whether the delay was reasonable.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN4*[↓] **Involuntary Dismissals, Failure to Prosecute**

*Tex. R. Civ. P. 165a(1)* provides that a party must be provided with notice and an opportunity to be heard before a trial court may dismiss a case for want of prosecution under either *Rule 165a* or its inherent power. The requirements of notice and a hearing are necessary to ensure that the dismissed claimant received due process. The failure to provide adequate notice of the trial court's intent to dismiss for want of

prosecution is a due process violation and requires reversal. However, participation in a hearing on a motion to reinstate cures any due process concerns for the trial court's failure to provide notice of its intent to dismiss for want of prosecution.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN5*[↓] **Involuntary Dismissals, Failure to Prosecute**

See *Tex. R. Civ. P. 165a(1)*.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN6*[↓] **Involuntary Dismissals, Failure to Prosecute**

A dismissal for want of prosecution may be obtained by the motion of the trial court or on the motion of any party to the suit. Furthermore, the Texas Supreme Court has held that either notice of the trial court's intent to dismiss or notice of the actual order of dismissal is sufficient notice.

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN7*[↓] **Procedural Due Process, Scope of Protection**

All that due process requires is that a party be given notice of the time and substance of the hearing, and an opportunity to present arguments at the hearing.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN8*[↓] **Involuntary Dismissals, Failure to Prosecute**

A trial court may consider periods of activity, intervals of inactivity, reasons for lack of attention, and the passage of time in determining whether a case should be

dismissed for want of prosecution. Furthermore, when there is an unreasonable delay in the prosecution of the case, it is presumed that the case has been abandoned unless the dismissed claimant provided a sufficient justification for the delay.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN9*[⬇] **Involuntary Dismissals, Failure to Prosecute**

*Tex. R. Civ. P. 165a(3)* sets out the procedure for reinstating cases dismissed for want of prosecution. A trial court is compelled to reinstate a case upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained. In order to determine whether the trial court abused its discretion in refusing reinstatement, an appellate court reviews the entire record and determine whether the evidence was sufficient to find that the failure of the party was not due to accident, mistake, or other reasonable explanation. The party requesting reinstatement has the burden to bring forth a record establishing that reinstatement was required.

**Judges:** Before Chief Justice Valdez and Justices Garza and Vela. Memorandum Opinion by Justice Garza.

**Opinion by:** DORI CONTRERAS GARZA

# Opinion

**MEMORANDUM OPINION**

**Memorandum Opinion by Justice Garza**

Appellants, Michael Joseph Lessard, Dorothy Elaine Lessard, Monica Jean Lessard, and Jeannie Marie Lessard, appeal from the trial court's granting of a motion to dismiss for want of prosecution in favor of appellee, Velsicol Chemical Corporation ("Velsicol"). [1]

---

[1] The record reflects that the following parties were once part of this appeal as appellees: Savage Pest Control; Leslie Savage Bowles, individually and as the executor of the estate

By two issues, the Lessards argue that the trial court abused its discretion: (1) in dismissing their claims for want of prosecution; and (2) in refusing to reinstate their claims pursuant to *Texas Rule of Civil Procedure 165a(3)*. *See* *TEX. R. CIV. P. 165a(3)*. We affirm.

## I. BACKGROUND

This dispute involves damages arising from the chemical contamination of several residences in Live Oak County, Texas. Originally, the dispute involved numerous parties; however, most of the parties have settled their claims, leaving only the Lessards, Velsicol, and Fruit of the Loom as parties.

The Lessards filed their original petition on December 31, 1990, alleging, among other things, that Velsicol and Fruit of the Loom were negligent in designing, manufacturing, and marketing Gold Crest C-100 Emulsifiable Concentrate, the chemical which allegedly contaminated the Lessards' residence. The **[\*3]** Lessards' lawsuit was one of three lawsuits against the same set of defendants--trial court cause numbers 7202-C (filed by the Episcopal Church Corporation of West Texas), 7205-C (filed by the Reynolds family), and 7214-C (filed by the Lessard family). The trial court consolidated the three lawsuits on December 16, 1991.

On June 24, 1993, the trial court ordered that all further proceedings and the trial of the matter were to be conducted before a visiting judge. The trial court further ordered the parties to "agree upon the identity of a visiting judge within ten days from the date of this Order." The parties never agreed on which visiting judge would conduct further proceedings.

On April 22, 1994, all of the parties agreed to a joint motion to continue the upcoming May 23, 1994 trial

---

of James S. Savage, deceased; Charyle M. Merritt, Sammey Allison Merritt; the unknown heirs of James S. Savage; James S. Savage d/b/a Savage Pest Control; Robert D. Nogueria, individually and as executor of the estate of James S. Savage (collectively the **[\*2]** "Savage parties"). In fact, the Savage parties jointly filed with Velsicol the motion to dismiss for want of prosecution complained about on appeal. This Court, on June 8, 2000, issued an order dismissing the appeal as to the Savage parties because the Savage parties and the Lessards had settled their claims. As a result, this Court severed the Lessards' claims as to the Savage parties into a separate appellate cause number--13-00-349-CV--and dismissed the appeal. The Lessards' remaining issues against Velsicol remained docketed under the current appellate cause number--13-00-113-CV.

setting, which the trial court granted. Velsicol, Fruit of the Loom, and the Savage parties filed a motion for the appointment of a visiting judge on July 28, 1994, requesting that the trial court appoint a visiting judge since the Lessards and the other plaintiffs had rejected each of the proposed visiting judges named on the defendants' list without offering a list of their own. The record does not reflect **[\*4]** that the trial court ruled on this motion.

On February 28, 1997, the trial court entered an agreed order of referral appointing Steven W. Fieldcamp as the mediator for the claims. [2] After mediation in 1997, Velsicol, Fruit of the Loom, and the other defendants settled with the plaintiffs in trial court cause numbers 7202-C and 7205-C, leaving only the Lessards' claims unresolved.

On March 14, 1999, the Lessards filed a motion with the trial court requesting the trial court to set a docket control conference by telephone for the purpose of scheduling a trial date. The trial court set the docket control conference for March 23, 1999, and sent notice to the parties. It is not clear from the record before us when the new trial setting was scheduled.

Nevertheless, on October 19, 1999, Velsicol and the Savage parties filed a joint motion to dismiss the Lessards' claims for want of prosecution. In this filing, Velsicol and the Savage parties argued that they had provided the **[\*5]** Lessards with lists of visiting judges on numerous occasions and that the Lessards failed to do anything. Velsicol and the Savage parties also alleged that the case had been outstanding for nine years at the time of filing and that the Lessards were "the only outstanding claims despite mediation attempts and numerous letters sent to the Plaintiffs on behalf of the Defendants to obtain a visiting judge."

On November 12, 1999, the Lessards filed a response to the joint motion to dismiss for want of prosecution. The Lessards alleged that a jury trial of their claims would only take a week and requested a trial setting for the first available week after February 2000. Counsel for the Lessards noted that he was recently employed by the law firm of Spagnoletti & Associates for the specific purpose of prosecuting this matter, and he subsequently proposed a new list of visiting judges and, alternatively,

---

[2] By signing the February 28, 1997 agreed order of referral, the trial court ostensibly denied the July 28, 1994 motion for the appointment of a visiting judge filed by Velsicol, Fruit of the Loom, and the Savage parties.

suggested that the trial court select a visiting judge if Velsicol and the Savage parties objected to his list of visiting judges. Nowhere in the response did counsel for the Lessards explain why the case had been delayed for over nine years.

On November 17, 1999, the trial court conducted a **[\*6]** hearing on Velsicol and the Savage parties' joint motion to dismiss. At the hearing, counsel for the Savage parties noted that this matter would take more than one week to try and alleged that the Lessards had "basically sat on their hands for nine years in this case." Counsel for Velsicol stated that discovery in the case had not been updated since 1992 and that he was not afforded the opportunity to finish a deposition of the Lessards' expert witness. Velsicol's counsel also referenced a recent claim brought by the Lessards for damages associated with "painful, sensitive polyneuropathy" and that the Lessards had not participated in discovery regarding that claim. In explaining why the case had taken so long to prosecute, counsel for the Lessards noted the following:

> [Counsel for the Lessards]: All right. I have filed a response in this case. As I said, Your Honor, I originally represented the Lessards. I have been out of this case for five years. I've just been rehired. My first priority is to go forward with this case.
>
> . . . .
>
> [Counsel for the Lessards]: I left the law firm, Your Honor, and went into practice elsewhere. And in fact, I tried to retire from the practice of law first **[\*7]** of the year and found out I just couldn't do that. And so Mr. Spagnoletti asked me to come back and clear up some cases including this one.
>
> . . . .
>
> [Counsel for the Lessards]: Now that I'm on the case, I'll see all that is done and I will do it expeditiously just as soon as it can possibly be done. And I'll see that it's done.
>
> To correct what Counsel said, originally I represented the Lessards when I was with the Kleberg Law Firm in Corpus Christi. I have not been associated with this case. I turned this case over to Mr. Spagnoletti about four or five years ago. I haven't been associated with the case in the last three years.
>
> > I'm back here. I know the Lessards personally and I originally represented them and I would-- just to have their day in court or get this thing concluded for them. And that's all I ask, Your Honor, and I will diligently do whatever this Court suggests or wants me to do with regards

[sic] to resolving it, and that'll be done. I promise Your Honor that.

. . . .

THE COURT: They never did move the cases when you left.

[Counsel for the Lessards]: I know. I intend to move it now, Your Honor.

The trial court subsequently dismissed the Lessards' claims for want of prosecution.

On **[*8]** December 16, 1999, the Lessards filed various post-judgment motions, including a verified motion to reinstate, arguing that the trial court abused its discretion in dismissing the case and that *rule 165a of the Texas Rules of Civil Procedure* mandated reinstatement. *See TEX. R. CIV. P. 165a*. Included with their verified motion to reinstate was an affidavit executed by Francis I. Spagnoletti in which he stated the following:

> My firm has continuously represented Plaintiffs [the Lessards] since obtaining this case. The case was mediated in 1997, but no settlement could be reached. Although it is true that the case has now been on file for nine years (1990-1999), there are several reasons that explain this passage of time:
>
> First, as is customary at my firm, I assigned this case to associates, who then prepare the case as necessary for trial, including propounding and responding to discovery, obtaining medical records, and consulting with expert witnesses. Over the years that this case has been on file, the handling associate changed on several occasions. This fact has resulted in an unintended delay in handling.
>
> Second, this case is a consolidation of three separate lawsuits with separate **[*9]** sets of plaintiffs (the Reynolds, the Lessard[s], and the Episcopal Church), and includes separate defendants which are separately represented. The claims of the Reynolds were finally settled after lengthy proceedings . . . .

On December 20, 1999, the Lessards filed their original notice of appeal, which they later supplemented on March 13, 2000. The trial court denied all of the Lessards' post-judgment motions on January 31, 2000. The trial court entered an amended order of dismissal on February 9, 2000, adding Fruit of the Loom to the list of defendants. [3] It is because of this alteration that the Lessards filed their supplemental notice of appeal on

---

[3] The Lessards did not name Fruit of the Loom as a party in their March 13, 2000 supplemental notice of appeal.

March 13, 2000.

On December 29, 1999, Fruit of the Loom filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. This Court was notified of Fruit of the Loom's bankruptcy filing on July 24, 2000. *See TEX. R. APP. P. 8.1*. On August 17, 2000, this Court stayed the Lessards' appeal pursuant to the automatic stay imposed by the bankruptcy **[*10]** code. *See 11 U.S.C. § 362(a)*. The Lessards filed a motion to reinstate their appeal on June 8, 2007, noting that the bankruptcy proceedings involving Fruit of the Loom had concluded on March 21, 2007. *See TEX. R. APP. P. 8.3(a)*. [4] On June 28, 2007, we granted the Lessards' motion to reinstate their appeal. This appeal followed.

## II. ANALYSIS

---

[4] *Rule 8.3(a) of the Texas Rules of Appellate Procedure* provides the following:

> If a case has been suspended by a bankruptcy filing, a party may move that the appellate court reinstate the appeal if permitted by federal law or the bankruptcy court. If the bankruptcy court has lifted or terminated the stay, a certified copy of the order must be attached to the motion.

*TEX. R. APP. P. 8.3(a)*. In the instant case, the Lessards included a copy of the status report from Fruit of the Loom's bankruptcy proceedings as compiled by the PACER Docket Service for the United States Bankruptcy Court for the District of Delaware with their motion to reinstate their appeal. This status report is not certified, but it does indicate that Fruit of the Loom's bankruptcy proceedings terminated on March 21, 2007, thereby demonstrating that the automatic stay is no longer in effect. Though **[*11]** the status report is not certified, we find that the Lessards substantially complied with the requirements of *rule 8.3(a) of the rules of appellate procedure*. *See id.*; *see also TEX. R. APP. P. 8.3(b)*; *MCI Sales & Serv. v. Hinton, No. 10-08-00353-CV, 2008 Tex. App. LEXIS 8200, at *1 (Tex. App.--Waco Oct. 29, 2008, pet. filed)* (mem. op.) (per curiam) ("[An appeal] may be reinstated on motion of any party showing that the stay has been lifted or modified and specifying what action, if any, is required from this Court upon reinstatement of the appeal."); *Ma-Stell, Inc. v. Anadarko E&P Co., Nos. 10-03-00358-CV & 10-05-00204-CV, 2005 Tex. App. LEXIS 3193, at *2 n.3 (Tex. App.--Waco Apr. 27, 2005, order)* (noting that *rule 8.3(b) of the rules of appellate procedure* provides that the appeals court may sever and reinstate on its own initiative).

## A. The Trial Court's Dismissal of the Lessard's Claims for Want of Prosecution

In their second issue, the Lessards argue that the trial court abused its discretion in exercising its inherent power to dismiss their case for want of prosecution. Specifically, the Lessards contend that: (1) the trial court failed to give them notice that it planned **[*12]** to dismiss their case for want of prosecution; and (2) the record demonstrates that they were diligent in trying to obtain a trial setting from the trial court. Velsicol counters by arguing that the Lessards received reasonable notice and were given an opportunity to be heard before the trial court dismissed their claims after being on file for nine years at the time of dismissal.

### 1. Standard of Review

*HN1*[⬆] We review a trial court's dismissal of a suit for want of prosecution under an abuse of discretion standard. *See MacGregor v. Rich, 941 S.W.2d 74, 75 (Tex. 1997)* (per curiam); *State v. Rotello, 671 S.W.2d 507, 509 (Tex. 1984)*; *see also Sewell Motor Co. v. Capitan Enters., Inc., No. 08-02-00454-CV, 2004 Tex. App. LEXIS 3577, at **5-6 (Tex. App.--El Paso Apr. 22, 2004, pet. denied)* (mem. op.). The trial court abuses its discretion when it acts without reference to any guiding rules or principles or if the action is arbitrary or unreasonable. *Koslow's v. Mackie, 796 S.W.2d 700, 704 (Tex. 1990)*; *Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)*.

*HN2*[⬆] A trial court may dismiss a case for want of prosecution: (1) when a party fails to appear at a hearing or trial; (2) when the **[*13]** case has not been disposed of within the Supreme Court's time standards; [5] or (3) under the trial court's inherent power to dismiss, when the case has not been prosecuted with due diligence. *See TEX. R. CIV. P. 165a*; *Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex. 1999)*; *Rotello, 671 S.W.2d at 509*; *Bilnoski v. Pizza Inn,*

---

[5] *Texas Rule of Judicial Administration 6(b)* provides that all civil jury cases should be brought to trial or final disposition within eighteen months from appearance date and that all civil nonjury cases should be brought to trial or final disposition within twelve months from appearance date. *TEX. R. JUD. ADMIN. 6(b)*. However, the supreme court "recognized that in especially complex cases or special circumstances it may not be possible to adhere to these standards." *TEX. R. JUD. ADMIN. 6(e)*.

*Inc., 858 S.W.2d 55, 57 (Tex. App.--Houston [14th Dist.] 1993, no writ)*. The trial court's authority to dismiss is derived both from *rule 165a of the Texas Rules of Civil Procedure* and from its inherent power to manage its own docket. *Veterans' Land Bd. v. Williams, 543 S.W.2d 89, 90 (Tex. 1976)*; *Burton v. Hoffman, 959 S.W.2d 351, 353 (Tex. App.--Austin 1998, no pet.)*.

*HN3*[⬆] When **[*14]** an unreasonable delay in the prosecution of a case occurs, it is presumed that the case has been abandoned. *Bilnoski, 858 S.W.2d at 57* (citing *Hosey v. County of Victoria, 832 S.W.2d 701, 704 (Tex. App.--Corpus Christi 1992, no writ))*. If that delay is not sufficiently explained, the presumption of abandonment is conclusive and the case will be dismissed. *Id.* The trial court, in exercising its inherent authority, may consider periods of activity, intervals of inactivity, reasons for lack of attention, and the passage of time to determine whether the delay was reasonable. *Ozuna v. Sw. Bio-Clinical Labs., 766 S.W.2d 900, 902 (Tex. App.--San Antonio 1989, writ denied)*; *see King v. Holland, 884 S.W.2d 231, 237 (Tex. App.--Corpus Christi 1994, writ denied)* (noting that in exercising its inherent power to dismiss a case, a trial court may consider the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for the delay). The Lessards did not request findings of fact or conclusions of law, and the trial court did not specify the standard of dismissal used; therefore, we must affirm the trial court's **[*15]** decision if any legal theory for the dismissal is supported by the record. *See Point Lookout W., Inc. v. Whorton, 742 S.W.2d 277, 278 (Tex. 1987)*; *see also Maughan v. Employees Ret. Sys. of Tex., No. 03-07-00604-CV, 2008 Tex. App. LEXIS 5822, at *7 (Tex. App.--Austin Aug. 1, 2008, no pet.)* (mem. op.).

### 2. Discussion

The Lessards first argue that the trial court abused its discretion because it did not provide adequate notice of its intent to dismiss their case for want of prosecution. *HN4*[⬆] *Texas Rule of Civil Procedure 165a(1)* provides that a party must be provided with notice and an opportunity to be heard before a trial court may dismiss a case for want of prosecution under either *rule 165a* or its inherent power. *See TEX. R. CIV. P. 165a(1)* (*HN5*[⬆] "Notice of the court's intention to dismiss and the date and place of the dismissal hearing shall be sent by the clerk to each attorney of record, and to each party not represented by an attorney."); *Villarreal, 994 S.W.2d*

*at 630*; *Dueitt v. Arrowhead Lakes Prop. Owners, Inc., 180 S.W.3d 733, 737 (Tex. App.--Waco 2005, pet. denied)*; *see also Callahan v. Staples, 139 Tex. 8, 161 S.W.2d 489, 491 (1942)* (requiring notice for dismissals under the court's **[\*16]** inherent power); *Gutierrez v. Lone Star Nat'l Bank, 960 S.W.2d 211, 214 (Tex. App.--Corpus Christi 1997, pet. denied)* (requiring notice for dismissals under *rule 165a*). The requirements of notice and a hearing are necessary to ensure that the dismissed claimant received due process. *Dueitt, 180 S.W.3d at 737* (citing *Smith v. McKee, 145 S.W.3d 299, 302 (Tex. App.--Fort Worth 2004, no pet.)*; *Tex. Sting Ltd. v. R.B. Foods, Inc., 82 S.W.3d 644, 648 (Tex. App.--San Antonio 2002, pet. denied)*; *Franklin v. Sherman Indep. Sch. Dist., 53 S.W.3d 398, 401 (Tex. App.--Dallas 2001, pet. denied))*. The failure to provide adequate notice of the trial court's intent to dismiss for want of prosecution is a due process violation and requires reversal. *Villarreal, 994 S.W.2d at 630* (citing *Donnell v. Spring Sports, Inc., 920 S.W.2d 378, 386 (Tex. App.--Houston [1st Dist.] 1996, writ denied)*; *Davis v. Laredo Diesel, Inc., 611 S.W.2d 943, 946-47 (Tex. Civ. App.--Waco 1981, writ ref'd n.r.e.))*; *see Keough v. Cyrus U.S.A., Inc., 204 S.W.3d 1, 5 (Tex. App.--Houston [14th Dist.] 2006, pet. denied)*. However, participation in a hearing on a motion to reinstate cures any due process concerns for the trial court's **[\*17]** failure to provide notice of its intent to dismiss for want of prosecution. *Dueitt, 180 S.W.3d at 737*.

The Lessards argue that they did not receive adequate notice of the trial court's intent to dismiss their case because the notice was promulgated by Velsicol via its joint motion to dismiss for want of prosecution and not by the trial court itself. They argue that Velsicol's joint motion was only sufficient to inform the Lessards of Velsicol's intentions and gave no indication of the trial court's intentions. They further argue that Velsicol cannot give notice of the trial court's intention to dismiss the claims using its inherent power, but that the trial court must give notice of its own intentions.

However, several Texas courts have held that *HN6*[⬆] a dismissal for want of prosecution may be obtained by the motion of the trial court or on the motion of any party to the suit. *See Dueitt, 180 S.W.3d at 738*; *see also Sierra Club v. Tex. Comm'n on Envtl. Quality, No. 03-04-00108-CV, 188 S.W.3d 220, 2005 Tex. App. LEXIS 454, at \*5 (Tex. App.--Austin Jan. 21, 2005, no pet.)* ("Contrary to appellants' arguments, the *rule 165a* reinstatement procedure applies to all dismissals for want of prosecution, regardless **[\*18]** of whether they are initiated by the court or motion of a party."); *Polk v.*

*Sw. Crossing Homeowners Ass'n, 165 S.W.3d 89, 92-93 (Tex. App.--Houston [14th Dist.] 2005, pet. denied)* (affirming the trial court's granting of appellee's motion to dismiss for want of prosecution); *Harvey v. Wetzel, No. 03-03-00608-CV, 2004 Tex. App. LEXIS 6818, at \*12 (Tex. App.--Austin July 29, 2004, no pet.)* (same); *Wright v. Tex. Dep't of Criminal Justice-Inst. Div., 137 S.W.3d 693, 694 (Tex. App.--Houston [1st Dist.] 2004, no pet.)* (same); *Manning v. North, 82 S.W.3d 706, 712 (Tex. App.--Amarillo 2002, no pet.)* (same). Furthermore, the Texas Supreme Court has held that *either* notice of the trial court's intent to dismiss or notice of the actual order of dismissal is sufficient notice. *See Harris County v. Miller, 576 S.W.2d 808, 810 (Tex. 1979)*; *see Lowe v. U.S. Shoe Corp., 849 S.W.2d 888, 891 (Tex. App.--Houston [14th Dist.] 1993, writ denied)*.

Velsicol filed its joint motion to dismiss for want of prosecution on October 18, 1999, more than nine years after the Lessards had first filed their lawsuit. In its joint motion, Velsicol noted the following:

> Trial was set for this case on January 9, 1995, in **[\*19]** Live Oak County during a week that was not a jury week. In approximately late October of 1994, the Honorable Judge Rodriguez noted that there would not be an actual jury setting in the case nor a new docket control conference, unless and until the parties agreed to a visiting judge. Thereafter, the Defendants [Velsicol and others] on numerous occasions provided the Plaintiffs [the Lessards] lists of visiting judges, among which included, Judge Wells Stewart, Judge Vernon Harville, and the late Judge Onion. Despite the Defendants' efforts, the Plaintiffs failed to do anything.
> It has been nearly nine years since the filing of this suit. To date, all claims regarding the Defendants have been resolved with the exception of the claims set forth by the Lessards. The Lessards remain the only outstanding claims despite mediation attempts and numerous letters sent to the Plaintiffs on behalf of the Defendants to obtain a visiting judge.
>
> The Savage Defendants have made numerous efforts to resolve this claim and have heard no reply from the Plaintiffs. *To ensure that the interests of the Defendants are preserved and to reach a resolution in this long stalled case, the Defendants ask this Court **[\*20]** to dismiss this matter for failure of the Plaintiffs to properly and efficiently pursue their case.*
>
> *WHEREFORE PREMISES CONSIDERED the*

*Defendants respectfully request the Court grant the Joint Motion to Dismiss for Want of Prosecution.*

(Emphasis added.) On November 12, 1999, the Lessards filed a response to the joint motion to dismiss, alleging that the reason for the delay in the case was that the parties could not agree on a visiting judge and proposing a list of three visiting judges. On November 17, 1999, the trial court conducted a hearing on Velsicol's joint motion to dismiss. It is not clear from the record that the trial court notified the Lessards of its intent to dismiss their claims for want of prosecution. *See Alexander v. Lynda's Boutique, 134 S.W.3d 845, 849-50 (Tex. 2004)* ("[M]ere silence as to whether notice [of intent to dismiss] was sent does not establish that notice was not sent . . . ."); *see also Keough, 204 S.W.3d at 5*. In any event, after hearing arguments from Velsicol, the Savage parties, and the Lessards, the trial court granted Velsicol's joint motion to dismiss for want of prosecution.

*HN7*[↑] All that due process requires is that a party be given notice of the time **[\*21]** and substance of the hearing, and an opportunity to present arguments at the hearing. *See Smith, 145 S.W.3d at 302*; *Tex. Sting Ltd., 82 S.W.3d at 648*; *see also Dueitt, 180 S.W.3d at 739*. Velsicol's joint motion to dismiss put the Lessards on notice that their claims may be dismissed for want of prosecution by the trial court. *See Dueitt, 180 S.W.3d at 740* (holding that "'a dismissal notice containing no reference to *Rule 165a* or the court's inherent authority [is] sufficient to put the appellant on notice that the court could dismiss under *Rule 165a(1)*, *Rule 165a(2)*, or its inherent authority'" (quoting *Steward v. Colonial Cas. Ins. Co., 143 S.W.3d 161, 163-64 (Tex. App.--Waco 2004, no pet.)))*. By conducting the November 17, 1999 hearing, the trial court afforded the Lessards an opportunity to be heard and to provide adequate justifications for the nine-year delay in prosecuting the case. *See Lowe, 849 S.W.2d at 891* ("It is generally held that a party to a lawsuit is charged with notice that the suit may be dismissed for want of prosecution when there is inaction for a long period of time. This constructive notice satisfies due process requirements.") (internal citation omitted). Thus, **[\*22]** we conclude that the Lessards received due process. [6] *See Dueitt, 180*

*S.W.3d at 740*; *see also Bilnoski, 858 S.W.2d at 57*; *Lowe, 849 S.W.2d at 891*.

Next, the Lessards contend that the record demonstrates that they were diligent in prosecuting their claims; therefore, the trial court abused its discretion in granting Velsicol's joint motion to dismiss. We disagree.

As previously mentioned, *HN8*[↑] the trial court may consider periods of activity, intervals of inactivity, reasons for lack of attention, and the passage of time in determining **[\*23]** whether a case should be dismissed for want of prosecution. *See Ozuna, 766 S.W.2d at 902*; *see also King, 884 S.W.2d at 237*. Furthermore, when there is an unreasonable delay in the prosecution of the case, it is presumed that the case has been abandoned unless the dismissed claimant provided a sufficient justification for the delay. *See Bilnoski, 858 S.W.2d at 57*; *Hosey, 832 S.W.2d at 704*.

Here, the record supports an implied finding that the case was not prosecuted with diligence. Nearly nine years elapsed between the date the case was first filed-- December 31, 1990--and the date the trial court finally dismissed it--November 17, 1999. [7] During that time, the parties engaged in some discovery and participated in mediation. *See Nichols v. Sedalco Constr. Servs., 228 S.W.3d 341, 343 (Tex. App.--Waco 2007, pet. denied)* (holding that the trial court did not abuse its discretion in dismissing a case for want of prosecution where brief periods of activity did not explain remaining long periods of inactivity). However, the parties neither resolved their claims nor agreed on a visiting judge to hear the case, as ordered by the trial court on June 24, 1993. At the November 17, 1999 hearing, **[\*24]** counsel for the Lessards stated that the reason for the delay centered on his employment status. According to counsel for the Lessards, he initially represented the Lessards until he discontinued employment with his law firm for five years. He admitted to the trial court that his law firm "never did move the case" until he returned to work for the law firm

---

[6] Our conclusion is further supported by the fact that the Lessards were provided a copy of the actual dismissal order, which allowed them to timely file their motion to reinstate. *See TEX. R. CIV. P. 165a(3)* (providing that a motion to reinstate must be filed within thirty days after the order of dismissal is

signed or within the period prescribed by *Rule 306a*); *see also Harris County v. Miller, 576 S.W.2d 808, 810 (Tex. 1979)* (holding that *either* notice of the trial court's intent to dismiss or notice of the actual order of dismissal is sufficient notice); *Lowe v. U.S. Shoe Corp., 849 S.W.2d 888, 891 (Tex. App.-- Houston [14th Dist.] 1993, writ denied)* (same).

[7] As noted earlier, the trial court did amend its **[\*25]** dismissal order to include Fruit of the Loom as a defendant on January 31, 2000.

after his five year hiatus. [8] Moreover, the Lessards did not file a request for a trial setting from the trial court until March 14, 1999. [9] The Lessards had an abundance of time with which to prosecute their claim, yet very little prosecution occurred in this case until it was it on the verge of being dismissed. We do not find the Lessards' justifications to be sufficient in explaining the nine-year delay in prosecuting the case. *See Ozuna, 766 S.W.2d at 902*; *King, 884 S.W.2d at 237*; *Bilnoski, 858 S.W.2d at 57*; *Hosey, 832 S.W.2d at 704*. We therefore conclude that the trial court did not abuse its discretion in dismissing the Lessards' claims under its inherent authority. *See MacGregor, 941 S.W.2d at 75*; *Rotello, 671 S.W.2d at 509*. Accordingly, we overrule the Lessards' second issue.

## B. The Trial Court's Denial of the Lessard's Motion for Reinstatement

In their first issue, the Lessards assert that the trial court abused its discretion in refusing to reinstate their claims pursuant to *Rule 165a of the Texas Rules of Civil Procedure*. *See TEX. R. CIV. P. 165a*. The Lessards argue that: (1) they were not consciously indifferent to the trial court's orders regarding the appointment of visiting judges; (2) they did not abuse the pretrial discovery process; (3) they showed the trial court that they were ready for trial; (4) their claims are meritorious and they should be given an opportunity to be heard; and (5) Velsicol did not demonstrate that it would be unfairly prejudiced by the reinstatement of the Lessard's lawsuit. **[*26]** Velsicol contends that the trial court did not abuse its discretion in denying the Lessard's motion for reinstatement because: (1) the Lessards ignored for six years the trial court's orders to agree on a visiting judge; and (2) the Lessards failed to provide Velsicol with discovery on a newly alleged medical claim. Velsicol argues that the Lessard's justifications for the delays--that the case originally involved numerous parties and the law firm representing the Lessards had reassigned the case to various associates over the years--were not adequate to warrant a reinstatement of the case.

## 1. Standard of Review

**HN9**[↑] *Texas Rule of Civil Procedure 165a(3)* sets out the procedure for reinstating cases dismissed for want of prosecution. *See TEX. R. CIV. P. 165a(3)*. A trial court is compelled to reinstate a case "upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained." *Id*. In order to determine whether the trial court abused its discretion in refusing reinstatement, we review the entire record and determine whether the **[*27]** evidence was sufficient to find that the failure of the party was not due to accident, mistake, or other reasonable explanation. *See Tex. Dep't of Pub. Safety v. Deck, 954 S.W.2d 108, 112 (Tex. App.--San Antonio 1997, no writ)*; *see also Torres v. Rios, 869 S.W.2d 555, 557 (Tex. App.--Corpus Christi 1993, no writ)*. The party requesting reinstatement has the burden to bring forth a record establishing that reinstatement was required. *Kenley v. Quintana Petroleum Corp., 931 S.W.2d 318, 321 (Tex. App.--San Antonio 1996, writ denied)*.

## 2. Discussion

We have already determined that the record does not support a finding that the trial court abused its discretion by dismissing the case. Moreover, the record supports an implied finding that the Lessards did not prosecute this case with diligence. *See Dueitt, 180 S.W.3d at 741*; *see also Luna v. UPS, Inc., No. 01-02-00144-CV, 2003 Tex. App. LEXIS 465, at **8-9 (Tex. App.--Houston [1st Dist.] Jan. 9, 2003, pet. denied)* (concluding that the trial court did not abuse its discretion in dismissing appellant's claims for failing to exercise diligence in prosecuting his claims and that the trial court did not abuse its discretion in denying appellant's **[*28]** motion to reinstate because of the dismissal). Therefore, the Lessards have failed to meet their burden to bring forth a record supporting reinstatement. We overrule the Lessards' first issue. [10]

---

[8] Counsel's admission is supported by the affidavit filed by Spagnoletti, where he blamed the delay on the complexity of the case (involving multiple plaintiffs and defendants) and the fact that the case had been handled by several associates at the law firm.

[9] The Lessards renewed their request for a trial setting at the November 17, 1999 hearing and in their motion to reinstate.

---

[10] We note that the record reflects that the trial court conducted a hearing on Velsicol's joint motion to dismiss rather than the Lessards' motion to reinstate. *See TEX. R .CIV. P. 165a(3)* (providing that a trial court is compelled to reinstate a case "upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained."). The

## IV. CONCLUSION

We affirm the trial court's dismissal of the Lessards' claims for want of prosecution and its denial of the Lessards' motion to reinstate.

DORI CONTRERAS GARZA,

Justice

Memorandum Opinion delivered and

filed this the 23rd day of April, 2009.

---

**End of Document**

---

supreme court has held that when a verified motion to reinstate has been filed under *rule 165a(3)*, an oral hearing is required, and a failure to hold such a hearing requires reversal. *See Thordson v. City of Houston, 815 S.W.2d 550, 550 (Tex. 1991)* (per curiam). However, the Lessards do not argue on appeal that they were improperly denied an oral hearing on their motion for reinstatement and, instead, rely on the evidence presented at the trial court's November 17, 1999 hearing on Velsicol's joint motion **[*29]** to dismiss. Furthermore, the Lessards, in their verified motion to reinstate, did not request a hearing on the motion. *See Keough v. Cyrus U.S.A., Inc., 204 S.W.3d 1, 6 n.3 (Tex. App.--Houston [14th Dist.] 2006, pet. denied)* (noting that before trial court error can be found in the failure to set a hearing on a motion to reinstate, the movant must request a hearing); *Cabrera v. Cedarapids, Inc., 834 S.W.2d 615, 618 (Tex. App.--Houston [14th Dist.] 1992, writ denied)* (same); *but see Matheson v. Am. Carbonics, 867 S.W.2d 146, 147-48 (Tex. App.--Texarkana 1993, no writ)* ("[T]he court is required to conduct a hearing on a timely filed motion to reinstate. Whether or not the movant requests a hearing on a motion to reinstate is irrelevant; a hearing is required unless waived.") (internal citations omitted). Moreover, the trial court, by providing the Lessards notice of and an opportunity to be heard at the November 17, 1999 hearing, afforded the Lessards with due process and, therefore, was not required to conduct a hearing on the Lessards' motion to reinstate. *See Dueitt v. Arrowhead Lakes Prop. Owners, Inc., 180 S.W.3d 733, 740-41 (Tex. App.--Waco 2005, pet. denied)* (concluding that the **[*30]** trial court's failure to conduct a hearing on appellant's motion to reinstate was harmless error because appellants were provided due process in a prior hearing on appellee's motion to dismiss for want of prosecution).

# *Maida v. Fire Ins. Exch.*

Court of Appeals of Texas, Second District, Fort Worth

March 25, 1999, Delivered

NO. 2-98-232-CV

**Reporter**
990 S.W.2d 836 *; 1999 Tex. App. LEXIS 2053 **

VINCENT MAIDA, APPELLANT v. FIRE INSURANCE EXCHANGE, APPELLEE

**Prior History: [**1]** FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY.

**Disposition:** Reversed and remanded.

## Core Terms

reinstatement, trial court, want of prosecution, cases, inherent authority, dismissal notice, withdraw, notice, abuse of discretion, time standards, days, motion to reinstate, no writ, courts, affirmative relief, dismissal order, trial setting, diligently, grounds, abused

## Case Summary

**Procedural Posture**
Appellant policyholder challenged a judgment from the County Court at Law No. 2 of Tarrant County (Texas), which denied his motion to reinstate his insurance claim against appellee fire insurance exchange.

**Overview**
Appellant policyholder sued appellee insurance carrier for failing to settle his claim. The case was on file for 17 months. There was a period of inactivity, appellant moved out of state, and his counsel withdrew close to trial. Appellant filed a letter with the court stating the withdrawal created a hardship and jeopardized his case. The trial court dismissed appellant's case for want of prosecution and denied his motion to reinstate. Appellant challenged the dismissal and the denial. The court reversed and remanded. The court held it was an abuse of discretion to dismiss the case for either non-compliance with the supreme court's time standards or under the court's inherent authority. The court also held that it was an abuse of discretion to fail to reinstate a case improperly dismissed. Significant discovery had

occurred, the case was not on file in excess of the supreme court's time standards, the case had been set for trial, the case was continued over appellant's objection, appellant lived out of state at the time of notice and dismissal, and the court signed the notice of dismissal only three days after allowing appellant's counsel to withdraw.

**Outcome**
Judgment denying appellant's motion to reinstate his insurance claim reversed because the trial court abused its discretion in both dismissing the case and in failing to reinstate the case that was improperly dismissed, and it remanded for reinstatement.

## LexisNexis® Headnotes

Governments > Legislation > Interpretation

*HN1*[🔽] **Legislation, Interpretation**

The court is to construe briefing rules liberally. *Tex. R. App. P. 38.1(e)*, *38.9*. Those rules require that arguments be clear and concise as to the contentions made, with appropriate citations to authorities in the record. *Tex. R. App. P. 38.1(h)*. A point is sufficient if it directs the appellate court to the error about which complaint is made.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Criminal Law & Procedure > ... > Standards of Review > Abuse of Discretion > General Overview

Civil Procedure > Dismissal > Involuntary

Dismissals > General Overview

Civil Procedure > Dismissal > Involuntary Dismissals > Motions

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Criminal Law & Procedure > Trials > Judicial Discretion

*HN2*[⬇] **Involuntary Dismissals, Failure to Prosecute**

A motion to reinstate a case dismissed for want of prosecution is addressed to the sound discretion of the court. In reviewing whether there was an abuse of discretion, the key question is whether the trial court acted without reference to any guiding rules and principles, or in an arbitrary or unreasonable manner.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

*HN3*[⬇] **Standards of Review, Abuse of Discretion**

In reviewing a court's refusal to reinstate, the court must first look to the court's basis for dismissal. Determination of the basis for the dismissal provides the measure whereby the court may determine if the court has abused its discretion.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

*HN4*[⬇] **Involuntary Dismissals, Failure to Prosecute**

Under *Tex. R. Civ. P. 165a*, a trial court may dismiss a case for want of prosecution if a party fails to appear at trial or a hearing, or if the disposition of a party's case is not in compliance with the supreme court's time standards for disposition. A court also has the inherent authority to dismiss for want of prosecution cases that are not prosecuted with due diligence. This authority

stems from a trial court's power to maintain and control its docket.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Governments > Courts > Clerks of Court

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

*HN5*[⬇] **Involuntary Dismissals, Failure to Prosecute**

Dismissal for Want of Prosecution: (a) The courts will periodically give notice of their intention to dismiss for want of prosecution. Such notice will be given at least thirty (30) days prior to the signing of consequent dismissal order. (b) The clerk shall provide notice of the court's intention to dismiss for want of prosecution by complying with the provisions of *Tex. R. Civ. P. 165a(1)*. Local Rules of Practice of the District Courts of Tarrant County Rule 3.90 (Adopted October 2, 1990).

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

Criminal Law & Procedure > Trials > Judicial Discretion

*HN6*[⬇] **Dismissal, Involuntary Dismissals**

A trial court has the inherent authority to dismiss a case that has not been diligently prosecuted. Whether a case has been diligently prosecuted is also an issue committed to the trial court's sound discretion. Factors a trial court may consider in dismissing under its inherent power include the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for delay.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

*HN7*[⬇] **Involuntary Dismissals, Failure to**

**Prosecute**

Where a party is ready for trial and has secured a trial setting or is otherwise making a diligent effort to get the case to trial, the case should not be dismissed for lack of prosecution.

**Counsel:** ATTORNEY FOR APPELLANT: Wes Dauphinot, FORT WORTH, TEXAS.

ATTORNEY FOR APPELLEE: LOUIS J. SANDBOTE, P.C., Mark D. Cole, DALLAS, TEXAS.

**Judges:** PANEL A: CAYCE, C.J.; LIVINGSTON and BRIGHAM, JJ.

**Opinion by:** TERRIE LIVINGSTON

# Opinion

 **[*838]**  OPINION

In three points, appellant contends the trial court abused its discretion by failing to reinstate his case, and violated his rights to a fair trial and due process. We reverse.

## I. FACTS

Appellant Vincent Maida purchased an insurance policy through appellee Fire Insurance Exchange (Exchange) for coverage of personal property. After a theft during a move, Maida claimed $ 27,695 alleging either loss, theft, or other damage to his personal property. Exchange and Maida failed to settle the claim, and on December 26, 1996, Maida filed suit claiming that Exchange had breached the insurance contract and violated several provisions of the Texas Insurance Code. On February 6, 1997, Exchange answered, and between February 11 and September 3 of 1997, the parties engaged in discovery. On October 1, 1997, Maida filed his first amended petition.

On November 6, 1997, the court sent a notice of dismissal to the parties. The notice stated the court's desire to adhere to the supreme court's time standards for disposition **[**2]** of cases and that Maida's case would be dismissed within 30 days unless some disposition was made or other affirmative relief sought.

On November 14, Maida requested a trial setting, and the case was set for trial on April 13, 1998. But on March 18, Maida's counsel, Ron Boyle, filed a motion to continue the case and to withdraw as Maida's counsel. The court set a hearing on both motions for April 3. On March 30, Maida, who had since moved to California, sent a letter to the court requesting that the court deny Boyle's request to withdraw. Nevertheless, on April 3, the court allowed Boyle to withdraw and removed the case from its April 13 setting.

Then on April 6, just three days after Boyle's withdrawal, the court issued a second notice of dismissal. This second notice also stated that the court desired to comply with the supreme court's guidelines for disposition of cases, and stated the case would be dismissed for "want of prosecution" in 30 days unless Maida obtained an order of retention, reached some final disposition in the case, or sought other affirmative relief.

On May 11, 1998, 35 days after sending the second notice of dismissal, the court dismissed the case "for want **[**3]** of prosecution." The following day, Maida's new counsel filed a notice of appearance with the court. On June 4, Maida filed a verified motion to reinstate. At the hearing on Maida's motion to reinstate, the court denied his motion.

## II. DISCUSSION

When a party seeks appellate review of a case that has been dismissed for want of prosecution and that has not been reinstated, the party may cast its argument in one of three ways: First, a party may argue the trial court erred in dismissing the case; second, a party may contend it was error for the trial court to refuse to reinstate the case; and finally, a party may challenge both the dismissal and the denial of reinstatement. Although each challenge, if sustained, is independently sufficient to obtain reinstatement, [1] the subtle distinctions among the challenges affect both our ability and the scope of our review.

 **[**4]**  Maida designates his arguments under point one

---

[1] A motion to reinstate is not a prerequisite for appeal. *See Hosey v. County of Victoria, 832 S.W.2d 701, 703* (Tex. App.--Corpus Christi 1992, no writ). For purposes of an appeal, the order of dismissal is the final judgment. *See id.*; *Estate of Bolton v. Coats, 608 S.W.2d 722, 725* (Tex. Civ. App.--Tyler 1980, writ ref'd n.r.e.). As a result, a motion to reinstate is similar to a motion for new trial, and thus, necessary only to develop facts that otherwise would not appear in the record. *See Hosey, 832 S.W.2d at 703-04*.

as challenges to the trial **[\*839]** court's failure to reinstate. However, the substance of his argument is directed to the trial court's *dismissal* of the case. He consistently argues that "dismissal on [inherent authority] grounds constitutes an abuse of discretion" and "dismissal on [*rule 165a(1)*] grounds constitutes an abuse of discretion." Furthermore, Maida, throughout his argument, requests that we find the *dismissal* an abuse of discretion. Nonetheless, Maida prays that we reverse the order denying the motion to reinstate.

Maida's point is multifarious, and we are not required to review it. *See Thomas v. Wichita Gen. Hosp., 952 S.W.2d 936, 939* (Tex. App.--Fort Worth 1997, pet. denied). However, *HN1*[⬆] we are to construe briefing rules liberally. *See TEX. R. APP. P. 38.1(e)*, *38.9*; *Texas Mexican Ry. Co. v. Bouchet, 963 S.W.2d 52, 54-55 (Tex. 1998)*. Those rules require that arguments be clear and concise as to the contentions made, with appropriate citations to authorities in the record. *See TEX. R. APP. P. 38.1(h)*. A point is sufficient if it directs the appellate court to the error about which complaint is made. **[\*\*5]** *See Bouchet, 963 S.W.2d at 54-55*. Because Maida has sufficiently directed us to the errors about which he complains--dismissal *and* failure to reinstate--we will address each of his complaints.

## A. REINSTATEMENT

*HN2*[⬆] A motion to reinstate a case dismissed for want of prosecution is addressed to the sound discretion of the court. *See Smith v. Babcock & Wilcox Const. Co., 913 S.W.2d 467, 467 (Tex. 1995)*; *Eustice v. Grandy's, 827 S.W.2d 12, 14* (Tex. App.--Dallas 1992, no writ); *Goff v. Branch, 821 S.W.2d 732, 733* (Tex. App.--San Antonio 1991, writ denied). In reviewing whether there was an abuse of discretion, the key question is whether the trial court acted without reference to any guiding rules and principles, or in an arbitrary or unreasonable manner. *See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)*, *cert. denied*, *476 U.S. 1159, 90 L. Ed. 2d 721, 106 S. Ct. 2279 (1986)*.

In this instance, the parties disagree as to the appropriate guiding rules and principles applicable to this case. *HN3*[⬆] In reviewing a court's refusal to reinstate, we must first look to the court's basis for dismissal. *See, e.g., Shook v. Gilmore & Tatge* **[\*\*6]** *Mfg. Co., 951 S.W.2d 294, 296* (Tex. App.--Waco 1997, writ denied). Determination of the basis for the dismissal provides the measure whereby we may determine if the court has abused its discretion.

**1.** Court's Authority to Dismiss

*HN4*[⬆] Under *Texas Rule of Civil Procedure 165a*, a trial court may dismiss a case for want of prosecution if a party fails to appear at trial or a hearing, or if the disposition of a party's case is not in compliance with the supreme court's time standards for disposition. *See TEX. R. CIV. P. 165a(1)-(2)*. *Rule 165a*, however, is not the only authority by which a trial court may dismiss a case.

A court also has the inherent authority to dismiss for want of prosecution cases that are not prosecuted with due diligence. *See State v. Rotello, 671 S.W.2d 507, 508-09 (Tex. 1984)*; *Villarreal v. San Antonio Truck & Equip., Inc., 974 S.W.2d 275, 276* (Tex. App.--San Antonio 1998, pet. granted) (citing *Rizk v. Mayad, 603 S.W.2d 773, 776 (Tex. 1980))*. This authority stems from a trial court's power to maintain and control its docket. *See Brim Laundry Mach. Co. v. Washex Mach. Corp., 854 S.W.2d 297, 301* (Tex. App.--Fort Worth 1993, writ denied).

**[\*\*7]** Because the record in this case does not contain findings of facts or conclusions of law and the dismissal order does not specify the reason for dismissal other than to generally dismiss for "want of prosecution," we must affirm on any **[\*840]** legal theory supported by the record. [2] *See Ozuna v. Southwest Bio-Clinical Labs., 766 S.W.2d 900, 901* (Tex. App.--San Antonio 1989, writ denied) (op. on reh'g).

## 2. Application

Maida acknowledges that because the order is silent as to the reason for dismissal, we must affirm on any legal theory supported by the record. Nevertheless, he argues that regardless of the basis for dismissal, it was an abuse of discretion not to **[\*\*8]** reinstate the case.

Maida postulates that the court's dismissal is based on one of two grounds: First is that the dismissal was under the court's inherent authority; second was his failure to

---

[2] We do not mean to imply that in certain instances other factors may not restrict our review to specific grounds of dismissal. *See, e.g., Villarreal, 974 S.W.2d at 279-86* (Duncan, J., dissenting) (stating that where a notice of dismissal specifies a single ground for dismissal, a trial court may not dismiss on any other ground).

seek affirmative relief as required in the notice of dismissal. Maida analogizes the *action* of failing to "seek affirmative relief" to the court's power to dismiss under 165a(1), when a party fails to appear. Despite this analogy, he asserts that such an interpretation is devoid of statutory support and can not support the dismissal. He contends that the standard for reinstatement set forth in 165a(3) is applicable to either ground of dismissal.

*Rule 165a(3)* and *(4)* address reinstatement. 165a(3) provides that a motion to reinstate shall be verified, must be filed within 30 days of the order of dismissal, and requires a hearing on the motion. *See TEX. R. CIV. P. 165a(3)*. The rule also mandates reinstatement upon "finding . . . that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained." *Id*.

165a(4) provides that dismissal and reinstatement **[\*\*9]** procedures are cumulative of other remedies and that the same reinstatement procedures and timetables are applicable to *all* cases dismissed for want of prosecution, even those dismissed pursuant to the court's inherent authority. *See TEX. R. CIV. P. 165a(4)*.

We do not find Maida's contention, that the trial court was limited to two grounds for dismissal, persuasive. In this case, we do not interpret the instructions in the dismissal notice to be the basis for dismissal. Rather, we construe the enumerated actions, in the second notice, as grounds to *prevent* dismissal. [3] *See TEX. R. CIV. P. 165a(1)* (stating that once a case is on the dismissal docket, the court shall dismiss at the dismissal hearing unless there is good cause for the case to be maintained on the docket.)

Maida's reinstatement argument is predicated on the application of 165a(3)'s standard for reinstatement. However, **[\*\*10]** in this case, *rule 165a(3)* does not provide the appropriate measure for determining whether the court should have reinstated the case. Several of our sister courts have held that 165a(3)'s standard for reinstatement only applies to cases dismissed for failure to appear. *See Burton v. Hoffman, 959 S.W.2d 351, 354* (Tex. App.--Austin 1998, no pet.); *Clark v. Yarbrough, 900 S.W.2d 406, 408-09* (Tex. App.--Texarkana 1995, writ denied); *Eustice, 827 S.W.2d at 14*; *Ozuna, 766 S.W.2d at 903*; *Stromberg Carlson Leasing Corp. v. Central Welding Supply Co., 750 S.W.2d 862, 866* (Tex. App.--Houston [14th Dist.] 1988, no writ); *Moore v. Armour & Co., 748 S.W.2d 327, 331* (Tex. App.--Amarillo 1988, no writ). We agree with those decisions.

The standard set out in 165a(3) is essentially the same standard as that for setting aside a default judgment. *See Babcock & Wilcox Const. Co., 913 S.W.2d at 468*; *see also Sharpe v. Kilcoyne, 962 S.W.2d 697, 701* **[\*841]** (Tex. App.--Fort Worth 1998, no pet.); *Johnson v. Edmonds, 712 S.W.2d 651, 652-53* (Tex. App.--Fort Worth 1986, no writ) (interpreting "conscious indifference" as a failure to take some action which a person of reasonable **[\*\*11]** sensibilities under the same circumstances would deem necessary). Such a standard is well suited for analyzing specific instances of conduct. On the other hand, it does not easily lend itself to determining whether a party diligently prosecuted a case or whether the disposition of the case complies with the supreme court's time standards for disposition. *Cf. Stromberg Carlson Leasing Corp., 750 S.W.2d at 866*.

Furthermore, 165a(4) is consistent with application of subdivision 3 to only instances of dismissal based on a failure to appear. 165a(4) requires that the *procedures* and *timetable*, be applied to all dismissals for want of prosecution. *See Eustice, 827 S.W.2d at 15*. Therefore, we hold that the 165a(3)'s reinstatement standard, "conscious indifference," only applies to cases dismissed for failure to appear.

Because Maida's argument is predicated on application of that standard, we do not find that the trial court abused its discretion in refusing to reinstate because of appellant's lack of conscious indifference. We overrule the portion of Maida's argument dealing with reinstatement under 165a(3).

## B. BASIS FOR DISMISSAL

### 1. Dismissal Under 165a(1)

 **[\*\*12]** *Rule 165a(1)* gives a court power to dismiss for want of prosecution when a party or its counsel fail to appear at a hearing or trial. Neither the notice of dismissal nor the order of dismissal were based on this subdivision. Nothing indicates that either Maida or his trial counsel failed to appear at any hearing. Therefore, 165a(1) is not applicable.

---

[3] That is not to say a court could not dismiss a case under its inherent power for failing to seek affirmative relief.

Nicole Mitchell

## 2. Dismissal Under 165a(2)

In 1988, *rule 165a* was amended and subdivision 2 was added. That subdivision authorizes a trial court to place a case on the dismissal docket when it is not disposed of in accordance within the time standards prescribed by the supreme court. *See TEX. R. CIV. P. 165a(2)*. Those time standards state that:

District and statutory county court judges of the county in which cases are filed should, so far as reasonably possible, ensure that all cases are brought to trial or final disposition in conformity with the following time standards:

. . . .

### b. Civil Cases Other Than Family Law.

(1) *Civil Jury Cases.*

Within 18 months from appearance date.

*TEX. R. JUD. ADMIN. 6*, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. F app. (Vernon 1998).

In line with this provision, the **[\*\*13]** Tarrant County district courts adopted Local Rule 3.90 which provides:

Rule 3.90: *HN5*[↑] Dismissal for Want of Prosecution

(a) The courts will periodically give notice of their intention to dismiss for want of prosecution. Such notice will be given at least thirty (30) days prior to the signing of consequent dismissal order.

(b) The clerk shall provide notice of the court's intention to dismiss for want of prosecution by complying with the provisions of Paragraph (1) of *Rule 165a of the Texas Rules of Civil Procedure*.

LOCAL RULES OF PRACTICE OF THE DISTRICT COURTS OF TARRANT COUNTY RULE 3.90 (Adopted October 2, 1990). [4]

**[\*842]** Thus, the supreme court has deemed 18 months to be a reasonable time period for disposing of a case like this.

Exchange filed an original answer and requested a jury

on February 6, 1997. The trial court dismissed the **[\*\*14]** case on May 11, 1998. Thus, Maida's case was dismissed only 15 months from appearance date. Because, the trial court did not follow the supreme court's disposition guidelines, it was an abuse of discretion to dismiss on this basis. *See Hosey, 832 S.W.2d at 704*.

## 3. Dismissal Under Inherent Authority

*HN6*[↑] A trial court also has the inherent authority to dismiss a case that has not been diligently prosecuted. *See Rotello, 671 S.W.2d at 509*; *Ozuna, 766 S.W.2d at 901*. Whether a case has been diligently prosecuted is also an issue committed to the trial court's sound discretion. *See Ozuna, 766 S.W.2d at 901-02*. Factors a trial court may consider in dismissing under its inherent power include the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for delay. *See King v. Holland, 884 S.W.2d 231, 237* (Tex. App.--Corpus Christi 1994, writ denied).

## 4. Application of Factors

Here, the case was on file for 17 months, still within the supreme court's guidelines. [5] During that time, the record reflects that significant discovery occurred in the eight months **[\*\*15]** following Exchange's answer, at which time Maida requested the April 13, 1998 trial setting. Admittedly, from the time the first trial setting was requested until March 18, 1998, when Boyle sought to withdraw, Maida only took one deposition. However, the court did not give notice of its intent to dismiss during this period of inactivity. Rather, the court sent its dismissal notice *after* it removed the case from its April 13 trial setting and allowed Boyle to withdraw.

Prior to the April 3 hearing, Maida filed a letter opposing Boyle's withdrawal. In that letter, Maida stated that he currently resided in California and that Boyle's experience with the case coupled with **[\*\*16]** his withdrawal, so close in time to trial, would create a hardship to timely find a new attorney and would jeopardize the case. Nonetheless, the court dismissed

---

[4] Although captioned as the rules for district courts, rule 1.01(a) states that these rules govern proceedings in Tarrant County district and statutory county courts.

[5] The original petition was filed on December 26, 1996, but no answer was filed until February 1997. The period between Maida's filing of his original petition and Exchange's filing of an answer accounts, in large part, for the approximate two month difference between the "17 months on file" and the "15 months from appearance date."

Maida's case.

Under these circumstances, because (1) significant discovery had occurred in the case, (2) the case was not on file in excess of the supreme court's time standards, (3) the case had been set for trial, (4) it was continued over Maida's objection, (5) Maida lived out of state at the time of notice and dismissal, and (6) the court signed the notice of dismissal only three days after allowing Boyle to withdraw, we hold that the court abused its discretion in dismissing Maida's case under its inherent authority. *See Brim Laundry Mach. Co., 854 S.W.2d at 302; Moore v. Armour & Co., 660 S.W.2d 577, 578* (Tex. App.--Amarillo 1983, no writ); *William T. Jarvis Co. v. Wes-Tex Grain Co., 548 S.W.2d 775* (Tex. Civ. App.--Waco 1977, writ ref'd n.r.e.); *Rorie v. Avenue Shipping Co., 414 S.W.2d 948* (Tex. Civ. App.--Houston [1st Dist.] 1967, writ ref'd n.r.e.) (each standing for the proposition that *HN7*[↑] where a party is ready for trial and has secured a trial setting or is otherwise making a diligent effort to get **[**17]** the case to trial, the case should not be dismissed for lack of prosecution). We sustain that portion of Maida's point dealing with the court's dismissal of his case.

Because we hold that the court abused its discretion in dismissing the case under its inherent authority, it was also an abuse to fail to reinstate a case improperly dismissed. Because of our disposition on this **[*843]** point, we do not need to address Maida's second and third points.

## III. CONCLUSION

We hold that it was an abuse of discretion to dismiss the case for either non-compliance with the supreme court's time standards or under the court's inherent authority. We also hold that it was an abuse of discretion to fail to reinstate and reverse the trial court's judgment and remand the case to the trial court for reinstatement in accordance with this opinion.

TERRIE LIVINGSTON

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and BRIGHAM, JJ.

Delivered March 25, 1999

Nicole Mitchell

# *Moore v. Armour & Co.*

Court of Appeals of Texas, Seventh District, Amarillo

October 19, 1983

No. 07-81-0282-CV

**Reporter**

660 S.W.2d 577 *; 1983 Tex. App. LEXIS 5202 **

JOHNNY MOORE, Appellant v. ARMOUR & COMPANY, INC., AND JOE LEE BROWNING, Appellees

**Prior History: [**1]** From the District Court of Lubbock County; 140th Judicial District; No. 59,334; Honorable William R. Shaver, Judge.

## Core Terms

trial court, lack of prosecution, announced, abused, time of dismissal, trial setting, contending, reinstated, ref'd

## Case Summary

### Procedural Posture

Appellant sought review of a decision of the District Court of Lubbock County, 140th Judicial District, Texas, dismissing, for lack of prosecution, appellant's personal injury suit against appellees. Appellant argued that the trial court abused its discretion in dismissing the case.

### Overview

Appellant filed suit against appellees, contending he was seriously injured in an auto-truck collision negligently caused by appellee driver. After appellees answered, there was no activity in the case and the trial court dismissed it. However, pursuant to a motion by appellant, the case was subsequently reinstated. Thereafter, there was sporadic activity, including unsuccessful attempts to depose appellee driver. Appellees filed a motion to dismiss for lack of prosecution. The case was subsequently set for trial and appellant announced ready at a docket call. The case was eighth on the jury docket, however, and was not reached for trial that week. A few days later, the trial court heard and granted the motion by appellees to dismiss the case for lack of prosecution. The court reversed the trial court decision, finding that the trial court abused its discretion in dismissing the case for want of prosecution. The court held that appellant's request and readiness for trial at the time of the dismissal forbade its dismissal for lack of prosecution. The court therefore remanded the cause for reinstatement on the docket of the trial court.

### Outcome

The court reversed a trial court decision dismissing appellant's personal injury suit against appellees for lack of prosecution. The court held that the trial court abused its discretion in dismissing the case. The court therefore remanded the cause for reinstatement on the docket of the trial court.

## LexisNexis® Headnotes

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Criminal Law & Procedure > ... > Standards of Review > Abuse of Discretion > General Overview

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

Civil Procedure > Dismissal > Involuntary Dismissals > Appellate Review

Civil Procedure > ... > Pretrial Judgments > Nonsuits > Voluntary Nonsuits

*HN1*[⬇] **Involuntary Dismissals, Failure to Prosecute**

A trial court has express power, *Tex. R. Civ. P. 165a*, and inherent power to dismiss a case for lack of prosecution. When that occurs, the only question for review is whether the trial court abused its discretion. In

resolving that question, the appellate court acknowledges that the trial court is entitled to consider the entire history of the case, and the plaintiff's assertion at a dismissal hearing that he did not intend to abandon the case is immaterial. Where, however, at the time of the dismissal hearing the plaintiff has announced ready for trial and has secured a trial setting or is otherwise making a diligent effort to get the case to trial, the case should not be dismissed for lack of prosecution.

**Counsel:** Mr. E. Warren Goss, Goss, Hale and Wells, P.C., Lubbock, Texas, for Appellant.

Mr. James L. Wharton, Jones, Trout, Flygare, Moody & Brown, Lubbock, Texas, for Appellees.

**Judges:** Richard N. Countiss, Associate Justice. Reynolds, J.

**Opinion by:** COUNTISS

# Opinion

 [*577] This appeal is from a judgment dismissing, for lack of prosecution, appellant Johnny Moore's personal injury suit against appellees Armour & Company and Joe Lee Browning. The single issue before us is whether the trial court abused its discretion [*578] in dismissing the case. We conclude that it did and reverse and remand.

On February 7, 1969, Moore filed suit against Armour and its alleged employee Browning, contending he was seriously injured in an auto-truck collision negligently caused by Browning. After the defendants answered, there was no activity in the case and it was dismissed by the trial court in December of 1976. However, pursuant to a motion by Moore, it was reinstated in February of 1977.

Between April of 1979 and March of 1980, there was sporadic activity, [**2] including unsuccessful attempts to depose Browning who has disappeared. In August 1980, Armour and Browning filed a motion to dismiss for lack of prosecution. Soon thereafter Moore's present attorney, the latest of several, was employed and in December of 1980, he asked the trial court to set the case for trial "at your earliest convenience on your next jury docket." The case was subsequently set for trial during the week of September 8, 1981, and Moore announced ready at a September 4, 1981 docket call. The case was eighth on the jury docket, however, and

was not reached for trial that week. A few days later, on September 18, 1981, the trial court heard and granted the motion by Armour and Browning to dismiss the case for lack of prosecution.

By a single point of error, Moore contends the trial court abused its discretion in dismissing the case for want of prosecution. He argues that, regardless of his inattention to the case in the past, his request and readiness for trial at the time of the dismissal forbad its dismissal for lack of prosecution. We must agree.

All parties agree that *HN1*[↑] a trial court has both express power, *Tex. R. Civ. P. 165a*, and inherent power, *Bevil [**3] v. Johnson, 157 Tex. 621, 307 S.W.2d 85, 87 (1957)*, to dismiss a case for lack of prosecution. When that occurs, the only question for review is whether the trial court abused its discretion. In resolving that question, we acknowledge that the trial court is entitled to consider the entire history of the case, *see Denton County v. Brammer, 361 S.W.2d 198, 201 (Tex. 1962)*, and the plaintiff's assertion at a dismissal hearing that he did not intend to abandon the case is immaterial. *Reed v. Reed, 158 Tex. 298, 311 S.W.2d 628, 630 (1958)*; *Gaebler v. Harris, 625 S.W.2d 5, 6-7* (Tex. Civ. App. -- San Antonio 1981, no writ). Where, however, at the time of the dismissal hearing the plaintiff has announced ready for trial and has secured a trial setting or is otherwise making a diligent effort to get the case to trial, the case should not be dismissed for lack of prosecution. *Rorie v. Avenue Shipping Co., 414 S.W.2d 948, 954* (Tex. Civ. App. -- Houston 1967, writ ref'd n.r.e.); *see also Wm. T. Jarvis Co. v. Wes-Tex Grain Co., 548 S.W.2d 775, 778* (Tex. Civ. App. -- Waco 1977, writ ref'd n.r.e.).

In this case, Moore had announced ready, secured a trial setting [**4] and, as this record affirmatively reflects, stood ready to go to trial when his case was dismissed. We conclude that a dismissal under those circumstances is an abuse of discretion. Point of error one is sustained.

The judgment of the trial court is reversed and the case is remanded for reinstatement on the docket of the trial court.

---

**End of Document**

Nicole Mitchell

# *Rorie v. Avenue Shipping Co.*

Court of Civil Appeals of Texas, First District, Houston

April 27, 1967

No. 14986

## Reporter

414 S.W.2d 948 *; 1967 Tex. App. LEXIS 2890 **

C. V. Rorie, Appellant v. Avenue Shipping Co., Ltd., et al, Appellees

**Subsequent History: [**1]** N.R.E.

**Prior History:** Appeal from District Court of Galveston County

## Core Terms

ship, appellees, vessel, want of prosecution, motion to dismiss, prosecute, deposition, diligence, notice, cause of action, longshoreman, attorneys, operators, original petition, trial court, cross-action, stevedore's, announced, cases

## Case Summary

### Procedural Posture

Appellant longshoreman sought review of the decision of the District Court of Galveston County (Texas), which denied his motion for a reconsideration of the dismissal of his personal injury action against appellees, ship owner and city. The district court dismissed appellant's for delay in prosecution.

### Overview

Appellant longshoreman suffered personal injuries while unloading ore from a ship that was owned by appellee ship owner. Appellant filed a personal injury action against appellees, ship owner and city. No action was taken for four years, during which time appellant was pursuing a compensation claim under the Longshoremen's & Harbor Workers' Act. The district court retained the case on the docket once it learned of the other pending action, but then ultimately dismissed the action for delay in prosecution. Appellant's attorney had been busy with the action just before the dismissal. Appellant's motion for reconsideration was denied. The appellate court reversed the dismissal and remanded the case for a trial on its merits. The court found that the time just before the dismissal controlled the question of abandonment of the prosecution and that appellant's attorney had demonstrated good cause for the unreasonable delay. Although several witnesses died during the delay, appellees did not object during that time and did not attempt to procure testimony from the witnesses during the four-year delay.

### Outcome

The court reversed the dismissal of appellant longshoreman's personal injury action against appellees, ship owner and city, for want of prosecution and remanded the case for a trial on its merits. The court found that appellant's delay in bringing the case to trial was reasonable because he was waiting for the outcome of a pending compensation claim. Also, appellees did not object during the delay or interview witnesses during that time.

## LexisNexis® Headnotes

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

Civil Procedure > ... > Pretrial Judgments > Nonsuits > Voluntary Nonsuits

### *HN1*[⤓] Dismissal, Involuntary Dismissals

The want of action at the time of or just before the dismissal controls on the question of abandonment of the prosecution. In passing on a motion to dismiss on the grounds of abandonment the lack of action at the time of the presentation of the motion or just before the presentation governs the court's decision.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

Civil Procedure > Dismissal > Involuntary Dismissals > Motions

*HN2*[⬇] **Involuntary Dismissals, Failure to Prosecute**

A motion to dismiss for want of prosecution should not be granted if at the time of the motion plaintiff is diligently prosecuting his claim, even though at some prior period of time he had been guilty of gross negligence or neglect.

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

*HN3*[⬇] **Dismissal, Involuntary Dismissals**

A suit may be dismissed for lack of diligence in its prosecution in the past, although the plaintiff's objections to the dismissal at the hearing thereon manifest his intention to prosecute it to judgment.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Civil Procedure > Judgments > Relief From Judgments > General Overview

Civil Procedure > Judgments > Relief From Judgments > Motions for New Trials

*HN4*[⬇] **Standards of Review, Abuse of Discretion**

With respect to dismissal of a motion for new trial or an independent suit, the matter rests in the sound discretion of the trial court. It is not an unbridled discretion, but a judicial discretion subject to review. Upon review, the question is whether there was a clear abuse of discretion by the trial court. That is a question of law.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

*HN5*[⬇] **Involuntary Dismissals, Failure to Prosecute**

In the absence of a statutory prohibition, every court has the power to dismiss a suit for want of prosecution.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Judgments > Relief From Judgments > General Overview

Civil Procedure > Judgments > Relief From Judgments > Motions for New Trials

*HN6*[⬇] **Standards of Review, Abuse of Discretion**

With respect to a motion for new trial, the fact that respondents have no intention to abandon it, or that their attorney has hopes of settling the case, cannot be made a ground for charging an abuse of discretion by the trial court in dismissing the case.

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

*HN7*[⬇] **Dismissal, Involuntary Dismissals**

Where the defendant in a suit is called to answer and has responded to the call, the duty devolves on the plaintiff to proceed in prosecuting the suit to a conclusion with reasonable diligence, and whenever a delay of an unreasonable duration occurs, such delay, if not sufficiently explained, raises a conclusive presumption of abandonment of the plaintiff's suit, and a discontinuance results.

Admiralty & Maritime Law > Maritime Personal Injuries > Maritime Tort Actions > General Overview

Admiralty & Maritime Law > Maritime Workers' Claims > General Overview

**HN8**[↓] **Maritime Personal Injuries, Maritime Tort Actions**

A longshoreman cannot recover for injuries sustained by him against the owner of the ship when the equipment causing the injury is shore-based and not of the type commonly found as a part of the gear that the ship would be expected to furnish.

**Judges:** Ewing Werlein, Associate Justice. Associate Justice Coleman not sitting.

**Opinion by:** WERLEIN

# Opinion

 [*949] On Motion For Rehearing

WERLEIN, Justice.

On motion for rehearing appellant's motion for leave to file supplemental transcript is granted and this Court's opinion handed down on March 30, 1967 is withdrawn and the following opinion is substituted therefor.

This is an appeal from a judgment entered July 12, 1966 dismissing for want of prosecution appellant's cause of action brought to recover damages for personal injuries sustained by him on September 6, 1960 while working as a longshoreman in the hold of the SS Armagh assisting in unloading bulk ore from such vessel. Appellant filed suit on March 24, 1961 against the City of Galveston and the owners and operators of the ship, Avenue Shipping Co., Ltd. and Trinder Anderson & Company, Ltd., both foreign corporations, sometimes herein called Avenue, inasmuch as their positions in this litigation are identical. Said appellees were duly served with citation and answered. On March 27, 1961 appellant demanded a jury and on April 13, 1961 filed his first amended **[**2]** original petition. On petition of Avenue, the suit was removed to the United States District Court. It was remanded to the State court on motion of the City of Galveston on May 29, 1961. On September 14, 1961 Strachan Shipping Company, appellant's employer, the contract stevedore, sometimes called herein Strachan, filed its answer to the cross-action filed against it by the City of Galveston. The court's docket sheet shows that no action whatever was taken in the case from May 29, 1961 until August 5,

1965.

On August 5, 1965, the court sent out notices to counsel for all parties except Strachan that the case would be dismissed for want of prosecution at the call of the dismissal docket on October 6, 1965 unless good cause was shown in open court at such time why said cause should not be dismissed. Upon receipt of said notice appellant's counsel in writing on September 27, 1965 requested the court not to dismiss the cause of action for the reason that the case was not brought to trial prior to the date of such notice because of the then existing pending claim for compensation under Title 33, Section 901 et seq., generally known as the Longshoremen's & Harbor Workers' Act. It was also **[**3]** stated, "It was felt that this would seriously jeopardize plaintiff's case if a compensation claim would not be disposed of first. This is to advise you that this claim had been disposed of by an award by the Honorable C. D. Calbeck, United States Deputy Commissioner, and, therefore, the case can now go to trial without prejudice to the rights he had under the Act. Our Mr. Kirtley is now requesting the case for trial for your next jury assignment. Every effort is being made to dispose of this case by that date." As a result of such communication, the court retained the case upon the docket of the court. There was no objection or exception to the court's action by any of the parties to the suit. Thereafter there was great activity in connection with the prosecution of the suit up to the time it was dismissed.

On December 14, 1965, as shown by the court's docket sheet, appellant requested a setting of the case for trial on the jury **[*950]** docket in the December, 1965, term of court, and sent copies of such request to appellees, City of Galveston and Avenue. On December 23, 1965, the suit was continued by agreement. Appellant did not sue Strachan since such company was his employer **[**4]** and he was covered under the United States Longshoremen's & Harbor Workers' Act. Dismissal notices were again sent out by the court in March, 1966. On March 28, 1966 appellant requested a setting for the April term. On April 1, 1966 the attorney for the City of Galveston notified appellant's attorneys that the court had set a pretrial hearing of the case for April 8, and that the case was at the top of the docket for trial during the week of April 25, 1966. On April 8, 1966, the case was continued on motion of appellees. In said letter of April 1, 1966, counsel for the City of Galveston also stated that he would appreciate appellant's counsel picking a day within the next two weeks that he could furnish appellant for the purpose of taking his deposition. On April 4, 1966, counsel for

appellant notified counsel for appellees that he could present appellant for deposition at any time upon giving appellant's counsel two to three days' notice.

On May 10, 1966, counsel for appellant wrote the court advising that the last time he appeared before the court, the court had set the case down for trial on June 27, 1966 and for a pretrial hearing on June 10, 1966, and also advising that appellant [**5] would be ready to try the case on June 27, 1966. On June 10, 1966, the plea in abatement filed by the City of Galveston was overruled. On the same day the City filed its motion to dismiss and such motion was set for hearing on June 17, 1966. Strachan's and Avenue's motions to dismiss also came up for hearing on June 17, 1966. After hearing such motions and appellant's motion to reconsider such motions to dismiss, filed by appellant on June 23, 1966, the court entered an order on July 12, 1966 dismissing the cause of action and all cross-actions.

The record shows further that on April 6, 1966 appellant filed what is denominated "Plaintiff's First Amended Original Petition" which in fact was his second amended original petition, since his first amended original petition was filed April 13, 1961. On May 12, 1966, appellant filed his request for admissions addressed to the City of Galveston and/or its attorneys by name, and on the same day made request of Avenue for admissions. On May 12, 1966, appellant's counsel filed an answer to the plea in abatement of the City of Galveston. On May 20, 1966, the City of Galveston filed its reply to appellant's request for admissions. On May 27, 1966, [**6] appellant filed his third amended original petition. On June 10, 1966, Strachan filed its answer to the cross-action of Avenue. On May 16, 1966, there was filed in the court a stipulation of a compensation lien which was executed by the lawyers representing all the parties in the suit; on April 8, 1966, Avenue filed its first amended original answer and cross-action against the City of Galveston, and impleaded Strachan; on May 12, 1966 appellant filed his exceptions to the answer of Avenue, which appellant asserts in his brief were discussed with the attorneys for Avenue who agreed that the exceptions were good and who stated they would file an amended answer setting out specifically acts of contributory negligence on the part of appellant. The case was set for trial three times and at each setting appellant announced ready for trial. On April 12, 1966, appellant's deposition was taken. On May 18, 1966, the deposition of the witness, W. L. Patterson, was taken.

At the hearing of the motions to dismiss, evidence was adduced consisting of the testimony of the attorneys representing appellant and appellees. The attorney for the City of Galveston testified in substance that this suit [**7] grew out of an accident involving a crane which was owned by The Galveston Wharves and that the operator of the crane, Frank McPeters, died on May 8, 1965; that he had not talked to McPeters but had obtained a statement made by him; that he received a notice that the case was set for dismissal in October, 1965, and as he remembered [*951] the court allowed it to stay on the docket at that time and that he did not object to the court's order doing so.

The attorney for Strachan testified in substance that shortly after the cross-action was filed against Strachan he made a trip to Galveston and talked to a gentleman named Calvin Floeck who was at that time an assistant stevedoring superintendent for Strachan, and obtained from him his evaluation and the circumstances of the accident; that after this case was set on the dismissal docket in February, 1966, Mr. Floeck died; that he had been informed approximately six weeks ago that Mr. H. Weber, who was gang foreman of Strachan at the time of the accident, died during the latter part of 1965.

The attorney for Avenue testified in substance that according to the records he had investigated, the SS Armagh was sold in 1961 and according [**8] to Lloyd's List Reports on June 2, 1966 such vessel was in the Far East operating between Hong Kong and Japanese ports; that in his opinion there was no practical or feasible way to have reliable people board the vessel to ascertain certain conditions of her structure, especially in connection with Hold No. 5 in which appellant was working on the occasion in question; that after the deposition of appellant was taken on April 12, 1966 it became obvious to Avenue that the physical setup in the hold and its height and dimensions were material in the case inasmuch as the attorney for appellant and appellant were primarily basing their cause of action against Avenue on the ground of failure of the stevedores to use mechanical equipment in the hold, which Avenue had reason to believe would not have been practical because of the size of the hold and the shaft alley which bisected it; that they were not given notice in appellant's original and first amended petitions that this was a specific ground of liability, and it was only after appellant gave his deposition that they felt such physical conditions were pertinent; that he had written his clients in England but that he had not as yet been [**9] successful in getting any response; that they had no statements with information from the officers aboard the ship; that in order to show that the

operations in question were not performed in any manner which would render the ship liable, it would be necessary to look to the testimony of employees of the City of Galveston and employees of Strachan, because it was clear from appellant himself that the vessel's personnel did not participate in any of the operations alleged to have caused appellant's injury.

He also testified that Lloyd's Registry states the place where the ship was built, but he had not contacted the vessel's builder to determine whether the blueprints and diagrams of the vessel were available; that in December he did not object to the case remaining on the docket; that he did not attend the hearing of the setting of the case in March or April, 1966, when it was set again for dismissal, and that it was his impression that the April 6 setting was taken off the show-cause docket; and that the attorney for Strachan had obtained a capacity plan of the vessel, or a sister vessel, from the ship builders and had given him a copy of that, but it did not supply the information **[**10]** with respect to the dimensions of the cargo hold in question or of the shaft alley which bisects it or any longitudinal bulkheads in the hold which he considered material to the question as to the manner of discharging the particular cargo.

After hearing appellees' testimony, the court stated that no action was taken in the case from May 29, 1961, until August, 1965, when dismissal cards were sent to all parties informing them that all cases which had been on the docket more than three years would be set up for dismissal on October 6, 1965, and that when such docket was called on that date Mr. Mandell or a member of his firm was present and stated that they did not wish the case dismissed and would proceed with it in the near future, and requested a setting for the December term; that on December 14, 1965, at the call of the docket it appeared **[*952]** to the court from the information available and discussions with the attorneys that the case was not ready for trial, and it was continued by agreement. The court further stated that no action was taken thereafter until the dismissal docket was set up in March, 1966, for April 6, and that in the meantime appellant's firm submitted **[**11]** a request for setting on March 28 for the April term; that the case was put on the docket for the April term and upon the call of the docket on April 8 was continued again after considerable discussion among the lawyers and the court, and thereupon appellant again requested it be set for the June term of court; and that at the call of the docket on June 10, 1966, appellant announced ready. The court then found as a matter of law that the case had been on file for an unreasonable length of time but

stated it would permit appellant to offer testimony to explain the delay.

One of appellant's attorneys testified as to other litigation of his firm and as to appellant's claim under the Longshoremen's & Harbor Workers' Act. He undertook to explain the delay prior to the dismissal notice of August, 1965, by saying that appellant's counsel deemed it advisable to secure appellant's compensation rights before proceeding with the third party case, although he admitted there was no legal reason why both claims could not be prosecuted at the same time.

At the conclusion of the hearing on June 17, 1966, the court stated that it granted the motions for dismissal and found that appellant had failed **[**12]** to show good grounds for the delay in the trial of the case, and also that appellees had been prejudiced thereby. On June 23, 1966, appellant filed his motion to reconsider appellees' motions to dismiss for want of prosecution, which motion was inadvertently omitted by the District Clerk of Galveston County from the transcript filed herein although the affidavit of Mr. Mandell, counsel for appellant, attached thereto, was included in the transcript. Such motion is contained in the supplemental transcript now before us.

Appellant's point of error is: "In passing on a motion to dismiss for want of prosecution, the lack of action at a time of or shortly before presentation of the motion to dismiss governs the court's action." Appellant in his brief does not assert, other than by implication, that the court erred or abused its discretion in dismissing the case. Nevertheless, appellant has made it clear in his brief that he is complaining of the court's action in dismissing his cause of action and in denying him the valuable right to a trial on the merits under the facts and circumstances developed at the hearing of appellees' motions to dismiss and his motion for rehearing.

It is appellant's **[**13]** contention, as set out in his brief that neither the trial court nor this Court should consider any delay in the case at bar from May 29, 1961 until October 6, 1965, since the court at such latter date retained the case on its docket, thereby indicating that it found there was good cause for the delay up to such date. In *Chapman v. Gibson, 8 S.W. 2d 711*, Tex.Civ.App. 1928, the court said: "*HN1*[⬆] ] The want of action at the time of or just before the dismissal would control on the question of abandonment of the prosecution." Also in *David Graham Hall Foundation v. Highland Park Independent School District, 371 S.W. 2d 762*, Tex.Civ.App. 1963, ref., n.r.e., the court, citing

Chapman v. Gibson, stated: "In passing on a motion to dismiss on the grounds of abandonment the lack of action at the time of the presentation of the motion or just before the presentation will govern the court's decision." That case was an action for delinquent ad valorem taxes. When the suit was originally filed in 1942 only the taxes for the year 1941 were in question. When the school district and the town filed their amended pleadings in 1958 they sued for additional taxes which had accrued up to the year 1958. The State **[**14]** and County appeared by intervention for the first time in 1959.

Based upon the case of *Ayers v. D. F. Quillen & Sons, Inc., Del. Sup., 55 Del. 481, 188 A. 2d 510*, the following statement is made in **[*953]** 24 Am. Jur. 2d 51, § 59: "*HN2*[⬆] A motion to dismiss for want of prosecution should not be granted if at the time of the motion plaintiff is diligently prosecuting his claim, even though at some prior period of time he had been guilty of gross negligence or neglect." It is our view that after appellees filed their motions to dismiss the case for want of prosecution, the court in considering such motions was not restricted to what had occurred subsequent to October 6, 1965, but could also consider any delay which occurred prior to that date as well as all of the evidence adduced upon the hearing of such motions.

Our Supreme Court has held that *HN3*[⬆] a suit may be dismissed for lack of diligence in its prosecution in the past, although the plaintiff's objections to the dismissal at the hearing thereon manifest his intention to prosecute it to judgment. *Reed v. Reed, Tex. Sup. 1958, 158 Tex. 298, 311 S.W. 2d 628*; *Bevil v. Johnson, Tex. Sup. 1957, 157 Tex. 621, 307 S.W. 2d 85*; *Denton County [**15] v. Brammer, Tex. Sup. 1962, 361 S.W. 2d 198*. In the early case of *Roemer v. Shackelford, Tex.Civ.App., 23 S.W. 87*, however, Justice Williams, in speaking for the Court of Civil Appeals, stated: "There was no error in the refusal of the court to dismiss the suit in 1889 for want of prosecution. The plaintiffs were prosecuting it, continuances being entered from term to term, generally by agreement. If sufficient diligence was not being used, defendants' remedy was to force plaintiffs to a trial, and not to dismiss for want of prosecution when plaintiffs appeared to represent their cause." Appellant, in relying on *Roemer v. Shackelford, supra*, and *Beasley v. Keck, 280 S.W. 855*, Tex.Civ.App. 1926, asserts that appellees' remedy was to force appellant to trial, and not to have the suit dismissed for want of prosecution.

In *Bevil v. Johnson, supra*, the court, speaking through

Chief Justice Hickman, used the following language *HN4*[⬆] with respect to dismissal of a motion for new trial or an independent suit:

> "The matter rests in the sound discretion of the trial court. It is not an unbridled discretion, but a judicial discretion subject to review. Upon review, the question is whether there **[**16]** was a clear abuse of discretion by the trial court. That is a question of law. It is thought that only two decisions by this court need be cited in support of the rule just announced. However, there are many Texas cases cited in support thereof in 15-A Texas Jurisprudence, p. 383, § 41. In the *First National Bank of Houston v. Fox, 121 Tex. 7, 39 S.W. 2d 1085, 1086*, this court held:

> "'It is a well-established rule that *HN5*[⬆] in the absence of a statutory prohibition, every court has the power to dismiss a suit for want of prosecution. 9 R.C.L., p. 206, § 25; 18 C.J. 1191, 1192, § 110; *Hall v. City of Austin, 31 Tex.Civ.App. 626, 73 S.W. 32*.'"

The court further stated, *HN6*[⬆] with respect to such motion for new trial: "The fact that respondents had no intention to abandon it, or that their attorney had hopes of settling the case, cannot be made a ground for charging an abuse of discretion by the trial court. . . . Petitioners owed no duty to seek a hearing on respondents' motion."

In *Callahan v. Staples, 139 Tex. 8, 161 S.W. 2d 489*, our Supreme Court announced the general rule in this language:

> "Such rule as so developed and applied may be explained in these words: *HN7*[⬆] Where the defendant **[**17]** in a suit is called to answer and has responded to the call, the duty devolves on the plaintiff to proceed in prosecuting the suit to a conclusion with reasonable diligence, and whenever a delay of an unreasonable duration occurs, such delay, if not sufficiently explained, will raise a conclusive presumption of abandonment of the plaintiff's suit, and a discontinuance results."

See also *Crosby v. DiPalma, 141 S.W. 321*, Tex.Civ.App. 1911, error refused.

**[*954]** It is our view that the instant case is factually distinguishable from the cases of *Reed v. Reed, supra*; *Bevil v. Johnson, supra*, and *Denton County v. Brammer, supra.* In *Reed v. Reed, supra*, the court

stated in substance that a suit may properly be dismissed for past lack of diligence in its prosecution, not withstanding that the plaintiff's objection to the dismissal at the time of the corresponding hearing was in effect a manifestation of his intent to prosecute the suit to judgment. In the Reed case citation was not issued for a period of almost fifteen months after the suit was filed. In the instant case citation was promptly issued and served. Furthermore, appellant did not merely express an intention to prosecute **[\*\*18]** the case. Appellant had been diligently prosecuting the case for approximately eight months prior to its dismissal. In *Bevil v. Johnson, supra*, there was no activity in the case for a period of some eight years. In *Denton County v. Brammer, supra*, a condemnation suit, there was an unexplained delay of seven years in the issuance and service of citation upon the condemnor, and an unexplained delay of five years following the condemnees' withdrawal of the award before the condemnees obtained a setting and trial of the case.

It is our view that it was error and an abuse of discretion to dismiss appellant's cause of action under the peculiar facts and circumstances of this case. The testimony of counsel for the City of Galveston shows that the operator of the crane, McPeters, died on May 8, 1965. No attempt had been made to take the deposition of McPeters. Moreover, all of the 8 months' activity in the suit occurred after the death of McPeters without objection on the part of such counsel.

Counsel for Strachan did not make any attempt to take the deposition of Floeck or Weber. It is true that it has been held in this State that where a defendant has been called upon to answer in a law **[\*\*19]** suit, the duty devolves upon the plaintiff to prosecute the suit diligently. This does not mean that the defendant should not also prepare his defense diligently by procuring the testimony of witnesses upon whom he relies. There is no reason why appellant should be charged with the loss of Strachan's witnesses as he had no more reason to expect their deaths than did appellees. Nor was it shown that other witnesses were not available who could give substantially the same evidence as Floeck and Weber.

Counsel for Avenue failed to show that the evidence concerning the structure of the ship and its hold could not be obtained from the builders of the ship. Again no effort was made to take the depositions of any of the owners or operators of the ship. Furthermore, the ship left Galveston sometime after the occurrence in question and was sold in the year 1961. The departure of the ship from Galveston and its sale in all probability made it just as difficult to obtain evidence from the owners and operators thereof in 1961 as in 1965 or 1966. It was not shown when counsel wrote his clients to obtain information. He requested no postponement nor did he file any application for continuance in **[\*\*20]** order to have time to procure evidence from the owners or operators with respect to the structure of the vessel and its hold and the nature and condition of the equipment used on the occasion in question.

We have examined the cases cited by appellee. In none of them was there any activity for a substantial period of time prior to the filing of the motion to dismiss. In the instant case there was not only great activity for a period of nearly eight months prior to the time the suit was dismissed, but there was a diligent effort on the part of appellant to bring the case to trial. He announced ready for trial on three different occasions. This fact distinguishes the instant case from the cases relied upon by appellees.

The record indicates that appellant's counsel was acting in good faith in an effort to best serve his client by not sooner **[\*955]** pressing for trial. Although this suit might have been tried prior to the settlement of appellant's claim for compensation in 1965 under the United States Longshoremen's and Harbor Workers' Compensation Act, appellant's attorney felt that it would be in the best interest of his client not to try the case until his client had reached the **[\*\*21]** maximum state of recovery and the compensation claim had been disposed of. We are also of the opinion that appellant showed reasonable grounds for not sooner pressing for trial in that there was a serious question prior to 1965 as to the liability of a ship owner for injuries to a longshoreman resulting from the use of shore-based equipment. It had been held by several Federal courts that *HN8*[↑] a longshoreman could not recover for injuries sustained by him against the owner of the ship when the equipment causing the injury was shore-based and not of the type commonly found as a part of the gear that the ship would be expected to furnish. In *McKnight v. N. M. Paterson & Sons, Ltd., 181 F. Supp. 434*, the court held that where an independent contractor used a crane that was not an appurtenance of the ship, and the ship owner had no control over the choice of the crane, the defect in the crane which resulted in injury did not render the vessel unseaworthy and the longshoreman was not entitled to recover from the vessel owner on the basis of unseaworthiness. This judgment was affirmed by the *U.S. Circuit Court of Appeals, 6th Cir., 286 F.2d 250*.

Nicole Mitchell

Appellant's counsel states that he was aware of **[\*\*22]** the fact that there was pending in the U.S. District Court of California the case of *Huff v. Matson Navigation Co., 225 F. Supp. 72 (1963)*. The judgment in such case was reversed by the *U.S. Circuit Court of Appeals, 338 F.2d 205, 9*th Cir. 1964, and certiorari was denied by the *Supreme Court of the United States, 380 U.S. 943, 85 S. Ct. 1026, 13 L. Ed. 2d 963*, on March 15, 1965. This case held that the liability of the owner of the vessel to the stevedore's longshoreman who was injured when hit in the hold of a vessel by a scraper which was a part of the stevedore's dockside crane used to unload bulk sugar from the vessel, could be predicated on a claim of unseaworthiness. Thus, the question as to the liability of the ship owner for shore-based equipment was not resolved until 1965. Appellant's counsel states that his duty to his client would have been substantially impaired had he prosecuted his client's suit prior to the time that such law question had been finally decided by the Supreme Court of the United States. See *Spann v. Lauritzen, 344 F.2d 204 (3rd Cir. 1965)* reversing the judgment of the U.S. District Court, *237 F. Supp. 569*, certiorari denied *382 U.S. 1000, 86 S. Ct. 531,* **[\*\*23]** *15 L. Ed. 2d 489 (1966)*, holding the ship owner responsible for a longshoreman's injuries caused by a shore-based crane. See also *Deffes v. Federal Barge Lines, Inc., 361 F.2d 422* (Ct. of App., 5th Cir. 1966).

It is our view that appellant showed reasonable grounds for delay in bringing the case to trial in view of the unsettled state of the law prior to 1965. We are of the opinion also that the case should not have been dismissed for want of prosecution in view of the tremendous amount of activity in the case for some eight months prior to its dismissal, during which time none of the appellees or their counsel objected but instead measurably participated.

Judgment of the Trial Court is reversed and the cause is remanded for trial on its merits.

Associate Justice Coleman not sitting.

**End of Document**

# *State v. Rotello*

Supreme Court of Texas

June 6, 1984

No. C-2816

## Reporter

671 S.W.2d 507 *; 1984 Tex. LEXIS 356 **; 27 Tex. Sup. J. 407

THE STATE OF TEXAS, Petitioner v. TOM ROTELLO ET UX., Respondents

**Subsequent History: [**1]** Rehearing Denied July 11, 1984.

**Prior History:** FROM BRAZOS COUNTY FOURTEENTH DISTRICT.

## Core Terms

trial court, notice, reinstate, want of prosecution, local rule, courts, ref'd

## Case Summary

### Procedural Posture

Petitioner State of Texas sought review of an order of the court of appeals of Brazos County, Fourteenth District (Texas), which reversed the trial court's judgment of dismissal for want of prosecution in an action filed by respondent landowners in which they sought an injunction and damages for inverse condemnation relating to the flooding of their land.

### Overview

The landowners filed suit against the State for inverse condemnation. On remand from a previous appeal, the trial court dismissed the action for want of prosecution. The court of appeals reversed. On appeal, the court found that Brazos County, Tex., Ct. R. 11-1 provided that there was a dismissal docket each April and October in which cases could be dismissed for lack of prosecution. The landowners contended that they did not receive notice that the matter was on the dismissal docket. However, they were charged with notice of the intent to dismiss by their attorney's knowledge of the local rule. The landowners had also been given prompt notice of the order of dismissal and, within 30 days after it was signed, a full evidentiary hearing was held on

their motion to reinstate the case, which the trial court denied. In reversing the judgment of the court of appeals, the court determined that the trial court did not abuse its discretion in dismissing the case where it had been pending for 15 years with little activity and was still not ready for trial.

### Outcome

The court reversed the judgment of the court of appeals and affirmed the trial court's judgment dismissing the landowners' case.

## LexisNexis® Headnotes

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

Civil Procedure > Dismissal > Involuntary Dismissals > Hearings on Dismissal

*HN1*[⤓] **Involuntary Dismissals, Failure to Prosecute**

Pursuant to Brazos County, Tex., Ct. R. 11-1, there shall be a dismissal docket each April and October. The rule further provides that cases that have been on file over two years which are not set for trial or other hearing shall be set for hearing for all parties to show cause why same should not be dismissed for want of prosecution; and without good cause shown, at or before such hearing such cases will be dismissed by the court for want of prosecution without further notice. This rule shall constitute notice of such hearings, and counsel shall keep informed as to the length of time each of their cases have been on file.

Nicole Mitchell

Civil Procedure > Dismissal > Involuntary Dismissals > Appellate Review

Criminal Law & Procedure > ... > Standards of Review > Abuse of Discretion > General Overview

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Governments > Courts > Authority to Adjudicate

*HN2*[⤓] **Involuntary Dismissals, Appellate Review**

A trial court has the inherent power to dismiss cases not prosecuted with due diligence.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Criminal Law & Procedure > ... > Standards of Review > Abuse of Discretion > General Overview

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

*HN3*[⤓] **Standards of Review, Abuse of Discretion**

The matter of whether to dismiss a case for want of prosecution rests in the sound discretion of the trial court. It is not an unbridled discretion, but a judicial discretion subject to review. Upon review, the question is whether there was a clear abuse of discretion by the trial court.

**Judges:** Charles W. Barrow, Justice. Sears McGee, Justice.

**Opinion by:** BARROW

# Opinion

[*507] On August 7, 1969, Tom Rotello and wife filed suit against the State of Texas seeking damages for inverse condemnation relating to the flooding of their land and also seeking an injunction.

In 1972, the case was dismissed for want of prosecution, but this dismissal was reversed and the case was remanded for trial. *See Rotello v. State, 492 S.W.2d 347* (Tex. Civ. App. -- Houston [1st Dist.]), *writ ref'd n.r.e. per curiam*, *497 S.W.2d 290 (Tex. 1973)*. It was again dismissed for want of prosecution on July 30, 1982. The court of appeals reversed the trial court's judgment of dismissal and remanded the case to the trial court. *666 S.W.2d 194*. We reverse [*508] the judgment of the court of appeals and affirm the trial court judgment.

The principal question presented is whether the Rotellos were afforded due process. Specifically, the inquiry is whether the Rotellos were given adequate notice of the trial court's intention to dismiss their case and, if not, whether the Rotellos were given [**2] due process by the hearing on their motion for reinstatement. Finally, we must decide whether the trial court's order of dismissal was an abuse of discretion.

This case was dismissed *HN1*[⤒] pursuant to rule 11-1 of the local rules of the district courts of Brazos County. This rule provides in part that there shall be a dismissal docket each April and October. The rule further provides:

Cases that have been on file over two (2) years which are not set for trial or other hearing SHALL BE SET FOR HEARING for all parties to show cause why same should not be dismissed for want of prosecution; and without good cause shown, at or before such hearing such cases will be dismissed by the Court for want of prosecution without further notice . . . . *This Rule shall constitute notice of such hearings*, and counsel . . . shall keep informed as to the length of time each of their cases have been on file. (emphasis added).

This rule was adopted by the district courts of Brazos County prior to April 1979 and was in effect at the time of this dismissal. This case was placed on the April 1982 dismissal docket by the trial court, but the order of dismissal was not signed until July 30, [**3] 1982. In the meantime, there was no communication with the trial court by the Rotellos or their attorney and thus no effort to show good cause for the case not being dismissed.

Nicole Mitchell

The Rotellos were given prompt notice of the order of dismissal, and, within thirty days after it was signed, a full evidentiary hearing was held on their motion to reinstate the case. This motion was denied by the trial court.

It is urged that local rule 11-1 was void because a copy had not been furnished to the Supreme Court of Texas as required by *Rule 817, Texas Rules of Civil Procedure*. This contention is without merit. Approval of the supreme court was not required at the time this case was dismissed [1] and, therefore, the purpose for furnishing a copy to the supreme court was to provide a central place for notice to interested parties. This type notice was not necessary in this case as the record conclusively establishes that the attorney for the Rotellos had actual notice of the local rule regarding dismissal. He had filed several motions in other years in compliance with this rule to successfully retain the case on the active docket of the trial court. There was discussion at a prior pretrial **[**4]** conference that this case was a candidate ripe for the dismissal docket.

We conclude that the Rotellos are charged with notice of the trial court's intention to dismiss this cause at the April 1982 dismissal docket by their attorney's knowledge of the local rule. *See Schlosser v. Tropoli, 609 S.W.2d 255, 257-58* (Tex. Civ. App. -- Houston [14th Dist.] 1980, writ ref'd n.r.e.). This was sufficient notice to satisfy the requirements of due process and to authorize the trial court's dismissal of the case.

It is therefore unnecessary to consider the effect of the hearing on the Rotellos' motion for reinstatement. We would observe, however, that the hearing was held at a time the trial court had full control of the judgment. Also, the Rotellos were given the same hearing with the same burden of proof they would have been **[**5]** given before the order of dismissal was signed. *Cf. Armstrong v. Manzo, 380 U.S. 545, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)*.

The Rotellos further assert that the trial court abused its discretion in dismissing this case. It is settled law that the **HN2**[↑] trial court has the inherent power to dismiss **[*509]** cases not prosecuted with due diligence. *See Southern Pacific Transportation Co. v. Stoot, 530*

*S.W.2d 930 (Tex. 1975)*; *Pollok v. McMullen Oil & Royalty Co., 383 S.W.2d 837* (Tex. Civ. App. -- San Antonio 1964, writ ref'd); *Bevil v. Johnson, 157 Tex. 621, 307 S.W.2d 85 (1957)*. The test for appellate review of dismissal for want of prosecution was stated in *Bevil v. Johnson* as follows:

> **HN3**[↑] The matter rests in the sound discretion of the trial court. It is not an unbridled discretion, but a judicial discretion subject to review. Upon review, the question is whether there was a clear abuse of discretion by the trial court.

*307 S.W.2d at 87*.

In considering whether the trial court abused its discretion, we must start with the disturbing fact that at the time of dismissal this case had been on the court's docket for nearly thirteen years. Notwithstanding **[**6]** the fact that some activity occurred in recent years, the trial court was entitled to consider the entire history of the case. *Estate of Bolton v. Coats, 608 S.W.2d 722, 727* (Tex. Civ. App. -- Tyler 1980, writ ref'd n.r.e.); *Rorie v. Avenue Shipping Co., 414 S.W.2d 948, 952-53* (Tex. Civ. App. -- Houston 1967, writ ref'd n.r.e.). The case had been dismissed once for want of prosecution and reinstated by the appellate courts only for lack of notice. Despite this dismissal and reinstatement, it is conceded by the Rotellos that there was nothing done to prosecute the case between 1973 and 1980. A pretrial conference was held in September 1980, but nothing further was done until late 1981. Depositions were taken in February 1982, but a scheduled pretrial hearing was passed. With this background, the trial court was fully justified in setting the case on the April 1982 dismissal docket on its own motion. Nothing further was done by the Rotellos until after the order of dismissal was signed on July 30, 1982.

The Rotellos filed a motion to reinstate which was heard by the trial court while it had full control over the judgment. *See Tex. R. Civ. P. 329b*; *cf. Harris* **[**7]** *County v. Miller , 576 S.W.2d 808 (Tex. 1979)*. At the hearing on the motion to reinstate, the son of the Rotellos and their lead attorney testified. It was stated that Mr. Rotello had been sick during part of the inactive period and that the lead attorney had undergone serious eye surgery in February of 1982.

We cannot say after an examination of this record that it was a clear abuse of discretion for the trial court to dismiss this case. This proceeding has been plagued by delay and inactivity from the outset. It has been

---

[1] New *Rule 3a*, which became effective April 1, 1984, superseded *Rule 817* and it requires approval by the supreme court of local rules prior to their promulgation. *Tex. R. Civ. P. 3a*.

pending for fifteen years, it has been in four appellate courts, and still it is not ready for trial. Such delay can not be tolerated in this day of crowded dockets. As was said by this court in *Southern Pacific Transportation Co. v. Stoot, 530 S.W.2d at 931*:

> Delay haunts the administration of justice. It postpones the rectification of wrong and the vindication of the unjustly accused. It crowds the dockets of the courts, increasing the costs for all litigants, pressuring judges to take short cuts, interfering with the prompt and deliberate disposition of those causes in which all parties are diligent and prepared for trial, and overhanging the **[\*\*8]** entire process with the pall of disorganization and insolubility. But even these are not the worst of what delay does. The most erratic gear in the justice machinery is at the place of fact finding, and possibilities for error multiply rapidly as time elapses between the original fact and its judicial determination. If the facts are not fully and accurately determined, then the wisest judge cannot distinguish between merit and demerit. If we do not get the facts right, there is little chance for the judgment to be right.

The judgment of the court of appeals is reversed and the trial court judgment is affirmed.

**Dissent by:** McGEE

# Dissent

Sears McGee, Justice

I respectfully dissent and would affirm the judgment of the court of appeals. *666 S.W.2d 194*.

OPINION DELIVERED: June 6, 1984

**End of Document**

# *Villarreal v. San Antonio Truck & Equip.*

Supreme Court of Texas

April 7, 1999, Argued ; May 27, 1999, Delivered

No. 98-0623

## Reporter
994 S.W.2d 628 *; 1999 Tex. LEXIS 51 **

MARTIN M. VILLARREAL, PETITIONER v. SAN ANTONIO TRUCK & EQUIPMENT AND ROBERT GONZALEZ, RESPONDENTS

**Prior History:** [**1] ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS.

**Disposition:** Reversed and remanded.

## Core Terms

notice, trial court, announcement, want of prosecution, inherent power, diligently, dismissal notice, cases, parties, warn, court of appeals, sentences, invoking, local rule, prosecute, reinstate, inherent authority, district court, good cause, own motion, appearance, literal

## Case Summary

### Procedural Posture
Plaintiff employee petitioned for review of the judgment of the Court of Appeals for the Fourth District of Texas that affirmed an order dismissing, for want of prosecution, his complaint that defendant employers had failed to maintain a safe work environment, after notice was given that the case would be dismissed if plaintiff made no announcement at a dismissal hearing that he was ready to proceed.

### Overview

Plaintiff employee sued defendant employers, accusing them of failure to maintain a safe work environment. Over two years later, after discovery had been conducted, the trial court sua sponte sent plaintiff a notice that the case was set on the dismissal docket and that if no announcement was made that plaintiff was ready to proceed, the case would be dismissed for want of prosecution. Plaintiff appeared and announced his readiness, but the court nevertheless dismissed. The dismissal was upheld by the appellate court and plaintiff sought further review. In reversing and remanding for further proceedings, the court ruled that because plaintiff appeared and made his announcement at the dismissal hearing, the trial court could not dismiss under its authority granted by *Tex. R. Civ. P. 165a*. Moreover, the notice was insufficient to apprise plaintiff that the trial court would exercise its inherent power to dismiss for failure to diligently prosecute if he did not also show cause why the case should not be dismissed.

### Outcome
The judgment upholding the dismissal was reversed because plaintiff had appeared at the dismissal hearing and announced his readiness to proceed, as required by procedural rules; the notice did not adequately apprise plaintiff that he was also required to show cause why the case should not be dismissed by the trial court for want of prosecution in the exercise of its inherent power.

## LexisNexis® Headnotes

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

*HN1*[⤓] **Involuntary Dismissals, Failure to Prosecute**

A trial court's authority to dismiss for want of prosecution stems from two sources: *Tex. R. Civ. P. 165a* and the court's inherent power. A trial court may dismiss under *Rule 165a(1)* on failure of any party seeking affirmative relief to appear for any hearing or trial of which the party

had notice or under *Rule 165a(2)* when a case is not disposed of within the time standards promulgated by the Texas Supreme Court. In addition, the common law vests the trial court with the inherent power to dismiss independently of the rules of procedure when a plaintiff fails to prosecute his or her case with due diligence.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

***HN2***[⤓] **Involuntary Dismissals, Failure to Prosecute**

A party must be provided with notice and an opportunity to be heard before a court may dismiss a case for want of prosecution under either *Tex. R. Civ. P. 165a* or its inherent authority. *Rule 165a(1)* provides that notice of the court's intention to dismiss and the date and place of the dismissal hearing shall be sent by the clerk to each attorney of record. The failure to provide adequate notice of the trial court's intent to dismiss for want of prosecution requires reversal.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Criminal Law & Procedure > ... > Standards of Review > Abuse of Discretion > General Overview

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

***HN3***[⤓] **Involuntary Dismissals, Failure to Prosecute**

If a plaintiff complies with all the requirements of a notice to appear at a dismissal docket hearing and announce his readiness for trial, the trial court abuses its discretion by invoking its inherent authority to dismiss for failure to prosecute diligently.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

***HN4***[⤓] **Involuntary Dismissals, Failure to Prosecute**

Language in a notice to dismiss for want of prosecution unless a plaintiff appears and announces his readiness for trial will not be so construed or interpreted as to lead to absurd conclusions if the provision is subject to another, more reasonable interpretation.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Prosecute

Governments > Courts > Judicial Precedent

Civil Procedure > Dismissal > Involuntary Dismissals > General Overview

***HN5***[⤓] **Involuntary Dismissals, Failure to Prosecute**

To the extent that *Ozuna v. Southwest Bio-Clinical Laboratories, 766 S.W.2d 900 (Tex. App. 1989, writ denied)*, can be read to hold that the standard notice of dismissal, for failure to prosecute, used in Bexar County (Texas) district courts apprises parties of the court's intent to dismiss on a ground other than the failure to appear under *Tex. R. Civ. P. 165a(1)*, or that *Knight v. Trent, 739 S.W.2d 116 (Tex. App. 1987, no writ)*, *Gaebler v. Harris, 625 S.W.2d 5 (Tex. App.1981, writ ref'd n.r.e.)*, and *Laird v. Jobes, 580 S.W.2d 413 (Tex. App. 1979, no writ)*, imply that a party may be charged with such notice, such language of those cases is disapproved.

**Counsel:** Luis R. Vera, Jr., San Antonio, TX, Les Mendelsohn, Les Mendelsohn & Associates, San Antonio, TX, for Petitioner.

Peter Y. Henry, Law Office of Peter Y. Henry, San Antonio, TX., for Respondents.

**Judges:** CHIEF JUSTICE PHILLIPS delivered the opinion of the Court, in which JUSTICE HECHT, JUSTICE OWEN, JUSTICE ABBOTT, JUSTICE HANKINSON, JUSTICE O'NEILL, and JUSTICE GONZALES joined. JUSTICE ENOCH filed a dissenting opinion, in which JUSTICE BAKER joined.

**Opinion by:** THOMAS R. PHILLIPS

# Opinion

 **[\*629]** The issue presented is whether the standard notice of dismissal used by the district courts of Bexar County, which warns that a case will be dismissed "if no announcement is made" at the dismissal hearing, adequately apprises parties of the trial court's intent to dismiss for want of prosecution in the exercise of its inherent power. Because we hold that it does not, we reverse the judgment of the court of appeals, *974 S.W.2d 275*, and remand this cause to the trial court for further proceedings.

On June 21, 1994, Martin Villarreal sued San Antonio Truck and Equipment, Inc., and Robert Gonzales **[\*\*2]** ("Defendants") in Bexar County district court for failure to maintain a safe work environment. The parties engaged in discovery during the summer of 1994, but no further action was taken until the trial court, on its own motion, notified Villarreal on August 30, 1996, that the case was set on the October 1996 dismissal docket. The notice of setting stated:

BY DIRECTION OF THE PRESIDING JUDGE OF SAID COURT[,] NOTICE IS HEREBY GIVEN YOU THAT THE ABOVE CAUSE(S), UPON ORDER OF THE COURT[,] IS SET FOR DISMISSAL ON THE 22ND DAY OF OCTOBER, 1996 . . . . YOU ARE REQUESTED TO BE PRESENT AND MAKE YOUR ANNOUNCEMENT. IF NO ANNOUNCEMENT IS MADE, THIS CAUSE WILL BE DISMISSED FOR WANT OF PROSECUTION.

ALL ORDERS THAT WILL REMOVE A CASE FROM THE DISMISSAL DOCKET MUST BE SUBMITTED TO THE DISMISSAL DEPARTMENT ON OR BEFORE THE DATE WHEN THE DOCKET IS CALLED.

YOU ARE REMINDED THAT THIS IS NOT A DOCKET FOR THE RE-SETTING OF CASES, BUT FOR THEIR DISMISSAL.

On October 21, 1996, Villarreal filed a motion to set the case on the jury docket. On October 22, 1996, he filed a motion to retain the case, asserting that he was ready to proceed to trial. That same day, the trial court held the dismissal hearing. **[\*\*3]** Although the record on appeal does not contain a reporter's record of the hearing, [1]
 **[\*630]** Defendants conceded in their brief to this Court that "the plaintiff and his attorney did appear at the

docket [call]." At oral argument, Defendants further acknowledged that "[the plaintiff] did announce that he was ready." Because the sole issue on appeal is the adequacy of the Bexar County notice of dismissal, these statements provide a sufficient factual basis to resolve the case.

Villareal contends that the dismissal was improper because he complied with the notice's conditions of (1) presence at the dismissal docket hearing, and (2) announcement of readiness for trial. The notice, he says, limited the trial court's discretion to dismiss to those instances where "no announcement **[\*\*4]** is made." Thus, Villareal argues, the trial court abused its discretion by dismissing the case for want of prosecution on the ground that "it appeared to the Court that there is good and sufficient reason for dismissal of these cases for want of prosecution . . . ." [2]

Defendants maintain that the trial court committed no abuse because the Bexar County dismissal docket notice "did not mislead Villarreal. It clearly stated that the case was being set for dismissal and did not state that all Villarreal had to do as he argues, is to show up and announce ready." Defendants argue that the notice provided adequate warning that Villarreal was required to show good cause why his case should not be dismissed at the docket call hearing. The court of appeals affirmed, with one justice dissenting. *974 S.W.2d [\*\*5] 275*.

*HN1*[↑] The trial court's authority to dismiss for want of prosecution stems from two sources: (1) *Rule 165a of the Texas Rules of Civil Procedure*, and (2) the court's inherent power. *See Veterans' Land Bd. v. Williams, 543 S.W.2d 89, 90 (Tex. 1976)*; *Bevil v. Johnson, 157 Tex. 621, 307 S.W.2d 85, 87 (Tex. 1957)*. A trial court may dismiss under *Rule 165a* on "failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice," *TEX. R. CIV. P. 165a(1)*, or when a case is "not disposed of within the time standards promulgated by the Supreme Court . . . ." *TEX. R. CIV. P. 165a(2)*. [3] In addition, the common law

---

[1] The reporter's record of the dismissal hearing was excluded from the record on appeal when the court of appeals denied Villarreal's motion to file the record late on the ground that he had not filed a timely motion for extension of time.

[2] Villarreal appealed the trial court's dismissal for want of prosecution without filing a motion to reinstate in the trial court pursuant to *Texas Rule of Civil Procedure 165a(3)*. *See TEX. R. CIV. P. 165(a)(3)*.

[3] *Rule 6 of the Rules of Judicial Administration* provides that civil jury cases must be disposed of within 18 months from the appearance date. *See TEX. R. JUD. ADMIN. 6*.

vests the trial court with the inherent power to dismiss independently of the rules of procedure when a plaintiff fails to prosecute his or her case with due diligence. *See Rizk v. Mayad, 603 S.W.2d 773, 776 (Tex. 1980)*; *Williams, 543 S.W.2d at 90*.

[**6] *HN2*[⬆]

However, a party must be provided with notice and an opportunity to be heard before a court may dismiss a case for want of prosecution under either *Rule 165a* or its inherent authority. *See TEX. R. CIV. P. 165a(1)* ("Notice of the court's intention to dismiss and the date and place of the dismissal hearing shall be sent by the clerk to each attorney of record . . . ."); *General Elec. Co. v. Falcon Ridge Apartments, Joint Venture, 811 S.W.2d 942, 943 (Tex. 1991)*; *Gutierrez v. Lone Star Nat'l Bank, 960 S.W.2d 211, 214* (Tex. App.--Corpus Christi 1997, pet. denied) (requiring notice for dismissals under *Rule 165a*); *see also State v. Rotello, 671 S.W.2d 507, 508-09 (Tex. 1984)*; *Callahan v. Staples, 139 Tex. 8, 161 S.W.2d 489, 491 (Tex. 1942)* (requiring notice for dismissals under the court's inherent power). The failure to provide adequate notice of the trial court's intent to dismiss for want of prosecution requires reversal. *See Donnell v. Spring Sports, Inc., 920 S.W.2d 378, 386* (Tex. App.--Houston[1st Dist.] 1996, writ denied); *Davis v. Laredo Diesel, Inc., 611 S.W.2d 943, 946-47* [*631] (Tex. Civ. App.--Waco 1981, writ ref'd n.r.e.).

The notice of setting [**7] sent to Villarreal warned of dismissal for the failure to make an announcement at the dismissal hearing. Thus, the notice apprised Villarreal of a possible *Rule 165a(1)* dismissal for failure to make an appearance. Because it is undisputed that Villarreal did appear, the trial court could not have dismissed this case for want of prosecution under *Rule 165a(1)*. Nonetheless, Defendants contend that the dismissal was warranted under the trial court's inherent power to dismiss [4] and argue that the notice of setting warned of the trial court's intent to invoke this power.

The court of appeals agreed:

[**8] The notice in the instant case expressly stated

---

[4] Although the Defendants make brief reference to the ability to dismiss a case pursuant to *Rule 165a(2)*, warranting dismissal for failure to adhere to the Supreme Court time standards, they do not urge that Villarreal violated this standard. Thus, we do not consider the possibility of dismissal under *Rule 165a(2)*, except to state that adequate notice of the court's intent to dismiss on this ground is also required.

that the case was set on the dismissal docket upon the court's own motion. The placement of a case on the dismissal docket on a court's own motion is nothing but an exercise of the trial court's inherent authority to control its docket. Therefore, it cannot be said that Villarreal was not alerted that the trial court was invoking its inherent power to dismiss for lack of diligent prosecution when the court, on its own motion, placed his case on the dismissal docket.

*974 S.W.2d at 278*(citations omitted). We disagree.

The Fourth Court of Appeals has considered the adequacy of the Bexar County dismissal notice twice before, reaching conflicting results. In the more recent case of *Goff v. Branch, 821 S.W.2d 732* (Tex. App.--San Antonio 1991, writ denied), the court found that the Bexar County notice "merely gave the appellants notice that the dismissal setting was pursuant to the provisions of *Rule 165a(1)*." *Id. at 734*. The court rejected an argument that, although a *Rule 165a(1)* dismissal was not warranted, the dismissal and failure to reinstate the case were justified under the court's inherent power to dismiss for failure [**9] to diligently prosecute. The court reasoned:

We can find no authority for a court to invoke for the first time, without prior notice, its inherent power to dismiss for want of prosecution in a reinstatement hearing clearly involving only the review of a dismissal order under *TEX.R.CIV.P. 165a(1)*. This is especially true when notice received by the party whose cause has been dismissed was pursuant only to *Rule 165a(1)*. If a trial court had authority to invoke its inherent powers to dismiss for want of prosecution at any time, with or without proper notice, cases could be summarily dismissed at random in the privacy of the court's chambers. Such a situation would be unjust and untenable.

*Id. at 736*.

Earlier, in *Ozuna v. Southwest Bio-Clinical Laboratories, 766 S.W.2d 900* (Tex. App.--San Antonio 1989, writ denied), the court reached the opposite result. It concluded that the Bexar County notice was adequate to provide for dismissal "on two separate and independent grounds: (1) failure to appear at the dismissal hearing, and (2) failure to litigate the case with due diligence." *Id. at 901*. Because the record was unclear on whether the parties had in fact appeared at [**10] the dismissal hearing, the court affirmed the

Nicole Mitchell

dismissal on the sole ground of the trial court's inherent power to dismiss for failure to diligently prosecute. *See id.*

In deciding this case, the court of appeals relied upon *Ozuna*, determining that *Goff* was not binding authority because "we are not presented with the issue of whether reinstatement was required under *Rule 165a(3)*, rather we are asked to determine **[*632]** whether the trial court properly concluded that Villarreal's case had not been prosecuted with due diligence." *974 S.W.2d at 278*. This statement mischaracterizes the issue on appeal. Before deciding whether the trial court properly concluded that Villarreal failed to exercise diligent prosecution, the court must first determine whether the trial court gave adequate notice of its intent to invoke its inherent authority to dismiss on such ground. Thus, although this case does not involve a reinstatement hearing, as does *Goff*, *Goff*'s rationale regarding the adequacy of the Bexar County dismissal notice is persuasive here.

We reject Defendants' contention that "the dismissal notice clearly indicated that the plaintiff's case would be dismissed unless the plaintiff **[**11]** could show good cause why it should not be dismissed for want of prosecution." A plain reading of the Bexar County standard dismissal notice informs parties only of a possible *Rule 165a(1)* dismissal. *See Goff, 821 S.W.2d at 734*. In response to that notice, the plaintiff appeared and announced ready for trial at the dismissal docket call. **HN3**[⬆] Because Villarreal complied with all the requirements of the notice, the trial court abused its discretion by invoking its inherent authority to dismiss for failure to prosecute diligently. *Cf. Shook v. Gilmore & Tatge Mfg. Co., 951 S.W.2d 294, 297* (Tex. App.-- Waco 1997, pet. denied) (declining to decide appeal on plaintiff's failure to prosecute case diligently when the trial court failed to give notice that "the diligence of prosecution would be a factor in the judge's deciding whether to reinstate the case").

Defendants contend that the notice's language, "if no announcement is made, this cause will be dismissed for want of prosecution," was not intended to be literally interpreted. They urge that a literal interpretation would permit even an announcement of "not ready for trial" to save the case from dismissal. However, **HN4**[⬆] language "will **[**12]** not be so construed or interpreted as to lead to absurd conclusions . . . if the provision is subject to another, more reasonable interpretation." *C & H Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 322 n.5 (Tex. 1994)*. Because a reasonable litigant would

understand that only an announcement of ready for trial would justify removal from the dismissal docket, we reject Defendants' alternative construction.

Defendants also argue that Villarreal should be charged with notice of the court's inherent authority to dismiss for lack of diligent prosecution through Local Rule 3.26 of the Bexar County District Courts Local Rules, which provides:

Pursuant to *Rule 165a, T.R.C.P.*, cases that have not been disposed of within the Supreme Court's time standards shall be scheduled for hearing to show cause why they should not be dismissed for want of prosecution. The local administrative judge shall periodically assign judges to preside over the dismissal docket.

BEXAR COUNTY (TEX.) DIST. CT. LOC. R. 3.26. Defendants rely on our decision in *Rotello*, where we held that the plaintiffs were "charged with notice of the trial court's intention to dismiss this cause at the . . . dismissal **[**13]** docket by their attorney's knowledge of the [Brazos County district courts'] local rule." *Rotello, 671 S.W.2d at 508*. This case is distinguishable from *Rotello*. The Brazos County local rule explicitly states that "'this rule shall constitute notice of [the dismissal] hearings,'" *id.* (quoting BRAZOS COUNTY (TEX.) DIST. CT. LOC. R. 11.1), while the Bexar County local rule omits such language. Furthermore, the Bexar County notice flatly contradicts the local rule by suggesting that an announcement will cure the lack of prosecution and by failing to warn that good cause must be shown to avoid dismissal. We therefore conclude that *Rotello* is not controlling in this case.

Finally, Defendants contend that the last sentence of the dismissal docket **[*633]** notice, which reminds litigants that "this is not a docket for the re-setting of cases, but for their dismissal," serves as adequate notice that the court will dismiss the case for want of prosecution unless good cause is shown at the docket call. We do not read the sentence in this way. Nothing in this language notifies a party that good cause must be shown to avoid dismissal, nor does it otherwise cure the misleading effect **[**14]** of the earlier language.

**HN5**[⬆] To the extent that *Ozuna* can be read to hold that the Bexar County notice of dismissal apprises parties of the court's intent to dismiss on a ground other than the failure to appear under *Rule 165a(1)*, or that *Knight v. Trent, 739 S.W.2d 116* (Tex. App.--San

Antonio 1987, no writ), *Gaebler v. Harris, 625 S.W.2d 5* (Tex. App.--San Antonio 1981, writ ref'd n.r.e.), and *Laird v. Jobes, 580 S.W.2d 413* (Tex. App.--San Antonio 1979, no writ), imply that a party may be charged with such notice, we disapprove of the language of those cases. We, therefore, reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings consistent with this opinion.

Thomas R. Phillips

Chief Justice

OPINION DELIVERED: May 27, 1999

**Dissent by:** CRAIG T. ENOCH

# Dissent

JUSTICE ENOCH, joined by JUSTICE BAKER, dissenting.

I share the sentiment that, I think, motivates the Court to reach its result -- frustration at the Bexar County District Clerk's apparent refusal to change a badly worded dismissal notice, even after the court of appeals has expended significant judicial resources in several reported decisions to answer **[\*\*15]** parties' questions about the notice's wording. [1] But frustration should not decide cases. The issue here is whether the notice is sufficient to warn litigants that the trial court might, under its inherent power, dismiss a case for want of prosecution. While the notice is not a model of clarity or good writing, it is sufficient. I dissent.

The Court's reasoning is flawed in several respects. First, in construing the dismissal notice, the Court focuses its attention on only two sentences: "You are requested to be present and make your announcement. If no announcement is made, this cause will be dismissed for want of prosecution." But the Court ignores the last line of the notice: "You are reminded that this is not a docket for the re-setting of cases, but for their dismissal."

Second, only looking at the two sentences **[\*\*16]** it cites, the Court then assumes that a "plain reading" of this language "informs parties only of a possible *Rule 165a(1)* dismissal." [2] But what is a *Rule 165a(1)* dismissal? It is a dismissal based on a party's failure to appear for a hearing. [3] Thus under the Court's "plain reading," the dismissal notice, apparently, would only tell a party: If you come to this dismissal hearing, you won't get dismissed for not coming to this dismissal hearing. This "plain reading" is nonsense -- the whole point of the dismissal docket, as any lawyer who practices in Bexar County knows, [4] is to allow Bexar County District Courts to dismiss cases of parties who are not diligently pursuing their claims.

**[\*\*17] [\*634]** Third, the Court contradicts its own "plain reading" -- for the Court says "a reasonable litigant would understand [from the dismissal notice] that *only an announcement of ready for trial* would justify removal from the dismissal docket." [5] The Court in one breath reads a single warning -- that a party's case will be dismissed only if he fails to appear for the dismissal hearing. But in the next, the Court concludes that this warning necessarily also warns the party that he must announce "ready for trial."

The Court professes to be compelled to this contradiction in order to avoid the "absurd conclusion" that follows from its "literal interpretation" of the two sentences. [6] Its interpretation is that these two sentences promise that the case won't be dismissed if the party appears and makes an announcement -- *any* announcement. But the Court follows false logic. The sentences don't say what the Court fears. The sentences literally promise **[\*\*18]** *only* that the case *will* be dismissed if *no* announcement is made. It's a simple statement. There is nothing absurd about it. And significantly, these sentences do not promise the opposite -- that if one merely announces, his case will

---

[1] *See* *Goff v. Branch, 821 S.W.2d 732* (Tex. App.--San Antonio 1991, writ denied); *Ozuna v. Southwest Bio-Clinical Laboratories, 766 S.W.2d 900* (Tex. App.--San Antonio 1989, writ denied).

[2] 994 S.W.2d at 632, 1999 Tex. LEXIS 51, *11.

[3] *See* *TEX. R. CIV. P. 165a(1)*.

[4] *See* Bexar County Local Rule 3.26, RULES OF PRACTICE, PROCEDURE AND ADMINISTRATION IN THE DISTRICT COURTS OF BEXAR COUNTY, TEXAS (April 1991) (providing for show cause hearings on dismissal docket when cases are not diligently prosecuted); *State v. Rotello, 671 S.W.2d 507, 508 (Tex. 1984)* ("We conclude that the Rotellos are charged with notice of the trial court's intention to dismiss this cause at the April 1982 dismissal docket by their attorney's knowledge of the local rule.").

[5] 994 S.W.2d at 632, 1999 Tex. LEXIS 51, *12 (emphasis added).

[6] 994 S.W.2d at 632, 1999 Tex. LEXIS 51, *11.

not be dismissed.

A "literal interpretation" of the entire notice, including the final line, reveals that the notice warns that the trial court will exercise its inherent power to control its docket. As mentioned, the last line of the notice states: "You are reminded that this is not a docket for the re-setting of cases, but for their dismissal." Villarreal had notice that merely showing up and asking to be set for trial would not be enough -- he was coming to a hearing where the trial court would decide whether to dismiss his case for want of prosecution, and he had notice that the way to avoid dismissal was not just to show up, but to show up **and convince** the trial court not to exercise its inherent power to **[\*\*19]** dismiss the case.

And if those three lines weren't enough, the notice also expressly stated that the trial court placed Villarreal's claim on the dismissal docket on its own motion. As the court of appeals correctly noted, this additionally indicated that the trial court was invoking its inherent power to, after a hearing, dismiss Villarreal's claim. [7]

Finally, we don't have a record of the dismissal hearing. So how can we determine whether the trial court abused its discretion? The answer is simple -- we can't. Therefore we presume the trial court didn't. [8] The Court, however, tries to gloss over the lack of a record by latching onto San Antonio Truck's concession that Villarreal appeared at the hearing and announced ready for trial. [9] But those facts are beside the point. San Antonio Truck conceded Villarreal's appearance and announcement precisely because, while it was true, it did not matter. To get to the Court's conclusion, it has to decide that the trial court, **[\*\*20]** as a matter of law, had to believe Villarreal when he said he was ready. But the trial court didn't have to. Why should it -- after all, Villarreal had done nothing for two years before the trial court put the case on the dismissal docket. Furthermore, without a record, we don't know what Villareal's excuse, if he even gave one, was. The court of appeals stated it succinctly: "A belated trial setting or eager announcement of readiness to proceed to trial does not conclusively establish diligence." [10]

Out of frustration, the Court undertakes a strained effort to read the notice to warn only of a potential *Rule 165a(1)* dismissal. **[\*635]** And then it rewrites the notice to require a "ready for trial" announcement in order to avoid absurdity. But it then denies to the trial court the fundamental discretion to disbelieve the announcement, even if **[\*\*21]** the record shows the party's actions belying his words. The Court errs. The dismissal notice in this case adequately informed Villarreal that the trial court was invoking its inherent power to dismiss his claim for want of prosecution. I dissent.

A final thought -- if I were the Bexar County District Clerk, I'd rewrite the notice to include the phrase, "The trial court is invoking its inherent power to dismiss this case for want of prosecution." It would be more clear and, it appears, nothing less will do.

Craig T. Enoch

Justice

Opinion delivered: May 27, 1999

---

**End of Document**

---

[7] *974 S.W.2d at 278* (citation omitted).

[8] *See Simon v. York Crane & Rigging Co., 739 S.W.2d 793, 795 (Tex. 1987)*; *Ozuna, 766 S.W.2d at 901*.

[9] 994 S.W.2d at 632, 1999 Tex. LEXIS 51.

[10] *974 S.W.2d at 278*.

# [Tex. R. Civ. P. 165a](#)

This document is current through March 7, 2018

*Texas Court Rules  >  STATE RULES  >  TEXAS RULES OF CIVIL PROCEDURE  >  PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS  >  SECTION 7. Abatement and Discontinuance of Suit*

# Rule 165a Dismissal for Want of Prosecution

1. **Failure to Appear.** --A case may be dismissed for want of prosecution on failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice. Notice of the court's intention to dismiss and the date and place of the dismissal hearing shall be sent by the clerk to each attorney of record, and to each party not represented by an attorney and whose address is shown on the docket or in the papers on file, by posting same in the United States Postal Service. At the dismissal hearing, the court shall dismiss for want of prosecution unless there is good cause for the case to be maintained on the docket. If the court determines to maintain the case on the docket, it shall render a pretrial order assigning a trial date for the case and setting deadlines for the joining of new parties, all discovery, filing of all pleadings, the making of a response or supplemental responses to discovery and other pretrial matters. The case may be continued thereafter only for valid and compelling reasons specifically determined by court order. Notice of the signing of the order of dismissal shall be given as provided in Rule 306a. Failure to mail notices as required by this rule shall not affect any of the periods mentioned in Rule 306a except as provided in that rule.

2. **Non-Compliance with Time Standards.**--Any case not disposed of within time standards promulgated by the Supreme Court under its Administrative Rules may be placed on a dismissal docket.

3. **Reinstatement.** --A motion to reinstate shall set forth the grounds therefor and be verified by the movant or his attorney. It shall be filed with the clerk within 30 days after the order of dismissal is signed or within the period provided by Rule 306a. A copy of the motion to reinstate shall be served on each attorney of record and each party not represented by an attorney whose address is shown on the docket or in the papers on file. The clerk shall deliver a copy of the motion to the judge, who shall set a hearing on the motion as soon as practicable. The court shall notify all parties or their attorneys of record of the date, time and place of the hearing.

   The court shall reinstate the case upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained.

   In the event for any reason a motion for reinstatement is not decided by signed written order within seventy-five days after the judgment is signed, or, within such other time as may be allowed by Rule 306a, the motion shall be deemed overruled by operation of law. If a motion to reinstate is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to reinstate the case until 30 days after all such timely filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.

4. **Cumulative Remedies.** --This dismissal and reinstatement procedure shall be cumulative of the rules and laws governing any other procedures available to the parties in such cases. The same reinstatement procedures and timetable are applicable to all dismissals for want of prosecution including cases which are dismissed pursuant to the court's inherent power, whether or not a motion to dismiss has been filed.

Annotations

*Texas Court Rules  >  STATE RULES  >  RULES OF JUDICIAL ADMINISTRATION*

# Rule 1 Authority

These rules are promulgated pursuant to Section 74.024 of the Texas Government Code.

Texas Rules

Copyright © 2018 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

Nicole Mitchell

**Texas Court Rules > STATE RULES > RULES OF JUDICIAL ADMINISTRATION**

## Rule 6 Time Standards for the Disposition of Cases

*Rule 6.1 District and Statutory County Courts.*--District and statutory county court judges of the county in which cases are filed should, so far as reasonably possible, ensure that all cases are brought to trial or final disposition in conformity with the following time standards:

(a) *Civil Cases Other Than Family Law.*

(1) *Civil Jury Cases.* --Within 18 months from appearance date.

(2) *Civil Nonjury Cases.* --Within 12 months from appearance date.

(b) *Family Law Cases.*

(1) *Contested Family Law Cases.*--Within 6 months from appearance date or within 6 months from the expiration of the waiting period provided by the Family Code where such is required, whichever is later.

(2) *Uncontested Family Law Cases.*--Within 3 months from appearance date or within 3 months from the expiration of the waiting period provided by the Family Code where such is required, whichever is later.

(c) *Juvenile Cases.* --In addition to the requirements of Title 3, Texas Family Code:

(1) *Detention Hearings.* --On the next business day following admission to any detention facility.

(2) *Adjudicatory or Transfer* (Waiver) Hearings.

(a) *Concerning a juvenile in* a detention facility:--Not later than 10 days following admission to such a facility, except for good cause shown of record.

(b) *Concerning a juvenile not* in a detention facility:--Not later than 30 days following the filing of the petition, except for good cause shown of record.

(3) *Disposition Hearing.* --Not later than 15 days following the adjudicatory hearing. The court may grant additional time in exceptional cases that require more complex evaluation.

(4) Nothing herein shall prevent a judge from recessing a juvenile hearing at any stage of the proceeding where the parties are agreeable or when in the opinion of the judge presiding in the case the best interests of the child and of society shall be served.

(d) *Complex Cases.* --It is recognized that in especially complex cases or special circumstances it may not be possible to adhere to these standards.

*Rule 6.2 Appeals in Certain Cases Involving the Parent-Child Relationship.*--In an appeal of a suit for termination of the parent-child relationship or a suit affecting the parent-child relationship filed by a governmental entity for managing conservatorship, appellate courts should, so far as reasonably possible, ensure that the appeal is brought to final disposition in conformity with the following time standards:

(a) *Courts of Appeals.* --Within 180 days of the date the notice of appeal is filed.

(b) *Supreme Court.* --Within 180 days of the date the petition for review is filed.

This document is current through the 2017 Regular Session and 1st C.S., 85th Legislature

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 2 Judicial Branch > Subtitle F Court Administration > Chapter 74 Court Administration Act > Subchapter B Supreme Court*

## Sec. 74.024. Rules.

**(a)** The supreme court may adopt rules of administration setting policies and guidelines necessary or desirable for the operation and management of the court system and for the efficient administration of justice.

**(b)** The supreme court shall request the advice of the court of criminal appeals before adopting rules affecting the administration of criminal justice.

**(c)** The supreme court may consider the adoption of rules relating to:

**(1)** nonbinding time standards for pleading, discovery, motions, and dispositions;

**(2)** nonbinding dismissal of inactive cases from dockets, if the dismissal is warranted;

**(3)** attorney's accountability for and incentives to avoid delay and to meet time standards;

**(4)** penalties for filing frivolous motions;

**(5)** firm trial dates;

**(6)** restrictive devices on discovery;

**(7)** a uniform dockets policy;

**(8)** formalization of settlement conferences or settlement programs;

**(9)** standards for selection and management of nonjudicial personnel;

**(10)** transfer of related cases for consolidated or coordinated pretrial proceedings; and

**(11)** the conducting of proceedings under *Rule 11, Rules of Judicial Administration*, by a district court outside the county in which the case is pending.

**(d)** Any rules adopted under this section remain in effect unless and until disapproved by the legislature. The clerk of the supreme court shall file with the secretary of state the rules or any amendments to the rules adopted by the supreme court under this section and shall mail a copy of the rules and any amendments to each registered member of the State Bar not later than the 120th day before the date on which they become effective. The supreme court shall allow a period of 60 days for review and comment on the rules and any amendments. The clerk of the supreme court shall report the rules or amendments to the rules to the next regular session of the legislature by mailing a copy of the rules or amendments to the rules to each elected member of the legislature on or before December 1 immediately preceding the session.

## History

Enacted by Acts 1987, 70th Leg., ch. 148 (S.B. 895), § *2.93(a)*, effective September 1, 1987; Enacted by Acts 1987, 70th Leg., ch. 674 (S.B. 687), § *2.01*, effective September 1, 1987; am. Acts 2003, 78th Leg., ch. 204 (H.B. 4), § *3.01*, effective September 1, 2003; am. Acts 2003, 78th Leg., ch. 747 (H.B. 3386), § *1*, effective September 1, 2003; am. Acts 2005, 79th Leg., ch. 728 (H.B. 2018), § *8.001*, effective September 1, 2005.

Annotations

# Notes

**STATUTORY NOTES**

**2003 Note:**

*Section 74.024(c), Government Code*, as amended by Chapter 747, applies only to a suit filed on or after September 1, 2003. A suit filed before September 1, 2003, is governed by the law in effect on the date the suit was filed, and the former law is continued in effect for that purpose. Acts 2003, 78th Leg., ch. 747, § 2.

**Effect of amendments.**

**2005 amendment,** rewrote (c) by combining two former versions of (c)(10) into one version.

**LexisNexis ® Notes**

# Case Notes

**Civil Procedure: Dismissals: Involuntary Dismissals: Failures to Prosecute**

**Civil Procedure: Trials: Bench Trials**

**Criminal Law & Procedure: Sentencing: Forfeitures: Proceedings**

**Governments: Courts: Rule Application & Interpretation**

**Civil Procedure: Dismissals: Involuntary Dismissals: Failures to Prosecute**

Rules of Judicial Administration, promulgated pursuant to Tex. Gov't Code Ann. § *74.024*, were nonbinding time standards, and the application of *Tex. R. Jud. Admin. 6 w*as discretionary and nonbinding, and did not fix a bright line demarking the outward limit of a trial court's discretion to control its docket; the trial court was therefore not bound by statute or rule to hear defendant's forfeiture case within twelve months of the appearance date. *Property v. State, No. 06-11-00113-CV, 2012 Tex. App. LEXIS 4093 (Tex. App. Texarkana May 22, 2012)*.

There was no abuse of discretion by denying the motion to dismiss for want of prosecution, because *Tex. R. Jud. Admin. 6 d*id not fix a bright line demarking the outward limit of a trial court's discretion to control its docket. *Jones v. Morales, 318 S.W.3d 419, 2010 Tex. App. LEXIS 3880 (Tex. App. Amarillo May 21, 2010)*, pet. denied *No. 10-0804, 2010 Tex. LEXIS 947 (Tex. Dec. 3, 2010)*.

**Civil Procedure: Trials: Bench Trials**

There was no abuse of discretion by denying the motion to dismiss for want of prosecution, because *Tex. R. Jud. Admin. 6 d*id not fix a bright line demarking the outward limit of a trial court's discretion to control its docket. *Jones v. Morales, 318 S.W.3d 419, 2010 Tex. App. LEXIS 3880 (Tex. App. Amarillo May 21, 2010)*, pet. denied *No. 10-0804, 2010 Tex. LEXIS 947 (Tex. Dec. 3, 2010)*.

Because the time limit in *Tex. R. Jud. Admin. 6(a)(2)* is discretionary, as indicated in Tex. Gov't Code Ann. § *74.024(c)(1)*, a property owner was not entitled to a dismissal of a forfeiture action for want of prosecution based on the failure to meet the time limit. *In re Fifty-One Gambling Devices, 298 S.W.3d 768, 2009 Tex. App. LEXIS 7535 (Tex. App. Amarillo 2009)*pet. deniedNo. *09-1059, 2010 Tex. LEXIS 29 (Tex. Jan. 8, 2010)*pet. deniedNo. *In re Fifty-One Gambling Devices & Twenty Six Thousand Eight Hundred Eighty Dollars in United States Currency, No. 09-1059, 2010 Tex. LEXIS 267 (Tex. Mar. 19, 2010)*.

**Criminal Law & Procedure: Sentencing: Forfeitures: Proceedings**

Rules of Judicial Administration, promulgated pursuant to Tex. Gov't Code Ann. § *74.024*, were nonbinding time standards, and the application of *Tex. R. Jud. Admin. 6 w*as discretionary and nonbinding, and did not fix a bright line demarking the outward limit of a trial court's discretion to control its docket; the trial court was therefore not bound by statute or rule to hear defendant's forfeiture case within twelve months of the appearance date. *Property v. State, No. 06-11-00113-CV, 2012 Tex. App. LEXIS 4093 (Tex. App. Texarkana May 22, 2012)*.

**Governments: Courts: Rule Application & Interpretation**

Because the time limit in *Tex. R. Jud. Admin. 6(a)(2)* is discretionary, as indicated in Tex. Gov't Code Ann. § *74.024(c)(1)*, a property owner was not entitled to a dismissal of a forfeiture action for want of prosecution based on the failure to meet the time limit. *In re Fifty-One Gambling Devices, 298 S.W.3d 768, 2009 Tex. App. LEXIS 7535 (Tex. App. Amarillo 2009)*pet. deniedNo. *09-1059, 2010 Tex. LEXIS 29 (Tex. Jan. 8, 2010)*pet. deniedNo. *In re Fifty-One Gambling Devices & Twenty Six Thousand Eight Hundred Eighty Dollars in United States Currency, No. 09-1059, 2010 Tex. LEXIS 267 (Tex. Mar. 19, 2010)*.

# Research References & Practice Aids

**LexisNexis ® Notes**

**LAW REVIEWS**

*41 Houston Lawyer 10*, FEATURE: TEXAS LEGISLATURE HAMMERS OUT MASSIVE TORT REFORM BILL, By Patrice Pujol and Marty Thompson, July/August, 2003, Copyright (c) 2003 Houston Bar Association, The Houston Lawyer.

*61 Tex. B. J. 994*, ARTICLE: IN THE SUPREME COURT OF TEXAS MISC. DOCKET NO. 98-9170: APPROVAL OF REVISIONS TO THE TEXAS RULES OF JUDICIAL ADMINISTRATION, November, 1998, Copyright (c) 1998 by State Bar of Texas, Texas Bar Journal.

*62 Tex. B. J. 946*, FEATURES: IN THE SUPREME COURT OF TEXAS MISC. DOCKET NO. 99-9112: OPINION AND ORDER IMPLEMENTING RECOMMENDATIONS OF THE SUPREME COURT JUDICIAL CAMPAIGN FINANCE STUDY COMMITTEE, October, 1999, Copyright (c) 1999 by State Bar of Texas, Texas Bar Journal.

**TREATISES & ANALYTICAL MATERIALS**

1-3 Texas Civil Trial Guide § *3.40*, NONSUIT AND DISMISSAL FOR WANT OF PROSECUTION, DISMISSAL FOR WANT OF PROSECUTION, Making and Responding to Motions to Dismiss, Texas Civil Trial Guide.

19 Dorsaneo, Texas Litigation Guide III, SUMMARY OF 2003 CIVIL JUSTICE REFORM LEGISLATION, SPECIAL ALERT TO: DORSANEO, TEXAS LITIGATION GUIDE TEXAS TORTS AND REMEDIES DORSANEO & SOULES — TEXAS CODES AND RULES AUGUST 2003 William V. Dorsaneo I, Tex. H.B. 4, Dorsaneo, Texas Litigation Guide.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2018 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

**End of Document**

' The modern "patent"
lerive from this term.

etters patent,' derived
meaning open letters.
tters addressed by the
its shall come,' reciting
chise, or other privilege
iign to the patentee."
of Patent Law 2 (1998).

ok-yə-rə-**tor**-ee-ee),
ocuration; letters of
WER OF ATTORNEY.

g-nish-ee-**oh**-nis), n.
.L OF LADING.

-tee), n. [Latin] Hist.
on a writ was often

ed language. • Literal
es exact compliance

im under CONSTRUC-

etation under INTER-

ENT.

truction under CON-

ie that reads words
iever figuratively —
the result. • Literal
ative one: "A sensible
lways be followed if
ords can reasonably
ual Interpretation of
(1934). Correspond-
meaning, it is nearly
47. Cf. HYPERLITER-

in under CONSTRUC-
must be given to the
tatute, regardless of
is or contrary to the
e consequences may
illed "[t]he first and
retation," one com-
ertainty in the sense
asier to predict than
ied that they have a
ibject of legislation,
ert Cross, *Precedent*

(1).

rolving literature or

xpression involving
ul order. Cf. *literary*

**literary executor.** See EXECUTOR (2).

**literary property.** (18c) **1.** The physical property in which an intellectual production is embodied, such as a book, screenplay, or lecture. **2.** An owner's exclusive right to possess, use, and dispose of such a production. See COPYRIGHT; INTELLECTUAL PROPERTY.

**literary work.** See WORK (2).

**literate,** *adj.* (15c) **1.** Able to read and write a language. **2.** Knowledgeable and educated. — **literacy,** *n.*

*literatura* (lit-ər-ə-t[y]uur-ə), *n.* [Latin fr. *litera* "a letter"] Hist. Education. • *Ad literaturam ponere* means the right to educate one's children, esp. male children. During feudal times, servile tenants could not educate their children without the lord's consent.

**litigable** (lit-ə-gə-bəl), *adj.* (18c) Able to be contested or disputed in court <litigable claims>. — **litigability,** *n.*

**litigant.** (17c) A party to a lawsuit; the plaintiff or defendant in a court action, whether an individual, firm, corporation, or other entity.

  ► **institutional litigant.** See INSTITUTIONAL LITIGANT.

  ► **self-represented litigant.** See PRO SE.

  ► **vexatious litigant.** (1831) A litigant who repeatedly files frivolous lawsuits. • Many jurisdictions have statutes or local rules requiring a vexatious litigant to obtain the court's permission to file any further lawsuits or pleadings. The litigant may also be subject to sanctions.

**litigate** (**lit**-ə-gayt), *vb.* To take or defend against a claim or a complaint in a court of law.

**litigation,** *n.* (17c) **1.** The process of carrying on a lawsuit <the attorney advised his client to make a generous settlement offer in order to avoid litigation>. **2.** A lawsuit itself <several litigations pending before the court>. — **litigatory, litigational,** *adj.*

> "In litigation you either take the initiative or you stand on the defensive, and your attack or defense must be supported upon one or both of these two elements. The aim of an intelligent preparation is to secure for your client a superior advantage over his adversary on the law, or on the facts, or on both. If by prudent provision you can be stronger on the facts under the law, you will win, or if your case be in the proper construction of the law, which you can show, it may be by great research and exhaustiveness of presentation to be for you, again you have the preponderance. But if you can present superior combinations, both of law and fact, then you are doubly safe. The right preparation of a case is scientific, and its object is to present for the client at the trial, on those points of controversy, which are cardinal or controlling, the ascendency as already explained. A little observance of trials and arguments will give the reader a clearer insight into the subject than many more pages, however plainly written and filled it might be to overflowing, with illustrations. As the student observes the argument after the evidence is all in, he will often detect for himself, the preponderance of the prevailing party, and he will likewise, while hearing discussion of legal questions, begin to see before the judge delivers his opinion, who will win it and how. Napoleon's saying, that the art of war consisted all in being the stronger on a certain point, is accepted as a maxim. So in litigation, there are turning points, either of law or fact, where superiority will win for the party who has it." John C. Reed, *Practical Suggestions for the Management of Law-suits* 20–21 (1876).

  ► **complex litigation.** Litigation involving several parties who are separately represented, and usu. involving multifarious factual and legal issues.

> "What exactly is 'complex litigation'? The problem is that no one really knows — or, more accurately perhaps, various definitions don't agree. Complex civil litigation has an 'I-know-it-when-I-see-it' quality. Nearly everyone agrees that matters like the massive asbestos litigation, the AT&T antitrust suit, or the remedial phase of a school desegregation case are complex. But trying to find a common thread that both describes these cases and distinguishes them from the run-of-the-mill car crash is difficult." Jay Tidmarsh & Roger H. Transgrud, *Complex Litigation* 1 (2002).

  ► **imported litigation.** (1927) One or more lawsuits brought in a state that has no interest in the dispute.

  ► **megalitigation.** (1985) Civil, usu. commercial, litigation that is extraordinarily complex, time-consuming, and expensive. — Also written *mega-litigation*.

**litigation costs.** See COST (3).

**litigation guardian.** See *guardian ad litem* under GUARDIAN (1).

**litigation hold.** See HOLD (1).

**litigation-hold letter.** (2008) A writing that orders the segregation and retention of certain documents and data that are or may be relevant to a threatened or pending litigation or an official investigation.

  ► **internal litigation-hold letter.** (2008) A litigation-hold letter sent by a company, directly or through its attorneys, to its own employees.

**litigation privilege.** See PRIVILEGE (1).

**litigator.** (16c) **1.** A trial lawyer. **2.** A lawyer who prepares cases for trial, as by conducting discovery and pretrial motions, trying cases, and handling appeals. **3.** *Archaic.* A party to a lawsuit; a litigant.

**litigatrix** (lit-i-**gay**-triks). [Latin fem. form of *litigator*] (1771) **1.** *Hist.* A female litigant. **2.** *Slang.* An assertive and successful female attorney; esp., one who is particularly intimidating or ruthless, or shows a habitual animosity toward men. • In sense 2, the word is supposedly a portmanteau word from *litigator* and *dominatrix*. The sense was coined in 1991 by assistant U.S. attorney David B. Lat. Some regard the term as objectionable on grounds of sexism.

**litigious** (li-**tij**-əs), *adj.* (14c) **1.** Prone to legal disputes; eager to take disagreements into a court of law <our litigious society>. **2.** *Archaic.* Of, relating to, or involving the subject of a lawsuit <the litigious property>. **3.** *Archaic.* Of, relating to, or involving lawsuits; litigatory <they couldn't settle the litigious dispute>. — **litigiousness, litigiosity** (li-tij-ee-**os**-ə-tee), *n.*

**litigious right.** (1817) *Civil law.* A right that cannot be exercised without first being determined in a lawsuit. La. Civ. Code art. 2652. • If the right is sold, it must be in litigation at the time of sale to be considered a litigious right.

*litis aestimatio* (lı-tis es-tə-**may**-shee-oh). [Latin] (17c) *Roman law.* The judicial estimate of the measure of damages.

*litis contestatio* (lı-tis kon-tes-**tay**-shee-oh). [Latin] (16c) **1.** *Roman law.* The final agreement of the parties to a suit on the formula the praetor would issue to the judex. — Also termed *contestatio litis.* See FORMULA.

> "Both parties being present, or represented, before the praetor, the plaintiff stated the nature of his claim and asked for an action. It lay in the discretion of the praetor to give or to refuse it. . . . If, in the event, the praetor refused any action at all, or any action which the plaintiff